1  Christopher Kao (SBN 237716)
    christopher.kao@pillsburylaw.com
2  Brock S. Weber (SBN 261383)
3    brock.weber@pillsburylaw.com
4  PILLSBURY WINTHROP SHAW PITTMAN LLP
   Four Embarcadero Center, 22nd Floor
5  San Francisco, CA  94111-5998
   Telephone:  415.983.1000
6  Facsimile:   415.983.1200

7  Christine Yang (SBN 102048)
8    chrisyang@sjclawpc.com
   LAW OFFICE OF S.J. CHRISTINE YANG
9  17220 Newhope Street, Suite 101-102
   Fountain Valley, CA  92708
10 Telephone:  714.641.4022
   Facsimile:   714.641.2082
11
12 Attorneys for Defendant
   KINGSTON TECHNOLOGY COMPANY, INC.
13

14              **UNITED STATES DISTRICT COURT**
15             **CENTRAL DISTRICT OF CALIFORNIA**
16

| | |
|---|---|
| 17  NORTH STAR INNOVATIONS INC., | Case No. 8:17-cv-01833-DOC-DFM |
| 18          Plaintiff, | **JOINT STIPULATION** |
| 19       vs. | **REGARDING KINGSTON'S** |
| | **RESPONSES TO NORTH STAR'S** |
| 20  KINGSTON TECHNOLOGY | **REQUESTS FOR ADMISSIONS** |
| 21  COMPANY, INC., | |
| 22          Defendant. | Date:        October 2, 2018 |
| | Time:        10:00 a.m. |
| 23 | CrtRm:      6B |
| 24 | |
| 25 | Discovery Cutoff: January 7, 2019 |
| | Final Pretrial Conf.: July 8, 2019 |
| 26 | Trial Date: July 23, 2019 |
| 27 | Honorable Douglas F. McCormick |
| 28 | |

# **TABLE OF CONTENTS**

Page

I. KINGSTON'S INTRODUCTION..................................................................1

II. NORTH STAR'S INTRODUCTION ..........................................................2

III. DISPUTED REQUESTS.............................................................................3

    A. North Star's Request for Admission 1 ...........................................3

    B. North Star's Request for Admission 2 ...........................................4

    C. North Star's Request for Admission 3 ...........................................4

    D. North Star's Request for Admission 4 ...........................................5

    E. North Star's Request for Admission 5 ...........................................6

IV. KINGSTON'S ARGUMENT REGARDING EACH RFA ..........................7

    A. Background Facts ...........................................................................7

    B. Kingston's Responses Were Not Untimely Because It Could Not Have Answered the RFAs. .............................10

    C. If Kingston's Responses Were Untimely, Kingston Requests That This Court Allow It To Withdraw And Amend Its Responses To Conform With Its July 12 Responses. ........................................................................12

        1. Allowing Withdrawal And Amendment Would Support A Decision On The Merits. ...........................13

        2. Plaintiff Cannot Show It Would Be Prejudiced By A Withdrawal And Amendment................................................................14

        3. Defendant Had Good Cause To Delay Its Response. ...............................................................................18

    D. Kingston's Attempted Resolution.................................................19

V. NORTH STAR'S ARGUMENT AS TO EACH RFA ...............................20

    A. BRIEF FACTUAL BACKGROUND.............................................20

        1. The Parties .........................................................................20

        2. The Patents.........................................................................21

    B. BRIEF FACTUAL AND PROCEDURAL BACKGROUND........................................................................21

1           1.    The Original Complaint, the Asserted
                   Patents, and the Accused Products ...............................21

2

3           2.    Assignment to U.S. District Judge Carter
                   and Magistrate Judge McCormick.............................23

4           3.    Kingston's Motion to Dismiss.................................23

5           4.    Preparation for the Scheduling Conference............................23

6           5.    North Star's Discovery Requests...............................24

7           6.    The Scheduling Conference....................................26

8           7.    North Star Reminds Kingston of its
                   Discovery Obligations ...............................27

9           8.    Kingston Finally Responds to North Star's

10                    Discovery Requests, But its Responses are
                   Deficient......................................28

11

12      C.    APPLICABLE LAW ...............................30

13          1.    Requests for Admission................................30

         2.    Prejudice .......................................31

14      D.    ARGUMENT ........................................31

15 VI.    KINGSTON'S CONCLUSION ...............................32

16 VII.   NORTH STAR'S CONCLUSION.................................32

17

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*999 v. C.I.T. Corp.*,
    776 F.2d 866 (9th Cir.1985) ...................................................................... 17

*Bastidas v. Chappell*,
    791 F.3d 1155 (9th Cir. 2015) ................................................................. 28

*Brown v. Collins*,
    Case No. ED CV 13-145-CJC(E), 2015 WL 12910693 (C.D. Cal. Jan.
    8, 2015) ....................................................................................................... 13

*Buchanan v. Neighbors Van Lines*,
    Case No. CV 10-6206 PSG RCX, 2011 WL 5005769 (C.D. Cal. Oct.
    20, 2011) ..................................................................................................... 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................... 32

*Conlon v. U.S.*,
    474 F.3d 616 (9th Cir. 2007) ............................................................*passim*

*Flowers v. Lawrence*,
    2016 U.S. Dist. LEXIS 54882 (D. Ariz. Jan. 27, 2016) .......................... 28

*Garavito v. JP Morgan Chase Bank Nat'l Ass'n*,
    No. SACV 12-1885-DOC, 2014 U.S. Dist. LEXIS 189822 (C.D. Cal.
    Feb. 20, 2014) .................................................................................... 30, 31

*Gentec Enterprises Inc. v. Transistor Devices Inc.*,
    Case No. CV1007057GAFSHX, 2012 WL 13005847 (C.D. Cal. Mar.
    27, 2012) ..................................................................................................... 13

*Hadley v. United States*,
    45 F.3d 1345 (9th Cir. 1995) ............................................................. 13, 15

*Integrated Sports Media, Inc. v. Canseco*,
    Case No. CV 10-7392 RSWL AJWX, 2012 WL 407054, at *1 (C.D.
    Cal. Feb. 8, 2012) ............................................................................. 14, 18

JOINT STIPULATION REGARDING KINGSTON'S
RESPONSES TO PLAINTIFF'S RFAS
              iii
              Case No. 17-cv-01833-DOC-DFM

4847-8977-3936.v6

*Pagtalunan v. Galaza,*
   291 F.3d 639 (9th Cir. 2002) .................................................................. 14

*Perez v. Miami-Dade County,*
   297 F.3d 1255 (11th Cir. 2002) ........................................... 10, 11, 15, 17

*Pulsecard, Inc. v. Discover Card Servs.,*
   168 F.R.D. 295 (D. Kan. 1996) ............................................................. 29

*U.S. v. Ramirez,*
   698 F. App'x 332 (9th Cir. 2017) .......................................................... 30

*Robert Ito Farm, Inc. v. Cty. of Maui,*
   842 F.3d 681 (9th Cir. 2016) ................................................................ 28

*Puerto Rico v. S.S. Zoe Colocotroni,*
   628 F.2d 652 (1st Cir. 1980) ................................................................. 17

*Smith v. Tex. San Marcos Treatment Ctr., LP,*
   No. 3:09-CV-00141-TMB, 2010 U.S. Dist. LEXIS 148233 (D. Alaska
   Jan. 29, 2010) ....................................................................................... 29

*Starlight Int'l, Inc. v. Herlihy,*
   181 F.R.D. 494 (D. Kan. 1998) ............................................................. 29

*Wahpeton Canvas Co. v. Frontier, Inc.,*
   870 F.2d 1546 (Fed. Cir. 1989) ............................................................... 6

*Zavala v. Deutsche Bank Tr. Co. Ams.,*
   2013 U.S. Dist. LEXIS 77664 (N.D. Cal. May 29, 2013) ...................... 28

<u>Statutes and Codes</u>

United States Code
   Title 28, section 636(b)(1)(B) ............................................................... 28
   Title 35, section 271(a) .............................................................. 29, 32
   Title 35, section 285 ............................................................................. 33

1

## Rules and Regulations

2

Federal Rules of Civil Procedure

3
 Rule 6(d) ............................................................................................ 24
 Rule 8 ........................................................................................... 12, 19
4
 Rule 26(f) .......................................................................................... 24
5
 Rule 33(b)(4) ..................................................................................... 29
 Rule 34(b)(2) ..................................................................................... 29
6
 Rule 36 ....................................................................... 10, 13, 24, 31
7
 Rule 36(a) .......................................................................................... 13
 Rule 36(a)(1) ..................................................................................... 30
8
 Rule 36(a)(3) .................................................... 13, 29, 30, 31
9
 Rule 36(b) ................................................................................. *passim*
 Rule 36(d) .......................................................................................... 17
10

11

Federal Rules of Evidence

 Rule 201 .............................................................................................. 21

12

Local Rule

13
 Rule 37-2 ............................................................................................ 20
14
 Rules 37-1 through 37-4 .......................................................... 30

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   KINGSTON'S INTRODUCTION

Defendant Kingston Technology Company, Inc. ("Kingston"), moves this Court for a Protective Order affirming that its Responses to Plaintiff North Star Innovations Inc.'s ("Plaintiff" or "North Star") Requests for Admissions ("RFAs") were timely, or in the alternative, that Kingston be allowed to withdraw and amend its RFA responses to conform with the responses it served on July 12, 2018.

Early on in this litigation, Plaintiff served RFAs asking Kingston to admit it infringed the four patents at issue in this case.  Due to several subsequent events, including the setting of a hearing for a Motion to Dismiss the Complaint, Kingston's deadline to respond to the RFAs was deferred by agreement with Plaintiff, and ultimately, Plaintiff's Complaint was dismissed for a failure to adequately plead infringement of the four asserted patents.  Plaintiff subsequently filed an Amended Complaint, and after deciding not to move to dismiss the new complaint, Kingston promptly responded to and denied Plaintiff's requests to admit that it had infringed the patents on July 12, 2018, before Kingston was even obligated to respond to the First Amended Complaint.

Plaintiff nevertheless recently advised Kingston that it intended to disregard Kingston's responses to its RFAs and proceed in this litigation as if Kingston had admitted the RFAs.  Plaintiff is not entitled to treat its RFAs as admitted given the events of this case.  Nonetheless, in an abundance of caution, Kingston notified North Star that if the parties could not resolve the dispute amongst themselves, Kingston intended to file a motion to establish the status of its responses and if needed to withdraw and amend its responses to Plaintiff's RFAs.

Kingston now moves the Court for a Protective Order designating its July 12, 2018 RFA responses as operative responses to Plaintiff's RFAs.  In the event that the Court determines that Plaintiff may deem its RFAs admitted, Kingston moves the Court to allow it to withdraw and amend its RFA responses to conform with its July 12, 2018 RFA responses.  Kingston seeks this relief on the grounds that (i) a withdrawal and

amendment would facilitate a decision of this case on the merits and (ii) Plaintiff cannot show that it would be prejudiced by the relief. Kingston had good cause to wait until Plaintiff sufficiently pled infringement claims until responding to RFAs seeking admissions on such infringement claims. After all, if an infringement claim is legally deficient, then it is inappropriate to admit or deny such a claim in an RFA; instead, Kingston denied Plaintiff's purported claims by filing its successful Motion to Dismiss.[1]

## II.    NORTH STAR'S INTRODUCTION

Plaintiff North Star Innovations Inc. ("Plaintiff" or "North Star") filed this patent infringement suit against Defendant Kingston Technology Company, Inc. ("Defendant" or "Kingston") almost eleven months ago – on October 19, 2017. North Star alleged that a number of Kingston's products infringe its patents. Shortly thereafter, on January 10, 2018, the Court encouraged the Parties to start discovery before the Scheduling Conference. North Star followed suit by serving written discovery requests (the "Requests") in March – requests that included narrowly tailored Requests for Admission relating to infringement by one particular product, as well as requests for production and interrogatories relating to: infringement; invalidity; and damages.

Kingston's responses to the Requests for Admission were due no later than April 30, 2018. Kingston did not respond within 30 days or for many months thereafter. By failing to timely respond, Kingston admitted that at least one accused product infringed certain asserted claims. **To be clear, Kingston has *not* admitted infringement as to all of the Accused Products and has not admitted infringement as to all claims that may be asserted in this case. Further, Kingston has made clear that it intends to challenge the validity of the patents and will also challenge damages. Thus, if the Court denies this motion (as it should), such a ruling will <u>not</u> "eliminate [the] need for [a] presentation on the merits," as Kingston misleadingly argues.**

---

[1] Plaintiff filed a Motion for Partial Summary Judgment (Dkt. 51) on August 24, 2018, based on its position regarding Kingston's responses to Plaintiff's RFAs. After the parties finalized this Joint Stipulation, Judge Carter issued an order on September 10, 2018, striking Plaintiff's Motion for Partial Summary Judgment as premature. *See* Dkt. 54.

At the Scheduling Conference on April 30, 2018 (i.e., the last conceivable day on which Kingston was required to answer the Requests for Admission), the Court set an aggressive schedule that allowed just eight more months for discovery and that scheduled trial for July 23, 2019 – less than 15 months away. The Parties must now make strategic decisions about how to complete discovery, whether and when to serve expert reports and on which issues, whether and when to file dispositive motions, and how best to prepare for trial. So that the Parties may focus their efforts exclusively on the remaining disputed issues, North Star recently moved for partial summary judgment of infringement.   See Dkt. 51 and also attached to this Joint Stipulation as Ex. 9 (hereafter, "MSJ").   For those same reasons, Kingston's motion to withdraw its admissions should be denied.  In addition, North Star respectfully submits that a grant of Kingston's motion would effectively operate as a denial of North Star's motion for summary judgment.   Accordingly, the disputed issues raised herein should be adjudicated by Judge Carter.

## III.   DISPUTED REQUESTS

### A.   North Star's Request for Admission 1

North Star's Request for Admission 1

> Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 5,943,274 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

Kingston's Objections and Response to Request No. 1

> Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be granted, and because Kingston's response to the FAC is not due until July 23, 2018.

1   Subject to and without waiving the foregoing General and Specific
2   Objections, based on its ongoing investigation to date and to the extent
3   Kingston understands this Request, Kingston responds as follows:
4   Denied.

5

6   **B.     North Star's Request for Admission 2**
7   North Star's Request for Admission 2

8   Kingston Technology Company, Inc. has infringed Claim 1 of U.S.
9   Patent No. 6,127,875 because it has, on at least one occasion since
10   October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM
11   memory product, Part No. D5128EETBPGGBU.
12   Kingston's Objections and Response to Request No. 2

13   Each General Reservation and Objection and Objection to the
14   Definitions and Instructions is hereby incorporated by reference as if fully
15   set forth herein.  Kingston objects to this Request as unduly burdensome,
16   improper, and premature, as Plaintiff's Complaint has been dismissed for
17   failing to state a claim upon which relief may be granted, and because
18   Kingston's response to the FAC is not due until July 23, 2018.

19   Subject to and without waiving the foregoing General and Specific
20   Objections, based on its ongoing investigation to date and to the extent
21   Kingston understands this Request, Kingston responds as follows:
22   Denied.

23

24   **C.     North Star's Request for Admission 3**
25   North Star's Request for Admission 3

26   Kingston Technology Company, Inc. has infringed Claim 15 of U.S. Patent
27   No. 6,917,555 because it has, on at least one occasion since October 19,

28

2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

Kingston's Objections and Response to Request No. 3

Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be granted, and because Kingston's response to the FAC is not due until July 23, 2018.

Subject to and without waiving the foregoing General and Specific Objections, based on its ongoing investigation to date and to the extent Kingston understands this Request, Kingston responds as follows:

Denied.


**D.    North Star's Request for Admission 4**

North Star's Request for Admission 4

Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 6,101,145 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

Kingston's Objections and Response to Request No. 4

Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be granted, and because Kingston's response to the FAC is not due until July 23, 2018.

1    Subject to and without waiving the foregoing General and Specific

2    Objections, based on its ongoing investigation to date and to the extent

3    Kingston understands this Request, Kingston responds as follows:

4    Denied.

5

6    **E.    North Star's Request for Admission 5**

7    North Star's Request for Admission 5

8    Kingston Technology Company, Inc. has infringed Claim 6 of U.S. Patent

9    No. 6,101,145 because it has, on at least one occasion since October 19,

10    2011, sold within the United States a 4Gb DDR3L SDRAM memory

11    product, Part No. D5128EETBPGGBU.

12    Kingston's Objections and Response to Request No. 5[2]

13    Each General Reservation and Objection and Objection to the

14    Definitions and Instructions is hereby incorporated by reference as if fully

15    set forth herein.  Kingston objects to this Request as unduly burdensome,

16    improper, and premature, as Plaintiff's Complaint has been dismissed for

17    failing to state a claim upon which relief may be granted, and because

18    Kingston's response to the FAC is not due until July 23, 2018.

19    Subject to and without waiving the foregoing General and Specific

20    Objections, based on its ongoing investigation to date and to the extent

21    Kingston understands this Request, Kingston responds as follows:

22    Denied.

23

24

25    ---

[2] Kingston also notes that its denial of infringement as to this RFA is subsumed by its
26    denial of infringement as to RFA 4 because claim 6 of U.S. Patent No. 6,101,145 is
dependent on Claim 1 of the same patent, and "[o]ne who does not infringe an
27    independent claim cannot infringe a claim dependent on (and thus containing all the
limitations of) that claim."  *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546,
28    1552 fn.9 (Fed. Cir. 1989).

## IV.   KINGSTON'S ARGUMENT REGARDING EACH RFA

### A.   Background Facts

Plaintiff's Complaint in this case included a series of completely illegible and unlabeled diagrams, and fell far short of the pleading requirements under the Federal Rules of Civil Procedure.  *See* Complaint, Dkt. 1, Ex. 1.  Accordingly, on December 15, 2017, Defendant Kingston filed a Motion to Dismiss Plaintiff's Complaint.  Motion to Dismiss, Dkt. 20, Ex. 2.  The Motion to Dismiss was fully briefed and submitted to the Court on January 22, 2018.  Opposition to Motion to Dismiss, Dkt. 24, Ex. 3; Reply in Support of Motion to Dismiss, Dkt. 26, Ex. 4.

Despite the pending Motion to Dismiss, on March 16, 2018, Plaintiff served combined discovery requests on Kingston including Requests for Admissions that Defendant infringed the four asserted patents.  Declaration of Christopher Kao in Support of Joint Stipulation Regarding North Star's Requests for Admissions ("Kao Decl.") ¶ 3.  By mutual agreement of the parties, the deadline to respond to Plaintiff's discovery requests was extended to May 16, 2018, which was after the date of the hearing on Kingston's Motion to Dismiss set for May 1, 2018.[3]

On May 1, Magistrate Judge McCormick held a hearing on the Motion to Dismiss and indicated his intention to grant it.  Subsequently, on May 7, 2018, and notably before Kingston's responses to Plaintiff's discovery were due, Magistrate Judge McCormick ruled that Plaintiff's Complaint should be dismissed.  Findings and Recommendations Re: Defendant's Motion to Dismiss, Dkt. 38, Ex. 5.

Subsequently, on June 25, 2018, after fully considering Plaintiff's Objections to Magistrate Judge McCormick's ruling, and Kingston's Response thereto, Judge Carter confirmed the ruling, and dismissed Plaintiff's Complaint in its entirety.   Order

---

[3]  North Star granted an extension to answer all of its discovery by May 16, 2018, and North Star is wrong in arguing that it only extended the date for document production, but that the other discovery was due April 30, 2018.  Kao Decl. ¶ 5.  *See also* Ex. 9, 10 (language cited in Plaintiff's own brief shows Kingston requested "extension to **respond to the requests** and **to produce documents**" (emphasis added).)

1    Accepting Findings and Recommendations of United States Magistrate Judge, Dkt. 44,
2    Ex. 6.

3         Plaintiff thereafter filed its First Amended Complaint on July 9, 2018.   First
4    Amended Complaint, Dkt. 45, Ex. 7.  After determining that it would not seek to dismiss
5    the Amended Complaint, Kingston served its Objections and Responses to Plaintiff's
6    discovery requests <u>three days later</u>, on July 12, 2018, before its responsive pleading to
7    the First Amended Complaint was even due.  Kao Decl. ¶ 7.  Kingston subsequently
8    filed its Answer to the First Amended Complaint on July 23, 2018.  Dkt. 48, Ex. 8.

9         On July 26, 2018, three days after Kingston answered and denied all infringement
10   allegations in Plaintiff's Amended Complaint, Plaintiff's counsel sent a letter to
11   Kingston's counsel seeking a meet and confer on Monday, August 6, 2018, for a Motion
12   to Compel responses to Plaintiff's Interrogatories and Requests for Production.  Kao
13   Decl. ¶ 8.  Plaintiff's letter made no mention of any intention to file a Motion for Partial
14   Summary Judgment based on any alleged discovery failures by Kingston, and did not
15   seek to meet and confer on such a proposed motion.

16        On August 2, 2018, Kingston's counsel wrote to Plaintiff's counsel stating it did
17   not believe Plaintiff had a reasonable basis for a Motion to Compel given that: (i) no
18   discovery responses had previously been due given that Plaintiff's claims had been
19   dismissed and <u>there was no operative complaint in the case until July 9, 2018</u>; and
20   (ii) Kingston had already agreed to produce the requested discovery prior to the parties'
21   scheduled mediation on August 15, 2018.  Kao Decl. ¶ 9.

22        On Friday, August 3, 2018, counsel for Plaintiff's assistant sent an e-mail to
23   Kingston's counsel stating that Plaintiff "intends to file a Motion for Partial Summary
24   Judgment on Infringement," and seeking to meet and confer regarding this proposed
25   motion.  Kao Decl. ¶ 10.  Kingston's counsel requested that Plaintiff's counsel "state
26   the basis of your proposed motion so that we have an adequate chance to consider it
27   before any meet and confer."  Kao Decl. ¶ 11.  Plaintiff's counsel did not provide any
28   further response.  *Id.*

The parties subsequently met and conferred by telephone on Monday, August 6, 2018, regarding the discovery issues raised in Plaintiff's July 25, 2018 letter, at which time Plaintiff informed Kingston that it also was meeting and conferring for the purposes of its proposed Motion for Partial Summary Judgment. Kao Decl. ¶ 13. As the basis for its proposed Motion, Plaintiff's counsel stated for the first time that it intended to disregard Kingston's responses to Plaintiff's RFAs and proceed in this action as if Kingston had admitted the RFAs and use that as the basis for a Motion for Summary Judgment. Kao Decl. ¶ 13. On August 8, 2018, Kington's counsel informed Plaintiff's counsel that Kingston would oppose any Motion for Partial Summary Judgment that Plaintiff intended to file. Kao Decl. ¶ 14.

Despite threatening to file a Motion for Partial Summary Judgment, Plaintiff did not do so for weeks after mentioning it. Declaration of James Chang in Support of Joint Stipulation Regarding North Star's Requests for Admissions ("Chang Decl.") ¶ 3; *see also* Ex. 9. Accordingly, in an attempt to resolve the parties' dispute regarding Kingston's responses to Plaintiff's RFAs, Kingston's counsel sent Plaintiff's counsel a letter on August 17, 2018, requesting to meet and confer. Chang Decl. ¶ 4. In the letter, Kingston's counsel stated that if the parties could not come to an agreement regarding Plaintiff's RFAs, Kingston intended to file a motion to withdraw and amend its responses, so as to avoid wasting the Court's time with Plaintiff's Motion for Partial Summary Judgment that would not have been based on the merits.

On Tuesday, August 21, 2018, Plaintiff's counsel stated that he was too busy to meet and confer that week, and asked to meet the week after on Monday, August 27, 2018. Chang Decl. ¶ 6. Nevertheless, on the Friday prior to the scheduled meet and confer, Plaintiff filed a Motion for Partial Summary Judgment based on the fact that Kingston had failed to withdraw and amend its Responses to Plaintiff's RFAs. Motion for Partial Summary Judgment, Dkt. 51, Ex. 9. Plaintiff filed this Motion despite knowing that the parties had committed to meet and confer on that exact topic on the

very next business day.  Moreover, Plaintiff failed to disclose this fact to the Court in its Motion for Partial Summary Judgment.

## B.      Kingston's Responses Were Not Untimely Because It Could Not Have Answered the RFAs.

Plaintiff asserts that Kingston's responses to its RFAs were due no later than April 30, 2018.  Ex. 9, 11.  But Kingston contends that its July 12, 2018 responses to Plaintiff's RFAs were timely served given the dismissal of Plaintiff's Complaint, and Plaintiff's subsequent filing of its First Amended Complaint only on <u>July 9, 2018</u>.

Each of Plaintiff's Requests for Admission dated March 16, 2018, was a version of the following statement:

> Kingston Technology Company, Inc. has infringed Claim [asserted claim] of U.S. Patent No. [asserted patent] because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

Notably, Plaintiff's RFAs were not requests for the admissions of <u>mere facts</u>, rather they were requests for admissions of Plaintiff's <u>causes of action</u>.

*Perez v. Miami-Dade County* addresses a similar situation in which plaintiff propounded overly broad and premature requests for admission.  *Perez v. Miami-Dade County*, 297 F.3d 1255 (11th Cir. 2002).  In that case, the court commented:

> Rule 36 is a time-saver, designed "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial."  8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2252 (2d ed.1994) (emphasis added).  That is, when a party uses the rule to establish uncontested facts and to narrow the issues for trial, then the rule functions properly.  When a party . . . however, uses the rule to harass the other side or, as in this case, <u>with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer)</u>, the rule's timesaving function ceases; the rule instead becomes a weapon, dragging out the litigation and wasting valuable resources.

*Perez v. Miami-Dade County*, 297 F.3d at 1268 (emphasis added).  The *Perez* court stated it was inappropriate and prohibited by Rule 36 for plaintiff to serve requests for admissions along with the complaint.  *Id.*  It reasoned that, "It is simply too early for

the defendant, having not yet received the allegations, to perceive what facts should or should not be contested." *Id.* at 1268-9.

*Perez* is pertinent to the events in this case because it addresses the impropriety of serving RFAs while a defendant does not have proper notice of the allegations, such as would be the case where a complaint is challenged. Despite the fact that Plaintiff knew that Kingston had filed a Motion to Dismiss its Complaint on December 15, 2017, for failing to adequately allege infringement, Plaintiff subsequently served RFAs seeking that Kingston admit infringement. In other words, Plaintiff asked Kingston to admit what Kingston had already argued to the Court was indecipherable and wholly inadequate in Plaintiff's Complaint. And Kingston's Motion to Dismiss showed that there was no support for Plaintiff's infringement allegations in its Complaint.

The Court recognized the propriety of Kingston's position in its Motion to Dismiss. Prior to the agreed upon due date of the RFAs, Magistrate Judge McCormick held a hearing and ruled that Plaintiff's Complaint should be dismissed because "the Complaint fails to state a claim for direct infringement of the Asserted Patents by the Accused Products." Ex. 5, 5. Although Plaintiff subsequently filed objections to Judge McCormick's findings, Judge Carter subsequently confirmed the ruling on June 25, 2018 after a *de novo* review. Ex. 6, 2. Thus, Plaintiff's Complaint—the basis for which it could propound discovery—was dismissed in its entirety.

Notably, as Kingston had argued, Plaintiff's Complaint was dismissed for failing to "state a claim for direct infringement." Ex. 5, 5. Thus, Defendant Kingston could not possibly have responded to Plaintiff's RFAs because the very thing that Plaintiff asked Kingston to admit was held as a matter of law to be insufficiently described in

the Complaint, so Kingston would have had no idea what Plaintiff's RFAs were asking Kingston to admit.[4]

On July 9, 2018, two weeks after the Court dismissed Plaintiff's original Complaint, it filed its First Amended Complaint. After reviewing the First Amended Complaint, Kingston finally had some idea of how Plaintiff was asserting infringement in the case, and within three days Kingston answered and denied Plaintiff's Requests for Admission of said infringement.

Kingston could not have and should not have had to answer requests to admit infringement—the asserted cause of action—before it had adequate notice of what the accused infringement entailed, as required by Rule 8 of the Federal Rules of Civil Procedure. The first time that Plaintiff properly defined the operative infringement was in its First Amended Complaint filed on <u>July 9, 2018</u>, but this was more than two months after it claims that Kingston had to answer its RFAs on infringement.

Plaintiff's assertion that Kingston had to answer the RFAs by April 30 not only twists the Federal Rules of Civil Procedure to pervert the ordinary course of a case, but also the flow of time. Kingston could not have possibly answered requests to admit infringement before Plaintiff adequately pleaded its allegations of infringement, and it should not be required to have done so.

### C. If Kingston's Responses Were Untimely, Kingston Requests That This Court Allow It To Withdraw And Amend Its Responses To Conform With Its July 12 Responses.

Although Kingston does not believe its July 12, 2018 Responses were untimely, if the Court concludes that they were and that Kingston has somehow admitted the

---

[4] Specifically, both Magistrate Judge McCormick and Judge Carter agreed with Kingston that Plaintiff had failed in its Complaint to explain how limitations of each of its asserted claims with respect to all of the four patents were allegedly met by the accused product. Ex. 5 ("For the most part . . . Plaintiff fails to provide any factual allegations that are not direct recitations of each claim's limitations"); Ex. 6 ("[following] a *de novo* determination of those portions of the Report and Recommendation to which objections [were] made . . . the Findings and Recommendations (Dkt. 38) is approved an accepted").

statements in Plaintiff's RFAs under Rule 36(a)(3) of the Federal Rules of Civil Procedure, then Kingston moves this Court for permission to withdraw its admissions and to amend its responses to conform with its July 12, 2018 Responses to the RFAs.

Rule 36(b) of the Federal Rules of Civil Procedure permits courts to exercise discretion to grant relief from admissions made under Rule 36(a) when (1) "the presentation of the merits of the action will be subserved," and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." *Conlon v. U.S.*, 474 F.3d 616, 621 (9th Cir. 2007). A "district court may [also] consider other factors, including whether the moving party can show good cause for the delay . . . ." *Id.* at 625.

1.   Allowing Withdrawal And Amendment Would Support A Decision On The Merits.

"The first half of the test in [Rule 36] is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). *See Brown v. Collins*, Case No. ED CV 13-145-CJC(E), 2015 WL 12910693, at *1 (C.D. Cal. Jan. 8, 2015) (finding first prong met where upholding deemed admission likely would eliminate need for presentation on the merits); *Gentec Enterprises Inc. v. Transistor Devices Inc.*, Case No. CV1007057GAFSHX, 2012 WL 13005847, at *5 (C.D. Cal. Mar. 27, 2012) (finding first prong met where refusing to permit withdrawal of deemed admission would bar movant from presenting evidence on issues central to dispute and interfere with truth-finding aspect of litigation); *see also Conlon v. U.S.*, 474 F.3d at 622; *Hadley v. United States*, 45 F.3d at 1348 (finding first prong met where deemed admission is necessary element of liability).

The first prong of the test is easily met here because withholding the amendment of Kingston's responses to the RFAs would effectively circumvent a disposition of this case on its merits. As discussed above, Plaintiff's RFAs are not simple requests for the admission of facts; rather, they are requests that Defendant state it was liable for the

1  asserted causes of action.  If they are allowed to stand, the admissions of Plaintiff's
2  RFAs would establish infringement with respect to the 4Gb DDR3L SDRAM memory
3  product, Part No. D5128EETBPGGBU.

4          That the withdrawal of a response would facilitate a presentation on the merits is
5  especially the case where a party brings a summary judgement motion based entirely
6  on the admissions, as Plaintiff did here.  *See* Plaintiff's Motion for Partial Summary
7  Judgment, Ex. 9.  In *Integrated Sports Media, Inc. v. Canseco*, the court found the first
8  prong met where the deemed admissions were "all encompassing and act as admissions
9  of every element required for a violation."  *Integrated Sports Media, Inc. v. Canseco*,
10  Case No. CV 10-7392 RSWL AJWX, 2012 WL 407054, at *1 (C.D. Cal. Feb. 8, 2012).
11  In that case, the court also cited to the fact that the party relying on the deemed
12  admissions had brought a summary judgment motion centered on the deemed
13  admissions in finding that the first prong was met.  *Id.* at *1.  Similarly, here, Plaintiff's
14  Motion for Partial Summary Judgment relies on nothing more than Kingston's deemed
15  admissions.  Ex. 9, 16.

16          Public policy favors disposition of cases on the merits.  *Pagtalunan v. Galaza*,
17  291 F.3d 639, 643 (9th Cir. 2002).  Kingston clearly has disputed, and still disputes that
18  it infringes the asserted claims.  Holding the opposite against Kingston does not serve
19  to decide the case on the merits.

20              2.    <u>Plaintiff Cannot Show It Would Be Prejudiced By A Withdrawal
21                    And Amendment.</u>

22          The second prong of the test is also met because Plaintiff would not be prejudiced
23  by the withdrawal and amendment of Kingston's responses.

24          "The party relying on the deemed admission has the burden of proving
25  prejudice."  *Conlon v. U.S.*, 474 F.3d at 622.

26          The prejudice contemplated by Rule 36(b) is "not simply that the party
27          who obtained the admission will now have to convince the factfinder of its
            truth.  Rather, it relates to the difficulty a party may face in proving its
28          case, *e.g.*, caused by the unavailability of key witnesses, because of the

---

4847-8977-3936.v6

1
2

sudden need to obtain evidence" with respect to the questions previously deemed admitted.

3
4
5
6
7
8

*Hadley v. United States*, 45 F.3d at 1348 (internal citations omitted).   Furthermore, "[w]hen undertaking a prejudice inquiry under Rule 36(b), district courts should focus on the prejudice that the nonmoving party would suffer at trial." *Conlon v. U.S.*, 474 F.3d at 623.   Moreover, the Ninth Circuit has made clear that it has been "reluctant to conclude that a lack of discovery, without more, constitutes prejudice." *Colon*, 474 F.3d at 624.

9
10
11

Plaintiff carries the burden of showing that it will face difficulty due to the sudden need to obtain evidence; furthermore, the difficulty must occur at trial.   Plaintiff cannot show that either of these considerations apply here.

12
13

a.   Plaintiff Cannot Show Difficulty Based On A Sudden Need To Obtain Evidence.

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiff does not face a sudden need to obtain evidence because Plaintiff has been aware that Kingston challenged Plaintiff's causes of action since the beginning of this litigation.   As discussed above, Kingston filed a Motion to Dismiss Plaintiff's original Complaint for failure to even state a claim of infringement upon which relief could be granted.   As a result of the Motion to Dismiss, Plaintiff's Complaint was dismissed and it later filed a First Amended Complaint.   A mere three days after Plaintiff filed its First Amended Complaint, and before Kingston was even required to respond to the new complaint, Kingston responded to and denied Plaintiff's Requests for Admission of infringement as defined in the First Amended Complaint.   Then Kingston also denied infringement in its Answer to Plaintiff's First Amended Complaint.   In the face of these facts, Plaintiff cannot realistically claim that it has relied on the deemed admissions.   *See Perez*, 297 F.3d at 1268 (finding it astonishing that nonmoving party would claim reliance on deemed admissions where they mirrored the complaint and the allegations had been denied).

28

In fact, Plaintiff did not raise the issue of moving for summary judgment based on deemed admissions until August 6, 2018, more than three months after it claims Kingston's responses were due on April 30, 2018.  Kao Decl., ¶ 13.  Presumably, had Plaintiff actually believed Kingston had admitted infringement at any time earlier, such as on July 9, 2018, when it filed its First Amended Complaint, it would have stated so at that time.  Instead, Plaintiff's First Amended Complaint repeatedly mentioned Plaintiff's service of document requests and that it was waiting for responsive productions, but nowhere does Plaintiff mention that it considered Kingston's RFA responses to be late and thus admitted.  *See* Ex. 7, ¶¶ 25, 35, 46, 56.

Moreover, Plaintiff cannot even realistically claim that it relied on the deemed admissions in preparing its Motion for Partial Summary Judgment.  *See Conlon v. United States*, 474 F.3d at 623 (citing *Raiser v. Utah County*, 409 F.3d 1243, 1247 (10th Cir. 2005) (finding no prejudice when the nonmoving party had relied on the deemed admissions for two weeks in preparing its summary judgment motion)).  In this case, Plaintiff first informed Kingston of its intent to move for summary judgment based on the allegedly deemed admissions on August 6, 2018.  Just two days later, on August 8, 2018, Kingston wrote to Plaintiff's counsel and informed him that Kingston disputed the deemed admissions.  In addition, on August 17, 2018, Kingston wrote to Plaintiff seeking to meet and confer on the withdrawal and amendment of the RFA responses.  Thus, Plaintiff cannot show that even two weeks passed before Kingston immediately took action to challenge the basis for the deemed admissions and Plaintiff's purported reliance thereon.

Additionally, Plaintiff will not face difficulty obtaining evidence because Plaintiff has had and still has more than enough time to conduct any needed discovery.  When Kingston answered the First Amended Complaint, more than six months remained until the fact discovery deadline during which Plaintiff could seek discovery regarding Kingston's Answer.  In addition, Plaintiff would not be prejudiced after a withdrawal and amendment of Kingston's RFA responses because there are still four

months until the close of fact discovery, during which it can propound additional discovery to the extent needed.  In fact, at the time of this stipulation, just half of the fact discovery period has passed since the scheduling order setting the discovery cutoff.  Scheduling Order, Dkt. 35, Ex. 10.  In addition, expert discovery does not end until seven months from now.  *See* Chang Decl. ¶ 12.  Moreover, Kingston has already produced all documents and information in its possession responsive to Plaintiff's discovery requests served to date.  Kao Decl. ¶ 16.  *See Perez*, 297 F.3d at 1268 (concluding that no prejudice would result because the nonmoving party had been conducting discovery throughout the discovery period).

Thus, for the reasons stated above, Plaintiff cannot possibly argue that it now faces a sudden need to obtain evidence.

b.   Plaintiff Cannot Show It Would be Prejudiced During Trial.

Plaintiff must further show that withdrawal and amendment would prejudice it at trial.  *See 999 v. C.I.T. Corp.,* 776 F.2d 866 (9th Cir.1985) (motion for withdrawal of admission denied in part because the motion was not made until the middle of trial when nonmoving party had nearly rested its case); *Puerto Rico v. S.S. Zoe Colocotroni*, 628 F.2d 652 (1st Cir. 1980) (trial preparation materially prejudiced when admission lured plaintiffs into a false sense that the liability issue was settled and caused plaintiffs to cancel scheduled depositions); *see also Buchanan v. Neighbors Van Lines*, Case No. CV 10-6206 PSG RCX, 2011 WL 5005769, at *12 (C.D. Cal. Oct. 20, 2011) (finding prejudice where movant filed Rule 36(d) motion six weeks after close of fact discovery and less than two weeks before trial); *Conlon v. United States*, 474 F.3d at 624 (finding prejudice where non-movant relied on admissions through discovery and dispositive motion cut-off dates with no indication movant intended to withdraw admissions).

Any prejudice Plaintiff could articulate at this time would be unreasonable given the amount of time remaining in which Plaintiff could redress it between now and trial.  As stated above, there are still four months of fact discovery remaining, seven months until the expert discovery cut-off, and nearly one year until trial—assuming the Court

1    does not move these dates based on Plaintiff's newly filed First Amended Complaint.

2    Plaintiff has more than enough time to conduct discovery in preparation for trial.

3       This case is similar to *Integrated Sports Media, Inc. v. Canseco* where a court

4    found that even though in that case movant had waited two months before seeking relief

5    from an admission, because of the combination, in part, of the fact that nonmoving party

6    could not point to any specific evidence or testimony that would be inaccessible because

7    of movant's motion and the fact that over three months remained before trial, there was

8    no prejudice.  *See Integrated Sports Media, Inc. v. Canseco*, No. CV 10-7392 RSWL

9    AJWX, 2012 WL 407054, at *2 (C.D. Cal. Feb. 8, 2012).

10      To the extent that Plaintiff argues that it has missed out on time to take discovery,

11    that assertion is untenable.  As stated above, Kingston has already produced all

12    documents and information in its possession responsive to Plaintiff's discovery requests

13    served to date.  Kao Decl. ¶ 16.  In addition, unless Plaintiff ties a lack of discovery to

14    specific harm it would suffer at trial, that harm would by completely hypothetical.  In

15    fact, the Ninth Circuit has stated it is "reluctant to conclude that a lack of discovery,

16    without more, constitutes prejudice."  *Colon*, 474 F.3d at 624.

17      Thus, for the reasons stated above, Plaintiff cannot show that it will suffer actual

18    prejudice at trial, especially given that trial is set for nearly one year in the future.

19         3.    <u>Defendant Had Good Cause To Delay Its Response.</u>

20      Finally, "[t]he district court may consider other factors, including whether the

21    moving party can show good cause for the delay . . . ."  *Conlon v. United States*, 474

22    F.3d 616, 625 (9th Cir. 2007).  Although not a part of the test laid out in Rule 36(b) of

23    the Federal Rules of Civil Procedure, some courts consider additional factors such a

24    good cause for delay.  As discussed above in section III.A, Plaintiff propounded RFAs

25    that referenced causes of action that were being challenged and ultimately dismissed for

26    failing to adequately state a valid claim.  At the time Plaintiff claims the RFA responses

27    were due, Kingston could not have known what Plaintiff's purported infringement

28

claims entailed, as the causes of action failed to meet Rule 8 of the Federal Rules of Civil Procedure.

However, once Plaintiff filed its First Amended Complaint, Kingston immediately reviewed it to determine whether it would challenge its validity.  After determining that it would not, Kingston used the newly asserted claims of infringement to evaluate its responses to Plaintiff's RFAs and served its responses all within three days of Plaintiff's filing of its First Amended Complaint.

Thus, Kingston had good cause to delay its response, and once it received the First Amended Complaint, it acted promptly to respond.

### D.    Kingston's Attempted Resolution

Although there are four months left before the close of fact discovery, and even though Kingston has already produced all documents in its possession responsive to Plaintiff's discovery requests, in an attempt to resolve the discovery dispute regarding the responses to Plaintiff's RFAs, Kingston informed Plaintiff that if it was willing to accept Kingston's July 12 responses as operative, Kingston would be willing to jointly seek to extend the fact discovery cutoff for an additional few months—something that is warranted in any case given that Plaintiff only on July 9, 2018 filed a properly pleaded complaint in this action—so as to eliminate any alleged prejudice to the Plaintiff.  Chang Decl. ¶ 10.  During the parties' meet and confer, Plaintiff stated that it would be agreeable to a fact discovery extension if the Court held that Kingston's RFA responses were timely, or if it alternatively allowed Kingston to withdraw and amend its RFA responses, but that it would not itself agree to consider Kingston's July 12, 2018 RFA responses as operative, unless ordered by the Court.

When Kingston's counsel asked Plaintiff's counsel if he had any other proposal to resolve the discovery dispute, Plaintiff's counsel stated that he did not.  Chang Decl. ¶ 11.  This position is unsurprising, given that after being informed of Kingston's request to meet and confer, Plaintiff deferred the meet and confer to the latest date allowable under the local rules, and then filed its Motion for Partial Summary Judgment

1  based on the fact that Kingston had failed to seek to amend or withdraw its RFA

2  responses one business day before the meet and confer.

3  **V.    NORTH STAR'S ARGUMENT AS TO EACH RFA[5]**

4      **A.    BRIEF FACTUAL BACKGROUND**

5          1.    **The Parties**

6      North Star is a Costa Mesa, California-based company that is a wholly-owned

7  subsidiary of Wi-LAN Technologies, Inc. ("Wi-LAN"). Wi-LAN has a long and storied

8  history of innovation, which includes the successful commercialization of multiple

9  products relating to high-speed wireless data communication. Wi-LAN's subsidiaries

10 help inventors, small businesses, and other patent holders protect their valuable

11 inventions and property rights – by providing the resources and expertise necessary to

12 challenge billion-dollar infringers, like Kingston. By so doing, Wi-LAN's subsidiaries

13 help produce a level playing field in which serial infringers are held to account.

14     One of those subsidiaries, North Star, is the owner of seminal patents in the fields

15 of integrated circuits, semiconductor memory architecture, and semiconductor memory

16 devices, including patents that address volatile memory, such as DRAM and SRAM.

17 North Star acquired its portfolio of 3,300+ assets from Freescale Semiconductor, Inc.,

18 who acquired many of the patents from Motorola, Inc. – a well-respected pioneer in the

19 semiconductor memory space.   The portfolio includes patents that teach valuable

20

21 [5] As a threshold matter, Plaintiff objects to the format of this Joint Stipulation, which
   was proposed by the moving party (namely, Kingston), and, in Plaintiffs' opinion,
22 does not comply with Local Rule 37-2. Plaintiff understands that the Joint Stipulation
   is intended to convey the parties' concise description of the disputed issues, followed
23 by a brief mention of the parties' respective contentions and points and authorities.
   Plaintiff further understands that the bulk of any "argument" is to be reserved for their
24 respective "supplemental memorandums." Nevertheless, since Kingston included 12+
   pages of argument in its initial draft of the "joint stipulation," and out of an abundance
25 of caution, Plaintiff North Star hereby provides its counter-arguments, which may be
   characterized as a slightly abridged version of the arguments made in Plaintiff's
26 pending Motion for Partial Summary Judgment (Dkt. 51). The primary difference here
   is that Plaintiff has added some additional commentary regarding prejudice suffered.
27 Plaintiff reserves all rights.

28

innovations and improvements related to speed, power consumption, density, reliability, and cost. Plaintiff is and has been actively engaged in successful licensing efforts with respect to such technologies – including successful litigation in the Central District of California.

Defendant Kingston is a Delaware corporation with its headquarters in Fountain Valley (Orange County), California. According to its website, "Kingston has grown to be the world's largest independent manufacturer of memory products." Kingston is a Forbes 50 company that has been around for more than thirty years and generated worldwide revenues of approximately $10B during 2017. With respect to third party suppliers of DRAM modules, Kingston commanded nearly 75% of the worldwide market as of 2016.

### 2. The Patents

On October 1, 2015, North Star acquired from Freescale Semiconductor, Inc. a portfolio of 3,300+ assets. North Star has successfully litigated approximately two dozen of those patents against many of the world's top manufacturers and sellers of memory products and other semiconductor devices.

## B. BRIEF FACTUAL AND PROCEDURAL BACKGROUND

This chronology summarizes the relevant events that should frame the Court's analysis.

### 1. The Original Complaint, the Asserted Patents, and the Accused Products

On October 19, 2017, North Star filed its Original Complaint (Dkt. 1) (corrected version at Dkt. 7),[6] alleging that Kingston's DDR3 and DDR3L families of SDRAM

---

[6] Pursuant to Fed. R. Evid. 201, the Court is asked to take judicial notice of specifically referenced docket entries, which are incorporated here by reference. Further, the Declaration of David Skeels attached to North Star's "MSJ" (Dkt. 51, and also attached to this Joint Stipulation as Ex. 9) as Ex. A ("Skeels Dec.") and the exhibits attached thereto (Exs. 1-9) were included in an appendix to the MSJ and incorporated therein by reference. For the Court's ease of reference, the appendix pages were consecutively numbered and are referred to as "App. ___."

memory products (the "Accused Products") infringe at least four North Star patents (the "Asserted Patents"), which may be summarized as follows:

- U.S. Patent No. 5,943,274 ("the '274 Patent") – entitled "Method and Apparatus For Amplifying a Signal to Produce A Latched Digital Signal" (issued 8.24.99; expired 2.2.18). The '274 Patent teaches, among other things, an improved circuit design for the output stage of a memory device, such as SDRAM, and an improved circuit design for a differential amplifier that provides a more reliable timing mechanism and thereby facilitates the use of a clock-free latch. See Dkt. 45-1.

- U.S. Patent No. 6,127,875 ("the '875 Patent") – entitled "Complimentary Double Pumping Voltage Boost Converter" (issued 10.3.00; expired 8.13.18). The '875 Patent teaches, among other things, an efficient and compact voltage boosting circuit that boosts the available supply voltage and limits output distortion. See Dkt. 45-2.

- U.S. Patent No. 6,917,555 ("the '555 Patent") – entitled "Integrated Circuit Power Management for Reducing Leakage Current in Circuit Arrays and Method Therefor" (issued 7.12.05; expire 12.31.23). The '555 Patent teaches, among other things, a novel design for an integrated circuit with power management capabilities, where multiple, independent power planes are used to eliminate or reduce leakage current. See Dkt. 45-3.

- U.S. Patent No. 6,101,145 ("the '145 Patent") – entitled "Sensing Circuit and Method" (issued 8.8.05; expires 12.21.18). The '145 Patent teaches, among other things, a novel data sensing circuit that utilizes a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and which utilizes a novel feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation. See Dkt. 45-4.

Some of these patents have already expired, while at least one of them does not expire for another 5+ years.

With respect to the Accused Products, which were defined broadly in North Star's pleadings to encompass all of Kingston's DDR3 and DDR3L families of products, North Star specifically identified at least two specific products by Part Number: (1) a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU, and (2) an 8Gb DDR3L SODIMM memory product, Part No.  KVR16LS11/8.

To date, North Star has only asserted Claim 1 of the '274 Patent, Claim 1 of the '875 Patent, Claim 15 of the '555 Patent, and Claims 1 and 6 of the '145 Patent (the "Asserted Claims") – though in phone conferences with opposing counsel, Kingston has conceded that North Star should be permitted to assert additional claims – now that

Kingston has finally produced at least some of the relevant technical documents requested many months ago (as discussed further below).

2. **Assignment to U.S. District Judge Carter and Magistrate Judge McCormick**

On October 23, 2017, this case was assigned to U.S. District Judge David O. Carter and to U.S. Magistrate Judge Douglas F. McCormick. Dkt. 8. In the Initial Standing Order of October 25, 2017 (Dkt. 15), Judge Carter admonished the Parties:

> [A]ny request, whether by application or stipulation, to continue the date of any matter before this Court must be supported by a detailed explanation of the grounds for the requested continuance or extension of time. Without compelling factual support, requests to continue dates set by this Court will not be approved. Proposed stipulations extending scheduling dates do not become effective unless and until this Court so orders.

To date, neither party has requested any continuance or extensions.

3. **Kingston's Motion to Dismiss**

On November 9, 2017, North Star agreed to Kingston's request for a 30-day extension "to answer or otherwise move." Dkt. 19. On December 15, 2017, Kingston filed its Motion to Dismiss Plaintiff's Complaint. Dkt. 20.

4. **Preparation for the Scheduling Conference**

On January 10, 2018, this Court issued its Order Setting Scheduling Conference – setting the scheduling conference for March 26, 2018. Dkt. 23. The Court further stated, in relevant part:

> [T]he Court encourages the parties to begin discovery before the Scheduling Conference. … [A]t the Scheduling Conference the Court will impose tight deadlines to complete discovery.

Dkt. 23. Even though Kingston had not yet answered the Complaint and its Motion to Dismiss was pending, Kingston did not move to stay discovery or otherwise seek relief or clarification from the Court. North Star timely filed its opposition to Kingston's Motion to Dismiss on January 13, 2018. Dkt. 24.

At least as early as March 5, 2018, Kingston made it clear – in an early draft of the Parties' Joint 26(f) Report – that it intended to challenge the validity of the Asserted Patents. "MSJ" Ex. 2, App. 13, 28-29.

On March 13, 2018, in advance of the Scheduling Conference, the Parties filed their Joint Report under Fed. R. Civ. P. 26(f). Dkt. 28. The Joint Report confirmed Kingston's intent to challenge the validity of the Asserted Patents, to limit Plaintiff's damages, and to pursue other defenses, including unenforceability, license, patent exhaustion, unclean hands, patent misuse, laches, waiver and estoppel. Dkt. 28 at 5-6, 16.

### 5.   North Star's Discovery Requests

On March 16, 2018, Plaintiff followed the Court's instructions and served (via email) written discovery in advance of the Scheduling Conference. *See Plaintiff's First Set of Combined Discovery Requests to Defendant* ("Requests"). "MSJ" Ex. 3, App. 38-51. Out of an abundance of caution (because it was not clear whether Kingston had consented to email service), a second, identical copy of the Requests was served via certified mail on March 28, 2018. "MSJ" Ex. 4, App. 53-54, 67.[7] The narrowly tailored Requests included just four interrogatories, five requests for production, and five requests for admission. "MSJ" Ex. 3, App. 46-50.

Based on the March 16 service date, Kingston's Responses were due thirty days later – on April 15, 2018. Even using the March 28 service date, the Responses were due April 27, 2018, or no later than April 30 – if three days are added per Fed. R. Civ. P. 6(d). The only exception is that Kingston's responses to the Requests for Production were due May 16, 2018 – pursuant to an agreement between the parties (discussed further below). Kingston did not otherwise object to, or seek protection from, Plaintiff's Requests.

---

[7] Kingston later acknowledged that it had no objection to service by email. "MSJ" Ex. 1, App. 7-8.

North Star's Discovery Requests specifically cited to Federal Rule of Civil Procedure 36 and specifically directed Kingston to "answer each of the following … requests for admission … within thirty (30) days after service hereof." "MSJ" Ex. 3, App. 40. The Discovery Requests included the following narrowly tailored Requests for Admission:

1.   Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 5,943,274 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

2.   Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 6,127,875 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

3.   Kingston Technology Company, Inc. has infringed Claim 15 of U.S. Patent No. 6,917,555 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

4.   Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 6,101,145 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

5.   Kingston Technology Company, Inc. has infringed Claim 6 of U.S. Patent No. 6,101,145 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

"MSJ" Ex. 3, App. 50. As relevant here, Plaintiff also served:

On March 28, 2018, Judge Carter rescheduled the Scheduling Conference for April 30, 2018. Dkt. 30. Kingston's Motion to Dismiss was then set for hearing on the day after the Scheduling Conference – i.e., on May 1, 2018 – before Magistrate Judge McCormick. Dkt. 32.  On April 2, 2018, Kingston served its Initial Disclosures – thus acknowledging that it was obligated to abide by the Court's discovery schedule.  "MSJ" Ex. 5, App. 68-80. By e-mail of April 3, 2018, Kingston's counsel requested additional time to gather and produce documents: "With respect to the discovery, we did receive your requests [sent via email on March 16] and we are collecting responsive documents from our client.  Can we get a 30-day extension to respond to the requests and to produce

documents – we will not have the documents ready by April 16." "MSJ" Ex. 1, App. 7-8. That same day, North Star responded: "Regarding our **document requests**, we are agreeable to an extension until (and including) May 16, 2018, to respond to **those document requests** and to **produce responsive documents**." "MSJ" Ex. 1, App. 7. (emphasis added). North Star did not agree to other extensions, as none were specifically requested. Regardless, any question of an April 15 deadline versus an April 30 deadline versus a May 16 deadline is moot, since Kingston did not respond to North Star's Requests for Admission by any of those dates or for months thereafter. "MSJ" Ex. 8, App. 110, 133-34. Again, Kingston did not object to, or seek protection from, Plaintiff's requests. Further, Kingston never suggested, and the Parties never discussed, the possibility that Kingston's discovery responses were contingent upon the outcome of its Motion to Dismiss. "MSJ," Skeel Dec., ¶ 12.

### 6.    The Scheduling Conference

On April 30, 2018 (i.e., 45 days after North Star served its discovery Requests), the Parties' respective lead counsel, along with Plaintiff's local counsel, appeared before Judge Carter for the Scheduling Conference.

Judge Carter proceeded to set various deadlines, including:

- June 30, 2018: deadline for motions to amend pleadings;
- January 7, 2019 (approximately 8 months after the Scheduling Conference and less than 4 months from today): deadline for fact and expert discovery;
- July 23, 2019: trial.

*See* Scheduling Order. Dkt. 35.

At the April 30, 2018, Scheduling Conference, and even though Kingston's responses to the Requests for Admission were due that day, **Kingston:**

- ***never* raised the issue of its pending Motion to Dismiss – even though the hearing on Kingston's motion was set for the very next day before Magistrate Judge McCormick;**

- ***never* suggested that the discovery deadlines, or any other deadlines, should be delayed, postponed, or stayed until its Motion to Dismiss had been resolved;**

- ***never* filed a motion for protection; and**

- ***never* filed a motion to modify the Scheduling Order.**

To the contrary, Kingston simply accepted the Court's ruling.

### 7.   North Star Reminds Kingston of its Discovery Obligations

On the very next day, May 1, 2018, the Parties appeared before Magistrate Judge McCormick for Kingston's Motion to Dismiss. Judge McCormick held a 20-minute hearing. At the very beginning, he indicated his preliminary ruling – namely, that the motion was likely to be granted, with leave to amend. But he clarified that any such ruling would merely be "a recommendation to Judge Carter." "MSJ" Ex. 6, App. 86 at 5:1-5; *see also* "MSJ" Ex. 6, App. 101 at 20:3-9 ("I'll take a couple of days to [draft my] findings and recommendation.").

At the hearing, Judge McCormick permitted both sides ample opportunity to raise all issues they deemed relevant. North Star specifically stated: "[A]t Judge Carter's urging and encouragement we got started on the discovery process already. We served … interrogator[ies] on the defendants. And we expect to be getting their invalidity positions here shortly … if we haven't already received them within the last day or so." "MSJ" Ex. 6, App. 89 at 8:7-12. **Kingston did not protest or dispute North Star's statement. Further, Kingston did not (1) object to Plaintiff's discovery requests; (2) suggest that the discovery deadlines, or any other deadlines, should be delayed, postponed, or stayed until its Motion to Dismiss had been fully resolved; or (3) file a motion for protection.** *See generally* "MSJ" Ex. 6, App. 82-104.

On May 7, 2018, Judge McCormick issued his "Findings and Recommendations," recommending that Kingston's motion be granted in part and denied in part, recommending that the Complaint be dismissed with leave to amend, and inviting the Parties to file objections within 14 days. Dkt. 38 ("Recommendation"), citing Fed. R. Civ. P. 72(b)(2). As a matter of law, the Recommendation did *not*: (a)

serve to "dismiss" Plaintiff's Complaint; (b) alter the discovery deadlines established by the Federal Rules of Civil Procedure or by this Court's orders; (c) relieve the parties of their discovery obligations; or (d) serve to modify the Court's Scheduling Order. *See, e.g., Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B) (setting forth the power and authority of magistrate judges and clarifying that their rulings on dispositive motions are simply non-binding "recommendations," subject to de novo review); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015) (same); see also *Flowers v. Lawrence*, 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016) (without consent, magistrate judge handling a motion to dismiss can do no more than "recommend" dismissal of a complaint); *Zavala v. Deutsche Bank Tr. Co. Ams.*, 2013 U.S. Dist. LEXIS 77664, at *203-05 (N.D. Cal. May 29, 2013) (regarding a "dispositive matter … the magistrate can only … make recommendations to the federal trial judge").

On May 21, 2018, North Star filed timely and specific objections to the Recommendation. Dkt. 40. On June 25, 2018, this Court accepted Magistrate Judge McCormick's Recommendation, granting leave to amend. Dkt. 44. And on July 9, 2018, North Star timely amended its Complaint. Dkt. 45.

Meanwhile, in the months after North Star served its Discovery Requests, North Star raised the issue of Kingston's non-compliance on numerous occasions. For example, by emails of June 15 and 18 (*see* "MSJ" Ex. 7, App. 106-07), and in a spirited phone call on or about July 2, 2018, Plaintiff inquired about the status of Kingston's discovery requests. Skeels Dec., ¶ 13. Kingston refused to produce documents or to otherwise respond to North Star's discovery requests in accordance with applicable deadlines and orders, insisting that it had no obligation to do so.

8. **Kingston Finally Responds to North Star's Discovery Requests, But its Responses are Deficient**

On July 12, 2018 – almost four months after North Star's Requests were served and almost three months after Kingston's responses were due, North Star finally

received Kingston's *Objections and Responses to Plaintiff's Combined Discovery Requests to Defendant* ("Objections and Responses"). "MSJ" Ex. 8, App. 110-84. In other words, Kingston responded 118 days after the requests were served. By that time, the requests had already been admitted and conclusively established. *See* Fed. R. Civ. P. 36(a)(3) and 36(b); *see also* 35 U.S.C. § 271(a).

The Responses were replete with boilerplate (and, in some instances, inapplicable or non-sensical) objections and provided almost no substantive or responsive information. *See, e.g.*, "MSJ" Ex. 8, App. 118-23 (refusing to provide invalidity contentions and relying on the lack of a claim construction ruling, even though this Court expressly declined to incorporate a claim construction schedule or to schedule a *Markman* hearing); *see also* "MSJ" Ex. 8, App. 127-28 (refusing to produce relevant technical documents and objecting to Plaintiff's reference to "Accused Products" – even though Judge McCormick had already ruled, and Judge Carter agreed, that Plaintiff's Complaint had sufficiently identified the Accused Products). Of course, any objections to the interrogatories had already been waived. Fed. R. Civ. P. 33(b)(4). And Kingston's objections to the document requests were likewise waived. See Fed. R. Civ. P. 34(b)(2); *see also Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 303-04 (D. Kan. 1996) ("the proposition that failure to answer or object in a timely manner constitutes waiver of the right to object" applies equally "to requests for production and interrogatories"); *Smith v. Tex. San Marcos Treatment Ctr.*, LP, No. 3:09-CV-00141-TMB, 2010 U.S. Dist. LEXIS 148233, at *7-12 (D. Alaska Jan. 29, 2010) (same), citing *Pulsecard*; *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496 (D. Kan. 1998) (same), citing *Pulsecard*. Kingston did not produce any documents at that time.

By detailed letter of July 26, 2018, North Star threatened to file a motion to compel and, to satisfy its meet-and-confer obligations, set forth some of the legal bases for its complaints – in compliance with L.R. 37-1 through 37-4. (North Star is still trying to determine the best and most efficient way to proceed in this regard.)

Finally, on Friday evening, August 10, 2018 – nearly five months after receiving

1    North Star's Discovery Requests – Kingston produced documents. North Star was not

2    able to download and start reviewing those documents until Monday, August 13, 2018

3    – i.e., the day before Plaintiff's counsel was scheduled to fly to California for court-

4    ordered mediation. Skeels Dec., ¶ 13. Kingston did not provide its invalidity contentions

5    and still has not done so to this day.

6        **C.    APPLICABLE LAW**

7            1.    **Requests for Admission**

8        Federal Rule of Civil Procedure 36(a)(1) states, in relevant part: "A party may

9    serve on any other party a written request to admit … the truth of any matters within

10   the scope of Rule 26(b)(1) relating to … facts, the application of law to fact, or opinions

11   about either." Federal Rule of Civil Procedure 36(a)(3) states, in relevant part: "*Time to*

12   *Respond; Effect of Not Responding*. A matter is admitted unless, within 30 days after

13   being served, the party to whom the request is directed serves on the requesting party a

14   written answer or objection addressed to the matter and signed by the party or its

15   attorney." Federal Rule of Civil Procedure 36(b) states, in relevant part: "A matter

16   admitted under this rule is conclusively established unless the court, on motion, permits

17   withdrawal or amendment of the admission."

18       A summary judgment motion can be based upon deemed admissions. *Garavito*

19   *v. JP Morgan Chase Bank Nat'l Ass'n*, No. SACV 12-1885-DOC (MLGx), 2014 U.S.

20   Dist. LEXIS 189822, at *7-11, 13 (C.D. Cal. Feb. 20, 2014); *see also Conlon v. U.S.*,

21   474 F.3d 616, 621 (9th Cir. 2007) (unanswered requests for admissions may be relied

22   on as basis for granting summary judgment); *U.S. v. Ramirez*, 698 F. App'x 332, 332

23   (9th Cir. 2017) (affirming Judge Carter's grant of summary judgment, which relied on

24   deemed admissions). Once a matter has been deemed admitted under Rule 36, the court

25   may not consider evidence that is inconsistent with the admission. *Garavito*, 2014 U.S.

26   Dist. LEXIS 189822, at *8. Rule 36(a)(3) is self-executing, and the Court cannot ignore

27   the admissions in considering a party's motions for summary judgment unless it first

28   grants a motion to waive or amend. *Id.* With respect to motions to withdraw admissions,

1   Rule 36(b) is permissive, not mandatory. *Conlon*, 474 F.3d at 621.

2            2.    **Prejudice**

3         If Kingston is permitted to withdraw its admissions, North Star will suffer various

4   forms of prejudice. For example, Plaintiff has relied on the admissions for more than

5   four months, and there are only four months remaining until the close of discovery.

6   Further, Plaintiff's counsel will be extremely busy during the Fall, because of an

7   October 15, 2018 trial date in one case, and September, October, November 2018 and

8   January 2019 deadlines in another case. Further, Plaintiff's time at mediation will have

9   been a waste of time. Further, Plaintiff has used its one summary judgment motion and

10  may not be permitted to file another.

11        If the Court is inclined to grant Kingston's motion, then Plaintiff certainly will

12  request that various deadlines be amended, including the deadline by which to amend

13  pleadings and the close of discovery.

14        Plaintiff reserves all rights and anticipates that it will further address this issue in

15  its supplemental memorandum.

16        **D.    ARGUMENT**

17        The above chronology is provided to put Kingston's failures in context, to

18  demonstrate that Kingston had ample opportunity and reminders of its obligations, and

19  to show that Kingston had no legal basis whatsoever to ignore the Discovery Requests.

20  But the dispositive and uncontroverted facts may be boiled down to the following: North

21  Star served its Requests for Admission on March 16, 2018. North Star served the

22  Requests again, via certified mail, on March 28, 2018. Kingston did not answer or object

23  within 30 days of either date. Thus, the matters raised in those Requests were admitted

24  and conclusively established. See Fed. R. Civ. P. 36(a)(3) and 36(b).

25        Specifically, with respect to Kingston's 4Gb DDR3L SDRAM memory product,

26  Part No. D5128EETBPGGBU, there is no genuine dispute as to any material fact

27  regarding Kingston's infringement of U.S. Patent Nos. 5,943,274 (Claim 1), 6,127,875

28  (Claim 1), 6,917,555 (Claim 15), and 6,101,145 (Claims 1 and 6). Kingston has

1   admitted that the specified product infringes each of the Asserted Claims and that

2   Kingston has sold such product within the United States on at least one occasion since

3   October 19, 2011. "MSJ" Ex. 3, App. 50. Accordingly, North Star moved for partial

4   summary judgment regarding Kingston's infringement of the Asserted Claims, citing

5   Fed. R. Civ. P. 56(a), *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and 35 U.S.C.

6   § 271(a).

7   **VI.   KINGSTON'S CONCLUSION**

8       Although Kingston does not believe that it was obligated to respond to Plaintiff's

9   Requests for Admission once the Court indicated that it would dismiss the operative

10  Complaint, and until Plaintiff actually filed a properly pleaded complaint for patent

11  infringement—especially where all the Requests for Admission only seek admissions

12  of liability—if the Court believes otherwise, Kingston respectfully requests that it be

13  allowed to withdraw and amend its Responses to its RFAs to conform with its July 12

14  discovery responses.  This would allow the case to be addressed on its merits, and would

15  not prejudice Plaintiff in the slightest.

16  **VII.  NORTH STAR'S CONCLUSION**

17      Based on the facts, law, and arguments set forth above, the Court should deny

18  Kingston's motion. Even though North Star (a) served its Discovery Requests almost

19  six months ago – on March 16, 2018; (b) expressly flagged the issue at a hearing on

20  May 1, 2018 (i.e., more than four months ago); and (c) has been reminding Kingston

21  about its discovery obligations since at least the first half of June, Kingston is just now

22  filing its motion to withdraw the admissions. In the meantime, valuable months of

23  discovery have passed. Kingston has now admitted infringement, and so the Parties

24  should be able to move forward by using the limited amount of time before discovery

25  closes to focus on the remaining disputed issues.

26      Also, at the appropriate time, the Court should consider whether Kingston's

27  discovery shortcomings should render this case "exceptional." See 35 U.S.C. § 285.

28  Finally, the Court should grant such other and further relief as may be appropriate.

As to any proposed resolution, Plaintiff has proposed and continues to propose that the admissions should remain "admitted" and that the Parties continue to litigate the remaining disputed issues. Alternatively, if the Court grants this motion, the parties should be ordered to confer in good faith regarding appropriate amendments to the Scheduling Order.

Dated: September 11, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: _/s/ Christopher Kao_
Christopher Kao
Brock S. Weber

Attorneys for Defendant
KINGSTON TECHNOLOGY COMPANY, INC.

Dated: September 11, 2018

WHITAKER CHALK SWINDLE & SCHWARTZ PLLC

By: _/s/ David A. Skeels_
David A. Skeels

Attorneys for Plaintiff
NORTH STAR INNOVATIONS INC.

I attest that Plaintiff's counsel David A. Skeels concurs in this filing's content and has authorized the filing.

Dated: September 11, 2018

By: _/s/ Christopher Kao_
Christopher Kao

Attorneys for Defendant
KINGSTON TECHNOLOGY COMPANY, INC.

# EXHIBIT 1

RYAN E. HATCH (SBN 235577)
LAW OFFICE OF RYAN E. HATCH, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Work: 310-279-5076
Mobile: 310-435-6374
Fax: 310-693-5328
ryan@ryanehatch.com

DAVID A. SKEELS (to be admitted *pro hac vice*)
ENRIQUE SANCHEZ, JR. (to be admitted *pro hac vice* )
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0573
Facsimile: (817) 878-0501
Email: dskeels@whitakerchalk.com

*Attorneys for Plaintiff*
*NORTH STAR INNOVATIONS INC.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., | CASE NO. 8:17-cv-1833 |
| Plaintiff, | |
| vs. | JURY TRIAL DEMANDED |
| KINGSTON TECHNOLOGY COMPANY, INC., | |
| Defendant. | |

Plaintiff North Star Innovations Inc. ("Plaintiff" or "North Star"), by and through its attorneys, files this Original Complaint for Patent Infringement against Defendant Kingston Technology Company, Inc. ("Kingston"), and alleges as follows:

## PARTIES

1.     Plaintiff North Star is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 600 Anton Blvd., Costa Mesa, California 92626. Plaintiff is the owner of seminal patents in the fields

1

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

1    of integrated circuits, semiconductor memory architecture, and semiconductor

2    memory devices, including patents that address volatile memory, such as DRAM and

3    SRAM. Plaintiff's portfolio includes patents that teach valuable innovations and

4    improvements related to speed, power consumption, density, reliability, and cost.

5    Plaintiff is and has been actively engaged in licensing efforts with respect to such

6    technologies.

7         2.    Defendant Kingston is a corporation organized and existing under the

8    laws of the State of Delaware, with a principal place of business at 17600 Newhope

9    Street, Fountain Valley, CA 92708. Defendant may be served with process by serving

10   it registered agent for service of process, Calvin Leong, 17600 Newhope Street,

11   Fountain Valley, CA 92708.

12        3.    According to its website, "Kingston has grown to be the world's largest

13   independent manufacturer of memory products." Kingston is a Forbes 50 company

14   that has been around for more than thirty years and generated worldwide revenues in

15   excess of $6.6B last year. With respect to third party suppliers of DRAM modules,

16   Kingston commands nearly 65% of the worldwide market.

17

18                    **JURISDICTION AND VENUE**

19        3.    This action arises under the patent laws of the United States, 35 U.S.C.

20   § 1 *et seq.*, including §§ 271, 281, 282, 283, 284, and 285.   This Court has subject

21   matter jurisdiction over this patent infringement action pursuant to 28 U.S.C.  §§

22   1331, and 1338(a).

23        4.    This Court has personal jurisdiction over Kingston. Upon information

24   and belief, Defendant has regularly conducted and continues to conduct business in

25   the U.S., in the State of California, and in this judicial district. On information and

26   belief, Defendant has committed infringing activities in California and in this judicial

27   district by making, using, offering for sale, and/or selling in the U.S. and/or importing

28

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd. Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

1    into the U.S. products and systems that infringe the Patents-In-Suit (as defined below)

2    or by placing such infringing products and systems into the stream of commerce with

3    the awareness, knowledge, and intent that they would be used, offered for sale, or sold

4    by others in this judicial district and/or purchased by consumers in this judicial district.

5    This Court's exercise of personal jurisdiction over Defendant would comport with

6    due process.

7          5.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

8

9    ## THE PATENTS-IN-SUIT

10         6.     On August 24, 1999, U.S. Patent No. 5,943,274 ("the '274 Patent") –

11   entitled "Method and Apparatus For Amplifying a Signal to Produce A Latched

12   Digital Signal" – was lawfully and properly issued by the United States Patent and

13   Trademark Office ("USPTO"), after a full and fair examination. The named inventors

14   on the '274 Patent are Alan S. Roth and Scott G. Nogle, both of Austin, Texas. A true

15   and correct copy of the '274 Patent is attached hereto as <u>Exhibit A</u> and incorporated

16   by reference.

17         7.     Generally speaking, the '274 Patent teaches, among other things, an

18   improved circuit design for the output stage of a memory device, such as SDRAM,

19   and an improved circuit design for a differential amplifier that provides a more

20   reliable timing mechanism and thereby facilitates the use of a clock-free latch.

21         8.     On October 3, 2000, U.S. Patent No. 6,127,875 ("the '875 Patent") –

22   entitled "Complimentary Double Pumping Voltage Boost Converter" – was lawfully

23   and properly issued by the USPTO, after a full and fair examination. The named

24   inventors on the '875 Patent are Steven Peter Allen, Ahmad H. Atriss, Gerald Lee

25   Walcott, and Walter C. Seelbach, all of Arizona. A true and correct copy of the '875

26   Patent is attached hereto as <u>Exhibit B</u> and incorporated by reference.

27

28

ORIGINAL COMPLAINT

9. Generally speaking, the '875 Patent teaches, among other things, an efficient and compact voltage boosting circuit that boosts the available supply voltage and limits output distortion.

10. On July 12, 2005, U.S. Patent No. 6,917,555 ("the '555 Patent") – entitled "Integrated Circuit Power Management for Reducing Leakage Current in Circuit Arrays and Method Therefor" – was lawfully and properly issued by the USPTO, after a full and fair examination. The named inventors on the '555 Patent are Ryan D. Bedwell, Christopher K.Y. Chun, Qadeer A. Qureshi, and John J. Vaglica, all of Texas. A true and correct copy of the '555 Patent is attached hereto as Exhibit C and incorporated by reference.

11. Generally speaking, the '555 Patent teaches, among other things, a novel design for an integrated circuit with power management capabilities, where, in certain embodiments, multiple, independent power planes are used to eliminate or reduce leakage current.

12. On August 8, 2000, U.S. Patent No. 6,101,145 ("the '145 Patent") – entitled "Sensing Circuit and Method" – was lawfully and properly issued by the USPTO, after a full and fair examination. The named inventor on the '145 Patent James W. Nicholes of Gilbert, Arizona. A true and correct copy of the '145 Patent is attached hereto as Exhibit D and incorporated by reference.

13. Generally speaking, the '145 Patent teaches, among other things, a novel data sensing circuit that, in certain embodiments, utilizes a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and which, in certain embodiments, utilizes a novel feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation.

14. The '274 Patent, the '875 Patent, the '555 Patent, and the '145 Patent may be referred to individually as a "Patent-in-Suit" or collectively as the "Patents-in-Suit."

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd. Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

4

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

15.     By way of assignment, Plaintiff is the owner of all right, title, and interest in and to the Patents-in-Suit, including the rights to prosecute this action and to collect and receive damages for all past, present, and future infringements.

## COUNT ONE: INFRINGEMENT OF THE '274 PATENT

16.     Plaintiff incorporates the above allegations as if set forth here in full.

17.     The '274 Patent is valid and enforceable.

18.     Defendant does not have a license to practice the patented inventions of the '274 Patent.

19.     Kingston has infringed and is currently infringing the '274 Patent by, among other things, making, using, offering for sale, and/or selling within this judicial district and elsewhere in the United States and/or importing into this judicial district and into the United States – without license or authority – products, devices, or systems falling within the scope of one or more claims of the '274 Patent, in violation of at least 35 U.S.C. § 271(a).

20.     For example, Kingston's 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU ("4Gb DDR3L") directly infringes at least Claim 1 of the '274 Patent. Similarly, all Kingston products in the DDR3 or DDR3L families (regardless of density) or a substantially similar variation thereof, including but not limited to the 8GB DDR3L SODIMM (Part#: KVR16LS11/8) and all other Kingston DDR3 or DDR3L families of products (collectively, the "Accused Product"), directly infringe at least Claim 1 of the '274 Patent.

21.     More specifically, the Accused Product infringes at least that claim because it meets each and every limitation of that claim. For example, the Accused Product is a memory device that includes circuitry that is properly characterized as: "an apparatus for use as an output stage of a memory device, the apparatus

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

comprising:[1] a timing circuit; a differential amplifier responsive to the timing circuit; an impedance control circuit; a level converter responsive to the differential amplifier and the impedance control circuit; and a clock-free latch responsive to the level converter." Thus, the Accused Product (a memory device) satisfies all of the recited structural limitations such that the memory device includes an output stage that incorporates an improved circuit design for a differential amplifier, which provides a more reliable timing mechanism and thereby facilitates the use of a clock-free latch. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations, and it necessarily operates in a way that utilizes a more reliable timing mechanism and thereby facilitates the use of a clock-free latch.

22.     Reverse-engineered schematics of the Accused Product show an apparatus for use as an output stage of a memory device. For example:



---

[1] Plaintiff does not hereby suggest or concede that the preamble of this or any other asserted claim of any Patent-in-Suit constitutes a substantive limitation. That issue is expressly reserved for the claim construction stage.

6

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

23.     The reverse-engineered schematics of the Accused Product also show a clock-free latch. For example:



24.     On information and belief, additional products of Kingston are believed to infringe one or more claims of the '274 Patent, because, for example, they include components, such as memory devices and/or controllers, that include the same or substantially the same circuitry. Plaintiff expressly reserves the right to assert additional patents and additional claims and to identify additional infringing products, in accordance with the Federal Rules of Civil Procedure, the Court's scheduling order, and the Court's local rules.

25.     Plaintiff has been damaged by Kingston's infringing conduct and will continue to be damaged unless Kingston is enjoined from further infringement. Accordingly, upon finding for Plaintiff, the Court should award to Plaintiff damages adequate to compensate for the infringement, in an amount to be determined at trial but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the Court. Further, upon judgment in favor of Plaintiff, the Court should permanently enjoin Defendant from committing the infringing acts.

26.     These factual assertions are made to satisfy the pleadings standards of Fed. R. Civ. P. 8(a), as applied and interpreted by *Twombly*, *Iqbal*, and their progeny, which does not require the level of detail provided here. In accordance with Fed. R. Civ. P. 11, Plaintiff states, without waiving any applicable privileges or protections,

that such assertions are based upon Plaintiff's pre-suit investigation and due diligence, in reliance on publicly available information, documents, and products and analysis derived therefrom. Plaintiff will provide infringement contentions in accordance with this Court's local rules and will supplement those contentions when Defendant provides the technical documentation required by the Court's local patent rules and as may be requested or subpoenaed in discovery requests made pursuant to the Federal Rules of Civil Procedure.

## COUNT TWO: INFRINGEMENT OF THE '875 PATENT

27.     Plaintiff incorporates the above allegations as if set forth here in full.

28.     The '875 Patent is valid and enforceable.

29.     Defendant does not have a license to practice the patented inventions of the '875 Patent.

30.     Defendant has infringed and is currently infringing the '875 Patent by, among other things, making, using, offering for sale, and/or selling within this judicial district and elsewhere in the United States and/or importing into this judicial district and into the United States – without license or authority – products, devices, and/or systems falling within the scope of one or more claims of the '875 Patent, in violation of at least 35 U.S.C. § 271(a). For example, the Accused Product directly infringes at least Claim 1 of the '875 Patent.

31.     More specifically, the Accused Product infringes at least Claim 1 because it meets each and every limitation of Claim 1. For example, the Accused Product includes, among other things, a boost circuit that includes "a first switch coupled between the input terminal and the output terminal and operated by a first phase signal; a second switch coupled between the input terminal and the output terminal and operated by a second phase signal that is opposite to the first phase signal; a first capacitor having a first terminal coupled to the output terminal and a

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

second terminal coupled for receiving a boost signal; and a second capacitor having a first terminal coupled to the output terminal and a second terminal coupled for receiving the boost signal." Thus, the Accused Product includes an efficient and compact voltage boosting circuit that boosts the available supply voltage and limits output distortion. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations and necessarily operates in a way that utilizes a boosting circuit to boost the available supply voltage and to limit output distortion.

32.     Reverse-engineered schematics of the Accused Product show a boost circuit. For example:



33.     On information and belief, additional, similar models of Kingston's memory products are believed to infringe one or more claims of the '875 Patent. Plaintiff expressly reserves the right to assert additional claims and to identify additional infringing products in accordance with the Federal Rules of Civil Procedure, the Court's scheduling order, and the Court's local rules.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd. Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

34.    Plaintiff has been damaged by Defendant's infringing conduct and will continue to be damaged unless Defendant is enjoined from further infringement. Accordingly, upon finding for Plaintiff, the Court should award to Plaintiff damages adequate to compensate for the infringement, in an amount to be determined at trial but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the Court. Further, upon judgment in favor of Plaintiff, the Court should permanently enjoin Defendant from committing the infringing acts.

35.    These factual assertions are made to satisfy the pleadings standards of Fed. R. Civ. P. 8(a), as applied and interpreted by *Twombly*, *Iqbal*, and their progeny, which does not require the level of detail provided here. In accordance with Fed. R. Civ. P. 11, Plaintiff states, without waiving any applicable privileges or protections, that such assertions are based upon Plaintiff's pre-suit investigation and due diligence, in reliance on publicly available information, documents, and products and analysis derived therefrom. Plaintiff will provide infringement contentions in accordance with this Court's local rules and will supplement those contentions when Defendant provides the technical documentation required by the Court's local patent rules and as may be requested or subpoenaed in discovery requests made pursuant to the Federal Rules of Civil Procedure.

## COUNT THREE: INFRINGEMENT OF THE '555 PATENT

36.    Plaintiff incorporates the above allegations as if set forth here in full.

37.    The '555 Patent is valid and enforceable.

38.    Defendant does not have a license to practice the patented inventions of the '555 Patent.

39.    Defendant has infringed and is currently infringing the '555 Patent by, among other things, making, using, offering for sale, and/or selling within this judicial

10

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

district and elsewhere in the United States and/or importing into this judicial district and into the United States – without license or authority – products, devices, and/or systems falling within the scope of one or more claims of the '555 Patent, in violation of at least 35 U.S.C. § 271(a). For example, the Accused Product directly infringes at least Claim 15 of the '555 Patent.

40.    More specifically, the Accused Product infringes at least Claim 15 because it meets each and every limitation of Claim 15. For example, the above-referenced accused product is: "An integrated circuit having power management comprising: processing circuitry for executing instructions; a plurality of memory bit cells contained within a memory array, the plurality of memory bit cells being coupled to a power supply terminal for creating a first power plane; memory array peripheral circuitry that is peripheral to the plurality of memory bit cells, the memory array peripheral circuitry being selectively coupled to the power supply terminal for creating a second power plane that is independent of the first power plane; and control circuitry coupled to the memory array peripheral circuitry that is peripheral to the plurality of memory bit cells, the control circuitry selectively removing electrical connectivity to the power supply terminal of the memory array peripheral circuitry that is peripheral to the plurality of memory bit cells." Thus, the Accused Product includes power management capabilities whereby multiple, independent power planes are used to eliminate or reduce leakage current. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations and necessarily operates in a way that utilizes multiple, independent power planes to eliminate or reduce leakage current.

ORIGINAL COMPLAINT

41.     Standard-related documents to which the Accused Product conforms show power management for an integrated circuit. For example:

Source: JEDEC Standard DDR3 SDRAM, No. 79-3C November 2008 – P.82



Figure 62 — Active Power-Down Entry and Exit Timing Diagram

42.     The reverse-engineered schematics of the Accused Product also show control circuitry that can selectively remove electrical connectivity to the power supply terminal. For example:

43.     On information and belief, additional, similar models of Kingston's memory products are believed to infringe one or more claims of the '555 Patent. Plaintiff expressly reserves the right to assert additional claims and to identify additional infringing products in accordance with the Federal Rules of Civil Procedure, the Court's scheduling order, and the Court's local rules.

44.     Plaintiff has been damaged by Defendant's infringing conduct and will continue to be damaged unless Defendant is enjoined from further infringement. Accordingly, upon finding for Plaintiff, the Court should award to Plaintiff damages adequate to compensate for the infringement, in an amount to be determined at trial but in no event less than a reasonable royalty for the use made of tinvention by the

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

infringer, together with interest and costs as fixed by the Court. Further, upon judgment in favor of Plaintiff, the Court should permanently enjoin Defendant from committing the infringing acts.

45.     These factual assertions are made to satisfy the pleadings standards of Fed. R. Civ. P. 8(a), as applied and interpreted by *Twombly*, *Iqbal*, and their progeny, which does not require the level of detail provided here. In accordance with Fed. R. Civ. P. 11, Plaintiff states, without waiving any applicable privileges or protections, that such assertions are based upon Plaintiff's pre-suit investigation and due diligence, in reliance on publicly available information, documents, and products and analysis derived therefrom. Plaintiff will provide infringement contentions in accordance with this Court's local rules and will supplement those contentions when Defendant provides the technical documentation required by the Court's local patent rules and as may be requested or subpoenaed in discovery requests made pursuant to the Federal Rules of Civil Procedure.

## COUNT FOUR: INFRINGEMENT OF THE '145 PATENT

46.     Plaintiff incorporates the above allegations as if set forth here in full.

47.     The '145 Patent is valid and enforceable.

48.     Defendant does not have a license to practice the patented inventions of the '145 Patent.

49.     Defendant has infringed and is currently infringing the '145 Patent by, among other things, making, using, offering for sale, and/or selling within this judicial district and elsewhere in the United States and/or importing into this judicial district and into the United States – without license or authority – products, devices, and/or systems falling within the scope of one or more claims of the '145 Patent, in violation of at least 35 U.S.C. § 271(a). For example, the Accused Product directly infringes at least Claims 1 and 6 of the '145 Patent.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd. Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

13

50.      More specifically, the Accused Product infringes at least Claims 1 and 6 because it meets each and every limitation of those claims. For example, with reference to Claim 1, the Accused Product includes: "A sensing circuit for sensing data from a memory array and providing the sensed data to an output data bus, the circuit comprising: a sense amplifier coupled to the memory array; a data storage device coupled between the sense amplifier and the output data bus; and a data feedback circuit having an input terminal coupled to the output data bus and an output terminal coupled to the data storage device." Thus, the Accused Product includes a data sensing circuit that utilizes (a) a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and (b) a feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations and necessarily operates in a way that utilizes (a) a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and (b) a feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation.

ORIGINAL COMPLAINT

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

51.    Reverse-engineered schematics of the Accused Product show a sensing circuit for sensing data from a memory array. For example:



52.    On information and belief, additional, similar models of Kingston's memory products are believed to infringe one or more claims of the '145 Patent. Plaintiff expressly reserves the right to assert additional claims and to identify additional infringing products in accordance with the Federal Rules of Civil Procedure, the Court's scheduling order, and the Court's local rules.

53.    Plaintiff has been damaged by Defendant's infringing conduct and will continue to be damaged unless Defendant is enjoined from further infringement. Accordingly, upon finding for Plaintiff, the Court should award to Plaintiff damages adequate to compensate for the infringement, in an amount to be determined at trial but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the Court. Further, upon judgment in favor of Plaintiff, the Court should permanently enjoin Defendant from committing the infringing acts.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

## DEMAND FOR JURY TRIAL

54.     Plaintiff hereby demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for entry of judgment as follows:

1.     That Defendant has directly infringed one or more claims of each of the Patents-In-Suit;

2.     That Defendant be ordered to provide an accounting;

3.     That Plaintiff is entitled to, and should recover, all damages to which Plaintiff is entitled under 35 U.S.C. § 284, but in no event less than a reasonable royalty;

4.     That Plaintiff, as the prevailing party, shall recover from Defendant all taxable costs of court;

5.     That Plaintiff shall recover from Defendant all pre- and post-judgment interest on the damages award, calculated at the highest interest rates allowed by law;

6.     That Plaintiff is entitled to enhanced damages of up to three times the amount found by the jury or ordered by the Court, pursuant to 35 U.S.C. § 284;

7.     That this case is exceptional and that Plaintiff shall therefore recover its attorney's fees and other recoverable expenses, under 35 U.S.C. § 285;

8.     That Defendant is permanently enjoined from further infringement of the Patents-in-Suit; and

9.     That Plaintiff shall recover from Defendant such other and further relief as the Court may deem appropriate.

16

Dated: October 19, 2017      */s/ Ryan E. Hatch*

RYAN E. HATCH (SBN 235577)
Law Office of Ryan E. Hatch, PC
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Telephone: (310) 279-5076
Facsimile: (310) 693-5328
Email: ryan@ryanehatch.com

DAVID A. SKEELS (to be admitted *pro hac vice*)
ENRIQUE SANCHEZ, JR. (to be admitted *pro hac vice*)
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0573
Facsimile: (817) 878-0501
Email: dskeels@whitakerchalk.com
Email: rsanchez@whitakerchalk.com

*Attorneys for Plaintiff*
*NORTH STAR INNOVATIONS INC.*

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

17

# EXHIBIT 2

Christopher Kao (SBN 237716)
  ckao@velaw.com
Brock S. Weber (SBN 261383)
  bweber@velaw.com
Abigail Lubow (SBN 314396)
  alubow@velaw.com
VINSON & ELKINS L.L.P.
555 Mission Street, Suite 2000
San Francisco, CA 94105
Tel.: 415.979.6900
Fax: 415.651.8786

Christine Yang (SBN 102048)
  chrisyang@sjclawpc.com
LAW OFFICE OF S.J. CHRISTINE YANG
17220 Newhope Street, Suite 101-102
Fountain Valley, CA 92708
Tel.: 714.641.4022 / Fax: 714.641.2082

*Attorneys for Defendant*
*Kingston Technology Company, Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., | Case No. 8:17-cv-01833-DOC (DFMx) |
| Plaintiff, | **DEFENDANT KINGSTON TECHNOLOGY COMPANY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(B)(6)** |
| vs. | |
| KINGSTON TECHNOLOGY COMPANY, INC., | |
| Defendant. | Date: February 5, 2018 |
| | Time: 8:30 a.m. |
| | Courtroom: 9D |
| | Judge: Honorable David O. Carter |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION.................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

INTRODUCTION .......................................................................................1

BACKGROUND .........................................................................................3

    A.    The Parties.........................................................................3

    B.    The Four Patents-in-Suit. ....................................................5

LEGAL STANDARD....................................................................................6

ARGUMENT ................................................................................................7

I.    Plaintiff's Claims for Direct Infringement of the Patents-in-Suit are Legally Deficient and Should be Dismissed. .......................................7

    A.    Alleged Direct Infringement of the '274 Patent ....................10

    B.    Alleged Direct Infringement of the '875 Patent ....................12

    C.    Alleged Direct Infringement of the '555 Patent ....................13

    D.    Alleged Direct Infringement of the '145 Patent ....................14

II.    Plaintiff's Identification of the Accused Products is Legally Deficient, as IS its Attempt to Reserve the Right to Accuse "Additional Products.".............16

CONCLUSION.............................................................................................18

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Apollo Finance, LLC v. Cisco Systems, Inc.*,
190 F. Supp. 3d 939 (C.D. Cal. 2016)..................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................1, 6, 7

*Atlas IP, LLC v. Exelon Corp.*,
189 F. Supp. 3d 768 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v.
Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017) ...............................9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ....................................................................6, 7

*Cont'l Circuits LLC v. Intel Corp.*,
No. CV16-2026 PHX DGC, 2017 WL 679116 (D. Ariz. Feb. 21, 2017) ..........16, 17

*e.Digital Corp. v. iBaby Labs, Inc.*,
No. 15-cv-5790, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) ....................7, 8, 18

*InCom Corp. v. The Walt Disney Co.*, *et al.*,
No. 2:15-cv-03011-PSG(MRWx), 2016 WL 4942032 (C.D. Cal. Feb. 4,
2016)........................................................................................9

*Jenkins v. LogicMark, LLC*,
No. 3:16-CV-751-HEH, 2017 WL 376154 (E.D. Va. Jan. 25, 2017) .................8, 10

*Macronix Int'l Co. v. Spansion, Inc.*,
4 F. Supp. 3d 797 (E.D. Va. 2014)......................................................8

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009), 550 U.S. at 555) ..........................................7

*North Star Innovations, Inc. v. Etron Tech. Am. Inc.*,
No. CV 8:16-00599, 2016 WL 9046909 (C.D. Cal. Sept. 21, 2016)................*passim*

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
No. CV 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017)..........*passim*

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.,* Case No. 8:16-cv-300-CJC
(RAOx), Dkt. No. 1 (C.D. Cal.) (Carney, J.) ............................................4

*Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 15-cv-152, 2016 WL 927143
(D. Del. Mar. 4, 2016)....................................................................9

*TeleSign Corp. v. Twilio, Inc.*, No. 16-cv-2106, 2016 WL 4703873 (C.D. Cal. Aug. 3, 2016)........................................................................................................*passim*

**<u>Rules</u>**

Fed. R. Civ. P. 8(a)(2)............................................................................................6

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 5, 2018 at 8:30 a.m., or as soon thereafter as this matter may be heard, Defendant Kingston Technology Company, Inc. ("Kingston") will and hereby respectfully moves to dismiss all infringement claims that Plaintiff North Star Innovations LLC asserts in its Complaint (Dkt. No. 7); namely, direct infringement of four patents-in-suit—U.S. Patent Nos. 5,943,274 ("the '274 Patent"), 6,127,875 ("the '875 Patent"), 6,917,555 ("the '555 Patent"), and 6,101,145 ("the '145 Patent"). The claims in Plaintiff's Complaint fail to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This Motion will be heard in the Courtroom of Judge David O. Carter for the United States District Court in the Central District of California. The Court is located at the Ronald Reagan Federal Building and United States Courthouse, Courtroom 9D, 411 West Fourth Street, Santa Ana, CA 92701-4516.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the pleadings on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 8, 2017.

Dated: December 15, 2017

VINSON & ELKINS L.L.P.

By: _____/s/ Christopher Kao_____
Christopher Kao

*Attorneys for Defendant*
*Kingston Technology Company, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant Kingston Technology Company, Inc. ("Kingston") respectfully moves this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing all claims asserted by Plaintiff North Star Innovations, Inc. ("North Star" or "Plaintiff") in its Complaint.  (Dkt. No. 7.)  Plaintiff's allegations in the Complaint fail to state any claim upon which relief can be granted.

Plaintiff's Complaint purports to assert claims for direct infringement of four patents that generally relate to semiconductor memory devices.  However, the Complaint includes only threadbare recitals of the legal elements for its claims.  The allegations against Kingston fail in numerous respects to comport with the legal requirements for patent infringement pleadings.

First, to adequately plead direct infringement, the Complaint cannot merely parrot the claim language while generally pointing to an accused product, as it does here.  Instead, the law requires sufficient factual allegations to support a plausible assertion that at least one accused product infringes each limitation of at least one claim.  This means that the Complaint must correlate each claim limitation to a specific product feature in a manner that is at least facially plausible.  The direct infringement allegations in Plaintiff's Complaint completely fail this standard.  The Complaint merely recites the language of one asserted claim for each patent-in-suit and pastes—seemingly at random—a few illegible images of an unidentified product without mapping the claim limitations to any actual features in the images.  Thus, the Court and Kingston must speculate as to what features, if any, Plaintiff may be pointing to for its allegations.  Plaintiff does not explain anywhere in the Complaint how Kingston allegedly infringes the patents-in-suit.  This is insufficient to state a plausible claim for direct infringement.

Second, because the Complaint fails to provide sufficient factual matter to state a claim to relief that is plausible on its face for infringement of even one single

product, it also fails to state a claim with respect to the full range of products that the Complaint purports to sweep in—"all . . . Kingston DDR3 or DDR3L families of products." (*See, e.g*., Complaint at ¶ 20.) Plaintiff does not identify which accused product is allegedly illustrative of its infringement claims, let alone show through facts, how that one example is representative of all of the other accused DDR3 or DDR3L products. Further, the Complaint attempts to "reserve[] the right . . . to identify additional infringing products . . . of Kingston" for each of the four patents-in-suit beyond the large and diverse group that the Complaint already claims to have covered. (Complaint at ¶¶ 24, 33, 43, 52.) A unilateral attempt to reserve the right to later assert a claim based on the hope of developing supporting facts implicitly concedes that a plausible claim for infringement as to these unidentified products does not exist, which cannot satisfy the Supreme Court's pleading requirements. Plaintiff's claims against any accused Kingston product should also be dismissed for this pleading deficiency.

Plaintiff North Star has a history of filing deficient infringement allegations on these same patents-in-suit, and those complaints have been dismissed on Rule 12(b)(6) motions on at least two prior occasions, including in this District. *North Star Innovations, Inc. v. Etron Tech. Am. Inc*., No. CV 8:16-00599, 2016 WL 9046909, at *4 (C.D. Cal. Sept. 21, 2016) (dismissing Plaintiff North Star's complaint because it did not "map [each] claim limitation onto [a] portion of the accused products" and "draw any parallels between the accused products and the claim elements" in a manner that permits Court to plausibly infer that each claim limitation is met); *North Star Innovations, Inc. v. Micron Tech., Inc*., No. CV 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) (Burke, M.J.) (recommending that Plaintiff North Star's complaint be dismissed because, on a limitation-by-limitation basis, "[t]here needs to be *some facts* alleged that articulate *why it is plausible* that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so.") (emphasis in original).

1  Accordingly, Kingston respectfully requests that this Court do the same here

2  and dismiss the Complaint in its entirety for failing to plead any of its claims with the

3  required plausibility.

4  ## BACKGROUND

5  **A.  The Parties.**

6  Plaintiff North Star filed its Complaint against Defendant Kingston on

7  October 19, 2017.  (Dkt. No. 1.)  A day later, Plaintiff filed a corrected Complaint to

8  apparently fix the placement of certain images.  (Dkt. No. 7, "Complaint.")  After

9  Plaintiff served Kingston on October 26, 2017, the parties stipulated to an extension of

10  time to respond to the Complaint until today's date (Dkt. No. 19).

11  Defendant Kingston is a leading provider of innovative computer memory

12  products.  Kingston makes and sells a wide variety of memory products, such as

13  Dynamic Random Access Memory ("DRAM") modules, for example, that are used in

14  desktop or laptop computers.  DRAM products are often referred to by the industry

15  standard version of their interface, *e.g.*, DDR, DDR2, DDR3, etc.  Kingston's

16  corporate headquarters is located in Fountain Valley, California.

17  Plaintiff North Star is a Delaware company with a purported office in Costa

18  Mesa, California.  (Complaint at ¶ 1.)  North Star's business is the enforcement and

19  licensing of patents (*see id.*), and it does not make or sell any product or service.  To

20  that end, North Star has brought a number of patent suits in this District beginning in

21  2016, and has settled all of them in relatively short order, including against Etron

22  Technology (Case No. 16-599), Elite Semiconductor (Case No. 16-600), Nanya

23  Technology (Case No. 16-1591), UMC Group (USA) and Cypress Semiconductor

24  (Case No. 16-1721), and Integrated Device Technology (Case No. 16-2055).

25  North Star is a wholly-owned subsidiary of Wi-LAN Technologies Inc., which

26  is in turn owned by Wi-LAN Inc.  (Dkt. No. 4.)  Wi-LAN is a well-known non-

27

28

1   practicing entity based in Canada that "exists solely to enforce [its] patents . . .

2   through licensing agreements and lawsuits[.]"[1]

3       This lawsuit is part of pattern of litigation against Kingston by Wi-LAN.

4   Another one of Wi-LAN's litigation subsidiaries, Polaris Innovations Limited (Polaris

5   is another name for the North Star), sued Kingston for patent infringement in this

6   District in February 2016. *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.,* Case

7   No. 8:16-cv-300-CJC (RAOx), Dkt. No. 1 (C.D. Cal.) (Carney, J.). Like North Star,

8   Polaris is a non-practicing entity created by Wi-LAN to engage in patent litigation in

9   the United States. In the *Polaris* case, Kingston discovered that one of its

10  competitors, Samsung, financed Wi-LAN's and Polaris' acquisition of the patents

11  asserted against Kingston and engaged in conspiratorial and anticompetitive conduct

12  toward the relevant computer memory markets and toward Kingston, among other

13  illegal activity. Thus, Kingston brought antitrust counterclaims against Wi-LAN /

14  Polaris and Samsung a year ago in December 2016. *Id.* at Dkt No. 113 (order granting

15  leave to amend Kingston's answer and counterclaims). After Kingston defeated

16  Samsung's motion to dismiss those counterclaims (*id.* at Dkt. No. 202), the Court

17  stayed the case in June 2017 pending *Inter Partes* Review (IPR) of each of the six

18  patents-in-suit. *Id.* at Dkt. No. 267.

19      Now that its *Polaris* case is stayed, Wi-LAN has chosen to continue its

20  litigation campaign against Kingston with Plaintiff North Star. In this case, it appears

21  that instead of Samsung, a company called NXP Semiconductors N.V. has an interest

22  in this suit. (Dkt. No. 4.) NXP Semiconductors acquired Freescale Semiconductor

23  Ltd. (a Motorola spin-off), which apparently entered into an agreement with North

24  Star regarding the four patents-in-suit. (*See id.*)

25

26  _____

27  [1] http://www.theglobeandmail.com/globe-investor/investment-ideas/patent-licensing-
    company-wi-lan-continues-to-underwhelm-investors/article25009709/ (last accessed
28  December 15, 2017).

**B.     The Four Patents-in-Suit.**

The four patents-in-suit asserted against Kingston in Plaintiff North Star's Complaint in this case are: U.S. Patent Nos. 5,943,274 ("the '274 Patent"), 6,127,875 ("the '875 Patent"), 6,917,555 ("the '555 Patent"), and 6,101,145 ("the '145 Patent"). (Complaint at ¶¶ 6-14, Counts One-Four.)  Without any explanation, the Complaint asserts that a broad and diverse "famil[y]" of memory products infringe each patent-in-suit: a specific Kingston SDRAM memory product, a specific Kingston DIMM memory product, and "all other Kingston DDR3 and DDR3L families of products." (*Id.* at ¶ 20.)

However, the Complaint fails to map claim limitations of any representative patent claim onto <u>any specific accused product</u>.  (*Id.* at ¶¶ 20-23 (allegations for the '274 Patent), ¶¶ 31-32 (allegations for the '875 Patent), ¶¶ 40-42 (allegations for the '555 Patent), and ¶¶ 50-51 (allegations for the '145 Patent).)  Instead, for its direct infringement allegations, the Complaint simply parrots the language of an exemplary claim for each patent and references a series of unannotated and illegible images, which are not explained at all.  (*Id.*)

In addition to failing to allege any facts showing how or why any specific accused product purportedly infringes the four patents-in-suit, the Complaint also does not identify which accused product it is using as supposedly representative of all the other accused products that the Complaint purports to cover.  (*Id.* at ¶ 20 (defining "Accused Product" to include "all other Kingston DDR3 or DDR3L families of products" in addition to the two specific Kingston products identified by part number).)  There is no discussion of any technical similarities that would be relevant to the asserted claims from the patents-in-suit, or any other facts to support the apparent conclusion that all of these disparate products function in the same way with respect to the patents-in-suit.

Moreover, the Complaint takes its vague and amorphous definition of the "Accused Product" one step further, by attempting to reserve the right to accuse yet

more unidentified "additional products" of Kingston.  (*Id.* at ¶¶ 24, 33, 43, 52.)  Here, again, the Complaint alleges no facts to support an inference that any additional Kingston products function similarly as the accused products or infringe the patents-in-suit.  (*Id.*)

Because the Plaintiff filed its Complaint with generic accusations against Kingston copied from its pleadings against others, with threadbare recitations of claim language and causes of action, and images reproduced without explanation, Kingston contacted Plaintiff to discuss these fundamental deficiencies on December 8, 2017.  Plaintiff declined to amend its Complaint to cure any of the problems that Kingston identified.

## LEGAL STANDARD

A complaint must plead factual grounds sufficient to "show[] that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under this rule, the Supreme Court has held that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Such facial plausibility exists only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Dismissal under Rule 12(b)(6) is thus required "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct[.]"  *Id.* at 679.  This requires the Court to apply "judicial experience and common sense."  *Id.*

Accordingly, when weighing a Rule 12(b)(6) motion to dismiss, only well-pleaded facts alleged in the complaint are to be considered, and "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not

entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Plaintiff's Complaint fails to meet the standards for a well-pleaded patent infringement suit. Each of the Complaint's infringement allegations amount to nothing more than a formulaic recitation of the required legal elements, and should be dismissed.

## I. PLAINTIFF'S CLAIMS FOR DIRECT INFRINGEMENT OF THE PATENTS-IN-SUIT ARE LEGALLY DEFICIENT AND SHOULD BE DISMISSED.

To plead direct infringement of each patent-in-suit under the pleading standards of *Twombly* and *Iqbal*, Plaintiff's Complaint "must include allegations sufficient to permit [the] court to infer that the accused product infringes each element of at least one claim." *TeleSign Corp. v. Twilio, Inc.*, No. 16-cv-2106, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016); *see also Scripps Research Ins. v. Illumina, Inc.*, No. 16-cv-661, 2016 WL 6834024, at *5 (S.D. Cal. Nov. 21, 2016) ("[T]o properly plead direct infringement under *Twombly* and *Iqbal*, a plaintiff must plausibly allege that a defendant directly infringes each limitation in at least one asserted claim."); *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-5790, 2016 WL 4427209, at *4 (N.D. Cal. Aug. 22, 2016) (ruling that a complaint must "plausibly allege that the accused products practice each of the limitations found in at least one asserted claim"). Accordingly, the Complaint must "map [each] claim limitation onto [a] portion of the accused products" and "draw any parallels between the accused products and the claim elements" in a manner that permits Court to plausibly infer that each claim limitation is met. *North Star Innovations, Inc. v. Etron Tech.*, 2016 WL 9046909, at

*4 (dismissing Plaintiff North Star's complaint); *see also North Star Innovations, Inc. v. Micron Tech.*, 2017 WL 5501489, at *2 (Burke, M.J.) (recommending that Plaintiff North Star's complaint be dismissed because "[t]here needs to be *some facts* alleged that articulate *why it is plausible* that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so.") (emphasis in original).

To meet the foregoing pleading requirements, the Complaint cannot merely "allege[] that each element of a cited claim is infringed and then parrot[] the claim language for each element." *Macronix Int'l Co. v. Spansion, Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014) (dismissing complaint); *see also Apollo Fin., LLC v. Cisco Sys., Inc.*, 190 F. Supp. 3d 939, 942 (C.D. Cal. 2016) (holding that, "with regard to [a] direct infringement claim, [a] court need not accept as true conclusory legal allegations cast in the form of factual allegations.") (citation omitted).

Courts, including in this District, have therefore dismissed complaints, such as Plaintiff's here, that fail to allege facts to make it plausible that an accused device meets each element of at least one patent claim. *See, e.g.*, *North Star Innovations v. Etron Tech.*, 2016 WL 9046909, at *4 (dismissing North Star's complaint that contained only "conclusory statement[s] that the referenced product . . . infringes because the referenced product allegedly includes the identified claim language" and did not "draw any parallels between the accused products and the claim elements and further fail[ed] to cite any supporting product documentation in its allegations"); *Jenkins v. LogicMark, LLC*, No. 3:16-CV-751-HEH, 2017 WL 376154, at *1, 3 (E.D. Va. Jan. 25, 2017) (complaint "fail[ed] to specify which features of [the accused products] correspond to the limitations of any claims in the identified patents," and "d[id] not identify with any particularity how each allegedly infringing feature of the accused products infringes any of the named patents") (emphasis omitted); *e.Digital Corp.*, 2016 WL 4427209, at *5 (plaintiff did not attempt to map a claim element onto the accused product, and "based on the Court's own independent review, it cannot

discern how the [complaint] could be said to plausibly allege [the missing] limitation"); *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775-76 (N.D. Ill. 2016) (dismissing complaint because "factual allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement"), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017); *Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 15-cv-152, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (finding complaint failed to state a claim for direct infringement after conducting a limitation-by-limitation analysis, comparing the asserted claim to the factual allegations in the complaint).

Here, Plaintiff's Complaint completely fails to meet the above standards to plead a claim for direct infringement of the four patents-in-suit. The Complaint does nothing more than identify exemplary accused products and an asserted claim for each patent-in-suit, without showing or explaining how any single one of the accused products actually include or implement the claim's limitations. This formulaic recitation of a direct infringement claim only spans a few paragraphs in the Complaint for each patent-in-suit. (Complaint at ¶¶ 20-23 (allegations for the '274 Patent), ¶¶ 31-32 (allegations for the '875 Patent), ¶¶ 40-42 (allegations for the '555 Patent), and ¶¶ 50-51 (allegations for the '145 Patent).) There is no mapping of any limitation of an asserted patent claim to any actual feature of any of the accused devices. (*See id.*) Instead, the Complaint merely parrots the language of one claim, while providing one or two images of an unidentified product. (*See id.*) And the images of the accused products fail to include any annotations, leaving Kingston and the Court to guess at their meaning. (*Id.*) Because "[m]erely naming a product and providing a conclusory statement that it infringes a patent is insufficient to meet the 'plausibility' standards set forth in *Twombly* and *Iqbal*," Plaintiff's claim of direct infringement is implausible and should be dismissed. *InCom Corp. v. The Walt Disney Co.*, *et al.*, No. 2:15-cv-03011-PSG(MRWx), 2016 WL 4942032, at *3 (C.D. Cal. Feb. 4, 2016)

(citation omitted); *North Star Innovations v. Etron Tech.*, 2016 WL 9046909, at *4; *see also Jenkins*, 2017 WL 376154, at *1, 3 (ruling that complaint that "merely recite[d] several 'exemplary' claims" and gave a "general overview of Defendant's allegedly infringing products" was "clearly deficient," as it "fail[ed] to specify which features of [the] products correspond to the [claim] limitations").

This failure to correlate the features of the accused products to the asserted patent claims on a limitation-by-limitation basis warrants dismissal of Plaintiff's Complaint. Exemplary deficiencies are provided below for each of the four patents-in-suit.

**A.     Alleged Direct Infringement of the '274 Patent**

The Complaint alleges that the "Accused Product"—which is defined to refer broadly to all of "Kingston DDR3 and DDR3L families of products," literally hundreds of individual products—infringes Claim 1 of the '274 Patent. (*Id.* at ¶ 20.) However, Plaintiff's infringement allegations for the '274 Patent are utterly deficient.

Specifically, for its direct infringement allegations against the "Accused Product," the Complaint simply parrots the language from Claim 1:

> the Accused Product is a memory device that includes circuitry that is properly characterized as: "an apparatus for use as an output stage of a memory device, the apparatus comprising: a timing circuit; a differential amplifier responsive to the timing circuit; an impedance control circuit; a level converter responsive to the differential amplifier and the impedance control circuit; and a clock-free latch responsive to the level converter."

(*Id.* at ¶ 21, citing Claim 1 of the '274 Patent.) The Complaint then concludes, without any factual support, that the Accused Product "satisfies all of the recited structural limitations." (*Id.*)

The Complaint does not explain how or why any one of the accused products include each and every limitation of Claim 1, and instead just includes an unidentified and completely illegible "schematic[]" that purports to show "an output stage of a

memory device," language that only appears in the preamble of Claim 1, and not in any of the specific limitations:



(*Id.* at ¶ 22.)  The Complaint does not identify where the "output stage" is allegedly located in this unannotated schematic, or even where the image came from and how it supposedly relates to any one of Kingston's products.  (*Id.*)

Similarly, the Complaint includes an unannotated and illegible schematic that allegedly shows a "clock-free latch":



(*Id.* at ¶ 23.)  However, the Complaint does not explain how this unadorned schematic allegedly shows a "clock-free latch," or identify the source of this image and how it supposedly relates to any one of Kingston's products.  (*Id.*)

Further, the Complaint does not even address any of the other limitations from Claim 1 of the '274 Patent, such as the recited "timing circuit," "differential amplifier," "impedance control circuit," and "level converter."  (*Id.* at ¶¶ 21-23.)  The Complaint provides no factual support at all that the accused products include these

limitations, and does not map any limitations from Claim 1 to any actual features of any one of the accused products. (*See id.*)

Plaintiff's clear failure to allege any facts on the required limitation-by-limitation basis for the '274 Patent mandates dismissal of this claim. *See, e.g.*, *TeleSign*, 2016 WL 4703873, at *3; *North Star Innovations v. Etron*, 2016 WL 9046909, at *4 (dismissing Plaintiff North Star's infringement claims on the same '274 Patent for failing to allege facts for each asserted claim limitation); *North Star Innovations, Inc. v. Micron Tech.*, 2017 WL 5501489, at *2 (same).

This pattern holds true for the other three patents-in-suit as well.

## B. Alleged Direct Infringement of the '875 Patent

Plaintiff's infringement allegations involving the '875 Patent are also legally deficient and should be dismissed.

The Complaint focuses on the same "Accused Product" as with the '274 Patent, and the direct infringement allegations merely consist of reciting the language of Claim 1, and including the following unannotated and illegible image:



(Complaint at ¶¶ 31-32.)  The Complaint makes no attempt to correlate any features from the above image to any limitations in any asserted claim from the '875 Patent.  (*See id*.)  The Complaint alleges that this schematic shows a "boost circuit," but does not identify how or why this is the case, or what product this schematic allegedly describes.  (*Id*.)  And the Complaint fails to identify where the accused products allegedly include other asserted claim language, such as the recited "switches," "capacitors," and "signals."  (*See id*.)

In other words, the Complaint makes no attempt to map any features in any one of the accused devices to the limitations in the asserted claims, which mandates dismissal of this claim as well.  *See, e.g.*, *TeleSign*, 2016 WL 4703873, at *3; *North Star Innovations v. Etron*, 2016 WL 9046909, at *4 (dismissing Plaintiff North Star's infringement claims on the same '875 Patent for failing to allege facts for each asserted claim limitation); *North Star Innovations, Inc. v. Micron Tech.*, 2017 WL 5501489, at *2 (same).

## C.  Alleged Direct Infringement of the '555 Patent

Similarly, Plaintiff's infringement claim for the '555 Patent is legally deficient and should be dismissed.  The Complaint alleges that the same "Accused Product" infringes Claim 15 of the '555 Patent.  (Complaint at ¶ 40.)

However, the Complaint just recites the language of Claim 15 in reference to the "Accused Product" and includes two unadorned and illegible images:



**4.17 Power-Down Modes (Cont'd)**
**4.17.1 Power-Down Entry and Exit (Cont'd)**

Activate, Precharge, Refresh, and MRS are shown in Figure 63 through Figure 71. Additional clarifications are shown in Figure 72 through Figure 74.

Note:  VALID command at T0 is ACT, NOP, DES or PRE with still one bank remaining open after completion of the precharge command.

Figure 62 — Active Power-Down Entry and Exit Timing Diagram

(*Id*. at ¶¶ 40-42.)  As with the other patents-in-suit, the Complaint does not correlate any features of any one of the accused products to the limitations of asserted Claim 15.  (*See id*.)  And the Complaint fails to even discuss, much less map to the accused products, many limitations from Claim 15, including the recited "power supply terminal for creating a first power plane," "memory array peripheral circuitry," and "a second power plane that is independent of the first power plane."  (*Id*.)  There is no factual support in the Complaint that the accused products include any of these claim limitations.

This warrants dismissal of Plaintiff's Complaint as to the '555 Patent also.  *See, e.g*., *TeleSign*, 2016 WL 4703873, at *3; *North Star Innovations v. Etron*, 2016 WL 9046909, at *4 (dismissing Plaintiff North Star's infringement claims on the same '555 Patent for failing to allege facts for each asserted claim limitation); *North Star Innovations, Inc. v. Micron Tech.*, 2017 WL 5501489, at *2 (using the same rationale to recommend dismissal of North Star's claims on the '274 and '875 Patents).

**D.    Alleged Direct Infringement of the '145 Patent**

Lastly, Plaintiff's infringement claim for the '145 Patent is also legally deficient and should be dismissed for the same reasons as with the other three patents-in-suit. The Complaint alleges that the same "Accused Product" infringes Claims 1 and 6 of the '145 Patent.  (Complaint at ¶ 50.)

For this patent, the Complaint parrots the language from Claim 1, and includes the following unannotated and illegible image:



(*Id*. at ¶¶ 50-51.)  The Complaint once more does not correlate any features of any one of the accused products to the limitations of asserted Claims 1 and 6.  (*See id*.)  And the Complaint fails to even discuss, much less map to the accused products, many limitations from Claim 1, including the recited "sense amplifier," "data storage device," "output data bus," and "data feedback circuit."  (*Id*.)  The Complaint does not even mention any limitations from asserted Claim 6, let alone provide any factual support for infringement.  (*Id*.)  There is no factual support in the Complaint that the accused products include any of these claim limitations.

This also warrants dismissal of Plaintiff's Complaint with respect to the '145 Patent.  *See, e.g*., *TeleSign*, 2016 WL 4703873, at *3; *North Star Innovations v. Etron*, 2016 WL 9046909, at *4 (dismissing Plaintiff North Star's infringement claims for failing to allege facts for each asserted claim limitation); *North Star Innovations, Inc. v. Micron Tech.*, 2017 WL 5501489, at *2 (same).

## II.     PLAINTIFF'S IDENTIFICATION OF THE ACCUSED PRODUCTS IS LEGALLY DEFICIENT, AS IS ITS ATTEMPT TO RESERVE THE RIGHT TO ACCUSE "ADDITIONAL PRODUCTS."

As shown above, the direct infringement allegations in the Complaint do not plausibly show infringement for even <u>one</u> of the accused products.  As a result, the Complaint is obviously also deficient as to the broad range of products that it purports to accuse of infringement, *i.e.*, "<u>all</u> . . . Kingston DDR3 and DDR3L families of products."  (Complaint at ¶ 20 (emphasis added).)

As discussed above, the Complaint simply alleges throughout, in conclusory fashion, that <u>the</u> "Accused Product" infringes each patent-in-suit, without explaining to which "Accused Product" the allegations purport to relate, and without correlating any patent claim limitation to any actual Kingston product feature in any one of Kingston's products.  (*Id*. at ¶¶ 20-23 (allegations for the '274 Patent), ¶¶ 31-32 (allegations for the '875 Patent), ¶¶ 40-42 (allegations for the '555 Patent), and ¶¶ 50-51 (allegations for the '145 Patent).)  Nor does the Complaint identify any specific accused product as representative of other Kingston products in its infringement allegations for each patent-in-suit.  (*Id*.)

Accordingly, there is no plausible factual basis for the Court to determine that <u>any</u> of these diverse groups of products included in Plaintiff's definition of the "Accused Product" directly infringes.

Another district court in the Ninth Circuit, *Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 679116, at *6 (D. Ariz. Feb. 21, 2017), recently addressed a similar failure to allege sufficient facts with respect to a range of accused products.  The complaint in that case included magnified cross-section images of six microprocessor product lines, and alleged that the images were "representative of the cross-sections of a substrate layer within each of the Accused Instrumentalities" and that "[t]here is no material difference in the substrate layers between any versions of the Accused Instrumentalities."  *Id*.  The district court recognized, however, that

these were "conclusory allegations" that "provide[d] no facts to connect the six product lines for which cross-sections have been provided to the three product lines for which they have not." *Id*.  The court granted the motion to dismiss as to these three additional product lines because the plaintiff had failed to "supply enough facts to make plausible the allegations that the images of other product lines 'are representative' of the three product lines and that there is 'no material difference' between them." *Id*.

Here, Plaintiff's deficiency is even worse than in *Cont'l Circuits*.  The Complaint does relate any claim limitations to any actual Kingston product, and does not even identify to which product the illegible images included in the Complaint purportedly relate.  Moreover, the Complaint does not attempt to allege—even in a conclusory way—that the unidentified product schematics are representative of the structure of all of the accused products.  As in the *Cont'l Circuits* case, there are no facts in the Complaint to support the inference that any Kingston product is "representative" of the other accused products and "that there is no material difference between them." *Id*. (internal quotation marks omitted).  Thus, there is no Kingston product for which the Complaint includes sufficient factual allegations to plead a plausible claim of infringement.  *See id*.

Further, Plaintiff attempts to "reserve[] the right" to accuse yet "additional products of Kingston" beyond the amorphous and diverse group that it has already listed in the Complaint.  (Complaint at ¶¶ 24, 33, 43, 52.)  For these "additional products," the Complaint also utterly fails to provide any facts to support the inference that they are materially similar to the "Accused Product" or that they infringe any of the patents-in-suit.  (*See id*.)

As a result, Plaintiff has failed to plausibly allege infringement for <u>any accused product</u>, including with respect to (1) the specific Kingston products identified by part number, (2) "<u>all</u> . . . Kingston DDR3 and DDR3L families of products," and (3) any "additional products" of Kingston.  *Cont'l Circuits*, 2017 WL 679116, at *6; *see also*

1  *North Star Innovations v. Etron*, 2016 WL 9046909, at *4 (dismissing complaint that

2  contained only "conclusory statement[s] that the referenced product . . . infringes");

3  *e.Digital*, 2016 WL 4427209, at *4 (dismissing complaint because plaintiff failed "to

4  plausibly allege that the accused products practice each of the limitations found in at

5  least one asserted claim").

### CONCLUSION

7       For the foregoing reasons, Defendant Kingston respectfully requests that the

8  Court dismiss the Complaint in its entirety pursuant to Rules 12(b)(6) and 8(a)(2) of

9  the Federal Rules of Civil Procedure, for failure to state any claim upon which relief

10  can be granted.

11  Dated: December 15, 2017        Respectfully submitted,

12                VINSON & ELKINS L.L.P.

13          By:     */s/ Christopher Kao*

14                Christopher Kao

15                *Attorneys for Defendant*
              *Kingston Technology Company, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

The undersigned certifies that on December 15, 2017, the foregoing document was electronically filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, using Court's Electronic Case Filing (ECF) system. The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice as service of this document by electronic means. Any party not receiving the Court's electronic notification will be sent a copy of the foregoing document.

Dated: December 15, 2017

By: */s/ Christopher Kao*
Christopher Kao

# EXHIBIT 3

1   RYAN E. HATCH (SBN 235577)
    Law Office of Ryan E. Hatch, PC
2   13323 W. Washington Blvd., Suite 100
    Los Angeles, CA 90066
3   Telephone: (310) 279-5076
    Facsimile: (310) 693-5328
4   Email: ryan@ryanehatch.com

5   DAVID A. SKEELS (admitted *pro hac vice*)
    ENRIQUE SANCHEZ, JR. (admitted *pro hac vice* )
6   WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
    301 Commerce Street, Suite 3500
7   Fort Worth, Texas 76102
    Telephone: (817) 878-0573
8   Facsimile: (817) 878-0501
    Email: dskeels@whitakerchalk.com
9   Email: rsanchez@whitakerchalk.com

10  Attorneys for Plaintiff
    NORTH STAR INNOVATIONS INC.

11

12                    UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT OF CALIFORNIA

14

15

16  NORTH STAR INNOVATIONS           CASE NO. 8:17-cv-01833-DOC-
    INC.,                            DFM
17
                Plaintiff,
18                                   **PLAINTIFF'S OPPOSITION TO**
                vs.                  **KINGSTON'S MOTION TO**
19                                   **DISMISS COMPLAINT**
    KINGSTON TECHNOLOGY
20  COMPANY, INC.,

21              Defendant.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ........................................................................................ 1

II.    SUMMARY OF ARGUMENT ................................................................. 2

III.   STATEMENT OF FACTS ......................................................................... 2

    A.    The Parties .......................................................................................... 2

    B.    The Complaint's Factual Allegations ............................................ 3

IV.   APPLICABLE LAW OF PLEADINGS: NO "MAPPING" REQUIRED .. 6

    A.    The Legal Standard: Rule 8(a) ....................................................... 6

    B.    The Court's charge: keep it simple, accept factual allegations as true, draw on judicial experience and common sense ................................. 7

    C.    No "mapping" required .................................................................... 8

    D.    Liberal pleading standard ............................................................. 10

V.    ARGUMENT: NORTH STAR HAS ALLEGED SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR RELIEF ................................. 11

    A.    North Star has properly alleged that the Accused Products infringe the Asserted Claims .......................................................................... 11

    B.    North Star is not obligated to disclose the details of its pre-suit investigation, which is protected work product. ............................... 15

    C.    Defendant fails to cite applicable authority ................................. 17

VI.   CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Apollo Fin., LLC v. Cisco Sys*.
    2016 U.S. Dist. LEXIS 74834 (C.D. Cal. June 7, 2016)......................20

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)...................................................*passim*

*Atlas IP LLC v. Pac. Gas & Elec. Co.*
    2016 U.S. Dist. LEXIS 60211 (N.D. Cal. Mar. 9, 2016)...............18, 20

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)...................................................*passim*

*Cirana Corp. v. Changshu Ltd.*
    2016 U.S. Dist. LEXIS 152184 (C.D. Cal. Oct. 31, 2016) ....................6

*Doe v. U.S.*
    58 F.3d 494 (9th Cir. 1995) .............................................10

*e.Dig. Corp. v. iBABY Labs, Inc.*
    2016 U.S. Dist. LEXIS 57554 (N.D. Cal. Aug. 22, 2016) .........9, 17, 19, 20

*Estrada v. Caliber Home Loans, Inc.*
    172 F. Supp. 3d 1108, 1113 (C.D. Cal. 2016)............................10

*Faulkner v. ADT Sec. Servs., Inc.*
    706 F.3d 1017 (9th Cir. 2013) ...........................................7

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982)....................................................8

*InCom Corp. v. The Walt Disney Co.*
    2016 U.S. Dist. LEXIS 71319 (C.D. Cal. Feb. 4, 2016) .............2, 7, 14

*McAfee Enters. v. Yamaha Corp. of Am.*
    2016 U.S. Dist. LEXIS 173699 (C.D. Cal. June 24, 2016) .............7, 13

*McHenry v. Renne*
    84 F.3d 1172 (9th Cir. 1996) ...........................................7

ii

*North Star Innovations, Inc. v. Etron Tech. Am. Inc.*
 2016 U.S. Dist. LEXIS 188041 (C.D. Cal. Sept. 21, 2016) ...............9, 17

*Patnode v. HCC Life Ins. Co.*
 2016 U.S. Dist. LEXIS 86872 (W.D. Wash. July 5, 2016) ......................... 8

*Raindance Techs., Inc. v. 10X Genomics, Inc.*
 2016 U.S. Dist. LEXIS 33875 (D. Del. Mar. 4, 2016) ...............................19

*Robern, Inc. v. Glasscrafters, Inc.*
 2016 U.S. Dist. LEXIS 95590 (D. Del. July 22, 2016) ........................19, 20

*Scheuer v. Rhodes*
 416 U.S. 232 (1974)...................................................................... 7

*Skinner v. Switzer*
 562 U.S. 521 (2011).......................................................................6

*Sony Corp. v. LG Electronics U.S.A., Inc.*
 768 F. Supp. 2d 1058 (C.D. Cal. 2011) ........................................ 7

*Taylor v. Yee*
 780 F.3d 928 (9th Cir. 2015) .......................................................8

*TeleSign Corp. v. Twilio, Inc.*
 2016 U.S. Dist. LEXIS 123516 (C.D. Cal. Aug. 3, 2016) ...............17, 18

**R<small>ULES</small>**

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 8(a)……………………………………………………….6, 16

Fed. R. Civ. P. 11 ................................................................15

Fed. R. Civ. P. 12(b)(6)............................................................7

Fed. R. Civ. P. 15(a)(2) ......................................................2, 21

Fed. R. Civ. P. 26(b) …………………………………………………....15, 16

**Federal Rules of Evidence**

Fed. R. Evid. 502(g)(2) ...........................................................15

iii

**Judge Guilford's Standing Patent Rules**

Rule 2.1 …………………………………………………………………16

**Northern District of California Patent Local Rules**

N.D. Cal. P.L.R. 3-1 ................................................................16

S<small>TATUTES</small>

35 U.S.C. § 271 .................................................................……..4

O<small>THER</small> A<small>UTHORITIES</small>

5 C<small>HARLES</small> A. W<small>RIGHT</small> & A<small>RTHUR</small> R. M<small>ILLER</small>, F<small>ED.</small> P<small>RACTICE AND</small> P<small>ROCEDURE</small> § 1215 (3d ed. 2002) .................................................................. 6

# I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Approximately three months ago, on October 19, 2017, Plaintiff North Star Innovations Inc. ("Plaintiff" or "North Star") filed this Complaint for Patent Infringement ("Complaint") in the Central District of California, against Defendant Kingston Technology Company, Inc. ("Defendant" or "Kingston"), alleging infringement of four U.S. patents (the "Asserted Patents"). After service of the Complaint, North Star agreed to an extension for Kingston to answer.

On December 15, 2017, Kingston filed its Motion to Dismiss Plaintiff's Complaint ("Motion"). DKT 20. Kingston complains that it does not have sufficient notice about the nature of North Star's claims. The Motion exalts form over substance and ignores many of the Complaint's detailed factual allegations. For example, the Motion complains that Plaintiff's factual allegations are "only" eleven paragraphs in length. Further, the Motion relies on a non-existent "mapping" standard. Kingston's Motion is simply Step 1 in the increasingly common playbook of accused infringers, whereby defendants (1) use a motion to dismiss as a way to buy three or more months of time, and then (2) seek *inter partes* review ("IPR") from an Article I tribunal – namely, the Patent Trial and Appeal Board – to buy another eighteen months of time. *See* Motion at 4 (acknowledging Kingston's history of seeking *inter partes* review). The Motion, which has already served to delay adjudication of Plaintiff's meritorious infringement claims, should be denied.

## II.   **SUMMARY OF ARGUMENT**

1.      The Complaint satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a). Kingston's arguments to the contrary are unpersuasive and inconsistent with the guidance provided by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny, including *InCom Corp. v. The Walt Disney Co.*, C.A. 15-3011 PSG (MRWx), 2016 U.S. Dist. LEXIS 71319 (C.D. Cal. Feb. 4, 2016)) (plaintiff stated a plausible claim for direct infringement when it identified defendant's product and alleged that it performed the same function as plaintiff's product).

2.      To the extent necessary, "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).

## III.   **STATEMENT OF FACTS**

### A. The Parties

Plaintiff North Star, a Costa Mesa, California-based company, is a wholly-owned subsidiary of Wi-LAN Technologies, Inc., which is a wholly-owned subsidiary of Wi-LAN, Inc. ("Wi-LAN"). Wi-LAN has a long and storied history of innovation, which includes the successful commercialization of multiple products relating to high-speed wireless data communication. North Star's patent portfolio includes hundreds of patents directed to semiconductor memory devices, such as DRAM and SRAM.

2

Kingston is a California corporation that, according to its website, "has grown to be the world's largest independent manufacturer of memory products." Kingston is a Forbes 50 company that has been around for more than thirty years and generated worldwide revenues in excess of $6.6B during 2016. With respect to third party suppliers of DRAM modules, Kingston commands nearly 65% of the worldwide market.

## B. The Complaint's Factual Allegations

The Complaint includes detailed factual allegations – mostly ignored by the Motion – that provide fair notice to Defendant and describe the grounds on which Plaintiff's claims rest. Plaintiff went beyond that which is required by the law – including diagrams and schematics for extra detail. For example:

- North Star identified itself as the **owner** of the Patents-in-Suit, with standing to sue for infringement (Compl., ¶ 15), and **attached copies** of all four patents to the Complaint. DKT 1-1, 1-2, 1-3, and 1-4.

- North Star identified a specific **infringer** – Kingston – and explained that Kingston does not have a license to practice the Patents-in-Suit. Compl., ¶¶ 18, 29, 38, and 48.

- North Star specifically identified, described, and asserted four **U.S. patents**: the '274 Patent, the '875 Patent, the '555 Patent, and the '145 Patent (collectively, the "Patents-in-Suit"). Compl., ¶¶ 6-13.

- North Star summarized the **technology** covered by each of the fourt Patents-in-Suit, noted some of their novel aspects, and addressed some of the key advantages of the technology:

    o "[T]he '274 Patent teaches … an improved circuit design for the output stage of a memory device, such as SDRAM, and an

3

improved circuit design for a differential amplifier that provides a more reliable timing mechanism and thereby facilitates the use of a clock-free latch." Compl., ¶ 7.

o "[T]he '875 Patent teaches … an efficient and compact voltage boosting circuit that boosts the available supply voltage and limits output distortion." Compl., ¶ 9.

o "[T]he '555 Patent teaches … a novel design for an integrated circuit with power management capabilities, where, in certain embodiments, multiple, independent power planes are used to eliminate or reduce leakage current." Compl., ¶ 11.

o "[T]he '145 Patent teaches … a novel data sensing circuit that, in certain embodiments, utilizes a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and which, in certain embodiments, utilizes a novel feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation." Compl., ¶ 13.

• North Star specifically identified **infringed claims**: '274 Patent, Claim 1 (Compl., ¶ 20); '875 Patent, Claim 1 (Compl., ¶ 30); '555 Patent, Claim 15 (Compl., ¶ 39); and '145 Patent, Claims 1 and 6 (Compl., ¶ 49).

• North Star specifically identified at least two **infringing products** by model and part number: Kingston's 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU and Kingston's 8GB DDR3L SODIMM (Part#: KVR16LS11/8). *See* Compl., ¶ 20, 30, 39, and 49.

• North Star identified the **statutory basis** for its claims of patent infringement, namely, direct infringement under 35 U.S.C. § 271(a). Compl., ¶¶ 19, 30, 39, and 49.

• Each of the asserted claims are apparatus claims, which recite structural limitations. Accordingly, **North Star explained precisely *how* each of the patents is infringed – namely, by virtue of the fact that the Accused Products include each and every one of the recited structural limitations**:

4

o   For **the '274 Patent**, North Star explained: "[T]he Accused Product (a memory device) satisfies all of the recited structural limitations such that the memory device includes an output stage that incorporates an improved circuit design for a differential amplifier, which provides a more reliable timing mechanism and thereby facilitates the use of a clock-free latch." Compl., ¶ 21.

o   For **the '875 Patent**, North Star explained: "[T]he Accused Product infringes at least Claim 1 because it meets each and every limitation of Claim 1. … [T]he Accused Product includes an efficient and compact voltage boosting circuit that boosts the available supply voltage and limits output distortion. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations and necessarily operates in a way that utilizes a boosting circuit to boost the available supply voltage and to limit output distortion." Compl., ¶ 31.

o   For **the '555 Patent**, North Star explained: "[T]he Accused Product infringes at least Claim 15 because it meets each and every limitation of Claim 15. … [T]he Accused Product includes power management capabilities whereby multiple, independent power planes are used to eliminate or reduce leakage current. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations and necessarily operates in a way that utilizes multiple, independent power planes to eliminate or reduce leakage current." Compl., ¶ 40.

o   For **the '145 Patent**, North Star explained: "[T]he Accused Product infringes at least Claims 1 and 6 because it meets each and every limitation of those claims. … [T]he Accused Product includes a data sensing circuit that utilizes (a) a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and (b) a feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations and necessarily operates in a way that utilizes (a) a self-controlled sense

5

amplifier and a clock-free latch to eliminate the need for external timing control signals and (b) a feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation." Compl., ¶ 50.

Defendant labels these allegations as nothing more than "threadbare recitals." Motion at 1, 6, and 7. To the contrary, and as described further below, these allegations follow a pleading template endorsed by this Court.

## IV.  APPLICABLE LAW OF PLEADINGS: NO "MAPPING" REQUIRED

### A. The legal standard: Rule 8(a)

Federal Rule of Civil Procedure 8(a)(2) requires nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (Rule 8(a)(2) does not require "an exposition of [the plaintiff's] legal argument"). In order to meet this standard, a claim for relief must be stated with "brevity, conciseness, and clarity." *Cirana Corp. v. Changshu Ltd.*, C.A. 2:16-4590-CAS (GJSx), 2016 U.S. Dist. LEXIS 152184, at *9 (C.D. Cal. Oct. 31, 2016), *quoting* 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE AND PROCEDURE § 1215 (3d ed. 2002) (hereafter, "WRIGHT & MILLER").

The complaint need only provide a defendant with fair notice and a basis for asserting the claim. *Twombly*, 550 U.S. at 561. The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on

what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d

1172, 1177 (9th Cir. 1996).

### B. The Court's charge: keep it simple, accept factual allegations as true, draw on judicial experience and common sense

As this Court recently stated in *McAfee Enters. v. Yamaha Corp. of Am.*:

> The task of the Court at the Rule 12(b)(6) stage is simply to assess whether the "short and plain statement" of the plaintiff's claims in the complaint plausibly states a claim upon which relief can be granted. The patent holder is not required to provide every detail of its claim within the initial pleading. *Iqbal*, 556 U.S. at 678. Rather, the complaint must merely provide a defendant with fair notice and a basis for asserting the claim. *Twombly*, 550 U.S. at 561; *see InCom Corp. v. The Walt Disney Co.*, No. CV15-3011 PSG (MRWx), 2016 U.S. Dist. LEXIS 71319, at *8 (C.D. Cal. Feb 4, 2016) (plaintiff stated a plausible claim for direct infringement when it identified defendant's product and alleged that it performed the same function as plaintiff's product).

C.A. 2:16-2562 BRO (FFM), 2016 U.S. Dist. LEXIS 173699, at *6-8 (C.D. Cal.

June 24, 2016).

Courts evaluating a motion to dismiss under Rule 12(b)(6) must accept

all material allegations of a complaint as true (even if doubtful in fact) and construe

them in the light most favorable to the plaintiff. *Faulkner v. ADT Sec. Servs., Inc.*,

706 F.3d 1017, 1019 (9th Cir. 2013). Courts should consider the complaint's

allegations and exhibits attached to the complaint, including patents. *See Sony

Corp. v. LG Electronics U.S.A., Inc.*, 768 F. Supp. 2d 1058, 1061 (C.D. Cal. 2011).

The issue is not whether a plaintiff will ultimately prevail but whether the claimant

is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232,

7

236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element. *Twombly*, 550 U.S. at 556. The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64. "If, under any reasonable reading of the complaint, the plaintiff may be entitled to relief, a motion to dismiss will fail." *Patnode v. HCC Life Ins. Co.*, 2016 U.S. Dist. LEXIS 86872, at *4 (W.D. Wash. July 5, 2016), citing *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

### C. No "mapping" required

Kingston basically argues that a plaintiff must include detailed claim charts and infringement contentions in its original complaint. To that end, Kingston repeats, *ad nauseam*, the proposition that Plaintiff's Complaint must be dismissed because it allegedly fails to "map" the claim limitations to the Accused Product. *See, e.g.*, Motion at 1, 2, 5, 7, 8, 9, 12, 14, and 15. This is *not* the standard, and Kingston's repetition does not make it so. Kingston goes so far as to suggest that any diagrams, schematics, or graphics included in the original complaint should be "explained" (*see* Motion at 5), "annotated" (*see* Motion at 9, 11, 12, and 15), and "adorned" – whatever that means (*see* Motion at 11, 13).

8

For its fictional "standard," Kingston relies entirely on *North Star v. Etron* and on misleading "quotations" that Kingston attributes to *e.Digital Corp. v. iBaby Labs, Inc.*, 2016 U.S. Dist. LEXIS 111689 (N.D. Cal. Aug. 22, 2016). In *North Star v. Etron*, the Court cited to, and attempted to paraphrase, the *e.Digital* case, which, according to the Court in *North Star v. Etron*, involved a plaintiff whose First Amended Complaint ("FAC") addressed "most of the elements in the [asserted] claim" but completely failed to mention one of the claim limitations. *See North Star Innovations, Inc. v. Etron Tech. Am. Inc.*, 2016 U.S. Dist. LEXIS 188041, *11 (C.D. Cal. Sept. 21, 2016) (SJO) (internal quotations and brackets omitted). The Court in *North Star v. Etron* did not hold – and Kingston has failed to identify any court that has *ever* held – that a plaintiff must "map" each and every claim limitation to the Accused Product. In any event, that opinion is not binding on this Court, and the Complaint in this case is much more detailed than North Star's Complaint against Etron – a complaint that Kingston (who bears the burden of proof on its Motion) did not bother to attach for the Court's consideration.

With respect to *e.Digital*, the Court in that case granted the motion to dismiss, with leave to amend, because the plaintiff completely omitted one of the claim limitations and thereby failed to allege infringement:

> [T]he FAC [did] not allege any facts suggesting that the accused products practice the limitation [of] "retrieving from a memory the determined one social template having the greatest correspondence." … e.Digital has not [even] attempted to map this limitation onto any

9

allegations in the FAC. Moreover, based on the Court's own independent review, it cannot discern how the FAC could be said to plausibly allege this limitation.

*e.Digital Corp.*, 2016 U.S. Dist. LEXIS 111689 at *13 (internal citations omitted), analyzing Paragraph 16 of e.Digital's First Amended Complaint; *see also id.* at *2-3 (describing plaintiff's deficient complaint and its "missing" limitation problem).

Significantly, *e.Digital* did not hold that a plaintiff must map each claim limitation to the accused product. To the contrary, *e.Digital* simply held that to survive a motion to dismiss, a plaintiff must "plausibly allege that the accused products practice each of the limitations found in at least one asserted claim." *Id.* at *10; *see also id.* at *4 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."), *quoting Iqbal*, 556 U.S. at 687.

### D. Liberal pleading standard

Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Estrada v. Caliber Home Loans, Inc.*, 172 F. Supp. 3d 1108, 1113 (C.D. Cal. 2016), quoting *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Id.*, citing *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.   ARGUMENT: NORTH STAR HAS ALLEGED SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

By challenging the sufficiency of the allegations, Kingston contends it does not have fair notice about North Star's claims and therefore cannot formulate an answer. Common sense suggests otherwise. The Motion should be denied.

### A. North Star has properly alleged that the Accused Products infringe the Asserted Claims

Where, as here, the Complaint alleges facts that raise a right to relief, the motion to dismiss should be denied. *See* Part III.B *supra* (summarizing North Star's detailed factual allegations). For each asserted patent, North Star specifically alleged – *as a factual matter* – that the Accused Products include each and every one of the recited structural limitations. Compl., ¶¶ 21, 31, 40, 50.

Nevertheless, Defendant cries foul because North Star did not include or attach claim charts or infringement contentions that "map" or "correlate" each claim limitation with a specific feature of an Accused Product. Of course, North Star's factual allegations could be re-stated in chart form. For example, in the case of the specific apparatus recited in Claim 1 of the '274 Patent, a one-to-one correspondence between the claim limitations and the accused process could be charted, or "mapped," as follows:

11

| Structural limitations of Claim 1: | Factual assertions: |
|---|---|
| an apparatus for use as an output stage of a memory device, the apparatus comprising:[1] | Kingston's 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU, includes: |
| a timing circuit; | a timing circuit; |
| a differential amplifier responsive to the timing circuit; | a differential amplifier responsive to the timing circuit; |
| an impedance control circuit; | an impedance control circuit; |
| a level converter responsive to the differential amplifier and the impedance control circuit; | a level converter responsive to the differential amplifier and the impedance control circuit; |
| and a clock-free latch responsive to the level converter. | and a clock-free latch responsive to the level converter. |

---

[1] Plaintiff does not hereby suggest or concede that the preamble of this or any other asserted claim of any Patent-in-Suit constitutes a substantive limitation. That issue is expressly reserved for the claim construction stage.

12

North Star could create such a chart for each of the asserted claims – though it be a frivolous and academic exercise. Plaintiffs need not create charts to express that which is stated in narrative form.

Defendant's demand for "mapping" threatens to complicate an otherwise simple analysis. As this Court has recently articulated, the complaint is sufficient if the plaintiff identifies his invention and alleges that the defendant's product practices that invention. For example, in *McAfee Enters. v. Yamaha Corp. of Am.*, this Court rejected Yamaha's motion to dismiss, stating:

> The Court finds that McAfee has pleaded sufficient factual allegations to plausibly suggest a claim for direct patent infringement and to put Yamaha on sufficient notice of its allegations. … McAfee has alleged that Yamaha has infringed by making, using, selling, offering for sale and/or importing certain electronic drum kits. McAfee's independent **claim 1 requires [a] <u>a strike sensor</u>, [b] <u>a strike counter</u>, and [c] <u>a presenter</u> that displays the number of drum strikes**. (Dkt. 1, Ex. A at 11.) **Correspondingly, Yamaha drum kits are alleged to comprise [a] <u>a strike sensor</u>, [b] <u>a strike counter</u> that can count the number of strikes, and [c] an audio count information <u>presenter</u> that can present the number of strikes to the user**. (Dkt. 30 at 2-4.) Further, in its original and amended complaints, McAfee listed Yamaha's accused product model numbers and the specific features of these products, namely the "Fast Blast" feature, that are alleged to infringe the claims of the '207 Patent. These factual allegations are sufficient to support a reasonable inference that Yamaha is liable for infringement of the asserted claims.

C.A. 2:16-2562 BRO (FFM), 2016 U.S. Dist. LEXIS 173699, at *6-8 (C.D. Cal. June 24, 2016) (emphasis added).

13

Similarly, in *InCom Corp. v. Walt Disney Co.*, this Court rejected Disney's motion to dismiss because the plaintiff described its patented system and alleged that Disney's system performed in the same way:

> Defendants assert that the FAC is too conclusory because it merely alleges that Defendants' infringing activities "include development, manufacture, and use of an attendance tracking system, including an attendance tracking device known as the 'MagicBand.'" … Defendants correctly note that "[m]erely naming a product and providing a conclusory statement that it infringes a patent is insufficient to meet the 'plausibility' standard set forth in *Twombly* and *Iqbal*." However, the FAC does more than name a product and baldly conclude that it infringes a patent which belongs to Plaintiff. **Plaintiff attaches the patents in suit to the FAC and describes how <u>its Attendance Tracking System uses RFID technology and ID badges to track human presence in large volumes</u>**. … **Plaintiff then names specific <u>products developed, manufactured and used by Defendants which</u>, like Plaintiff's system, <u>track human presence in large volumes</u>**. Plaintiff has stated a plausible claim for direct infringement by specifically identifying Defendants' products and alleging that they perform the same unique function as Plaintiff's patented system.

C.A. 15-3011 PSG (MRWx), 2016 U.S. Dist. LEXIS 71319, at *7-8 (C.D. Cal. Feb. 4, 2016) (emphasis added) (some internal citations omitted).

With respect to Kingston's complaints about the Accused Products, Plaintiff has specifically identified at least two products – i.e., one more than is required. *See* Compl., ¶ 20. Kingston may secure additional detail about the basis for Plaintiff's allegations for the specified products and for other products Plaintiff may accuse when Plaintiff serves its infringement contentions and through the discovery process.

**B. North Star is not obligated to disclose the details of its pre-suit investigation, which is protected work product.**

In the face of North Star's detailed allegations, Kingston nevertheless insists that Plaintiff must "map" all of its asserted claims to the Accused Products, and Kingston demands that Plaintiff provide additional "factual support." *See, e.g.*, Motion at 10, 11. At the pleadings stage, North Star is not required to marshal its evidence or to disclose its Rule 11 investigation, which is protected by the attorney work product doctrine.[2] *See* Fed. R. Civ. P. 11; *see also* Fed. R. Civ. P. 26(b) (attorney work product and consulting expert analyses not discoverable); Fed. R. Evid. 502(g)(2) ("work-product protection" defined).

Defendant's demand for a "map" to the proprietary schematics of its complicated semiconductor products is particularly curious, since Kingston keeps these circuit schematics under lock and key. They are not publicly available. Nevertheless (and without waiving any work product protections), North Star coordinated with consulting experts to physically examine the accused products, to perform costly reverse-engineering on those products, and to reach conclusions about likely infringement by those products.

In this regard, it is difficult to understand how Plaintiff could provide further specifics without disclosing the contents and conclusions of its pre-suit

---

[2] Even at trial, North Star will not necessarily be required to prove "how" the Accused Products function in any great detail – so long as North Star can establish, by a preponderance of the evidence, that each structural limitation is, in fact, present in the Accused Products.

15

investigation and its extensive and costly reverse-engineering efforts – all of which are protected from discovery by Federal Rule of Civil Procedure 26(b) or by the attorney work product doctrine. Further, the approach advanced by Defendant is at odds with the typical practice of courts in this district, in which the deadlines for various items, including plaintiff's infringement contentions, are typically governed by local patent rules. *See, e.g.*, Judge Guilford's Standing Patent Rule 2.1 or N.D. Cal. Patent L.R. 3-1. Forcing plaintiffs to disclose such details in their complaints would be inconsistent with the liberal requirements of Rule 8(a), would set a dangerous precedent that is contrary to the typical practice of this district, would unfairly provide defendants with early initial disclosures to the detriment of plaintiffs, and would increase the likelihood of gamesmanship.[3] In due course, Defendant will be obligated to produce its core technical documents, which North Star will review and then incorporate into its infringement contentions. But Defendant has thus far declined to make those documents available to Plaintiff.

Finally, per the Supreme Court's directive to draw on judicial experience and common sense (*see Iqbal*, 556 U.S. at 663-64), this Court should recognize that the Patents-in-Suit are directed to proprietary and complicated semiconductor circuit

---

[3] For example, under Kingston's paradigm, defendants would receive detailed claims charts and infringement contentions with service of the complaint; they would then seek the standard 30 or 60-day extension to respond; and (as is becoming increasingly common) they might *still* file a motion to dismiss, which would delay the proceedings further. In many instances, defendants would then use the extra time to prepare petitions for *inter partes* review, to seek an 18-month stay of the district court litigation, or to otherwise prepare their invalidity case, all while seeking to limit plaintiffs' claim construction positions based on claim charts included in the complaint.

designs. As such, the Court should conclude, based on reasonable inferences drawn from Plaintiff's factual allegations (and for purposes of this Motion only), that the Accused Products include circuitry that meets each and every limitation of the asserted claims.

## C. Defendant fails to cite applicable authority

Defendant relies primarily on *North Star v. Etron* and on *e.Digital Corp. v. iBaby Labs, Inc.* Those cases are discussed and distinguished in Part III.C *supra*. Defendant relies on additional cases that do not support the recited propositions.

For example, Defendant relies heavily on *TeleSign Corp. v. Twilio, Inc.*, No. CV 16-2106 PSG (SSx), 2016 U.S. Dist. LEXIS 123516 (C.D. Cal. Aug. 3, 2016). In that case, the plaintiff included a laundry list of defendant's products and technologies. But the plaintiff utterly failed to allege that any one of those products, by itself or in combination, infringed the asserted claim:

> [T]he complaint fails to sufficiently allege that any of Defendant's products, or any combination of Defendant's products, infringe on the '792 patent. … Plaintiff argues that its complaint is sufficient because it explains the elements of claim one and "ties each claim element to representative Twilio technology." In other words, for each element of claim one, Plaintiff alleges that some product produced by Defendant performs that element. But Plaintiff does not plausibly allege that any one product produced by Defendant performs all elements. Nor does Plaintiff plausibly allege that the multiple products tied to the various claim elements are used conjunctively to infringe. Thus, Plaintiff has failed to give Defendant sufficient notice to state a claim ….

*Id.* at *7-8 (internal citations omitted). Judge Gutierrez ultimately affirmed the standard that plaintiff argues here: "a complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief," and the complaint is sufficient if it "plausibly allege[s] that a defendant's product or products practice all elements of at least one patent claim." *Id.* at *8-9 (internal citations and quotations omitted).

Defendant also relies on *Atlas IP*. In that case, the Court granted the defendant's motion but rejected some of the movant's arguments that Kingston repeats here, including Atlas IP's demand for a level of detail not required by Rule 8(a). *See Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-cv-05469-EDL, 2016 U.S. Dist. LEXIS 60211, at *15-17 (N.D. Cal. Mar. 9, 2016) ("*Iqbal* and *Twombly* … can be satisfied by adequately pleading infringement of one claim, so the level of detail sought by PG&E does not appear to be mandatory, even if desirable… [T]he disclosures required by the Patent Local Rules will soon provide more detailed notice. The complaint will not be dismissed on this basis."). Fair notice is provided when, as here, *all* of the claim limitations – as opposed to just *some* of the claim limitations – are addressed in the complaint. *See id.* at *7-8 ("[S]imply reciting *some of the elements* of a representative claim and then describing generally how an accused product operates, without specifically tying the operation to any asserted

18

claim *or addressing all of the claim requirements*, is insufficient.") (emphasis added).

Defendant also relies on *Raindance Techs., Inc. v. 10X Genomics, Inc.*, which is factually distinguishable and is also an outlier. In *Raindance*, dismissal (without prejudice and with leave to amend) was premised on the court's conclusion that Plaintiff had not even "purchased one of Defendant's products to see how it actually works" but rather had "analyzed … just [Defendant's] website." 2016 U.S. Dist. LEXIS 33875, at *4, *7 (D. Del. Mar. 4, 2016). By contrast (and without waiving any applicable privileges or protections), North Star purchased both of the specifically identified accused products (or costly reports analyzing those products) and spent tens of thousands of dollars on reverse-engineering efforts and consulting expert analysis.

According to a Shepard's search, *Raindance* has never been cited by any Court in this District. It has been cited in *dicta* by a handful of other courts, but not for the proposition cited by Defendant. *See, e.g.*, *e.Dig. Corp. v. iBABY Labs, Inc.*, C.A. 15-05790-JST, 2016 U.S. Dist. LEXIS 57554, at *1 and n.3 (N.D. Cal. Apr. 29, 2016) (citing *Raindance* in *dicta* and explaining the "Court [may] impose … something different" than the pleading standard applied in *Raindance*); *see also Robern, Inc. v. Glasscrafters, Inc.*, 2016 U.S. Dist. LEXIS 95590, at *15 (D. N.J. July 22, 2016) (citing *Raindance* but rejecting suggestion "that Plaintiff must plead

the same level of detail as it will disclose in its … infringement contentions pursuant to the local rules"). In *Robern*, the court found the allegations lacking because the plaintiff had "full access to the allegedly infringing products." U.S. Dist. LEXIS 95590, at *15. Here, North Star does not have access to Defendant's proprietary circuit design schematics.

Similarly, in the *Apollo Fin., LLC v. Cisco Sys*. case cited by Defendant, the plaintiff asserted claims for methods to be performed by an end product. The plaintiff accused specific products but failed to explain or even allege how Cisco used those products to practice the claimed methods and, significantly, failed to allege that Cisco practiced each and every step of the claimed methods. C.A. 2:15-9696 RSWL (PJWx), 2016 U.S. Dist. LEXIS 74834, at *2, *7 (C.D. Cal. June 7, 2016). Here, Plaintiff has alleged that each and every limitation of the Asserted Claims is met by the Accused Products.

In sum, Kingston has failed to identify a "missing limitation" in North Star's Complaint. North Star did not skip a claim limitation – like the plaintiffs did in *e.Digital Corp.*, *Atlas IP*, and *Apollo Fin*. Rather, Plaintiff addressed each and every limitation and thereby satisfied the requirements of Rule 8(a).

## VI.   **CONCLUSION**

North Star has satisfied the requirements of Rule 8(a). Kingston's arguments, which exalt form over substance and which rely on a fictional "mapping" standard,

should be rejected, and the Motion should be denied. Alternatively, Plaintiff respectfully requests leave to amend, which should be given freely when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiff also requests such further relief as the Court may deem appropriate.


Dated: January 13, 2018          Respectfully submitted,


                                 */s/ Ryan E. Hatch*


                                 RYAN E. HATCH (SBN 235577)
                                 Law Office of Ryan E. Hatch, PC
                                 13323 W. Washington Blvd., Suite 100
                                 Los Angeles, CA 90066
                                 Telephone: (310) 279-5076
                                 Facsimile: (310) 693-5328
                                 Email: ryan@ryanehatch.com


                                 WHITAKER CHALK SWINDLE & SCHWARTZ PLLC

                                 David A. Skeels (Texas Bar No. 24041925)
                                 Enrique Sanchez, Jr. (Texas Bar No. 24068961)
                                 301 Commerce Street, Suite 3500
                                 Fort Worth, TX 76102
                                 Tel: 817-878-0500
                                 Fax: 817-878-0501
                                 dskeels@whitakerchalk.com
                                 dcammack@whitakerchalk.com
                                 Admitted Pro Hac Vice
                                 Attorneys for Plaintiff
                                 NORTH STAR INNOVATIONS INC.

21

# EXHIBIT 4

Christopher Kao (SBN 237716)
 ckao@velaw.com
Brock S. Weber (SBN 261383)
 bweber@velaw.com
Abigail Lubow (SBN 314396)
 alubow@velaw.com
VINSON & ELKINS L.L.P.
555 Mission Street, Suite 2000
San Francisco, CA 94105
Tel.: 415.979.6900
Fax: 415.651.8786

Christine Yang (SBN 102048)
 chrisyang@sjclawpc.com
LAW OFFICE OF S.J. CHRISTINE YANG
17220 Newhope Street, Suite 101-102
Fountain Valley, CA 92708
Tel.: 714.641.4022 / Fax: 714.641.2082

*Attorneys for Defendant*
*Kingston Technology Company, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., <br><br> Plaintiff, <br><br> vs. <br><br> KINGSTON TECHNOLOGY COMPANY, INC., <br><br> Defendant. | Case No. 8:17-cv-01833-DOC (DFMx) <br><br> **DEFENDANT KINGSTON TECHNOLOGY COMPANY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(B)(6)** <br><br> Date: February 5, 2018 <br> Time: 8:30 a.m. <br> Courtroom: 9D <br> Judge: Honorable David O. Carter |

# <u>INTRODUCTION</u>

Plaintiff North Star's Opposition (Dkt. No. 24, "Opp.") does not rebut the showing in Defendant Kingston's Motion to Dismiss (Dkt. No. 20, "Mot.") that the Complaint fails to adequately plead infringement for any of the four patents-in-suit under Rule 12(b)(6).  Accordingly, Plaintiff's Complaint should be dismissed.

Plaintiff argues in its Opposition that it can satisfy the pleading requirements by merely alleging, without any factual support, that the accused Kingston memory products include the components recited in the asserted patent claims because there is no requirement to "map" the asserted claim limitations against actual features in the products.  (Opp. at 1, 8-9.)  This is wrong as a matter of law.  Plaintiff North Star's infringement claims on three of the same patents-in-suit in another case before this Court were dismissed precisely because Plaintiff, as here, failed to "<u>map [each] claim limitation onto [a] portion of the accused products</u>" and "<u>draw any parallels between the accused products and the claim elements</u>" in a manner that permits the Court to plausibly infer that each claim limitation is met.  *North Star Innovations, Inc. v. Etron Tech. Am. Inc.*, No. CV 8:16-00599, 2016 WL 9046909, at *4 (C.D. Cal. Sept. 21, 2016) (emphasis added) (dismissing Plaintiff North Star's complaint).  Other courts have also dismissed Plaintiff's claims on these patents-in-suit for the same reason—Plaintiff failed to allege enough facts to show infringement of each limitation of at least one asserted claim.  *See, e.g.*, *North Star Innovations, Inc. v. Micron Tech., Inc.*, No. CV 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) (Burke, M.J.) (recommending that Plaintiff North Star's complaint be dismissed because, on a limitation-by-limitation basis, "[t]here needs to be <u>some facts</u> alleged that articulate <u>why it is plausible</u> that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so.").

Instead of alleging any facts to show how or why the accused products infringe the four patents-in-suit, the Complaint merely recites the language of one asserted claim for each patent and concludes that the accused products include those

limitations.  Plaintiff does not contest this, nor could it.  (Opp. at 5-6 (quoting the allegations from the Complaint for each of the four patent-in-suit that only paraphrase the asserted claim language), *id*. at 12 (providing an exemplary chart that merely states that the accused product includes the claim limitations from Claim 1 of the '274 Patent).)  However, it is well-settled that a Complaint does not pass muster if it just alleges that each element of an asserted claim is infringed by parroting the claim language for each element, because this amounts to nothing more than a threadbare legal conclusion.  *See, e.g.*, *Apollo Fin., LLC v. Cisco Sys., Inc*., 190 F. Supp. 3d 939, 942 (C.D. Cal. 2016) (holding that, "with regard to [a] direct infringement claim, [a] court need not accept as true conclusory legal allegations cast in the form of factual allegations"); *Macronix Int'l Co. v. Spansion, Inc*., 4 F. Supp. 3d 797, 804 (E.D. Va. 2014) (dismissing a complaint because it merely "parroted" the asserted claim language).

Plaintiff's attempt to file another deficient Complaint without doing the work required to plausibly allege infringement should be rejected.  Plaintiff has failed to allege any facts showing that Kingston has infringed any asserted claim of the four patents-in-suit.

## ARGUMENT

## I.  PLAINTIFF'S CLAIMS FOR DIRECT INFRINGEMENT OF THE PATENTS-IN-SUIT ARE LEGALLY DEFICIENT AND SHOULD BE DISMISSED.

Plaintiff argues in its Opposition that its Complaint sufficiently pleads infringement of the four patents-in-suit because the Complaint alleges that the accused products "include each and every one of the recited structural limitations" for each patent.  (Opp. at 11 (citing Complaint at ¶¶ 21, 31, 40, 50).)  But, the portions of the Complaint that the Plaintiff relies upon for this argument merely parrot the language of one asserted claim.  For example, with respect to the asserted '274 Patent, the

Complaint simply recites the limitations from Claim 1, and concludes without any factual support that the accused products include those limitations:

> More specifically, the Accused Product infringes at least [Claim 1 of the '274 Patent] because it meets each and every limitation of that claim. For example, the Accused Product is a memory device that includes circuitry that is properly characterized as: "an apparatus for use as an output stage of a memory device, the apparatus comprising: a timing circuit; a differential amplifier responsive to the timing circuit; an impedance control circuit; a level converter responsive to the differential amplifier and the impedance control circuit; and a clock-free latch responsive to the level converter." Thus, the Accused Product (a memory device) satisfies all of the recited structural limitations such that the memory device includes an output stage that incorporates an improved circuit design for a differential amplifier, which provides a more reliable timing mechanism and thereby facilitates the use of a clock-free latch.

(Complaint at ¶ 21 (quoting Claim 1 of the '274 Patent).)  The same is true for the other three patents-in-suit as well.  (*Id.* at ¶ 31 (quoting Claim 1 of the '875 Patent), ¶ 40 (quoting Claim 15 of the '555 Patent), ¶ 50 (quoting Claim 1 of the '145 Patent).)

Indeed, Plaintiff's Opposition concedes—as it must—that the Complaint does nothing more than parrot the language for one claim of each patent-in-suit. Specifically, the Opposition reformats the allegations for Claim 1 of the '274 Patent into an exemplary claim chart, but the purported "factual assertions" with respect to the accused product for each claim limitation is an exact repetition of the claim language:

| Structural limitations of Claim 1: | Factual assertions: |
|---|---|
| an apparatus for use as an output stage of a memory device, the apparatus comprising:[1] | Kingston's 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU, includes: |
| a timing circuit; | a timing circuit; |
| a differential amplifier responsive to the timing circuit; | a differential amplifier responsive to the timing circuit; |
| an impedance control circuit; | an impedance control circuit; |
| a level converter responsive to the differential amplifier and the impedance control circuit; | a level converter responsive to the differential amplifier and the impedance control circuit; |
| and a clock-free latch responsive to the level converter. | and a clock-free latch responsive to the level converter. |

(Opp. at 12.)  The Opposition concedes the same for each of the other patents-in-suit. (*See id*. at 13.)

As numerous courts have held consistently and repeatedly, however, simply parroting claim language from each patent-in-suit is insufficient to plead a plausible claim for patent infringement, as this amounts to nothing more than a bare recitation of the legal elements for infringement.  "Merely naming a product and providing a conclusory statement that it infringes a patent is insufficient to meet the 'plausibility' standard set forth in *Twombly* and *Iqbal*."  *InCom Corp. v. The Walt Disney Co*., *et al.*, No. 2:15-cv-03011-PSG(MRWx), 2016 WL 4942032, at *3 (C.D. Cal. Feb. 4, 2016) (citation omitted); *North Star Innovations v. Etron Tech.*, 2016 WL 9046909, at *4; *Apollo Fin*., 190 F. Supp. 3d at 942 (holding that, "with regard to [a] direct infringement claim, [a] court need not accept as true conclusory legal allegations cast in the form of factual allegations"); *Macronix Int'l*, 4 F. Supp. 3d at 804 (dismissing a complaint because it merely "parroted" the asserted claim language).

Nevertheless, Plaintiff argues that the Court should simply accept the threadbare legal conclusions in the Complaint because there is no pleading

requirement to correlate—or "map"—the asserted patent claim limitations to actual features of the accused products.  (Opp. at 9, 14-15.)  Plaintiff is wrong.

To plead a plausible claim for patent infringement, the Complaint must "map [each] claim limitation onto [a] portion of the accused products" and "draw any parallels between the accused products and the claim elements" in a manner that permits the Court to plausibly infer that each claim limitation is met.  *North Star Innovations, Inc. v. Etron Tech.*, 2016 WL 9046909, at *4.  The Complaint completely fails this pleading standard and does not include any factual support to explain <u>how</u> any accused product actually includes every claim limitation for any patent claim.  *TeleSign Corp. v. Twilio, Inc.*, No. 16-cv-2106, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016) (ruling that a complaint "must include allegations sufficient to permit [the] court to infer that the accused product infringes each element of at least one claim.") (citation and internal quotation omitted).

Plaintiff does not contest this, arguing instead for an improper legal standard and that it should not be required to reveal its pre-suit investigation at this time.  (Opp. at 15-16.)  This is a red herring—if Plaintiff had sufficient facts to allege infringement for any asserted patent claim, it would provide them as required.  And the fact that discovery could reveal more detail about Plaintiff's infringement theories does not relieve Plaintiff of its obligation to plead sufficient factual support for its claims.  *See North Star Innovations, Inc. v. Etron Tech.*, 2016 WL 9046909, at *4 (dismissing complaint for failure to correlate patent claims on a limitation-by-limitation basis, even though local rules required detailed infringement contentions later in the case).

Further, Plaintiff does not even address the fact that the only conceivable factual support in the Complaint—the "schematic" images—are illegible and unannotated.  There is no correlation between the images and the asserted claim limitations, such that Kingston and the Court are left to guess at their meaning.

And those schematics are only provided for some, <u>but not all</u>, of the asserted claim limitations.  (Complaint at ¶¶ 20-23 (allegations for the '274 Patent), ¶¶ 31-32

(allegations for the '875 Patent), ¶¶ 40-42 (allegations for the '555 Patent), and ¶¶ 50-51 (allegations for the '145 Patent).)  As explained in Kingston's opening Motion (at 11-15), the Complaint completely ignores and does not allege <u>any facts</u> to support a plausible inference that the accused products include the following limitations from each asserted claim:

- '274 Patent, Claim 1—"timing circuit," "differential amplifier," "impedance control circuit," and "level converter";
- '875 Patent, Claim 1—"switches," "capacitors," and "signals";
- '555 Patent, Claim 15—"power supply terminal for creating a first power plane," "memory array peripheral circuitry," and "a second power plane that is independent of the first power plane"; and
- '145 Patent, Claim 1—"sense amplifier," "data storage device," "output data bus," and "data feedback circuit."

Thus, in addition to failing to correlate the features of the accused products to the asserted claims on a limitation-by-limitation basis, as required, the Complaint does not even address numerous claim limitations for each patent-in-suit.  Plaintiff does not even attempt to refute this.  Plaintiff's deficient infringement claims should therefore be dismissed.  *See, e.g.*, *TeleSign*, 2016 WL 4703873, at *3; *North Star Innovations v. Etron*, 2016 WL 9046909, at *4 (dismissing Plaintiff North Star's infringement claims on the patents-in-suit for failing to allege facts for each asserted claim limitation); *North Star Innovations, Inc. v. MicronTech.*, 2017 WL 5501489, at *2 (same).

## II. PLAINTIFF'S IDENTIFICATION OF THE ACCUSED PRODUCTS IS LEGALLY DEFICIENT.

In its Opposition, Plaintiff does not contest the showing in Kingston's opening Motion that the Complaint provides a vague and deficient definition of the universe of accused products.  As shown in Kingston's Motion, the Complaint does not identify <u>any</u> one specific accused product as representative of other Kingston products in its infringement allegations for each patent-in-suit.  (Mot. at 16.)  In addition, the

Complaint does not attempt to allege—even in a conclusory way—that the unidentified product schematics pasted-in for each patent-in-suit are representative of the structure of all of the accused products. Therefore, as in the *Continental Circuits* case, there are no facts in the Complaint to support the inference that any Kingston product is "representative" of the other accused products and "that there is no material difference between them. *Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 679116, at *6 (D. Ariz. Feb. 21, 2017). Accordingly, there is no Kingston product for which the Complaint includes sufficient factual allegations to plead a plausible claim of infringement. *See id.* Plaintiff's Opposition does not deny this.

## CONCLUSION

For the foregoing reasons and those provided in Defendant Kingston's opening Motion (Dkt. No. 20), Kingston respectfully requests that the Court dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state any claim upon which relief can be granted.

Dated: January 22, 2018

Respectfully submitted,

VINSON & ELKINS L.L.P.

By: _____/s/ Christopher Kao_____
Christopher Kao

*Attorneys for Defendant*
*Kingston Technology Company, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on January 22, 2018, the foregoing document was electronically filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, using Court's Electronic Case Filing (ECF) system.  The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice as service of this document by electronic means.  Any party not receiving the Court's electronic notification will be sent a copy of the foregoing document.

Dated: January 22, 2018

By:  */s/ Christopher Kao*
                     Christopher Kao

# EXHIBIT 5

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SA CV 17-01833-DOC (DFMx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | North Star Innovations Inc. v. Kingston Technology Company, Inc. | | |

Present: The Honorable    Douglas F. McCormick

| Denise Vo | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| n/a | n/a |

**Proceedings:**      (In Chambers) Findings and Recommendations re: Defendant's Motion to Dismiss (Dkt. 20)

        In this patent infringement action, Defendant Kingston Technology Company, Inc. ("Defendant") moves to dismiss the Complaint filed by Plaintiff North Star Innovations Inc. ("Plaintiff"). See Dkt. 20 ("Motion"). The Motion was referred to this Court for resolution. See Dkt. 31. For the following reasons, the Motion is GRANTED and the Complaint is DISMISSED with leave to amend.

## 1.0    Background

        Defendant manufactures and sells memory products. See Dkt. 7 ("Complaint") ¶ 7. Defendant's products include memory products such as the 4 Gb DDR3L SDRAM, Part No. D5128EETBPGGBU ("4 Gb DDR3L") and the 8 Gb DDR3L SODIMM, Part No. KVR16LS11/8 ("8 Gb DDR3L"). Id. ¶ 20. Plaintiff alleges that the 4 Gb DDR3L and 8 Gb DDR3L directly infringe its U.S. Patent No. 5,943,274 ("the '274 Patent"); U.S. Patent No. 6,127,875 ("the '875 Patent"); U.S. Patent No. 6,917,555 ("the '555 Patent"); and U.S. Patent No. 6,101,145 ("the '145 Patent") (collectively, the "Asserted Patents"). Id. ¶¶ 21, 31, 40, 50. Specifically, Plaintiff alleges that Defendant's DDR3 and DDR3L product lines, including 4 Gb DDR3L and 8 Gb DDR3L, (collectively, "Accused Products") meet each and every limitation of: (1) Claim 1 of the '274 Patent, id. ¶ 20; (2) Claim 1 of the '875 Patent, id. ¶ 30; (3) Claim 15 of the '555 Patent, id. ¶ 39; and (4) Claims 1 and 6 of the '145 Patent, id. ¶ 49.

## 2.0    Legal Standard

        The Court applies the analysis of Twombly/Iqbal to claims of direct infringement. See Atlas IP, LLC v. Pac. Gas & Elec. Co., No. 15-5469, 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016). A claim of direct infringement need not plead detailed factual allegations, but the complaint must

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SA CV 17-01833-DOC (DFMx) | Date | May 7, 2018 |
|----------|---------------------------|------|-------------|
| Title | North Star Innovations Inc. v. Kingston Technology Company, Inc. | | |

contain enough facts to establish a plausible entitlement to relief that is more than merely speculative. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court must accept all of the complaint's well-pleaded facts as true, disregarding any legal conclusions. See Apollo Fin., LLC v. Cisco Sys., Inc., 190 F. Supp. 3d 939, 942 (C.D. Cal. 2016). The Court then determines whether the facts alleged state a plausible claim for relief. See TeleSign Corp. v. Twillo, Inc., No. 16-2106, 2016 WL 4703873, at *2 (C.D. Cal. Aug. 3, 2016).

To adequately allege direct infringement, a plaintiff must allege facts sufficient to permit the Court to infer that the accused product infringes each element of at least one claim. See e.Digital Corp. v. iBaby Labs, Inc., No. 15-5790, 2016 WL 4427209, at *3 (N.D. Cal. Aug. 22, 2016) ("Several courts applying the Twombly pleading standard to claims of direct patent infringement . . . have required plaintiffs to plausibly allege that the accused produce practices each of the limitations found in at least one asserted claim."); FootBalance System Inc. v. Zero Gravity Inside, Inc., No. 15-1058, 2016 WL 903681, at *2 (S.D. Cal. Feb. 8, 2016) (noting that Rule 8 "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements of a cause of action's elements" (citation omitted)); see also TeleSign, 2016 WL 4703873 at *3.

## 3.0   Discussion

Defendant argues that Plaintiff fails to plead its claims with the degree of specificity required under Twombly and Iqbal. See Motion at 7. Defendant also argues that Plaintiff fails to plausibly allege what products infringe on the Asserted Patents. See id. at 17.

### 3.1   Plaintiff Sufficiently Identifies the Accused Products

The Accused Products are 4 Gb DDR3L, 8 Gb DDR3L, and all other Kingston DDR3 or DDR3L product lines. See Complaint ¶ 20. Defendant counters that the broad range of products accused of infringement—all DDR3 and DDR3L families of products—"does not relate any claim limitations to any actual Kingston product, and does not even identify to which product the illegible images included in the Complaint purportedly relate." Motion at 16-17. Thus, Defendant argues, Plaintiff does not plausibly plead what products allegedly infringe the Asserted Patents. See id.

Courts have generally found that where a plaintiff has identified particular product lines, a defendant has been adequately put on notice of the specific products alleged to infringe. See, e.g., Avocet Sports Tech., Inc. v. Garmin Int'l, Inc., No. 11-04049, 2012 WL 1030031, at *2 (N.D. Cal. Mar. 22, 2012) (dismissing direct infringement claim where plaintiff failed to identify any "particular products, product lines, or product components that allegedly infringed" on the asserted patent); Bender v. Broadcom Corp, No. 09-1147, 2009 WL 3571286, at *4 (N.D. Cal. Oct. 30, 2009) ("[T]here is nothing inherently implausible about an allegation that a large number of a

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SA CV 17-01833-DOC (DFMx) | Date | May 7, 2018 |
|----------|---------------------------|------|-------------|
| Title | North Star Innovations Inc. v. Kingston Technology Company, Inc. | | |

defendant's various product lines infringe the patent when those product lines may be expected to have certain basic components . . . in common and the patent claims technology related to those components.").

Here, Plaintiff identifies two lines of products—DDR3 and DDR3L families—with two specific examples of such products—4 Gb DDR3L and 8 Gb DDR3L. While Plaintiff does not explain how many products are in each of these families, the product lines identify the allegedly infringing products with sufficient specificity. Defendant should be able to discern the specific products within each of its own product lines such that it has been adequately put on notice on the allegedly infringing products.

### 3.2    Plaintiff's Direct Infringement Claims Do Not Meet the Pleading Standard

Defendant contends that Plaintiff has not satisfied the plausibility standard articulated in Twombly and Iqbal because Plaintiff simply parrots the claim language for each element and includes unidentified images without any explanation of their meaning. See Motion at 9. Thus, Defendant claims, Plaintiff fails to allege any facts that would allow Defendant and the Court to plausibly infer that each claim limitation is met. See id. at 9-10.

#### 3.2.1    The '274 Patent

Claim 1 of the '274 Patent claims: "An apparatus for use as an output stage of a memory device, the apparatus comprising: a timing circuit; a differential amplifier responsive to the timing circuit; an impedance control circuit; a level converter responsive to the differential amplifier and the impedance control circuit; and a clock-free latch responsive to the level converter." Dkt. 7-1 at 7-8. Plaintiff claims that the Accused Products infringe that claim by meeting each and every limitation of that claim because "the Accused Product (a memory device) satisfies all of the recited structural limitations such that a memory device includes an output stage that incorporates an improved circuit design for a differential amplifier, which provides a more reliable timing mechanism and thereby facilitates the use of a clock-free latch." Complaint ¶ 21.

But these allegations consist of nothing more than a recitation of the claim elements. The Complaint does not explain through language, diagrams, product documentation, or any other method "what the accused product contains to meet these claim limitations . . . and that helps the Court understand why it is plausible that this is so. . . . There needs to be some facts alleged that articulate why it is plausible that the other party's product infringes that patent claim—not just the patentee asserting, in a conclusory fashion, that it is so." North Star Innovations, Inc. v. Micron Technology, Inc., No. 17-506, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017). In cases "involv[ing] a simple technology," a claim that "merely alleges that certain of Defendants' products 'meet each and every element of at least one claim of Plaintiff's patent'" may suffice. Disc Disease Solutions Inc. v. VGH Solutions, Inc., No. 2017-1483, 2018 WL 2011468, at *3 (Fed. Cir. May 1,

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SA CV 17-01833-DOC (DFMx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | North Star Innovations Inc. v. Kingston Technology Company, Inc. | | |

2018). However, apparatus claims "implicating more complicated technology" must be pleaded with greater specificity than more "straightforward apparatus claims . . . [for which] simply setting out what the patent claims require and then reproducing a picture of the accused product" may suffice. Id. at *3.

The Complaint does allege that reverse-engineered schematics show that the Accused Products meet some limitations of claim 1 of the '274 patent. See Complaint ¶¶ 22, 23. But because the failure to meet any one limitation of claim 1 is sufficient to negate infringement, Plaintiff must allege that each limitation of claim 1 is met in order to establish a plausible claim for relief. See Atlas IP, LLC v. Exelon Corp., No. 15-10746, 2016 WL 2866134, at *5 (N.D. Ill. May 17, 2016). The Complaint therefore fails to plead direct infringement with the requisite specificity.

### 3.2.2   The '875 Patent

Claim 1 of Patent '875 claims "[a] boost circuit having an input terminal and an output terminal, comprising: a first switch coupled between the input terminal and the output terminal and operated by a first phase signal; a second switch coupled between the input terminal and the output terminal and operated by a second phase signal that is opposite to the first phase signal; a first capacitor having a first terminal coupled to the output terminal and a second terminal coupled for receiving a boost signal; and a second capacitor having a first terminal coupled to the output terminal and a second terminal coupled for receiving the boost signal." Dkt. 7-2 at 7. Plaintiff alleges that the Accused Products include a boost circuit that meets the above limitations by parroting Claim 1's language. Complaint ¶ 31. While Plaintiff includes "[r]everse-engineered schematics of the Accused Product" that allegedly "show[s] a boost circuit," Plaintiff does not indicate how the Accused Products meet the remaining limitations of Claim 1.

### 3.2.3   The '555 Patent

Plaintiff also fails to plausibly allege direct infringement of Claim 15 of Patent '555, which claims: "An integrated circuit having power management comprising: processing circuitry for executing instructions; a plurality of memory bit cells contained within a memory array, the plurality of memory bit cells being coupled to a power supply terminal for creating a first power plane; memory array peripheral circuitry that is peripheral to the plurality of memory bit cells, the memory array peripheral circuitry being selectively coupled to the power supply terminal for creating a second power plane that is independent of the first power plane; and control circuitry coupled to the memory array peripheral circuitry that is peripheral to the plurality of memory bit cells, the control circuitry selectively removing electrical connectivity to the power supply terminal of the memory array peripheral circuitry that is peripheral to the plurality of memory bit cells." Dkt. 7-3 at 11.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SA CV 17-01833-DOC (DFMx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | North Star Innovations Inc. v. Kingston Technology Company, Inc. | | |

Plaintiff claims that the Accused Products infringe Claim 15 because they "include[] power management capabilities whereby multiple, independent power planes are used to eliminate or reduce leakage current." Complaint ¶ 40. Yet mirroring the exact language of Claim 15 does not explain which of the Accused Products infringe and how specifically they do so. And while Plaintiff includes a diagram showing the global standards for DDR3 SDRAM products as of 2008, Plaintiff does not allege which of the Accused Products conform to the global standards or how the global standard infringes on Claim 15 simply because it includes power management for an integrated circuit. This meets only the requirements of Claim 15's preamble but does not explain whether any limitations are met. See Dkt. 7-3 at 11.

### 3.2.4   The '145 Patent

Finally, Plaintiff fails to plausibly allege that the Accused Products directly infringe Claims 1 and 6 of the '145 Patent. Claim 1 of the '145 Patent claims: "A sensing circuit for sensing data from a memory array and providing the sensed data to an output data bus, the circuit comprising: a sense amplifier coupled to the memory array; a data storage device coupled between the sense amplifier and the output data bus; and a data feedback circuit having an input terminal coupled to the output data bus and an output terminal coupled to the data storage device." Dkt. 7-4 at 10. Claim 6 states that the circuit is "further comprising an inverter coupled between the data storage device and the input terminal of the output buffer." Id.

However, Plaintiff's allegation that the Accused Products include "a data sensing circuit that utiliz[es] (a) a self-controlled amplifier and clock-free latch to eliminate the need for external timing control signals and (b) a feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation" simply parrots back the limitations of Claim 1. Complaint ¶ 50. The Complaint also fails to address Claim 6 in any capacity. Similarly, the reverse-engineered diagram of the Accused Products does not explain which of the Accused Products was analyzed and how the it meets any of the limitations. Indeed, Plaintiff explains only that the diagram shows "a sensing circuit for sensing data from a memory array," which satisfies only the preamble rather than the limitations. Complaint ¶ 51.

### 3.2.5   Conclusion

In its Opposition, Plaintiff contends that "the Motion relies on a non-existent 'mapping' standard." Opposition at 1. This Court agrees that there is no specific mapping standard or requirement. Nonetheless, for the most part, Plaintiff fails to provide any factual allegations that are not direct recitations of each claim's limitations. The Court thus concludes that the Complaint fails to state a claim for direct infringement of the Asserted Patents by the Accused Products.

### 3.3   Whether Plaintiff May Reserve the Right to Accuse Additional Products

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 17-01833-DOC (DFMx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | North Star Innovations Inc. v. Kingston Technology Company, Inc. | | |

Plaintiff "expressly reserves the right to assert additional patents and additional claims and to identify additional infringing products, in accordance with the Federal Rules of Civil Procedure, the Court's scheduling order, and the Court's local rules." Complaint ¶ 24. Defendant claims that no facts support the inference that any additional Kingston products are materially similar to the DDR3 and DDR3L families or that they infringe on the Asserted Patents. See id. at 17-18. Thus, it argues, Plaintiff cannot reserve this right. See id.

Under the Federal Rules of Civil Procedure, a party may amend its pleading "only with the opposing party's written consent or the court's leave" except in the limited circumstance where a party may amend its pleading as of right. F.R.C.P. 15(a)(1). Courts generally treat motions to amend to add additional patent claims as Rule 15(d) motions. See, e.g., Aten Intern. Co., Ltd. V. Emine Tech. Co., Ltd., No. 09-843, 2010 WL 1462110, at *3-5 (C.D. Cal. Apr. 12, 2010); Masimo Corp. v. Philips Electronics North Am. Corp., No. 09-80, 2010 WL 1609899, at *2-3 (D. Del. Apr. 20, 2010). Under both Rule 15(a) and 15(d), leave to amend to add patents should be freely given "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Aten, 2010 WL 1462110, at *3 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Plaintiff is thus free to move for leave to supplement or amend its Complaint should additional patent claims arise. However, the Court cannot predict whether any such motion would be granted at this juncture. When ruling on any such motion, the Court will consider whether the above reasons apply. The decision of whether additional patents or claims may be added is not solely at Plaintiff's discretion.

### 3.4    Whether the Motion Is Dismissed With or Without Leave to Amend

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. See, e.g., DeSoto v. Yellow Freight System, Inc., 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

Although the Court grants the Motion for failing to state a claim of direct infringement, the Complaint is dismissed with leave to amend. While Plaintiff fails to state a plausible claim for relief, "it is possible that the flaws in the complaint can be cured by the allegation of other facts that support its claims of patent infringement, such as facts identifying the specific infringing product and how such product infringes the [Accused Patents]." Big Baboon, Inc. v. SAP America, Inc.,

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SA CV 17-01833-DOC (DFMx) | Date | May 7, 2018 |
|----------|---------------------------|------|-------------|
| Title | North Star Innovations Inc. v. Kingston Technology Company, Inc. | | |

No. 17-2082, 2018 WL 1400443, at *3-*4 (N.D. Cal. Mar. 20, 2018) (dismissing infringement claims with leave to amend where patentee's simple notice pleading failed to meet the Twombly and Iqbal standards). Should Plaintiff draft a First Amended Complaint, Plaintiff should take care to describe the features and components of the Accused Products with a level of detail sufficient to plausibly demonstrate how each limitation is practiced by Defendant's products.

## 4.0   Conclusion

For the reasons stated above, the Court GRANTS the motion to dismiss and DISMISSES Plaintiff's Complaint with leave to amend. The parties shall file any objections to this Order within 14 days. See Fed. R. Civ. P. 72(b)(2).

Initials of Clerk                     :

dv

# EXHIBIT 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., <br><br>                Plaintiff, <br><br>        v. <br><br> KINGSTON TECHNOLOGY COMPANY, INC., <br>                Defendant. | No. SA CV 17-01833-DOC (DFM) <br><br> Order Accepting Findings and Recommendations of United States Magistrate Judge |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint (Dkt. 7) filed by North Star Innovations Inc. ("Plaintiff"), the Motion to Dismiss the Complaint (Dkt. 20), the Opposition (Dkt. 24) and Reply (Dkt. 26) briefs relating thereto, the Supplement to the Notice of the Motion to Dismiss (Dkt. 37), and the Findings and Recommendations of the assigned United States Magistrate Judge (Dkt. 38). Further, the Court has reviewed Plaintiff's written objections to the Report and Recommendation (Dkt. 40) and the response by Kingston Technology Company, Inc. ("Defendant") (Dkt. 42) and made a de novo determination of those portions of the Report and Recommendation to which objections are made.

1      IT IS HEREBY ORDERED that: (1) the Findings and

2  Recommendations (Dkt. 38) is approved an accepted; and (2) Defendant's

3  Motion to Dismiss (Dkt. 20) is GRANTED and Plaintiff's claims are

4  dismissed with leave to amend.

5

6  Dated: June 25, 2018

7                           *David O. Carter*

8                           DAVID O. CARTER
                             United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 7

RYAN E. HATCH (SBN 235577)
Law Office of Ryan E. Hatch, PC
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Email: ryan@ryanehatch.com

DAVID A. SKEELS (admitted *pro hac vice*)
ENRIQUE SANCHEZ, JR. (admitted *pro hac vice* )
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0573
Facsimile: (817) 878-0501
Email: dskeels@whitakerchalk.com
Email: rsanchez@whitakerchalk.com

Attorneys for Plaintiff
NORTH STAR INNOVATIONS INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., | CASE NO. 8:17-cv-01833-DOC-DFM |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT** |
| KINGSTON TECHNOLOGY COMPANY, INC., | |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff North Star Innovations Inc. ("Plaintiff" or "North Star"), by and through its attorneys, files this First Amended Complaint for Patent Infringement against Defendant Kingston Technology Company, Inc. ("Kingston"), and alleges as follows:

## PARTIES

1.      Plaintiff North Star is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 600 Anton Blvd., Costa Mesa, California  92626. Plaintiff is the owner of seminal patents in the fields of integrated circuits, semiconductor memory architecture, and semiconductor memory devices, including patents that address volatile memory, such as DRAM and SRAM. Plaintiff's portfolio includes patents that teach valuable innovations and improvements related to speed, power consumption, density, reliability, and cost. Plaintiff is and has been actively engaged in licensing efforts with respect to such technologies.

2.      Defendant Kingston is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 17600 Newhope Street, Fountain Valley, CA 92708. Defendant may be served with process by serving it registered agent for service of process, Calvin Leong, 17600 Newhope Street, Fountain Valley, CA 92708, or by serving its counsel of record, Christopher Kao, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, who has appeared in this case and whose email address is christopher.kao@pillsburylaw.com.

3.      According to its website, "Kingston has grown to be the world's largest independent manufacturer of memory products." Kingston is a Forbes 50 company that has been around for more than thirty years and generated worldwide revenues in excess of $6.6B during 2016. With respect to third party suppliers of DRAM modules, Kingston commands nearly 65% of the worldwide market.

## JURISDICTION AND VENUE

3.     This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including §§ 271, 281, 282, 283, 284, and 285.   This Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C.  §§ 1331, and 1338(a).

4.     This Court has personal jurisdiction over Kingston. Upon information and belief, Defendant has regularly conducted and continues to conduct business in the U.S., in the State of California, and in this judicial district. On information and belief, Defendant has committed infringing activities in California and in this judicial district by making, using, offering for sale, and/or selling in the U.S. and/or importing into the U.S. products and systems that infringe the Patents-In-Suit (as defined below) or by placing such infringing products and systems into the stream of commerce with the awareness, knowledge, and intent that they would be used, offered for sale, or sold by others in this judicial district and/or purchased by consumers in this judicial district.  This Court's exercise of personal jurisdiction over Defendant would comport with due process.

5.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

## THE PATENTS-IN-SUIT

6.     On August 24, 1999, U.S. Patent No. 5,943,274 ("the '274 Patent") – entitled "Method and Apparatus For Amplifying a Signal to Produce A Latched Digital Signal" – was lawfully and properly issued by the United States Patent and Trademark Office ("USPTO"), after a full and fair examination. The named inventors on the '274 Patent are Alan S. Roth and Scott G. Nogle, both of Austin, Texas. A true and correct copy of the '274 Patent is attached hereto as <u>Exhibit A</u> and incorporated by reference.

7.     Generally speaking, the '274 Patent teaches, among other things, an improved circuit design for the output stage of a memory device, such as SDRAM, and an improved circuit design for a differential amplifier that provides a more reliable timing mechanism and thereby facilitates the use of a clock-free latch.

8.     On October 3, 2000, U.S. Patent No. 6,127,875 ("the '875 Patent") – entitled "Complimentary Double Pumping Voltage Boost Converter" – was lawfully and properly issued by the USPTO, after a full and fair examination. The named inventors on the '875 Patent are Steven Peter Allen, Ahmad H. Atriss, Gerald Lee Walcott, and Walter C. Seelbach, all of Arizona. A true and correct copy of the '875 Patent is attached hereto as <u>Exhibit B</u> and incorporated by reference.

9.     Generally speaking, the '875 Patent teaches, among other things, an efficient and compact voltage boosting circuit that boosts the available supply voltage and limits output distortion.

10.    On July 12, 2005, U.S. Patent No. 6,917,555 ("the '555 Patent") – entitled "Integrated Circuit Power Management for Reducing Leakage Current in Circuit Arrays and Method Therefor" – was lawfully and properly issued by the USPTO, after a full and fair examination. The named inventors on the '555 Patent are Ryan D. Bedwell, Christopher K.Y. Chun, Qadeer A. Qureshi, and John J. Vaglica, all of Texas. A true and correct copy of the '555 Patent is attached hereto as <u>Exhibit C</u> and incorporated by reference.

11.    Generally speaking, the '555 Patent teaches, among other things, a novel design for an integrated circuit with power management capabilities, where, in certain embodiments, multiple, independent power planes are used to eliminate or reduce leakage current.

12.    On August 8, 2000, U.S. Patent No. 6,101,145 ("the '145 Patent") – entitled "Sensing Circuit and Method" – was lawfully and properly issued by the

USPTO, after a full and fair examination. The named inventor on the '145 Patent James W. Nicholes of Gilbert, Arizona. A true and correct copy of the '145 Patent is attached hereto as Exhibit D and incorporated by reference.

13. Generally speaking, the '145 Patent teaches, among other things, a novel data sensing circuit that, in certain embodiments, utilizes a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and which, in certain embodiments, utilizes a novel feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation.

14. The '274 Patent, the '875 Patent, the '555 Patent, and the '145 Patent may be referred to individually as a "Patent-in-Suit" or collectively as the "Patents-in-Suit."

15. By way of assignment, Plaintiff is the owner of all right, title, and interest in and to the Patents-in-Suit, including the rights to prosecute this action and to collect and receive damages for all past, present, and future infringements.

## COUNT ONE: INFRINGEMENT OF THE '274 PATENT

16. Plaintiff incorporates the above allegations as if set forth here in full.

17. The '274 Patent is valid and enforceable.

18. Defendant does not have a license to practice the patented inventions of the '274 Patent.

19. Kingston has infringed and is currently infringing the '274 Patent by, among other things, making, using, offering for sale, and/or selling within this judicial district and elsewhere in the United States and/or importing into this judicial district and into the United States – without license or authority – products, devices, or systems falling within the scope of one or more claims of the '274 Patent, in violation of at least 35 U.S.C. § 271(a).

20.     For example, Kingston's 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU ("4Gb DDR3L") directly infringes at least Claim 1 of the '274 Patent. Similarly, all Kingston products in the DDR3 or DDR3L families (regardless of density) or a substantially similar variation thereof, including but not limited to the 8GB DDR3L SODIMM (Part#: KVR16LS11/8) and all other Kingston DDR3 or DDR3L families of products (collectively, the "Accused Product"), directly infringe at least Claim 1 of the '274 Patent.

21.     More specifically, the Accused Product infringes at least that claim because it meets each and every limitation of that claim. For example, the Accused Product is a memory device that includes circuitry that is properly characterized as: "an apparatus for use as an output stage of a memory device, the apparatus comprising:[1] a timing circuit; a differential amplifier responsive to the timing circuit; an impedance control circuit; a level converter responsive to the differential amplifier and the impedance control circuit; and a clock-free latch responsive to the level converter." This particular combination of claim elements was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the invention.

22.     The Accused Product (a memory device) satisfies all of the recited structural limitations such that the memory device includes an output stage that incorporates an improved circuit design for a differential amplifier, which provides a more reliable timing mechanism and thereby facilitates the use of a clock-free latch. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations, and it necessarily operates in a way that utilizes a more reliable timing mechanism and thereby facilitates the use of a clock-free latch.

---

[1] Plaintiff does not hereby suggest or concede that the preamble of this or any other claim of any Patent-in-Suit constitutes a substantive limitation. That issue is expressly reserved for subsequent proceedings.

23. Reverse-engineered schematics of an Accused Product show an apparatus for use as an output stage of a memory device. For example:



24. The reverse-engineered schematics of an Accused Product also show a clock-free latch. For example:



25. *See also* preliminary claim chart attached hereto as Ex. E, which is incorporated by reference. It is based on Plaintiff's pre-suit investigation and due diligence, in reliance on publicly available information, documents, and products, and reflects analysis derived therefrom. Defendant has not yet produced technical documents showing its non-public, proprietary semiconductor circuit designs, which it promised to produce nearly two months ago in response to timely and proper document requests. Plaintiff reserves the right to supplement.[2]

---

[2] All preliminary claim charts attached hereto are protected by the attorney work product doctrine and the consulting expert privilege and should have been protected from disclosure on those bases. Plaintiff renews its objections to Judge McCormick's Findings and Recommendations (Dkt. 38) and to this Court's Order approving and accepting those findings

26.     On information and belief, additional products of Kingston are believed to infringe one or more claims of the '274 Patent, because, for example, they include components, such as memory devices and/or controllers, that include the same or substantially the same circuitry. Plaintiff expressly reserves the right to assert additional patents and additional claims and to identify additional infringing products, in accordance with the Federal Rules of Civil Procedure, the Court's scheduling order, and the Court's local rules.

27.     Plaintiff has been damaged by Kingston's infringing conduct and will continue to be damaged unless Kingston is enjoined from further infringement. Accordingly, upon finding for Plaintiff, the Court should award to Plaintiff damages adequate to compensate for the infringement, in an amount to be determined at trial but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the Court. Further, upon judgment in favor of Plaintiff, the Court should permanently enjoin Defendant from committing the infringing acts.

## COUNT TWO: INFRINGEMENT OF THE '875 PATENT

28.     Plaintiff incorporates the above allegations as if set forth here in full.

29.     The '875 Patent is valid and enforceable.

30.     Defendant does not have a license to practice the patented inventions of the '875 Patent.

31.     Defendant has infringed and is currently infringing the '875 Patent by, among other things, making, using, offering for sale, and/or selling within this

---

and recommendations (Dkt. 44). Plaintiff articulated its objections in its Response to Kingston's Motion to Dismiss (Dkt. 24), in its Objections to the Report and Recommendation of Magistrate Judge McCormick (Dkt. 40), and in its oral arguments made on or about May 1, 2018 (a copy of the transcript is on file with the Court or will be filed of record shortly) – all of which are incorporated here by reference.

judicial district and elsewhere in the United States and/or importing into this judicial district and into the United States – without license or authority – products, devices, and/or systems falling within the scope of one or more claims of the '875 Patent, in violation of at least 35 U.S.C. § 271(a). For example, the Accused Product directly infringes at least Claim 1 of the '875 Patent.

32. More specifically, the Accused Product infringes at least Claim 1 because it meets each and every limitation of Claim 1. For example, the Accused Product includes, among other things, a boost circuit that includes "a first switch coupled between the input terminal and the output terminal and operated by a first phase signal; a second switch coupled between the input terminal and the output terminal and operated by a second phase signal that is opposite to the first phase signal; a first capacitor having a first terminal coupled to the output terminal and a second terminal coupled for receiving a boost signal; and a second capacitor having a first terminal coupled to the output terminal and a second terminal coupled for receiving the boost signal." This particular combination of claim elements was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the invention.

33. The Accused Product includes an efficient and compact voltage boosting circuit that boosts the available supply voltage and limits output distortion. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations and necessarily operates in a way that utilizes a boosting circuit to boost the available supply voltage and to limit output distortion.

34. Reverse-engineered schematics of the Accused Product show a boost circuit. For example:



35. *See also* preliminary claim chart attached hereto as Ex. F, which is incorporated by reference. It is based on Plaintiff's pre-suit investigation and due diligence, in reliance on publicly available information, documents, and products, and reflects analysis derived therefrom. Defendant has not yet produced technical documents showing its non-public, proprietary semiconductor circuit designs, which it promised to produce nearly two months ago in response to timely and proper document requests. Plaintiff reserves the right to supplement.

36. On information and belief, additional, similar models of Kingston's memory products are believed to infringe one or more claims of the '875 Patent. Plaintiff expressly reserves the right to assert additional claims and to identify additional infringing products in accordance with the Federal Rules of Civil Procedure, the Court's scheduling order, and the Court's local rules.

37. Plaintiff has been damaged by Defendant's infringing conduct and will continue to be damaged unless Defendant is enjoined from further

infringement. Accordingly, upon finding for Plaintiff, the Court should award to Plaintiff damages adequate to compensate for the infringement, in an amount to be determined at trial but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the Court. Further, upon judgment in favor of Plaintiff, the Court should permanently enjoin Defendant from committing the infringing acts.

## COUNT THREE: INFRINGEMENT OF THE '555 PATENT

38.     Plaintiff incorporates the above allegations as if set forth here in full.

39.     The '555 Patent is valid and enforceable.

40.     Defendant does not have a license to practice the patented inventions of the '555 Patent.

41.     Defendant has infringed and is currently infringing the '555 Patent by, among other things, making, using, offering for sale, and/or selling within this judicial district and elsewhere in the United States and/or importing into this judicial district and into the United States – without license or authority – products, devices, and/or systems falling within the scope of one or more claims of the '555 Patent, in violation of at least 35 U.S.C. § 271(a). For example, the Accused Product directly infringes at least Claim 15 of the '555 Patent.

42.     More specifically, the Accused Product infringes at least Claim 15 because it meets each and every limitation of Claim 15. For example, the above-defined Accused Product is: "An integrated circuit having power management comprising: processing circuitry for executing instructions; a plurality of memory bit cells contained within a memory array, the plurality of memory bit cells being coupled to a power supply terminal for creating a first power plane; memory array peripheral circuitry that is peripheral to the plurality of memory bit cells, the memory array peripheral circuitry being selectively coupled to the power supply

terminal for creating a second power plane that is independent of the first power plane; and control circuitry coupled to the memory array peripheral circuitry that is peripheral to the plurality of memory bit cells, the control circuitry selectively removing electrical connectivity to the power supply terminal of the memory array peripheral circuitry that is peripheral to the plurality of memory bit cells." This particular combination of claim elements was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the invention.

43.     The Accused Product includes power management capabilities whereby multiple, independent power planes are used to eliminate or reduce leakage current. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations and necessarily operates in a way that utilizes multiple, independent power planes to eliminate or reduce leakage current.

44.     Standard-related documents to which the Accused Product conforms show power management for an integrated circuit. For example:



Source: JEDEC Standard DDR3 SDRAM, No. 79-3C November 2008 – P.82

45.     The reverse-engineered schematics of the Accused Product also show control circuitry that can selectively remove electrical connectivity to the power supply terminal. For example:



46.     *See also* preliminary claim chart attached hereto as Ex. G, which is incorporated by reference. It is based on Plaintiff's pre-suit investigation and due diligence, in reliance on publicly available information, documents, and products, and reflects analysis derived therefrom. Defendant has not yet produced technical documents showing its non-public, proprietary semiconductor circuit designs, which it promised to produce nearly two months ago in response to timely and proper document requests. Plaintiff reserves the right to supplement.

47.     On information and belief, additional, similar models of Kingston's memory products are believed to infringe one or more claims of the '555 Patent. Plaintiff expressly reserves the right to assert additional claims and to identify additional infringing products in accordance with the Federal Rules of Civil Procedure, the Court's scheduling order, and the Court's local rules.

48.     Plaintiff has been damaged by Defendant's infringing conduct and will continue to be damaged unless Defendant is enjoined from further infringement. Accordingly, upon finding for Plaintiff, the Court should award to Plaintiff damages adequate to compensate for the infringement, in an amount to be determined at trial but in no event less than a reasonable royalty for the use made

of the invention by the infringer, together with interest and costs as fixed by the Court. Further, upon judgment in favor of Plaintiff, the Court should permanently enjoin Defendant from committing the infringing acts.

## COUNT FOUR: INFRINGEMENT OF THE '145 PATENT

49.     Plaintiff incorporates the above allegations as if set forth here in full.

50.     The '145 Patent is valid and enforceable.

51.     Defendant does not have a license to practice the patented inventions of the '145 Patent.

52.     Defendant has infringed and is currently infringing the '145 Patent by, among other things, making, using, offering for sale, and/or selling within this judicial district and elsewhere in the United States and/or importing into this judicial district and into the United States – without license or authority – products, devices, and/or systems falling within the scope of one or more claims of the '145 Patent, in violation of at least 35 U.S.C. § 271(a). For example, the Accused Product directly infringes at least Claims 1 and 6 of the '145 Patent.

53.     More specifically, the Accused Product infringes at least Claims 1 and 6 because it meets each and every limitation of those claims. For example, with reference to Claim 1, the Accused Product includes: "A sensing circuit for sensing data from a memory array and providing the sensed data to an output data bus, the circuit comprising: a sense amplifier coupled to the memory array; a data storage device coupled between the sense amplifier and the output data bus; and a data feedback circuit having an input terminal coupled to the output data bus and an output terminal coupled to the data storage device." This particular combination of claim elements was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the invention.

54. The Accused Product includes a data sensing circuit that utilizes (a) a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and (b) a feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation. The Accused Product not only has the capability of infringing but, in fact, necessarily infringes by virtue of satisfying all of the recited limitations and necessarily operates in a way that utilizes (a) a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and (b) a feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation.

55. Reverse-engineered schematics of the Accused Product show a sensing circuit for sensing data from a memory array. For example:



56. *See also* preliminary claim chart attached hereto as Ex. H, which is incorporated by reference. It is based on Plaintiff's pre-suit investigation and due diligence, in reliance on publicly available information, documents, and products,

and reflects analysis derived therefrom. Defendant has not yet produced technical documents showing its non-public, proprietary semiconductor circuit designs, which it promised to produce nearly two months ago in response to timely and proper document requests. Plaintiff reserves the right to supplement.

57.     On information and belief, additional, similar models of Kingston's memory products are believed to infringe one or more claims of the '145 Patent. Plaintiff expressly reserves the right to assert additional claims and to identify additional infringing products in accordance with the Federal Rules of Civil Procedure, the Court's scheduling order, and the Court's local rules.

58.     Plaintiff has been damaged by Defendant's infringing conduct and will continue to be damaged unless Defendant is enjoined from further infringement. Accordingly, upon finding for Plaintiff, the Court should award to Plaintiff damages adequate to compensate for the infringement, in an amount to be determined at trial but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the Court. Further, upon judgment in favor of Plaintiff, the Court should permanently enjoin Defendant from committing the infringing acts.

## **DEMAND FOR JURY TRIAL**

59.     Plaintiff hereby demands a trial by jury on all issues.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for entry of judgment as follows:

1.     That Defendant has directly infringed one or more claims of each of the Patents-In-Suit;

2.     That Defendant be ordered to provide an accounting;

3.    That Plaintiff is entitled to, and should recover, all damages to which Plaintiff is entitled under 35 U.S.C. § 284, but in no event less than a reasonable royalty;

4.    That Plaintiff, as the prevailing party, shall recover from Defendant all taxable costs of court;

5.    That Plaintiff shall recover from Defendant all pre- and post-judgment interest on the damages award, calculated at the highest interest rates allowed by law;

6.    That Plaintiff is entitled to enhanced damages of up to three times the amount found by the jury or ordered by the Court, pursuant to 35 U.S.C. § 284;

7.    That this case is exceptional and that Plaintiff shall therefore recover its attorney's fees and other recoverable expenses, under 35 U.S.C. § 285;

8.    That Defendant is permanently enjoined from further infringement of the Patents-in-Suit (to the extent they have not expired); and

9.    That Plaintiff shall recover from Defendant such other and further relief as the Court may deem appropriate.

Dated:  July 9, 2018          */s/ Ryan E. Hatch*

RYAN E. HATCH (SBN 235577)
Law Office of Ryan E. Hatch, PC
13323 W. Washington Blvd., Suite 100
Los Angeles, CA  90066
Telephone: (310) 279-5076
Facsimile: (310) 693-5328
Email: ryan@ryanehatch.com

DAVID A. SKEELS (admitted *pro hac vice*)
ENRIQUE SANCHEZ, JR. (admitted *pro hac vice*)
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

301 Commerce Street, Suite 3500
Fort Worth, Texas  76102
Telephone:  (817) 878-0573
Facsimile:  (817) 878-0501
Email:   dskeels@whitakerchalk.com
Email:   rsanchez@whitakerchalk.com

Attorneys for Plaintiff
NORTH STAR INNOVATIONS INC.

# EXHIBIT 8

Christopher Kao (SBN 237716)
  christopher.kao@pillsburylaw.com
Brock S. Weber (SBN 261383)
  brock.weber@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111-5998
Telephone:  415.983.1000
Facsimile:   415.983.1200

Christine Yang (SBN 102048)
  chrisyang@sjclawpc.com
LAW OFFICE OF S.J. CHRISTINE YANG
17220 Newhope Street, Suite 101-102
Fountain Valley, CA 92708
Telephone:  714.641.4022
Facsimile:   714.641.2082

Attorneys for Defendant
KINGSTON TECHNOLOGY COMPANY, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NORTH STAR INNOVATIONS INC.,<br><br>            Plaintiff,<br><br>      vs.<br><br>KINGSTON TECHNOLOGY<br>COMPANY, INC.,<br><br>            Defendant. | Case No. 8:17-cv-01833-DOC-DFM<br><br>**DEFENDANT KINGSTON'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Jury Trial Demanded<br><br>Honorable David O. Carter |

Defendant Kingston Technology Company, Inc. ("Kingston"), by and through undersigned counsel, hereby files its Answer and Affirmative Defenses to the First Amended Complaint (Dkt. No. 45, "FAC") of Plaintiff North Star Innovations Inc. ("Plaintiff" or "North Star") as follows:

## **PARTIES**

1.     Kingston denies that the patents-in-suit teach valuable innovations or improvements over the prior art.  Kingston is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 and therefore denies them.

2.     Kingston admits it is a corporation organized and existing under the laws of Delaware with its principal place of business at 17600 Newhope Street, Fountain Valley, California 92708.  Kingston admits that Calvin Leong is listed as its registered agent for service of process.  Any remaining allegations of Paragraph 2 are denied.

3.     Kingston admits that the statement, "Kingston has grown to be the world's largest independent manufacturer of memory products," appears on the website, https://www.kingston.com/us/company.  Kingston admits that it was founded more than thirty years ago, in 1987, and that "Kingston Technology Company" is listed as #47 on a 2017 list of "America's Largest Private Companies" created by *Forbes*.  Any remaining allegations of Paragraph 3 are denied.

## **JURISDICTION AND VENUE**

4.     Kingston admits that the FAC purports to state a cause of action for patent infringement arising under Title 35 of the United States Code.  Kingston denies it has infringed the patents-in-suit.  Kingston admits that subject matter jurisdiction over this action exists under 28 U.S.C. §§ 1331 & 1338(a).  Any remaining allegations of the second Paragraph 3 in the FAC are denied.[1]

5.     Paragraph 4 states legal conclusions to which no response is required.  Kingston does not contest that personal jurisdiction exists over Kingston for purposes of this action only.  Any remaining allegations of Paragraph 4 are denied.

6.     Paragraph 5 states legal conclusions to which no response is required.  Kingston does not contest that venue is proper in this District for purposes of this action only.  Any remaining allegations of Paragraph 5 are denied.

---

[1] The FAC mistakenly includes two Paragraphs numbered as Paragraph 3.

## THE PATENTS-IN-SUIT

7.      Kingston admits that what purports to be a copy of United States Patent No. 5,943,274 ("the '274 Patent") is attached to the FAC as Exhibit A and that the face of the '274 Patent bears the title "Method and Apparatus For Amplifying a Signal to Produce A Latched Digital Signal."  Any remaining allegations of Paragraph 6 are denied.

8.      Kingston denies the allegations of Paragraph 7 of the FAC.

9.      Kingston admits that what purports to be a copy of United States Patent No. 6,127,875 ("the '875 Patent") is attached to the FAC as Exhibit B and that the face of the '875 Patent bears the title "Complimentary Double Pumping Voltage Boost Converter."  Any remaining allegations of Paragraph 8 are denied.

10.     Kingston denies the allegations of Paragraph 9 of the FAC.

11.     Kingston admits that what purports to be a copy of United States Patent No. 6,917,555 ("the '555 Patent") is attached to the FAC as Exhibit C and that the face of the '555 Patent bears the title "Integrated Circuit Power Management for Reducing Leakage Current in Circuit Arrays and Method Therefor."  Any remaining allegations of Paragraph 10 are denied.

12.     Kingston denies the allegations of Paragraph 11 of the FAC.

13.     Kingston admits that what purports to be a copy of United States Patent No. 6,101,145 ("the '145 Patent") is attached to the FAC as Exhibit D and that the face of the '145 Patent bears the title "Sensing Circuit and Method."  Any remaining allegations of Paragraph 12 are denied.

14.     Kingston denies the allegations of Paragraph 13 of the FAC.

15.     Kingston recognizes that the FAC refers to the '274 Patent, the '875 Patent, the '555 Patent, and the '145 Patent as a "Patent-in-Suit," individually, or the "Patents-in-Suit," collectively.  Any remaining allegations of Paragraph 14 are denied.

16.     Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and therefore denies them.

4814-2744-3053.v2

## COUNT ONE: ALLEGED INFRINGEMENT OF THE '274 PATENT

17.     Kingston incorporates by reference its responses to the allegations in Paragraphs 1-15 of the FAC (in Paragraphs 1-16 of this Answer) as if fully set forth herein.

18.     Kingston denies the allegations of Paragraph 17 of the FAC.

19.     Kingston denies the allegations of Paragraph 18 of the FAC.

20.     Kingston denies the allegations of Paragraph 19 of the FAC.

21.     Kingston denies the allegations of Paragraph 20 of the FAC.

22.     Kingston denies the allegations of Paragraph 21 of the FAC.

23.     Kingston denies the allegations of Paragraph 22 of the FAC.

24.     Kingston denies the allegations of Paragraph 23 of the FAC.

25.     Kingston denies the allegations of Paragraph 24 of the FAC.

26.     Kingston denies that it has infringed, either literally or under the doctrine of equivalents, nor contributed to infringement by others, nor actively induced others to infringe, any purportedly valid claim of the '274 Patent.  Kingston denies that Plaintiff served timely or proper document requests, to which a response was required, before the filing of the FAC.  Kingston denies that the "preliminary claim charts" attached to the FAC are protected from disclosure by the attorney work product doctrine or the "consulting expert privilege" or any other doctrine or privilege. Kingston denies any and all allegations in the "preliminary claim charts," including in Exhibit E to the FAC.  Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding on what the "preliminary claim charts" are based or how the analysis therein was derived, and therefore denies them.  Any remaining allegations of Paragraph 25 are denied.

27.     Kingston denies the allegations of Paragraph 26 of the FAC.

28.     Kingston denies the allegations of Paragraph 27 of the FAC.

**COUNT TWO: ALLEGED INFRINGEMENT OF THE '875 PATENT**

29.     Kingston incorporates by reference its responses to the allegations in Paragraphs 1-27 of the FAC (in Paragraphs 1-28 of this Answer) as if fully set forth herein.

30.     Kingston denies the allegations of Paragraph 29 of the FAC.

31.     Kingston denies the allegations of Paragraph 30 of the FAC.

32.     Kingston denies the allegations of Paragraph 31 of the FAC.

33.     Kingston denies the allegations of Paragraph 32 of the FAC.

34.     Kingston denies the allegations of Paragraph 33 of the FAC.

35.     Kingston denies the allegations of Paragraph 34 of the FAC.

36.     Kingston denies that it has infringed, either literally or under the doctrine of equivalents, nor contributed to infringement by others, nor actively induced others to infringe, any purportedly valid claim of the '875 Patent.  Kingston denies that Plaintiff served timely or proper document requests, to which a response was required, before the filing of the FAC.  Kingston denies that the "preliminary claim charts" attached to the FAC are protected from disclosure by the attorney work product doctrine or the "consulting expert privilege" or any other doctrine or privilege. Kingston denies any and all allegations in the "preliminary claim charts," including in Exhibit F to the FAC.  Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding on what the "preliminary claim charts" are based or how the analysis therein was derived, and therefore denies them.  Any remaining allegations of Paragraph 35 are denied.

37.     Kingston denies the allegations of Paragraph 36 of the FAC.

38.     Kingston denies the allegations of Paragraph 37 of the FAC.

**COUNT THREE: ALLEGED INFRINGEMENT OF THE '555 PATENT**

39.     Kingston incorporates by reference its responses to the allegations in Paragraphs 1-37 of the FAC (in Paragraphs 1-38 of this Answer) as if fully set forth herein.

40.     Kingston denies the allegations of Paragraph 39 of the FAC.

41.     Kingston denies the allegations of Paragraph 40 of the FAC.

42.     Kingston denies the allegations of Paragraph 41 of the FAC.

43.     Kingston denies the allegations of Paragraph 42 of the FAC.

44.     Kingston denies the allegations of Paragraph 43 of the FAC.

45.     Kingston denies the allegations of Paragraph 44 of the FAC.

46.     Kingston denies the allegations of Paragraph 45 of the FAC.

47.     Kingston denies that it has infringed, either literally or under the doctrine of equivalents, nor contributed to infringement by others, nor actively induced others to infringe, any purportedly valid claim of the '555 Patent.  Kingston denies that Plaintiff served timely or proper document requests, to which a response was required, before the filing of the FAC.  Kingston denies that the "preliminary claim charts" attached to the FAC are protected from disclosure by the attorney work product doctrine or the "consulting expert privilege" or any other doctrine or privilege. Kingston denies any and all allegations in the "preliminary claim charts," including in Exhibit G to the FAC.  Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding on what the "preliminary claim charts" are based or how the analysis therein was derived, and therefore denies them.  Any remaining allegations of Paragraph 46 are denied.

48.     Kingston denies the allegations of Paragraph 47 of the FAC.

49.     Kingston denies the allegations of Paragraph 48 of the FAC.

**COUNT FOUR: ALLEGED INFRINGEMENT OF THE '145 PATENT**

50.     Kingston incorporates by reference its responses to the allegations in Paragraphs 1-48 of the FAC (in Paragraphs 1-49 of this Answer) as if fully set forth herein.

51.     Kingston denies the allegations of Paragraph 50 of the FAC.

52.     Kingston denies the allegations of Paragraph 51 of the FAC.

53.     Kingston denies the allegations of Paragraph 52 of the FAC.

54.     Kingston denies the allegations of Paragraph 53 of the FAC.

55.     Kingston denies the allegations of Paragraph 54 of the FAC.

56.     Kingston denies the allegations of Paragraph 55 of the FAC.

57.     Kingston denies that it has infringed, either literally or under the doctrine of equivalents, nor contributed to infringement by others, nor actively induced others to infringe, any purportedly valid claim of the '145 Patent.  Kingston denies that Plaintiff served timely or proper document requests, to which a response was required, before the filing of the FAC.  Kingston denies that the "preliminary claim charts" attached to the FAC are protected from disclosure by the attorney work product doctrine or the "consulting expert privilege" or any other doctrine or privilege. Kingston denies any and all allegations in the "preliminary claim charts," including in Exhibit H to the FAC.  Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding on what the "preliminary claim charts" are based or how the analysis therein was derived, and therefore denies them.  Any remaining allegations of Paragraph 56 are denied.

58.     Kingston denies the allegations of Paragraph 57 of the FAC.

59.     Kingston denies the allegations of Paragraph 58 of the FAC.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

60.     Plaintiff's demand for a trial by jury on all issues in Paragraph 59 of the FAC does not require a response.

## PLAINTIFF'S PRAYER FOR RELIEF

Paragraphs 1-9 on pages 16-17 of the FAC set forth Plaintiff's prayer for relief to which no response is required.

Kingston denies that Plaintiff is entitled to any relief whatsoever as prayer or otherwise.

Kingston denies each and every allegation of the FAC not already admitted or denied and further denies that Plaintiff is entitled to any relief whatsoever from Kingston on the basis of any of the purported claims for relief contained in the FAC.

## **AFFIRMATIVE DEFENSES**

Kingston alleges and asserts the following defenses in response to the allegations in the FAC, undertaking the burden of proof only as to those defenses deemed "affirmative" by law, regardless of how such defenses are denominated herein.

### **FIRST DEFENSE**

### **(Non-Infringement)**

Kingston has not infringed and does not infringe, either literally or under the doctrine of equivalents, nor contributed to infringement by others, nor actively induced others to infringe, any purportedly valid claim of the '274, '875, '555, or '145 Patents (the "Asserted Patents").

### **SECOND DEFENSE**

### **(Invalidity)**

Each asserted claim of the Asserted Patents is invalid for failure to comply with one or more requirements of Title 35, United States Code, including without limitation the provisions of 35 U.S.C. §§ 101, 102, 103, 112, and 132, and the rules, regulations, and laws pertaining thereto. For example, Kingston incorporates by reference herein its response to Plaintiff's Interrogatory No. 1, as well as the evidence of invalidity filed in Case Nos. IPR2018-00989, IPR2018-00998, and IPR2018-00999.

### **THIRD DEFENSE**

### **(Prosecution History Estoppel)**

Upon information and belief, by reason of prior art and the proceedings in the U.S. Patent and Trademark Office during the prosecution of the applications that led to the issuance of the Asserted Patents, including, without limitation, amendments, representations, concessions, and admissions made by or on behalf of the applicant, Plaintiff is estopped from asserting that the Asserted Patents cover and include any Kingston products alleged to infringe the Asserted Patents.

**FOURTH DEFENSE**

**(Waiver, Laches, Estoppel, and Acquiescence)**

Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of waiver, laches, estoppel, and/or acquiescence, and/or other equitable doctrines. For example, to the extent any of the Asserted Patents are alleged by Plaintiff to be infringed because of compliance with any standards, such JEDEC Standards, Plaintiff and/or its predecessors-in-interest knew or reasonably should have known about the alleged infringement by the accused products and have unreasonably delayed suit against Kingston. A presumption of laches thus arises because Plaintiff and/or its predecessors-in-interest knew or should have known about the accused products, but unreasonably delayed the filing of this lawsuit. Plaintiff's unreasonable delay in filing this lawsuit has caused material prejudice to Kingston.

**FIFTH DEFENSE**

**(Limitation on Damages)**

Plaintiff's claims for recovery are barred, in whole or in part, by 35 U.S.C. § 287.

**SIXTH DEFENSE**

**(Limitation on Damages)**

Under the provisions of 35 U.S.C. § 286, Plaintiff is precluded from seeking recovery for any of Kingston's alleged infringing acts occurring more than six years before the filing of the FAC.

**SEVENTH DEFENSE**

**(Action Including an Invalid Claim and Limitation on Recovery of Costs)**

Plaintiff's prayer for costs is barred, in whole or in part, by Plaintiff's failure to disclaim any invalid claims under 35 U.S.C. § 288.

4814-2744-3053.v2

## EIGHTH DEFENSE

### (License and/or Exhaustion)

Plaintiff's claims are precluded, in whole or in part, to the extent any allegedly infringing products are licensed either expressly or impliedly and/or under the doctrine of patent exhaustion or first sale.

## NINTH DEFENSE

### (Implied License)

Plaintiff's claims for recovery are barred, in whole or in party, by the doctrine of express license and/or implied license.

## TENTH DEFENSE

### (Absence of Damages)

Plaintiff has not suffered and will not suffer any injury or damages by way of the acts and conduct of Kingston as alleged in the FAC.

## ELEVENTH DEFENSE

### (Unclean Hands)

Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of unclean hands. Plaintiff knows or should have known that the Asserted Patents are exhausted, that Kingston has an express or implied license to practice the Asserted Patents, and that the Asserted Patents are unenforceable due to laches, but Plaintiff, nonetheless, served its FAC in an abusive and unlawful manner on Kingston with knowledge that the Asserted Patents were unenforceable due to at least exhaustion, license, and laches. Further, to the extent any of the Asserted Patents are alleged by Plaintiff to be infringed because of compliance with any standards, such as JEDEC Standards, Plaintiff has engaged in abusive and unlawful behavior by filing its FAC and failing to offer licenses to the Asserted Patents on fair, reasonable, and non-discriminatory terms.

## TWELFTH DEFENSE

### (Patent Misuse)

Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of patent misuse.  For example, to the extent any of the Asserted Patents are alleged by Plaintiff to be infringed because of compliance with any standards, such as JEDEC Standards, Plaintiff has engaged in patent misuse through its abusive and unlawful behavior by filing its FAC and failing to offer licenses to the Asserted Patents on fair, reasonable, and non-discriminatory terms.

## THIRTEENTH DEFENSE

### (Violation of RAND Commitment)

To the extent any of the Asserted Patents are alleged by Plaintiff to be infringed because of compliance with any standards, such as JEDEC Standards, Plaintiff does not offer licenses to the Asserted Patents on fair, reasonable, and non-discriminatory terms and therefore Plaintiff is not entitled to any recovery.

## OTHER AFFIRMATIVE DEFENSES

Kingston's investigation of the claims and its defenses is continuing.  In addition to the defenses set forth herein, Kingston expressly reserves the right to amend its Answer to allege and assert any additional defenses and counterclaims or to supplement its existing defenses under Rule 8 of the Federal Rules of Civil Procedure.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Kingston denies that Plaintiff is entitled to any relief, including the relief requested in its Prayer for Relief, Kingston respectfully requests that the Court enter a judgment against Plaintiff and in favor of Kingston as follows:

A.     That Plaintiff takes nothing and be denied any relief whatsoever;

B.     That the FAC be dismissed on the merits and with prejudice;

C.     That the claims of the Asserted Patents be declared to be not infringed by Kingston;

D.     That the asserted claims of the Asserted Patents be declared to be invalid and/or unenforceable;

E.     Compelling Plaintiff to offer licenses to the Asserted Patents on RAND terms;

F.     That Kingston be awarded its costs incurred in connection with this action;

G.     That this case be deemed exceptional pursuant to 35 U.S.C. § 285, such that Kingston be awarded reasonable attorneys' fees; and

H.     That Kingston be awarded such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Kingston demands a trial by jury as to all claims and issues properly triable thereby.

Dated: July 23, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP

_/s/ Christopher Kao_

By:     Christopher Kao
        Brock S. Weber

Attorneys for Defendant
KINGSTON TECHNOLOGY COMPANY, INC.

# CERTIFICATE OF SERVICE

The undersigned certifies that on July 23, 2018, the foregoing document was electronically filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, using Court's Electronic Case Filing (ECF) system. The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice as service of this document by electronic means. Any party not receiving the Court's electronic notification will be sent a copy of the foregoing document.

Dated: July 23, 2018                    By:   */s/ Christopher Kao*
                                              Christopher Kao

# EXHIBIT 9

RYAN E. HATCH (SBN 235577)
Law Office of Ryan E. Hatch, PC
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Email: ryan@ryanehatch.com

DAVID A. SKEELS (admitted *pro hac vice*)
ENRIQUE SANCHEZ, JR. (admitted *pro hac vice* )
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0573
Facsimile: (817) 878-0501
Email: dskeels@whitakerchalk.com
Email: rsanchez@whitakerchalk.com

Attorneys for Plaintiff
NORTH STAR INNOVATIONS INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., | Case No. 8:17-cv-01833-DOC-DFM |
| Plaintiff, | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | Date: October 1, 2018, 8:30 a.m. |
| KINGSTON TECHNOLOGY COMPANY, INC., | Dept.: Courtroom 9D |
| Defendant. | Judge: Hon. David O. Carter |

PLEASE TAKE NOTICE that on October 1, 2018, 8:30 a.m., or on such other date to be set by the Court, at 411 West Fourth Street, Santa Ana, California 92701, 9th Floor, in Courtroom 9D, before the Honorable David O. Carter, Plaintiff North Star Innovations, Inc. ("North Star") will and herby does move the Court, pursuant to Federal Rules of Civil Procedure 56 and L.R. 56, for an order granting partial summary judgment as to infringement by Kingston Technology Company, Inc. ("Kingston").

This Motion is based on the Memorandum of Points and Authorities filed concurrently herewith, the accompanying Statement of Uncontroverted Facts and Conclusions of Law

pursuant to L.R. 56-1, including the declarations and exhibits cited therein, the [Proposed] Order Regarding Plaintiff's Motion for Partial Summary Judgment, the pleadings and papers on file or to be filed in the above-entitled actions, and upon any additional evidence and argument that may be presented before or at the hearing of this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 6 and 8, 2018.

Dated:  August 24, 2018                WHITAKER CHALK SWINDLE & SCHWARTZ PLLC


                                       /s/ David A. Skeels
                                       David A. Skeels

                                       Attorney for Plaintiff
                                       NORTH STAR INNOVATIONS INC.

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   BRIEF FACTUAL BACKGROUND ...................................................2

    A.   THE PARTIES ..........................................................................2

    B.   THE PATENTS .........................................................................3

III.  BRIEF FACTUAL AND PROCEDURAL BACKGROUND ...........................4

    A.   THE ORIGINAL COMPLAINT, THE ASSERTED PATENTS, AND THE ACCUSED PRODUCTS ....................................4

    B.   ASSIGNMENT TO U.S. DISTRICT JUDGE CARTER AND MAGISTRATE JUDGE MCCORMICK ...................................6

    C.   KINGSTON'S MOTION TO DISMISS .................................6

    D.   PREPARATION FOR THE SCHEDULING CONFERENCE ...........7

    E.   NORTH STAR'S DISCOVERY REQUESTS ......................8

    F.   THE SCHEDULING CONFERENCE ................................10

    G.   NORTH STAR REMINDS KINGSTON OF ITS DISCOVERY OBLIGATIONS ......................................................11

    H.   KINGSTON FINALLY RESPONDS TO NORTH STAR'S DISCOVERY REQUESTS, BUT ITS RESPONSES ARE DEFICIENT ...........................................................13

IV.  APPLICABLE LAW .......................................................................14

    A.   SUMMARY JUDGMENT .....................................................14

    B.   REQUESTS FOR ADMISSION ...........................................15

V.   ARGUMENT ...................................................................................16

VI.  CONCLUSION ...............................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CASES**

*Bastidas v. Chappell*, 791 F.3d 1155 (9th Cir. 2015) ................................................................ 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 14, 16

*Conlon v. U.S.*, 474 F.3d 616 (9th Cir. 2007) .......................................................................... 15

*Flowers v. Lawrence*, 2016 U.S. Dist. LEXIS 54882 (D. Ariz. Jan. 27, 2016) ........................ 12

*Garavito v. JP Morgan Chase Bank Nat'l Ass'n*, No. SACV 12-1885-DOC (MLGx), 2014 U.S.

    Dist. LEXIS 189822 (C.D. Cal. Feb. 20, 2014) ................................................................... 15

*Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295 (D. Kan. 1996) ................................. 14

*Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681 (9th Cir. 2016) ........................................ 12

*Smith v. Tex. San Marcos Treatment Ctr., LP*, No. 3:09-CV-00141-TMB, 2010 U.S. Dist.

    LEXIS 148233 (D. Alaska Jan. 29, 2010) ............................................................................ 14

*Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494 (D. Kan. 1998) ................................................ 14

*U.S. v. Ramirez*, 698 F. App'x 332 (9th Cir. 2017) ................................................................... 15

*Zavala v. Deutsche Bank Tr. Co. Ams.*, 2013 U.S. Dist. LEXIS 77664 (N.D. Cal. May 29,

    2013) ...................................................................................................................................... 12

## **RULES**

Fed. R. Civ. P. 6 .......................................................................................................................... 8

Fed. R. Civ. P. 26 ............................................................................................................... 7, 15

Fed. R. Civ. P. 33 ...................................................................................................................... 13

Fed. R. Civ. P. 34 ...................................................................................................................... 14

Fed. R. Civ. P. 36 ................................................................................................... 12, 13, 15, 16

Fed. R. Civ. P. 56 ............................................................................................................ 14, 15, 16

Fed. R. Civ. P. 72 ...................................................................................................................... 12

Fed. R. Evid. 201 .................................................................................................................... 4, 5

1

**STATUTES**

2    28 U.S.C § 636 ........................................................................................................... 12

3    35 U.S.C § 154 ............................................................................................................. 5

4    35 U.S.C § 156 ............................................................................................................. 5

5    35 U.S.C § 271 ....................................................................................................... 13, 16

6    35 U.S.C § 285 ........................................................................................................... 17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **EXHIBITS**

| | | |
|---|---|---|
| Exhibit A | Declaration of David A. Skeels | App. 1 – App. 5 |
| Exhibit 1 | E-mail exchange between David Skeels and opposing counsel, Chris Kao, from February 23, 2018 through April 4, 2018 | App. 6 – App. 11 |
| Exhibit 2 | March 5, 2018 draft of Parties' Joint 26(f) Report | App. 12 – App. 36 |
| Exhibit 3 | March 16, 2018 e-mail serving and attaching Plaintiff's First Set of Combined Discovery Requests to Defendant ("Requests") | App. 37 – App. 51 |
| Exhibit 4 | March 28, 2018 letter from David Skeels to opposing counsel, Chris Kao, enclosing identical copy of the Requests, sent via certified mail, return receipt requested | App. 52 – App. 67 |
| Exhibit 5 | Kingston's Initial Disclosures Under Rule 26(a)(1), served on April 2, 2018. | App. 68 – App. 80 |
| Exhibit 6 | May 1, 2018 Hearing Transcript from the hearing before Judge McCormick on Kingston's Motion to Dismiss | App. 81 – App. 104 |
| Exhibit 7 | E-mails exchanged between David Skeels and opposing counsel, Chris Kao, between June 15, 2018 and June 18, 2018 | App. 105 – App. 108 |
| Exhibit 8 | Kingston's Objections and Responses to Plaintiff's Combined Discovery Requests to Defendant, served July 12, 2018 | App. 109 – App. 134 |
| Exhibit 9 | July 26, 2018 letter from David Skeels to opposing counsel, Chris Kao, regarding motion to compel | App. 135 – App. 144 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff North Star Innovations Inc. ("Plaintiff" or "North Star") filed this patent infringement suit against Defendant Kingston Technology Company, Inc. ("Defendant" or "Kingston") more than ten months ago – on October 19, 2017. North Star alleged that a number of Kingston's products infringe its patents. Shortly thereafter, on January 10, 2018, the Court encouraged the Parties to start discovery before the Scheduling Conference. North Star followed suit, by serving written discovery requests (the "Requests") in March – requests that included narrowly tailored Requests for Admission relating to infringement by one particular product, as well as requests for production and interrogatories relating to: infringement; invalidity; and damages.

Kingston's responses to the Requests for Admission were due no later than April 30, 2018. Kingston did not respond within 30 days or for many months thereafter. By failing to timely respond, Kingston admitted that at least one accused product infringed certain asserted claims. To be clear, Kingston has not admitted infringement as to all of the Accused Products and has not admitted infringement as to all claims that may be asserted in this case. Further, Kingston intends to challenge the validity of the patents and will also challenge damages.

At the Scheduling Conference on April 30, 2018 (i.e., the last conceivable day on which Kingston was required to answer the Requests for Admission), the Court set an aggressive schedule that allowed just eight more months for discovery and scheduled trial for July 23, 2019 – less than 15 months away. The Parties must now make strategic decisions about how to complete discovery, whether and when to serve expert reports and on which issues, whether and when to file dispositive motions, and how best to prepare for trial. So that the Parties may focus

their efforts exclusively on the remaining disputed issues, North Star hereby moves for partial summary judgment of infringement.[1]

## II.   BRIEF FACTUAL BACKGROUND

### A.   The Parties

North Star is a Costa Mesa, California-based company that is a wholly-owned subsidiary of Wi-LAN Technologies, Inc. ("Wi-LAN"). Wi-LAN has a long and storied history of innovation, which includes the successful commercialization of multiple products relating to high-speed wireless data communication. Wi-LAN's subsidiaries help inventors, small businesses, and other patent holders protect their valuable inventions and property rights – by providing the resources and expertise necessary to challenge billion-dollar infringers, like Kingston. By so doing, Wi-LAN's subsidiaries help produce a level playing field in which serial infringers are held to account.

One of those subsidiaries, North Star, is the owner of seminal patents in the fields of integrated circuits, semiconductor memory architecture, and semiconductor memory devices, including patents that address volatile memory, such as DRAM and SRAM. North Star acquired its portfolio of 3,300+ assets from Freescale Semiconductor, Inc., who acquired many of the patents from Motorola, Inc. – a well-respected pioneer in the semiconductor memory space. The portfolio includes patents that teach valuable innovations and improvements related to speed, power consumption, density, reliability, and cost. Plaintiff is and has been actively engaged in successful licensing efforts with respect to such technologies – including successful litigation in the Central District of California.

---

[1] North Star is mindful of the Court's admonition, that "the Court will only entertain one Motion for Summary Judgment from each party, *typically* after discovery is closed." *See* Dkt. 15 at 3 (emphasis added). Under the *atypical* circumstances described here, North Star respectfully asks the Court to indulge this motion now – so that North Star may proceed advisedly during the limited time remaining for discovery.

Defendant Kingston is a Delaware corporation with its headquarters in Fountain Valley (Orange County), California. According to its website, "Kingston has grown to be the world's largest independent manufacturer of memory products." Kingston is a Forbes 50 company that has been around for more than thirty years and generated worldwide revenues of approximately $10B during 2017. With respect to third party suppliers of DRAM modules, Kingston commanded nearly 75% of the worldwide market as of 2016:

Table: Global Revenue Ranking of DRAM Module Makers, 2015~2016

| Company | Country | Global Revnue Ranking | | DRAM Module Gross Sales Revenue (USD Million) | | | Market Share (%) | |
|---|---|---|---|---|---|---|---|---|
| | | 2016 | 2015 | 2016 | 2015 | YoY % | 2016 | 2015 |
| Kingston Technology | US | 1 | 1 | 5,037 | 5,400 | -6.72% | 72.55% | 68.36% |
| SMART Modular Technologies | US | 2 | 3 | 275 | 350 | -21.43% | 3.96% | 4.43% |
| Ramaxel | China | 3 | 2 | 274 | 450 | -39.11% | 3.95% | 5.70% |
| ADATA Technology | Taiwan | 4 | 4 | 232 | 219 | 6.14% | 3.35% | 2.77% |
| tigo | China | 5 | 5 | 230 | 205 | 12.20% | 3.31% | 2.60% |
| Transcend Information | Taiwan | 6 | 6 | 162 | 194 | -16.50% | 2.33% | 2.45% |
| MA Labs | US | 7 | 7 | 85 | 150 | -43.33% | 1.22% | 1.90% |
| Apacer Technology | Taiwan | 8 | 8 | 69 | 120 | -42.50% | 0.99% | 1.52% |
| Team Group | Taiwan | 9 | 10 | 60 | 70 | -14.29% | 0.86% | 0.89% |
| Corsair Memory | US | 10 | 9 | 58 | 113 | -48.67% | 0.84% | 1.43% |
| Others | | | | 460 | 628 | -26.75% | 6.63% | 7.95% |
| **Total Revenue** | | | | 6,942 | 7,899 | -12.11% | 100.00% | 100.00% |

Note: Module makers have diverse business operations. However, this ranking is based soley on their annual DRAM module revenues.
Source: DRAMeXchange, Sep., 2017

## B. The Patents

On October 1, 2015, North Star acquired from Freescale Semiconductor, Inc. a portfolio of 3,300+ assets. North Star has successfully litigated approximately two dozen of those patents against many of the world's top manufacturers and sellers of memory products and other semiconductor devices.

For example, with respect to semiconductor circuit design patents of the type asserted against Kingston in this case, North Star previously filed the following suits:

- 11.05.15: *North Star Innovations Inc. v. Nanya Technology Corp. USA*, Case No. 1:15-cv-01027-LPS-CJB (D. Del.) (overlapping patent: '875 Patent)

- 02.29.16: *North Star Innovations Inc. v. Toshiba Corp*., Case No. 16-cv-00115 (D. Del.) (overlapping patents: '875 and '555 Patent)

- 03.31.16: *North Star Innovations Inc. v. Elite Semiconductor Memory Tech. Inc*., Case No. 8-16-cv-00600-SJO-FFM (C.D. Cal.) (overlapping patents: '875 and '555 Patents)

- 03.31.16: *North Star Innovations, Inc v. Etron Technology America Inc*., Case No. 8:16-cv-00599-SJO-FFM (C.D. Cal.) (overlapping patents: '274, '875, and '555 Patents)

- 08.29.16: *North Star Innovations Inc. v. Nanya Technology Corp. USA*, Case No. 8:16-cv-01591-JVS-AJW (C.D. Cal.) (overlapping patent: '875 Patent)

- 10.26.16: *North Star Innovations Inc. v. Texas Instruments Inc*., Case No. 1:16-cv-00995-LPS-CJB (D. Del.) (overlapping patent: '555 Patent)

- 05.03.17: *North Star Innovations, Inc. v. Micron Technology, Inc.*, Case No. 1:17-cv-00506-LPS (D. Del.) (overlapping patents: '274 and '875 Patents) (as discussed below, Micron has petitioned for *Inter Partes* Review of both of those patents)

- 05.12.17: *North Star Innovations Inc. v. Sharp Corp*., Case No. 16-cv-00351 (D. Del.) (overlapping patents: '274 and '555 Patents)

- 05.13.17: *North Star Innovations Inc. v. Sony Interactive Enter. Am. LLC*, Case No. 16-cv-00359 (D. Del.) (overlapping patent: '274 Patent)

Presently, only Micron and Kingston are still engaged in litigation against North Star.

## III.    BRIEF FACTUAL AND PROCEDURAL BACKGROUND

This chronology summarizes the relevant events that should frame the Court's analysis.

### A.    The Original Complaint, the Asserted Patents, and the Accused Products

On October 19, 2017, North Star filed its Original Complaint (Dkt. 1) (corrected version at Dkt. 7),[2] alleging that Kingston's DDR3 and DDR3L families of SDRAM memory products (the "Accused Products") infringe at least four North Star patents (the "Asserted Patents"), which may be summarized as follows:

---

[2] Pursuant to Fed. R. Evid. 201, the Court is asked to take judicial notice of specifically referenced docket entries, which are incorporated here by reference. Further, the Declaration of David Skeels attached as Ex. A ("Skeels Dec.") and the exhibits attached thereto (Exs. 1-9) are included in an appendix and incorporated here by reference. For the Court's ease of reference, the appendix pages have been consecutively numbered and shall be referred to as "App. ___."

- U.S. Patent No. 5,943,274 ("the '274 Patent") – entitled "Method and Apparatus For Amplifying a Signal to Produce A Latched Digital Signal" (issued 8.24.99; expired 2.2.18).[3] The '274 Patent teaches, among other things, an improved circuit design for the output stage of a memory device, such as SDRAM, and an improved circuit design for a differential amplifier that provides a more reliable timing mechanism and thereby facilitates the use of a clock-free latch.[4] *See* Dkt. 45-1.

- U.S. Patent No. 6,127,875 ("the '875 Patent") – entitled "Complimentary Double Pumping Voltage Boost Converter" (issued 10.3.00; expired 8.13.18). The '875 Patent teaches, among other things, an efficient and compact voltage boosting circuit that boosts the available supply voltage and limits output distortion. *See* Dkt. 45-2.

- U.S. Patent No. 6,917,555 ("the '555 Patent") – entitled "Integrated Circuit Power Management for Reducing Leakage Current in Circuit Arrays and Method Therefor" (issued 7.12.05; expire 12.31.23). The '555 Patent teaches, among other things, a novel design for an integrated circuit with power management capabilities, where multiple, independent power planes are used to eliminate or reduce leakage current. *See* Dkt. 45-3.

- U.S. Patent No. 6,101,145 ("the '145 Patent") – entitled "Sensing Circuit and Method" (issued 8.8.05; expires 12.21.18). The '145 Patent teaches, among other things, a novel data sensing circuit that utilizes a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and which utilizes a novel feedback circuit to reduce the occurrence of invalid data transitions on the output data bus upon activation. *See* Dkt. 45-4.

Some of these patents have already expired, while at least one of them does not expire for another 5+ years.

With respect to the Accused Products, which were defined broadly in North Star's pleadings to encompass all of Kingston's DDR3 and DDR3L families of products, North Star specifically identified at least two specific products by Part Number: (1) a 4Gb DDR3L SDRAM[5] memory product, Part No. D5128EETBPGGBU, and (2) an 8Gb DDR3L SODIMM memory product, Part No. KVR16LS11/8.

---

[3] The Court may take judicial notice of terms of the Asserted Patents. Fed. R. Evid. 201; 35 U.S.C. §§ 154, 156.
[4] The '274 Patent was successfully asserted by Freescale in at least seven (7) different lawsuits – before it sold that asset (and 3,300 others) to North Star.
[5] "DDR" refers to "double data rate," and "SDRAM" refers to "synchronous dynamic random-access memory" (as contrasted with "asynchronous" DRAM). SDRAM is any dynamic random-access memory (DRAM) where the

To date, North Star has only asserted Claim 1 of the '274 Patent, Claim 1 of the '875 Patent, Claim 15 of the '555 Patent, and Claims 1 and 6 of the '145 Patent (the "Asserted Claims") – though in phone conferences discussing a potential motion to compel, Kingston has conceded that North Star should be permitted to assert additional claims – now that Kingston has finally produced at least some of the relevant technical documents requested many months ago (as discussed further below).

## B. Assignment to U.S. District Judge Carter and Magistrate Judge McCormick

On October 23, 2017, this case was assigned to U.S. District Judge David O. Carter and U.S. Magistrate Judge Douglas F. McCormick. Dkt. 8. In the Initial Standing Order of October 25, 2017 (Dkt. 15), the Court admonished the Parties:

> [A]ny request, whether by application or stipulation, to continue the date of any matter before this Court must be supported by a detailed explanation of the grounds for the requested continuance or extension of time. Without compelling factual support, requests to continue dates set by this Court will not be approved. Proposed stipulations extending scheduling dates do not become effective unless and until this Court so orders.

To date, neither party has requested any continuance or extensions.

## C. Kingston's Motion to Dismiss

On November 9, 2017, North Star agreed to Kingston's request for a 30-day extension "to answer or otherwise move." Dkt. 19. On December 15, 2017, Kingston filed its Motion to Dismiss Plaintiff's Complaint. Dkt. 20.

---

operation of its external pin interface is coordinated by an externally supplied clock signal. SDRAM has a synchronous interface, whereby changes on control inputs are recognized after a rising edge of its clock input. SDRAM memory is typically divided into several equally sized but independent sections called "banks," allowing the device to operate on a memory access command in each bank simultaneously and speed up access in an interleaved fashion. This allows SDRAMs to achieve greater concurrency and higher data transfer rates than asynchronous DRAMs could. The primary benefit of DDR3 SDRAM over its immediate predecessor, DDR2 SDRAM, is its ability to transfer data at twice the rate (eight times the speed of its internal memory arrays), enabling higher bandwidth or peak data rates.

**D.      Preparation for the Scheduling Conference**

On January 10, 2018, this Court issued its Order Setting Scheduling Conference – setting the scheduling conference for March 26, 2018. Dkt. 23. The Court further stated, in relevant part:

> [T]he Court encourages the parties to begin discovery before the Scheduling Conference. … [A]t the Scheduling Conference the Court will impose tight deadlines to complete discovery.

Dkt. 23. Even though Kingston had not yet answered the Complaint and its Motion to Dismiss was pending, Kingston did not move to stay discovery or otherwise seek relief or clarification from the Court. North Star timely filed its opposition to Kingston's Motion to Dismiss on January 13, 2018. Dkt. 24.

At least as early as March 5, 2018, Kingston made it clear – in an early draft of the Parties' Joint 26(f) Report – that it intended to seek *Inter Partes* Review ("IPR") of all the Asserted Patents. Ex. 2, App. 13, 28-29. Accordingly, it is reasonable to assume that Kingston had by that time performed the necessary analysis to conclude that the Asserted Patents are invalid.

On March 13, 2018, in advance of the Scheduling Conference, the Parties filed their Joint Report under Fed. R. Civ. P. 26(f). Dkt. 28. The Parties' Joint Report reflected Kingston's desire to push the trial out at least 18 months (i.e., 23 months from the filing of the lawsuit). Dkt. 28 at 18. The Joint Report also confirmed Kingston's intent to challenge the validity of the Asserted Patents, limit Plaintiff's damages, and pursue other defenses, including unenforceability, license, patent exhaustion, unclean hands, patent misuse, laches, waiver and estoppel. Dkt. 28 at 5-6, 16.[6]

---

[6] It is unclear why Kingston has not – to this day – filed any petitions for IPR. But if Kingston's past practices are any indication, Kingston will likely wait until the last minute (one year after Plaintiff filed suit) and then seek a stay of the present litigation.

### E.  North Star's Discovery Requests

On March 16, 2018, and pursuant to the Court's directive, Plaintiff followed the Court's instructions and served (via email) written discovery in advance of the Scheduling Conference. *See Plaintiff's First Set of Combined Discovery Requests to Defendant* ("Requests"). Ex. 3, App. 38-51. Out of an abundance of caution (because it was not clear whether Kingston had consented to email service), a second, identical copy of the Requests was served via certified mail on March 28, 2018. Ex. 4, App. 53-54, 67.[7] The narrowly tailored Requests included just four interrogatories, five requests for production, and five requests for admission. Ex. 3, App. 46-50.

Based on the March 16 service date, Kingston's Responses were due thirty days later – on April 15, 2018. Even using the March 28 service date, the Responses were due April 27, 2018, or no later than April 30 – if three (3) days are added per Fed. R. Civ. P. 6(d). The only exception is that Kingston's responses to the Requests for Production were due May 16, 2018 – pursuant to an agreement between the parties (discussed further below). Kingston did not otherwise object to, or seek protection from, Plaintiff's Requests.

North Star's Discovery Requests specifically cited to Federal Rule of Civil Procedure 36 and specifically directed Kingston to "answer each of the following … requests for admission … within thirty (30) days after service hereof." Ex. 3, App. 40. The Discovery Requests included the following narrowly tailored Requests for Admission:

1.      Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 5,943,274 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

2.      Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 6,127,875 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

---

[7] Kingston later acknowledged that it had no objection to service by email. Ex. 1, App. 7-8.

3.      Kingston Technology Company, Inc. has infringed Claim 15 of U.S. Patent No. 6,917,555 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

4.      Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 6,101,145 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

5.      Kingston Technology Company, Inc. has infringed Claim 6 of U.S. Patent No. 6,101,145 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

Ex. 3, App. 50. As relevant here, Plaintiff also served:

- Interrogatory No. 1, asking Kingston to provide its invalidity contentions for the Asserted Claims;

- Interrogatory No. 3, asking Kinston to provide, among other things, data on its U.S. sales of the Accused Products;

- Request for Production No. 2, asking Kingston to produce "documents sufficient to show the design and operation of the Accused Products" and documents that Kingston "contend[s] would be sufficient to determine infringement or non-infringement by the Accused Products"; and

- Request for Production No. 4, asking Kingston to produce, among other things, documents and data "sufficient to show and determine for each [Accused P]roduct the number of units sold … and net profits" from "all U.S. sales of the Accused Products … and for *all* revenues [i.e., *not* just from U.S. sales] attributable to Kingston's manufacture, use, offers of sale, sales, or importation of such products …."

Ex. 3, App. 46-49 (emphasis added).

On March 28, 2018, Judge Carter rescheduled the Scheduling Conference for April 30, 2018. Dkt. 30. Kingston's Motion to Dismiss was then set for hearing on the day after the Scheduling Conference – i.e., on May 1, 2018 – before Magistrate Judge McCormick. Dkt. 32.

By e-mail of April 3, 2018, Kingston's counsel requested additional time to gather and produce documents: "With respect to the discovery, we did receive your requests [sent via email on March 16] and we are collecting responsive documents from our client.  Can we get a 30-day

extension to respond to the requests and to produce documents – we will not have the documents ready by April 16." Ex. 1, App. 7-8. That same day, North Star responded: "Regarding our **document requests**, we are agreeable to an extension until (and including) May 16, 2018, to respond to **those document requests** and to **produce responsive documents**." Ex. 1, App. 7. (emphasis added). North Star did not agree to other extensions, as none were specifically requested. Regardless, at this point, any question of an April 15 deadline versus an April 30 deadline versus a May 16 deadline is moot, since Kingston did not respond to North Star's Requests for Admission by any of those dates or for months thereafter. Ex. 8, App. 110, 133-34. Again, Kingston did not object to, or seek protection from, Plaintiff's requests. Further, Kingston never suggested, and the Parties never discussed, the possibility that Kingston's discovery responses were contingent upon the outcome of its Motion to Dismiss. Skeel Dec., ¶ 12.

## F.    The Scheduling Conference

On April 30, 2018 (i.e., 45 days after North Star served its discovery Requests), the Parties' respective lead counsel, along with Plaintiff's local counsel, appeared before this Court at 8:30 a.m. for the Scheduling Conference. Regarding scheduling issues, the Court was initially displeased and ordered all lawyers out of the courtroom to work cooperatively on finding common ground for scheduling issues. The Court also ordered that each Party's President appear in court by 2:00 p.m. that day. Kingston's counsel eventually backed off of most of his scheduling demands, and the Parties worked cooperatively to reach agreement on many of the scheduling issues. North Star's President arrived by noon. Kingston's President never appeared.

Eventually, Judge Carter invited the lawyers (and North Star's President) back in to the Courtroom and addressed the reasons for his initial reaction – explaining that he now believed the Parties and their Counsel were working (and had been working) cooperatively and in good faith—and proceeded to set various deadlines. For example, he set the following deadlines:

- June 30, 2018: deadline for motions to amend pleadings;

- January 7, 2019 (approximately 8 months after the Scheduling Conference and less than 4.5 months from today): deadline for fact and expert discovery;

- July 23, 2019 (less than 15 months from the date of the Scheduling Conference): trial.

*See* Scheduling Order. Dkt. 35.

At the April 30, 2018, Scheduling Conference, and even though Kingston's responses to the Requests for Admission were due that day, **Kingston:**

- *never* **raised the issue of its pending Motion to Dismiss – even though the hearing on Kingston's motion was set for the very next day before Magistrate Judge McCormick;**

- *never* **suggested that the discovery deadlines, or any other deadlines, should be delayed, postponed, or stayed until its Motion to Dismiss had been resolved;**

- *never* **filed a motion for protection; and**

- *never* **filed a motion to modify the Scheduling Order.**

To the contrary, Kingston simply accepted the Court's ruling.

### G.    North Star Reminds Kingston of its Discovery Obligations

On the very next day, May 1, 2018, the Parties appeared before Magistrate Judge McCormick for Kingston's Motion to Dismiss. Judge McCormick held a 20-minute hearing. At the very beginning, he indicated his preliminary ruling – namely, that the motion was likely to be granted, with leave to amend. But he clarified that any such ruling would merely be "a recommendation to Judge Carter." Ex. 6, App. 86 at 5:1-5; *see also* Ex. 6, App. 101 at 20:3-9 ("I'll take a couple of days to [draft my] findings and recommendation.").

At the hearing, Judge McCormick permitted both sides ample opportunity to raise all issues they deemed relevant. North Star specifically stated: "[A]t Judge Carter's urging and encouragement we got started on the discovery process already. We served … interrogator[ies]

on the defendants. And we expect to be getting their invalidity positions here shortly … if we haven't already received them within the last day or so." Ex. 6, App. 89 at 8:7-12.

**Kingston did not protest or dispute North Star's statement. Further, Kingston did not (1) object to Plaintiff's discovery requests; (2) suggest that the discovery deadlines, or any other deadlines, should be delayed, postponed, or stayed until its Motion to Dismiss had been fully resolved; or (3) file a motion for protection.** *See generally* Ex. 6, App. 82-104.

On May 7, 2018, Judge McCormick issued his "Findings and Recommendations," recommending that Kingston's motion be granted in part and denied in part, recommending that the Complaint be dismissed with leave to amend, and inviting the Parties to file objections within 14 days. Dkt. 38 ("Recommendation"), citing Fed. R. Civ. P. 72(b)(2). As a matter of law, the Recommendation did *not*: (a) serve to "dismiss" Plaintiff's Complaint; (b) alter the discovery deadlines established by the Federal Rules of Civil Procedure or by this Court's orders;  (c) relieve the parties of their discovery obligations; or (d) serve to modify the Court's Scheduling Order. *See, e.g.*, *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B) (setting forth the power and authority of magistrate judges and clarifying that their rulings on dispositive motions are simply non-binding "recommendations," subject to *de novo* review); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015) (same); *see also Flowers v. Lawrence*, 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016) (without consent, magistrate judge handling a motion to dismiss can do no more than "recommend" dismissal of a complaint); *Zavala v. Deutsche Bank Tr. Co. Ams.*, 2013 U.S. Dist. LEXIS 77664, at *203-05 (N.D. Cal. May 29, 2013) (regarding a "dispositive matter … the magistrate can only … make recommendations to the federal trial judge").

On May 21, 2018, North Star filed timely and specific objections to the Recommendation. Dkt. 40. On June 25, 2018, this Court accepted Magistrate Judge McCormick's

Recommendation, granting leave to amend. Dkt. 44. And on July 9, 2018, North Star timely amended its Complaint. Dkt. 45.

Meanwhile, in the months after North Star served its Discovery Requests, North Star raised the issue of Kingston's non-compliance on numerous occasions. For example, by emails of June 15 and 18 (*see* Ex. 7, App. 106-07), and in a spirited phone call on or about July 2, 2018, Plaintiff inquired about the status of Kingston's discovery requests. Skeels Dec., ¶ 13. Kingston refused to produce documents or to otherwise respond to North Star's discovery requests in accordance with applicable deadlines and orders, insisting that it had no obligation to do so.

### H. Kingston Finally Responds to North Star's Discovery Requests, But its Responses are Deficient

On July 12, 2018 – almost four months after North Star's Requests were served and almost three months after Kingston's responses were due, North Star finally received Kingston's *Objections and Responses to Plaintiff's Combined Discovery Requests to Defendant* ("Objections and Responses"). Ex. 8, App. 110-84. In other words, Kingston responded 118 days after the requests were served. By that time, the requests had already been admitted and conclusively established. *See* Fed. R. Civ. P. 36(a)(3) and 36(b); *see also* 35 U.S.C. § 271(a).

The Responses were replete with boilerplate (and, in some instances, inapplicable or non-sensical) objections and provided almost no substantive or responsive information. *See, e.g.*, Ex. 8, App. 118-23 (refusing to provide invalidity contentions and relying on the lack of a claim construction ruling, even though this Court expressly declined to incorporate a claim construction schedule or to schedule a *Markman* hearing); *see also* Ex. 8, App. 127-28 (refusing to produce relevant technical documents and objecting to Plaintiff's reference to "Accused Products" – even though Judge McCormick had already ruled, and this Court agreed, that Plaintiff's Complaint had sufficiently identified the Accused Products). Of course, any objections to the interrogatories had already been waived. Fed. R. Civ. P. 33(b)(4). And

Kingston's objections to the document requests were likewise waived. *See* Fed. R. Civ. P. 34(b)(2); *see also Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 303-04 (D. Kan. 1996) ("the proposition that failure to answer or object in a timely manner constitutes waiver of the right to object" applies equally "to requests for production and interrogatories"); *Smith v. Tex. San Marcos Treatment Ctr., LP*, No. 3:09-CV-00141-TMB, 2010 U.S. Dist. LEXIS 148233, at *7-12 (D. Alaska Jan. 29, 2010) (same), citing *Pulsecard*; *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496 (D. Kan. 1998) (same), citing *Pulsecard*. Kingston did not produce any documents at that time.[8]

By detailed letter of July 26, 2018, North Star threatened to file a motion to compel and, to satisfy its meet-and-confer obligations, set forth some of the legal bases for its complaints – in compliance with L.R. 37-1 through 37-4. (North Star is still trying to determine the best and most efficient way to proceed in this regard.)

Finally, on Friday evening, August 10, 2018 – nearly five months after receiving North Star's Discovery Requests – Kingston produced documents. North Star was not able to download and start reviewing those documents until Monday, August 13, 2018 – i.e., the day before Plaintiff's counsel was scheduled to fly to California for court-ordered mediation. Skeels Dec., ¶ 13. Kingston did not provide its invalidity contentions and still has not done so to this day.p

## IV. APPLICABLE LAW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party asserting that a

---

[8] Kingston also served its first set of discovery on this day – having waited more than six months from the time the Court directed the Parties to begin discovery.

fact cannot be disputed may support the assertion by citing to admissions. Fed. R. Civ. P. 56(c)(1)(A).

**B.** **Requests for Admission**

Federal Rule of Civil Procedure 36(a)(1) states, in relevant part: "A party may serve on any other party a written request to admit … the truth of any matters within the scope of Rule 26(b)(1) relating to … facts, the application of law to fact, or opinions about either." Federal Rule of Civil Procedure 36(a)(3) states, in relevant part: "*Time to Respond; Effect of Not Responding*. A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Federal Rule of Civil Procedure 36(b) states, in relevant part: "A matter admitted under this rule is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission."

A summary judgment motion can be based upon deemed admissions. *Garavito v. JP Morgan Chase Bank Nat'l Ass'n*, No. SACV 12-1885-DOC (MLGx), 2014 U.S. Dist. LEXIS 189822, at *7-11, 13 (C.D. Cal. Feb. 20, 2014); *see also Conlon v. U.S.*, 474 F.3d 616, 621 (9th Cir. 2007) (unanswered requests for admissions may be relied on as basis for granting summary judgment); *U.S. v. Ramirez*, 698 F. App'x 332, 332 (9th Cir. 2017) (affirming Judge Carter's grant of summary judgment, which relied on deemed admissions). Once a matter has been deemed admitted under Rule 36, the court may not consider evidence that is inconsistent with the admission. *Garavito*, 2014 U.S. Dist. LEXIS 189822, at *8. Rule 36(a)(3) is self-executing, and the Court cannot ignore the admissions in considering a party's motions for summary judgment unless it first grants a motion to waive or amend. *Id*. With respect to motions to withdraw admissions (no such motion has been filed in this case), Rule 36(b) is permissive, not mandatory. *Conlon*, 474 F.3d at 621.

## V.   ARGUMENT

The above chronology is provided to put Kingston's failures in context, to demonstrate that Kingston had ample opportunity and reminders of its obligations, and to show that Kingston had no legal basis whatsoever to ignore the Discovery Requests. But the dispositive and uncontroverted facts may be boiled to the following: North Star served its Requests for Admission on March 16, 2018. North Star served the Requests again, via certified mail, on March 28, 2018. Kingston did not answer or object within 30 days of either date. Thus, the matters raised in those Requests were admitted and conclusively established. *See* Fed. R. Civ. P. 36(a)(3) and 36(b).

Specifically, with respect to Kingston's 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU, there is no genuine dispute as to any material fact regarding Kingston's infringement of U.S. Patent Nos. 5,943,274 (Claim 1), 6,127,875 (Claim 1), 6,917,555 (Claim 15), and 6,101,145 (Claims 1 and 6). Kingston has admitted that the specified product infringes each of the Asserted Claims and that Kingston has sold such product within the United States on at least one occasion since October 19, 2011 (i.e., the date that is six years before North Star filed its Complaint). Ex. 3, App. 50. Accordingly, North Star is entitled to judgment as a matter of law regarding Kingston's infringement of the Asserted Claims. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); 35 U.S.C. § 271(a).

## VI.   CONCLUSION

Based on the facts, law, arguments set forth above, the Court should grant partial summary judgment of infringement. Even though North Star (a) served its Discovery Requests more than five months ago – on March 16, 2018; (b) expressly flagged the issue at a hearing on May 1, 2018 (i.e., almost four months ago); and (c) has been reminding Kingston about its discovery obligations since at least the first half of June, Kingston has not yet filed any motion

1  to withdraw the admissions. In the meantime, valuable months of discovery have passed.

2  Kingston has now admitted infringement, and so the Parties should be able to move forward by

3  using the limited amount of time before discovery closes to focus on the remaining disputed

4  issues.

5      Also, at the appropriate time, the Court should consider whether Kingston's discovery

6  shortcomings should render this case "exceptional." *See* 35 U.S.C. § 285. Finally, the Court

7  should grant such other and further relief as may be appropriate.

8

9  Dated:  August 24, 2018                    WHITAKER CHALK SWINDLE & SCHWARTZ PLLC

10

11

12                              By: */s/ David A. Skeels*
                                    David A. Skeels

13
                                    Attorney for Plaintiff
14                                  NORTH STAR INNOVATIONS INC.

15

16                        **CERTIFICATE OF SERVICE**

17      The undersigned hereby certifies that, on August 24, 2018, a copy of the foregoing was

18  served on all counsel of record via the Court's ECF system.

19

20                                  */s/ David A. Skeels*
                                    David A. Skeels
21                                  Counsel for Plaintiff North Star Innovations
                                    Inc.
22

23

24

25

26

27

28

RYAN E. HATCH (SBN 235577)
Law Office of Ryan E. Hatch, PC
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Email: ryan@ryanehatch.com

DAVID A. SKEELS (admitted *pro hac vice*)
ENRIQUE SANCHEZ, JR. (admitted *pro hac vice* )
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0573
Facsimile: (817) 878-0501
Email: dskeels@whitakerchalk.com
Email: rsanchez@whitakerchalk.com

Attorneys for Plaintiff
NORTH STAR INNOVATIONS INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., <br><br> Plaintiff, <br><br> vs. <br><br> KINGSTON TECHNOLOGY COMPANY, INC., <br><br> Defendant. | Case No. 8:17-cv-01833-DOC-DFM <br><br><br> **JURY TRIAL DEMANDED** |

## APPENDIX IN SUPPORT OF PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

| Exhibit A | Declaration of David A. Skeels | App. 1 – App. 5 |
|---|---|---|
| Exhibit 1 | E-mail exchange between David Skeels and opposing counsel, Chris Kao, from February 23, 2018 through April 4, 2018 | App. 6 – App. 11 |
| Exhibit 2 | March 5, 2018 draft of Parties' Joint 26(f) Report | App. 12 – App. 36 |
| Exhibit 3 | March 16, 2018 e-mail serving and attaching Plaintiff's First Set of Combined Discovery Requests to Defendant ("Requests") | App. 37 – App. 51 |
| Exhibit 4 | March 28, 2018 letter from David Skeels to opposing counsel, Chris Kao, enclosing identical copy of the Requests, sent via certified mail, return receipt requested | App. 52 – App. 67 |

DM# 359200

| Exhibit 5 | Kingston's Initial Disclosures Under Rule 26(a)(1), served on April 2, 2018. | App. 68 – App. 80 |
| Exhibit 6 | May 1, 2018 Hearing Transcript from the hearing before Judge McCormick on Kingston's Motion to Dismiss | App. 81 – App. 104 |
| Exhibit 7 | E-mails exchanged between David Skeels and opposing counsel, Chris Kao, between June 15, 2018 and June 18, 2018 | App. 105 – App. 108 |
| Exhibit 8 | Kingston's Objections and Responses to Plaintiff's Combined Discovery Requests to Defendant, served July 12, 2018 | App. 109 – App. 134 |
| Exhibit 9 | July 26, 2018 letter from David Skeels to opposing counsel, Chris Kao, regarding motion to compel | App. 135 – App. 144 |

# North Star's Motion for Summary Judgment

# EXHIBIT A

1 | RYAN E. HATCH (SBN 235577)
2 | Law Office of Ryan E. Hatch, PC
   | 13323 W. Washington Blvd., Suite 100
3 | Los Angeles, CA 90066
   | Email: ryan@ryanehatch.com

4 | DAVID A. SKEELS (admitted *pro hac vice)*
5 | ENRIQUE SANCHEZ, JR. (admitted *pro hac vice* )
   | WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
6 | 301 Commerce Street, Suite 3500
   | Fort Worth, Texas 76102
7 | Telephone: (817) 878-0573
   | Facsimile: (817) 878-0501
8 | Email: dskeels@whitakerchalk.com
   | Email: rsanchez@whitakerchalk.com

9 | Attorneys for Plaintiff
10 | NORTH STAR INNOVATIONS INC.

11 | ## UNITED STATES DISTRICT COURT

12 | ## CENTRAL DISTRICT OF CALIFORNIA

13

| 14 | NORTH STAR INNOVATIONS INC., | |
|----|------------------------------|---|
| 15 | Plaintiff, | Case No. 8:17-cv-01833-DOC-DFM |
| 16 | vs. | |
| 17 | KINGSTON TECHNOLOGY COMPANY, INC., | JURY TRIAL DEMANDED |
| 18 | | |
| 19 | Defendant. | DECLARATION OF DAVID A. SKEELS |

20

21

22

23

24

25

26

27

28

---

**DECLARATION OF DAVID A. SKEELS**
DM# 358405

PAGE 1 OF 4

1

## DECLARATION OF DAVID A. SKEELS

2

3 I, David A. Skeels, do hereby declare as follows:

4       1.    I am a member in good standing of the State Bar of Texas. I

5 am above the age of 21, have never been convicted of a felony or crime of moral

6 turpitude, and am competent to make this Declaration and to testify to these

7 matters.

8       2.    I am counsel of record for Plaintiff North Star Innovations Inc.

9 in the above-reference civil action. All facts stated herein are within my personal

10 knowledge and are true and correct.

11       3.    Attached hereto as Exhibit 1 (App. 6 - 11) is a true and correct

12 copy of an e-mail exchange between me and opposing counsel, Chris Kao, from

13 February 23, 2018 through April 4, 2018, including an April 3, 2018, email from

14 Kingston's counsel requesting additional time to gather and produce documents.

15       4.    Attached hereto as Exhibit 2 (App. 12 - 36) is a true and correct

16 copy of an early draft of the Parties' Joint 26(f) Report, which includes language

17 from Kingston about their intent to pursue *Inter Partes* Review.

18       5.    Attached hereto as Exhibit 3 (App. 37 - 51) is a true and correct

19 copy of the March 16, 2018 e-mail serving Plaintiff's First Set of Combined

20 Discovery Requests to Defendant ("Requests"), as well as the Requests

21 themselves.

22       6.    Attached hereto as Exhibit 4 (App. 52 - 67) is a true and correct

23 copy of a March 28, 2018 letter from me to opposing counsel, Chris Kao, enclosing

24 an identical copy of the Requests (except that the Certificate of Service was

25 updated), which were sent via certified mail, return receipt requested, and the

26 electronic receipt indicating that the article was "Delivered."

27

28

1    7.    Attached hereto as Exhibit 5 (App. 68 - 80) is a true and correct
2  copy of Kingston's Initial Disclosures Under Rule 26(a)(1), which were served on
3  April 2, 2018.

4    8.    Attached hereto as Exhibit 6 (App. 81 - 104) is a true and correct
5  copy of the May 1, 2018 Hearing Transcript from the hearing before Judge
6  McCormick on Kingston's Motion to Dismiss.

7    9.    Attached hereto as Exhibit 7 (App. 105 - 108) is a true and
8  correct copy of e-mails exchanged between me and opposing counsel, Chris Kao,
9  between June 15, 2018 and June 18, 2018, in which I inquired about certain
10 discovery issues.

11    10.    Attached hereto as Exhibit 8 (App. 109 - 134) is a true and
12 correct copy of Kingston's Objections and Responses to Plaintiff's Combined
13 Discovery Requests to Defendant, which I received July 12, 2018.

14    11.    Attached hereto as Exhibit 9 (App. 135 - 144) is a true and
15 correct copy of the July 26, 2018 letter from me to opposing counsel, Chris Kao,
16 regarding a potential motion to compel.

17    12.    During my communications with opposing counsel,
18 particularly Chris Kao, during the January through May 2018 timeframe, I do not
19 recall that Kingston ever suggested or raised the issue that Kingston's discovery
20 obligations or the Court's deadlines were somehow contingent upon the outcome
21 of its Motion to Dismiss.

22    13.    I raised the issue of Kingston's non-compliance or non-
23 responses to North Star's Requests on numerous occasions. For example, by emails
24 of June 15 and 18, I inquired about Kingston's failure to respond. And in a phone
25 call on or about July 2, 2018, I discussed with opposing counsel Plaintiff's position
26 that Kingston's responses to the Requests were overdue.

27

28

**DECLARATION OF DAVID A. SKEELS**                                              **PAGE 3 OF 4**
DM# 358405

App. 4

1    I declare under penalty of perjury that the foregoing is true and correct.

2

3    Executed this 24th day of August 2018, in Fort Worth, Tarrant

4    County, Texas.

5

6

7    _____

8    David A. Skeels

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF DAVID A. SKEELS**                                    **PAGE 4 OF 4**
DM# 358405

# North Star's
# Motion for Summary Judgment

# EXHIBIT 1

**From:** David Skeels
**Sent:** Wed, 4 Apr 2018 00:26:22
**To:** Kao, Christopher
**Cc:** yang christine; Rick Sanchez; Ryan Hatch; Candy K. Sanders; Jennifer Ross
**Subject:** RE: North Star v. Kingston: upcoming Rule 26(f) conference
**Importance:** Normal

Chris,

I'm not aware of any deadline by which to serve initial disclosures. If I am missing something, please let me know. In the meantime, we plan to serve them when they become due. Or, we may choose to serve them in advance of the Apr. 30 Scheduling Conference.

Regarding our document requests, we are agreeable to an extension until (and including) May 16, 2018, to respond to those document requests and to produce responsive documents.

Thanks,

**DAVID SKEELS** | Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



**From:** Kao, Christopher [mailto:ckao@velaw.com]
**Sent:** Tuesday, April 03, 2018 1:22 PM
**To:** David Skeels <DSkeels@whitakerchalk.com>
**Cc:** yang christine <chrisyang@sjclawpc.com>; Rick Sanchez <RSanchez@whitakerchalk.com>; Ryan Hatch
<ryan@ryanehatch.com>; Candy K. Sanders <CSanders@whitakerchalk.com>; Jennifer Ross
<JRoss@whitakerchalk.com>
**Subject:** RE: North Star v. Kingston: upcoming Rule 26(f) conference

Thanks for your e-mail David.

We didn't receive North Star's initial disclosures, which were due yesterday. Can you let me know when you will be providing them?

App. 7

With respect to the discovery, we did receive your requests and we are collecting responsive documents from our client.  Can we get a 30-day extension to respond to the requests and to produce documents – we will not have the documents ready by April 16.

Chris

**From:** David Skeels [mailto:DSkeels@whitakerchalk.com]
**Sent:** Wednesday, March 28, 2018 9:37 AM
**To:** Kao, Christopher <ckao@velaw.com>
**Cc:** yang christine <chrisyang@sjclawpc.com>; Rick Sanchez <RSanchez@whitakerchalk.com>; Ryan Hatch <ryan@ryanehatch.com>; Candy K. Sanders <CSanders@whitakerchalk.com>; Jennifer Ross <JRoss@whitakerchalk.com>
**Subject:** [EXT] FW: North Star v. Kingston: upcoming Rule 26(f) conference

Chris,

I haven't heard from you, but I assume you received the discovery requests we served on Kingston on Friday, March 16, 2018. We also plan to produce some of our documents to you this week. Will you be producing any documents to us prior to your response/production deadline of Monday, April 16, 2018?

Please let me know. Or, alternatively, let me know if you have any questions or concerns.

Thanks,

**DAVID SKEELS** | Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



**From:** David Skeels
**Sent:** Friday, March 16, 2018 11:35 PM
**To:** 'Kao, Christopher' <ckao@velaw.com>
**Cc:** Rick Sanchez <RSanchez@whitakerchalk.com>; yang christine <chrisyang@sjclawpc.com>; Ryan Hatch <ryan@ryanehatch.com>; Candy K. Sanders <CSanders@whitakerchalk.com>; Jennifer Ross <JRoss@whitakerchalk.com>
**Subject:** RE: North Star v. Kingston: upcoming Rule 26(f) conference

Chris,

Please see attached.

Kind regards,

**DAVID SKEELS** | Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



---

**From:** Kao, Christopher [mailto:ckao@velaw.com]
**Sent:** Monday, March 05, 2018 7:38 PM
**To:** David Skeels <DSkeels@whitakerchalk.com>
**Cc:** Rick Sanchez <RSanchez@whitakerchalk.com>; yang christine <chrisyang@sjclawpc.com>; Ryan Hatch <ryan@ryanehatch.com>; Candy K. Sanders <CSanders@whitakerchalk.com>; Jennifer Ross <JRoss@whitakerchalk.com>
**Subject:** RE: North Star v. Kingston: upcoming Rule 26(f) conference

David,

Our proposed edits are in the attached version. I'm around all week and am happy to discuss these at your convenience.

Chris



---

**From:** David Skeels [mailto:DSkeels@whitakerchalk.com]
**Sent:** Monday, March 5, 2018 3:22 PM
**To:** Kao, Christopher <ckao@velaw.com>
**Cc:** Rick Sanchez <RSanchez@whitakerchalk.com>; yang christine <chrisyang@sjclawpc.com>; Ryan Hatch <ryan@ryanehatch.com>; Candy K. Sanders <CSanders@whitakerchalk.com>; Jennifer Ross

&lt;JRoss@whitakerchalk.com&gt;
**Subject:** [EXT] RE: North Star v. Kingston: upcoming Rule 26(f) conference

Hi Chris,

When should we expect your proposed changes to the joint report?

Thank you,

**DAVID SKEELS** | Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



---

**From:** David Skeels
**Sent:** Friday, February 23, 2018 2:36 PM
**To:** 'Kao, Christopher' &lt;ckao@velaw.com&gt;
**Cc:** Rick Sanchez &lt;RSanchez@whitakerchalk.com&gt;; yang christine &lt;chrisyang@sjclawpc.com&gt;; 'Ryan Hatch' &lt;ryan@ryanehatch.com&gt;; Candy K. Sanders &lt;CSanders@whitakerchalk.com&gt;; Jennifer Ross &lt;JRoss@whitakerchalk.com&gt;
**Subject:** North Star v. Kingston: upcoming Rule 26(f) conference

Chris,

Let's plan to have our Rule 26(f) conference on Tuesday, Feb. 27, 2018, at 1:30 PST (3:30 CST). I have attached a draft Joint 26(f) Report for your consideration. I am also working on a draft PO and a draft ESI Order. I may or may not be able to get those to you before Tuesday's meeting.

I will also circulate a calendar invite.

Thanks,

**DAVID SKEELS** | Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com

www.whitakerchalk.com



# North Star's
# Motion for Summary
# Judgment


# EXHIBIT 2

**From:** Kao, Christopher
**Sent:** Mon, 5 Mar 2018 19:37:54
**To:** David Skeels
**Cc:** Rick Sanchez; yang christine; Ryan Hatch; Candy K. Sanders; Jennifer Ross
**Subject:** RE: North Star v. Kingston: upcoming Rule 26(f) conference
**Importance:** Normal
**Attachments:**
DMS-#324849-v2-Joint_26f_report (Kingston Edits).DOCX;

David,

Our proposed edits are in the attached version.  I'm around all week and am happy to discuss these at your convenience.

Chris



From: David Skeels [mailto:DSkeels@whitakerchalk.com]
Sent: Monday, March 5, 2018 3:22 PM
To: Kao, Christopher <ckao@velaw.com>
Cc: Rick Sanchez <RSanchez@whitakerchalk.com>; yang christine <chrisyang@sjclawpc.com>; Ryan Hatch <ryan@ryanehatch.com>; Candy K. Sanders <CSanders@whitakerchalk.com>; Jennifer Ross <JRoss@whitakerchalk.com>
Subject: [EXT] RE: North Star v. Kingston: upcoming Rule 26(f) conference

Hi Chris,

When should we expect your proposed changes to the joint report?

Thank you,

**DAVID SKEELS** | Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



---

**From:** David Skeels
**Sent:** Friday, February 23, 2018 2:36 PM
**To:** 'Kao, Christopher' <ckao@velaw.com>
**Cc:** Rick Sanchez <RSanchez@whitakerchalk.com>; yang christine <chrisyang@sjclawpc.com>; 'Ryan Hatch' <ryan@ryanehatch.com>; Candy K. Sanders <CSanders@whitakerchalk.com>; Jennifer Ross <JRoss@whitakerchalk.com>
**Subject:** North Star v. Kingston: upcoming Rule 26(f) conference

Chris,

Let's plan to have our Rule 26(f) conference on Tuesday, Feb. 27, 2018, at 1:30 PST (3:30 CST). I have attached a draft Joint 26(f) Report for your consideration. I am also working on a draft PO and a draft ESI Order. I may or may not be able to get those to you before Tuesday's meeting.

I will also circulate a calendar invite.

Thanks,

**DAVID SKEELS** │ Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



---

**From:** Kao, Christopher [mailto:ckao@velaw.com]
**Sent:** Thursday, February 22, 2018 12:05 AM
**To:** David Skeels <DSkeels@whitakerchalk.com>
**Cc:** Rick Sanchez <RSanchez@whitakerchalk.com>; yang christine <chrisyang@sjclawpc.com>
**Subject:** RE: North Star v. Kingston: extension

Would 12 pm CT / 10 am PT work instead?

App. 14

Chris

---

**From:** David Skeels [mailto:DSkeels@whitakerchalk.com]
**Sent:** Wednesday, February 21, 2018 2:27 PM
**To:** Kao, Christopher <ckao@velaw.com>
**Cc:** Rick Sanchez <RSanchez@whitakerchalk.com>; yang christine <chrisyang@sjclawpc.com>
**Subject:** [EXT] RE: North Star v. Kingston: extension

How about Tues at 11 am CT for our 26(f) conference?

**DAVID SKEELS** | Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



---

**From:** Kao, Christopher [mailto:ckao@velaw.com]
**Sent:** Wednesday, February 21, 2018 11:23 AM
**To:** David Skeels <DSkeels@whitakerchalk.com>
**Cc:** Rick Sanchez <RSanchez@whitakerchalk.com>; yang christine <chrisyang@sjclawpc.com>
**Subject:** RE: North Star v. Kingston: extension

Thanks David.

I'm out of town for business meetings this week, but I'll be in the office all next week and will be available to discuss the draft Rule 26(f) report and settlement. It looks like Tuesday, Wednesday or Thursday will work best for me.

Chris

---

**From:** David Skeels [mailto:DSkeels@whitakerchalk.com]
**Sent:** Tuesday, February 20, 2018 7:59 AM
**To:** Kao, Christopher <ckao@velaw.com>
**Cc:** Rick Sanchez <RSanchez@whitakerchalk.com>; yang christine <chrisyang@sjclawpc.com>
**Subject:** [EXT] RE: North Star v. Kingston: extension

FRE 408

Hi Chris,

App. 15

I am working on a draft 26f report, which I hope to circulate within the next day or so. Please let me know your availability this week and next for a 26f conference.

Also, please let me know whether we should expect to hear from you on the settlement front – now that a week has passed since we provided (at your request) a listing of the patents in the SecureWave portfolio.

Thanks,

**DAVID SKEELS** │ Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



---

```
Confidentiality Notice: This e-mail and any attachments are
intended only for use by the individual or entity named herein
and may contain legally privileged or confidential information.  If
you are not the intended recipient of this e-mail, you are hereby
notified that any dissemination, distribution, or copying of this
e-mail or of any attachment is strictly prohibited. If you have
received this e-mail in error, please immediately notify the
sender at Whitaker Chalk Swindle & Schwartz PLLC by
telephone at (817) 878-0500 or return e-mail, do not read it and
permanently delete the original.  ------- Thank You.
```

---

**CONFIDENTIALITY NOTICE:** The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

Thank You.

RYAN E. HATCH (SBN 235577)
Law Office of Ryan E. Hatch, PC
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Email: ryan@ryanehatch.com

DAVID A. SKEELS (admitted *pro hac vice*)
ENRIQUE SANCHEZ, JR. (admitted *pro hac vice* )
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0573
Facsimile: (817) 878-0501
Email: dskeels@whitakerchalk.com
Email: rsanchez@whitakerchalk.com

Attorneys for Plaintiff
NORTH STAR INNOVATIONS INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., <br><br> Plaintiff, <br><br> vs. <br><br> KINGSTON TECHNOLOGY COMPANY, INC., <br><br> Defendant. | CASE NO. 8:17-cv-01833-DOC-DFM <br><br><br> JOINT REPORT UNDER FED. R. CIV. P. 26(F) <br><br> <u>Scheduling Conference</u> <br> Date: March 26, 2018 <br> Time: 8:30 a.m. <br><br> Judge: Hon. David O. Carter |

1       Pursuant to the Court's January 10, 2018, Order Setting Scheduling

2 Conference (Dkt. 23), Plaintiff North Star Innovations Inc. ("Plaintiff" or "North

3 Star") and Defendant Kingston Technology Company, Inc. ("Defendant" or

4 "Kingston") (North Star and Kingston may be referred to collectively as the

5 "Parties") respectfully submit this Joint Report Under Fed. R. Civ. P. 26(f).

# I.  Matters Raised by Order Setting Scheduling Conference

### (1)  A short factual summary of the case, including the nature and basis of the Parties' claims and defenses

## North Star's Statement

Plaintiff North Star is the owner of seminal patents in the fields of integrated circuits, semiconductor memory architecture, and semiconductor memory devices, including patents that address volatile memory, such as DRAM and SRAM. North Star acquired its portfolio of 3,000+ assets from Freescale Semiconductor, Inc., who acquired many of the patents from Motorola, Inc. The portfolio includes patents that teach valuable innovations and improvements related to speed, power consumption, density, reliability, and cost. Plaintiff is and has been actively engaged in successful licensing efforts with respect to such technologies – including successful litigation in this Court.[1]

Kingston is the world's largest independent manufacturer of memory products. With respect to third party suppliers of DRAM modules, Kingston commands nearly 65% of the worldwide market. As relevant here, Kingston manufactures and sells various DDR3 and DDR3L memory products, which are manufactured in various densities. For example, Kingston sells a 4Gb DDR3L

---

[1] *See, e.g.*, *North Star Innovations, Inc. v. Integrated Device Technology, Inc.*, Case No. 8:16-cv-02055-DOC-DFM (C.D. Cal.) (stipulation of dismissal with prejudice filed January 30, 2017); *North Star Innovations, Inc. v. Etron Technology America, Inc.*, Case No. 8:16-cv-00599-SJO-FFM (C.D. Cal.) (asserting same '274 Patent, '875 Patent, and '555 Patent asserted here) (stipulation of dismissal with prejudice filed on March 29, 2017); *North Star Innovations, Inc. v. UMC Group USA*, Case No. 8:16-cv-01721-CJC-KES (C.D. Cal.) (January 26. 2017).

1

SDRAM memory product, Part No. D5128EETBPGGBU (hereafter, "4Gb DDR3L" or "Accused Product").

Pursuant to 35 U.S.C. § 1 *et seq.*, Plaintiff has sued Kingston alleging that the Accused Product infringes at least four of North Star's patents:

1. U.S. Patent No. 5,943,274 ("the '274 Patent") is entitled "Method and Apparatus For Amplifying a Signal to Produce A Latched Digital Signal." The '274 Patent relates to an improved circuit design for the output stage of a memory device, such as SDRAM, and an improved circuit design for a differential amplifier that provides a more reliable timing mechanism.

2. U.S. Patent No. 6,127,875 ("the '875 Patent") is entitled "Complimentary Double Pumping Voltage Boost Converter." The '875 Patent relates to an efficient and compact voltage boosting circuit that boosts the available supply voltage to a memory device.

3. U.S. Patent No. 6,917,555 ("the '555 Patent") is entitled "Integrated Circuit Power Management for Reducing Leakage Current in Circuit Arrays and Method Therefor." The '555 Patent relates to a design for an integrated circuit with certain power management capabilities that eliminate or reduce leakage current.

4. U.S. Patent No. 6,101,145 ("the '145 Patent") is entitled "Sensing Circuit and Method." The '145 Patent relates to a data sensing circuit that utilizes a self-controlled sense amplifier and a clock-free latch to eliminate the need for external timing control signals and which utilizes a feedback circuit to reduce the occurrence of invalid data transitions.

Plaintiff seeks an award of damages adequate to compensate for the infringement, in an amount to be determined at trial but in no event less than a reasonable royalty for the use made of the inventions by the infringer, together with

2

interest and costs as fixed by the Court. Plaintiff also seeks to permanently enjoin Defendant from committing further infringing acts. *See also* Complaint.

**Kingston's Statement**

Defendant Kingston is a leading provider of innovative computer memory products. Kingston makes and sells a wide variety of memory products, such as Dynamic Random Access Memory ("DRAM") modules, for example, that are used in desktop or laptop computers. DRAM products are often referred to by the industry standard version of their interface, *e.g.*, DDR, DDR2, DDR3, etc. Kingston's corporate headquarters is located in Fountain Valley, California.

Plaintiff North Star is a non-practicing entity and is a wholly-owned subsidiary of Wi-LAN, a Canadian company. Wi-LAN is a well-known non-practicing entity, and purportedly acquired over 3,000 patents, including the four patents-in-suit, from Freescale Semiconductor, Inc. Neither Wi-LAN nor its litigation subsidiary, North Star, invent, innovate, or produce anything. Their business focuses on buying other companies' patents to assert in litigation for a portion of the proceeds (for instance, NXP Semiconductors N.V.—the successor to Freescale—has a financial interest in this case, Dkt. 4).

Kingston contends that the four patents-in-suit are not seminal, lack value, and do not represent an improvement over the prior art. Further, North Star appears to have simply recycled its Complaint from previous complaints against other

3

operating companies like Kingston, without providing any factual allegations to put Kingston on notice of how it allegedly infringes the four patents-in-suit. Therefore, Kingston moved to dismiss North Star's Complaint for failing to state a plausible claim for relief under the pleading standards of *Iqbal* and *Twombly* on December 15, 2017. (Dkt. 20.) Kingston's Motion to Dismiss is fully briefed, and the Court has taken it under submission. (Dkt. 27.)

**(2) A short synopsis of the principal issues in the case**

The principal issues in this case will be:

1. A determination of the scope of the asserted claims in the Asserted Patents;

2. Alleged infringement of the Asserted Patents;

3. Alleged damages for any infringement of the Asserted patents, such as a reasonable and non-discriminatory (RAND) royalty and/or injunctive relief;

4. Defendant Kingston's anticipated defenses, including non-infringement, invalidity, unenforceability, license, patent exhaustion, unclean hands, patent misuse, laches, waiver and estoppel;

5. Whether North Star's damages, if any, are limited under 35 U.S.C. § 287;

6. Whether this case is "exceptional" within the meaning of 35 U.S.C. § 285; and

7. In the event that the Asserted Patents are found not infringed, unenforceable, and/or invalid, the relief, if any, to be awarded to Kingston.

**(3) A statement of whether parties are likely to be added and whether the pleadings are likely to be amended**

4

The Parties do not presently anticipate that any parties will be added. Regarding amendments to the pleadings, the Parties are presently awaiting the Court's ruling on Kingston's Motion to Dismiss based on *Twombly* and *Iqbal*. (Dkt. 20.) Plaintiff anticipates that it will identify, during the course of discovery, additional products and specific part numbers that infringe one or more of the Asserted Patents. To the extent necessary or required (i.e., to the extent such products are not already covered by Plaintiff's Complaint), Plaintiff may seek to amend its pleadings to account for such additional products. As stated in its Motion to Dismiss, Kingston's position is that the Complaint fails to adequately plead infringement for any accused products, and, further, that North Star's attempt to reserve the right to accuse any additional products is legally deficient. (Dkt. 20 at 16-28) The Parties reserve the right to amend their pleadings as permitted under the Federal Rules of Civil Procedure or for good cause, as the case progresses – subject to the Court's rulings and schedule.

> **(4) A statement as to issues which any party believes may be determined by motion and a listing of then-contemplated law and motion matters**

The Parties anticipate that, in due course, various *Daubert* challenges and summary judgment motions will be filed.

> **(5) A statement of what settlement discussions have occurred (specifically excluding any statement of the terms discussed) and**

5

**what settlement procedure is recommended, pursuant to Local Rules 16-15 through 16-15.**9

The Parties have engaged in substantive, good faith settlement discussions over a period of months. Those efforts have thus far been unsuccessful.

The Parties agree that alternative dispute resolution procedures may be useful. To that end, the Parties agree that use of a private mediator (ADR Procedure No. 3) would provide the most likely path to settlement. The Parties agree to mediate with The Hon. Dickran M. Tevrizian (Ret.): https://www.jamsadr.com/tevrizian/ or The Hon. Margaret A. Nagle (Ret.) https://www.jamsadr.com/margaret-nagle/.

**(6)     A discovery plan, which should set forth discovery phases, the order of discovery, and any limitations on discovery**

Subject to the minor modifications described below, the Parties agree that the Federal Rules of Civil Procedure and this Court's Local Rules are adequate to guide and govern discovery in this case.

The Parties propose the following discovery plan, discovery phases, order of discovery, and limitations on discovery:

a. In response to discovery requests, the Parties need not identify or log privileged communications created on or after the date this suit was filed. However, all such documents shall be preserved, and the Parties reserve the right to ask the Court to order, upon a showing of good cause, that such documents be identified on a privilege log.

6

b. Each side shall be limited to a maximum of 8 depositions or 70 hours of deposition testimony – whichever is greater – including 30(b)(6) depositions, but excluding inventor depositions (if any). For expert depositions, an expert may be deposed for five (5) hours, plus an additional 2 hours for each patent that the expert addresses in his or her report(s). For example, an expert that provides a report on non-infringement and invalidity for all four Asserted Patents may be deposed for thirteen (13) hours.

*See also* Exhibit A.

**(7)     A statement of whether trial will be by jury or to the Court and a realistic estimated length of trial**

Plaintiff has requested a jury trial. Trial should be an eight-day, timed jury trial, where each side is given twenty (20) hours, excluding jury selection, opening statement and closing argument.

**(A) Changes that should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made?**

The Parties agree that no changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), except as set forth in this Report and its Exhibit A. The Parties agree to exchange initial disclosures on April 2, 2018.

**(B) The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;**

Plaintiff anticipates seeking discovery on at least the following subjects:

7

1. Design and operation of the Accused Product(s) and other substantially similar products, which will likely require the review of data sheets, application notes, and circuit schematics – preferably in native format.

2. Infringement by the Accused Product(s).

3. Kingston's non-infringement positions, if any.

4. Kingston's invalidity positions, if any. Sub-topics would include secondary considerations of non-obviousness, such as commercial success of the Accused Products.

5. Kingston's other defenses, including affirmative defenses, if any.

6. Marketing, sales, and profits of the Accused Product(s), as well as other *Georgia-Pacific* factors that might bear on the calculation of a reasonable royalty.

7. Plaintiff reserves the right to seek discovery on other subjects, such as Kingston's knowledge of the Asserted Patents and related subjects that could support a claim for willful infringement.

Defendant anticipate seeking discovery on the following subjects:

1. The Asserted Patents and their prosecution;

2. Ownership or rights in the Asserted Patents;

3. The invalidity of the Asserted Patents;

4. The unenforceability of the Asserted Patents due to license, patent exhaustion, estoppel, unclean hands and/or patent misuse, and laches;

5. Kingston's license, express or implied, to the Asserted Patents and/or the exhaustion of North Star's patent rights as to Kingston;

8

6. Kingston's other potential affirmative defenses, including patent misuse, unclean hands, laches, waiver, and estoppel;

7. Kingston's potential claim for damages; and

8. Any other subject reasonably related to the allegations presented in this lawsuit.

Regarding the deadline for completion of discovery and whether discovery should be conducted in phases or limited to or focused on particular issues:

*See* Exhibit A.

> **(C) Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced**

The Parties plan to work together in good faith to draft and file a proposed Order Governing ESI.

> **(D) Any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502**

The Parties agree that the Federal Rules of Civil Procedure, including Rule 26, and the Federal Rules of Evidence, including Rule 502, govern the issues of privilege and inadvertent production in this matter, except as set forth in this Report and its Exhibit A.

Case 8:17-cv-01383-DOC-DFM Document 51-56 Filed 08/04/18 Page 32 of 69 Page ID #:940
Case 8:17-cv-01383-DOC-DFM Document 51-56 Filed 08/04/18 Page 32 of 69 Page ID #:940
#:940

**(E) Changes that should be made in the limitations on discovery imposed under these rules or by local rule, and other limitations that should be imposed**

The Parties agree that no changes are necessary, except as set forth in this Report and its Exhibit A.

**(F) Other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c)**

The Parties plan to work together in good faith to draft and file a proposed Protective Order.

**(8)    A statement of any other issues affecting the status or management of the case**

Based on its past litigation history and *modus operandi*, Plaintiff anticipates that Kingston will seek *inter partes* review ("IPR") of the Asserted Patents. Consistent with the Court's existing instructions, and because the Supreme Court may ultimately find the IPR scheme to be unconstitutional,[2] Plaintiff respectfully submits that the Parties should work cooperatively to proceed with discovery, including the scheduling of depositions. Further, the Court should address various contingencies in the event Kingston does, in fact, seek *inter partes* review for one

---

[2] On November 27, 2017, the U.S. Supreme Court heard oral argument in *Oil States vs. Greene's Energy Group, et al.* to consider various Constitutional challenges to the IPR scheme. Petitioner, along with dozens of supportive amici, detailed the way in which the IPR scheme raises serious Constitutional concerns, including: Separation of Powers, the Seventh Amendment, executive branch takings, and due process. A decision is expected sometime between March and June.

10

or more of the Asserted Patents – since the Court retains broad discretion to manage its docket.

As stated above, Kingston contends that the Asserted Patents do not represent any improvement over the prior art. While Kingston has responded to North Star's Complaint with a Motion to Dismiss, Kingston anticipates that it may file IPR petitions on the Asserted Patents if North Star is able to adequately plead any claims for patent infringement. In that event, Kingston anticipates filing a motion to stay this action pending an IPR review of the validity of the Asserted Patents. Contrary to North Star's position, the Supreme Court's grant of the petition for a writ of certiorari in *Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, No. 16-712 (U.S.), does not preclude a grant of a stay in this case. To deny a stay based on the Supreme Court's pending review in *Oil States* would mean assuming an outcome that at this stage is entirely speculative. The law as it has stood "[f]or several decades" is that "the Patent Office has . . . possessed the authority to reexamine—and perhaps cancel—a patent claim that it had previously allowed." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2137 (2016).

Regarding the management of this patent infringement action, Kingston proposes that the Local Patent Rules for the U.S. District Court for the Northern District of California ("Patent L.R.") be followed, as is frequently done in this

11

District.  In fact, in previous litigation in this District on three of the same Asserted Patents, Plaintiff North Star recognized that the case would benefit from the efficiency and structure provided by the Patent L.R. from the Northern District of California, and agreed to use them.  *North Star Innovations, Inc. v. Etron Technology America, Inc*., Case No. 8:16-cv-00599-SJO-FFM, Dkt. 39 at 4 (C.D. Cal. Sept. 12, 2016) ("The Parties agree that the case is complex and warrants the adoption of the Northern District of California Local Patent Rules, as modified herein.").  Kingston agrees that this case would greatly benefit from the efficiency, organization, and structure provided by the Patent L.R. of the Northern District of California.  Kingston therefore provides dates and requirements from the Patent L.R.'s in its proposed case schedule in Exhibit A.

Regarding the four proposed, specific dates requested by the Court:

a.      discovery cut-off date:

North Star – 11/22/18

Kingston – 02/15/19

b.      final motion cut-off date:

North Star – 04/01/19

Kingston – 07/15/19

c.      date for the Final Pretrial Conference:

North Star – 05/13/19

12

Kingston – 09/09/19

       d.     date for trial:

North Star – 05/28/19

Kingston – 09/24/19

*See also* Exhibit A (deadlines/dates in **bold**).

## II.    <u>Additional Matters Raised by L.R. 26-1</u>

    **(a)**    **Complex Cases**

The Parties agree that this case involves relatively complex technology, namely, semiconductor circuit design. However, the Parties do not believe the procedures of the Manual For Complex Litigation should be utilized.

Because this case involves complex semiconductor technology, Kingston proposes that the Court appoint an independent technical advisor to assist with the technical analysis that will be required for the resolution of contested claim construction, infringement, and validity positions. If the Court is amenable to such a procedure, Kingston proposes that the Parties jointly provide the Court with a list of three potential technical advisors and a proposal regarding scope of duties by September 21, 2018 (with the Parties' submission of a Joint Claim Construction and Prehearing Statement under Patent L.R. 4-3) or within 30 days after the stay is lifted by the Court if this litigation is stayed pending the IPR

13

petitions filed by Kingston.  Kingston proposes that the Parties equally cover the costs of any appointed technical advisor.

Due to the technical complexity of the case, Kingston also proposes that the Parties provide a technical tutorial to the Court on January 7, 2019, in advance of a claim construction hearing on January 21, 2019 (or at the Court's earliest convenience after the tutorial).  The proposed technical advisor could be especially helpful in assisting with the presentation of the technical tutorial to the Court.

**(b)     Motion Schedule**
*See* Part I(4) *supra*; *see also* Exhibit A.

**(c)     ADR**
*See* Part I(5) *supra*; *see also* Exhibit A.

**(d)     Trial Estimate**
*See* Part I(7) *supra*.

**(e)     Additional Parties**
*See* Part I(3) *supra*.

**(f)     Expert Witnesses**
*See* Part I(6) *supra*; *see also* Exhibit A.

Dated:  February ___, 2018     Respectfully submitted,

WHITAKER CHALK SWINDLE & SCHWARTZ PLLC

*/s/ David A. Skeels*
David A. Skeels (Texas Bar No.  24041925)

14

1          Enrique Sanchez, Jr. (Texas Bar No. 24068961)

2          301 Commerce Street, Suite 3500
         Fort Worth, TX 76102

3          Tel: 817-878-0500
         Fax: 817-878-0501

4          dskeels@whitakerchalk.com

5          dcammack@whitakerchalk.com
         Admitted Pro Hac Vice

6         Attorneys for Plaintiff

7         NORTH STAR INNOVATIONS INC.

8

9               **Exhibit A - Parties' Proposed Case Schedule**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">15</div>

| Event | North Star | Kingston |
|---|---|---|
| Scheduling Conference | 03/26/18 at 8:30 am | 03/26/18 at 8:30 am |
| Parties to serve initial disclosures, per Fed. R. Civ. P. 26(a)(1)(A) | 04/02/18 | 04/02/18 |
| Disclosure of Asserted Claims and Infringement Contentions and Document Production (Patent L.R. 3-1, 3-2) | | 04/27/18 |
| Deadline for motion to join additional parties or motion to amend pleadings (must be filed and served within 60 days of Scheduling Order) | 05/25/18 | 05/25/18 |
| Deadline to participate in ADR process approved by the Court (*see* Local Rule 16-15.2) | 05/31/18 | Within 45 days after the Court's *Markman* Order, or by 02/22/19, whichever is later. |
| Last day for a hearing on any motion to join additional parties or motion to amend pleadings (must be scheduled within 90 days of Scheduling Order) | 06/22/18 | 06/22/18 |
| Invalidity Contentions and Document Production (Patent L.R. 3-3, 3-4) | | 07/13/18 |
| Exchange of Proposed Terms for Construction (Patent L.R. 4-1) | | 08/10/18 |
| Exchange of Preliminary Claim Constructions (Patent L.R. 4-2) | | 08/31/18 |
| Joint Claim Construction Statement (Patent L.R. 4-3) | | 09/21/18 |
| Completion of Claim Construction Discovery (Patent L.R. 4-4) | | 10/12/18 |

16

| | | |
|---|---|---|
| Plaintiff's Opening Claim Construction Brief (Patent L.R. 4-5(a)) | | 11/09/18 |
| Defendant's Responsive Claim Construction Brief (Patent L.R. 4-5(b)) | | 12/07/18 |
| Plaintiff's Reply Claim Construction Brief (Patent L.R. 4-5(c)) | | 12/21/18 |
| Claim Construction Tutorial | | 01/07/19 at 8:30 am |
| Claim Construction Hearing | | 01/21/19 at 8:30 am |
| **Fact Discovery Cut-Off [approx. 8 mos. after sched. conf.]** | **11/22/18** | **02/15/19** |
| Parties must comply with Fed. R. Civ. P. 26(a)(2) for any issue on which that party bears burden of proof | 12/14/18 | 03/15/19 |
| Rebuttal expert reports | 01/10/19 | 04/16/19 |
| Expert Discovery Cut-Off | 02/08/19 | 05/17/19 |
| Deadline to file dispositive motions (*see* Local Rule 6-1) | 02/18/19 | 06/07/19 |
| Deadline to file opposing papers for dispositive motions (*see* Local Rule 7-9) | 21 days after filing of dispositive motion | 21 days after filing of dispositive motion |
| Deadline to file reply papers for dispositive motions (*see* Local Rule 7-10) | 7 days after filing of opposition papers | 7 days after filing of opposition papers |
| **Final Motion Cut-Off Date (must be a Monday) (all motions for summary judgment will be heard on this date) [approx. 12 mos. after sched. conf.]** | **04/01/19** | **07/15/19** |
| **Final Pretrial Conference (must be a Monday)** | **05/13/19** | **09/09/19** |

17

| [approx. 13.5 mos. after sched. conf.] | | |
|---|---|---|
| **Trial (must be a Tuesday) [approx. 14 mos. after sched. conf.]** | **05/28/19** | **09/24/19** |

DM#324849

18

# North Star's
# Motion for Summary Judgment

# EXHIBIT 3

**From:** David Skeels
**Sent:** Fri, 16 Mar 2018 23:34:52
**To:** Kao, Christopher
**Cc:** Rick Sanchez; yang christine; Ryan Hatch; Candy K. Sanders; Jennifer Ross
**Subject:** RE: North Star v. Kingston: upcoming Rule 26(f) conference
**Importance:** Normal
**Attachments:**
Discovery to Kingston.pdf;

---

Chris,

Please see attached.

Kind regards,

**DAVID SKEELS** │ Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



RYAN E. HATCH (SBN 235577)
Law Office of Ryan E. Hatch, PC
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Email: ryan@ryanehatch.com

DAVID A. SKEELS (admitted *pro hac vice*)
ENRIQUE SANCHEZ, JR. (admitted *pro hac vice* )
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0573
Facsimile: (817) 878-0501
Email: dskeels@whitakerchalk.com
Email: rsanchez@whitakerchalk.com

Attorneys for Plaintiff
NORTH STAR INNOVATIONS INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT of CALIFORNIA

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., | CASE NO. 8:17-cv-01833-DOC-DFM |
| Plaintiff, | |
| vs. | **PLAINTIFF'S FIRST SET OF COMBINED DISCOVERY REQUESTS TO DEFENDANT** |
| KINGSTON TECHNOLOGY COMPANY, INC., | |
| Defendant. | Judge: Hon. David O. Carter |

1

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

TO: Defendant KINGSTON TECHNOLOGY COMPANY, INC., by and through its counsel of record, Christopher Kao, Vinson & Elkins, 555 Mission Street, Suite 2000 San Francisco, CA 94105.

Pursuant to and in accordance with Federal Rules of Civil Procedure 26, 33, 34, and 36, Plaintiff North Star Innovations, Inc. ("Plaintiff" or "North Star") hereby requests that Defendant Kingston Technology Company, Inc. ("Defendant" or "Kingston") answer each of the following interrogatories, document requests, and requests for admission separately and fully, in writing, and under oath (verification required for interrogatory responses only), and serve a copy upon the undersigned counsel at the offices of Whitaker Chalk Swindle & Schwartz PLLC, 301 Commerce Street, Suite 3500, Fort Worth, Texas 76102, within thirty (30) days after service hereof. These discovery requests are intended to be continuing in nature, requiring you to supplement your answers and responses, setting forth any information within the scope of these discovery requests that may be acquired by you or by your employees, agents, attorneys, or representatives subsequent to your original answers, all as required by Federal Rules of Civil Procedure 26, 33, 34, and 36.

## DEFINITIONS

The following definitions shall apply to these discovery requests:

1. "North Star Innovations, Inc.," "North Star Innovations Inc.," "North Star," and "Plaintiff" refer to Plaintiff North Star Innovations, Inc.

2. "Kingston Technology Company, Inc." "Kingston," "Defendant," "You," and/or "Your" refer to Defendant Kingston Technology Company, Inc., including any parent, subsidiary, affiliate, division, predecessor, or successor thereof and its past and present officers, directors, employees, agents, representatives, or any other person acting on behalf of Kingston Technology Company, Inc..

3. "Litigation" or "Lawsuit" refers to the litigation styled *North Star*

2

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

*Innovations, Inc. v. Kingston Technology Company, Inc.*, which is currently pending in the United States District Court for the Central District of California, Case No. 8:17-cv-01833 DOC (DFM).

4. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all answers that might otherwise be construed to be outside of its scope.

5. "Communication" means the transmittal of information in the form of facts, ideas, inquiries or otherwise, and may be verbal, written, electronic or otherwise, whether in-person or telephonic, whether direct or through an intermediary.

6. "Concerning," "relating," or "referring" mean concerning, relating, or referring in their broadest senses and include, where appropriate, "describing," "comprising," "constituting," "supporting," "consisting of," "regarding," "reflecting," "representing," "pertaining," and "evidencing."

7. "Document" and "tangible thing" are defined to be synonymous in meaning and equal in scope with the broadest usage in Federal Rules of Civil Procedure 26 and 34, and specifically include electronically stored information. "Document" shall further mean the original and each non-identical copy (whether different from the original because of marginal notes, material inserted therein or attached thereto, or otherwise) of any written or graphic nature, however produced or reproduced, whether sent, received or neither, including drafts and both sides thereof, and including but not limited to: papers, books, letters, correspondence, telegrams, cables, telex messages, memoranda, typed or handwritten notes, notations, work papers, transcripts, minutes, reports and recordings of telephone or other conversations or of interviews, conferences or other meetings, maps, charts, plans, specifications, diagrams, photographs, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, ledgers, journals, financial statements, statistical records, desk calendars, appointment books, diaries, expense account records, lists, tabulations, sound recordings, computer printouts, data processing input and output, microfilms, and all

3

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

other records kept by electronic, photographic or mechanical means, and items similar to any of the foregoing.

8.     The term "identify" shall mean:

(a)     When used with respect to an individual or natural person, to set forth: (1) his or her name; (2) any other name used by him or her presently or in the past; (3) his or her present or last known business address, residence address, and telephone numbers; and (4) the corporation, partnership, association, foundation, trust, organization or other entity, and the functional division thereof, with which he or she is now associated, and his or her title, status, position, rank, or classification with such entity at the present and through the time period specified.

(b) When used with respect to a person other than a natural person, including, but not limited to, any corporation, partnership, association, foundation, trust, organization, or other entity or functional division thereof, to set forth: (1) its full name; (2) the address of its principal office or place of business; (3) the nature of the venture (e.g., sole proprietorship, partnership, corporation, etc.); and (4) the identities of its officers, directors, partners, or administrators.

(c)     When used with respect to a communication, to set forth: (1) the dates and places of origin and reception of such communication; (2) each person who was present at or participated in such communication, including but not limited to the author(s) and recipient(s) of such communication; (3) the type of communication (e.g., letter, facsimile transmission, face-to-face conversation, telephone conversation, etc.); (4) the substance of each such communication; and (5) each document that records, shows, or refers to such communication.

(d)     When used with respect to a document or tangible thing, to set forth: (1) the type of document or tangible thing (e.g., letter, memoranda, computer disk, machine, etc.); (2) the date it was created; (3) its authors and signatories; (4) its addressees and all other persons receiving copies; (5) the nature and substance of the document; and (6) its location and its custodian(s).

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

(e)     When used with respect to a fact to: (1) describe the fact; (2) state when it became known to you; (3) state the source from which you learned it; and (4) identify by bates number the documents that record, show, or refer to the fact.

9.      The terms "he," "his," or "him" are generic terms that mean any person as defined herein, whether natural or otherwise, and whether masculine or feminine.

10.     The use of the singular form of any word includes the plural and vice versa.

11.     "Person" or "entity" means any natural person or any business, legal, or governmental entity or association, and any functional division thereof.

12.     The "'274 Patent" shall mean U.S. Patent No. 5,943,274.

13.     Presently, North Star alleges that at least Claim 1 is infringed by Kingston, and North Star has therefore asserted that claim ("Asserted Claim(s) of the '274 Patent") against Kingston. If, in the future, North Star asserts additional claims, then this definition shall be deemed modified in corresponding fashion, and Kingston shall supplement its responses accordingly. *See* Fed. R. Civ. P. 26(e)(1).

14.     The "'875 Patent" shall mean U.S. Patent No. 6,127,875.

15.     Presently, North Star alleges that at least Claim 1 is infringed by Kingston, and North Star has therefore asserted that claim ("Asserted Claim(s) of the '875 Patent") against Kingston. If, in the future, North Star asserts additional claims, then this definition shall be deemed modified in corresponding fashion, and Kingston shall supplement its responses accordingly. *See* Fed. R. Civ. P. 26(e)(1).

16.     The "'555 Patent" shall mean U.S. Patent No. 6,917,555.

17.     Presently, North Star alleges that at least Claim 15 is infringed by Kingston, and North Star has therefore asserted that claim ("Asserted Claim(s) of the '555 Patent") against Kingston. If, in the future, North Star asserts additional claims, then this definition shall be deemed modified in corresponding fashion, and Kingston shall supplement its responses accordingly. *See* Fed. R. Civ. P. 26(e)(1).

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

18.     The "'145 Patent" shall mean U.S. Patent No. 6,101,145. Presently, North Star alleges that at least Claims 1 and 6 are infringed by Kingston, and North Star has therefore asserted those claims ("Asserted Claim(s) of the '145 Patent") against Kingston. If, in the future, North Star asserts additional claims, then this definition shall be deemed modified in corresponding fashion, and Kingston shall supplement its responses accordingly. *See* Fed. R. Civ. P. 26(e)(1).

19.     The '274 Patent, '875 Patent, '555 Patent, and '145 Patent may be referred to collectively as the "Patents-in-Suit" or as the "Asserted Patents."

20.     The Asserted Claim(s) of the '274 Patent, the Asserted Claim(s) of the '875 Patent, the Asserted Claim(s) of the '555 Patent, and the Asserted Claim(s) of the '145 Patent may be referred to collectively as the "Asserted Claims."

21.     As used in these requests, the term "Accused Products" means all Kingston products in the DDR3 or DDR3L families (regardless of density), including the Kingston 4Gb DDR3L SDRAM, Part No. D5128EETBPGGBU, and the Kingston 8GB DDR3L SODIMM, Part#: KVR16LS11/8, that Kingston has made, used, offered for sale, or sold in the United States from October 19, 2011 to the present, or that Kingston has imported into the United States from October 19, 2011 to present. If, in the future, North Star accuses additional products (as may be permitted by the Court or by applicable rules), then this definition shall be deemed modified in corresponding fashion, and Kingston shall supplement its responses accordingly. *See* Fed. R. Civ. P. 26(e)(1).

22.     "PTAB" refers to the United States Patent Trial and Appeal Board.

## INSTRUCTIONS

1.     The below interrogatories call for information (including any information contained in or on any document or thing) that is available to Kingston or in the possession, custody, or control of Kingston, including all information known or available to Kingston's attorneys, agents, representatives, investigators, or any other person acting on

6

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

behalf of Kingston or under the direction or control of Kingston, its attorneys, agents, representatives, or investigators.

2.      Responses should be provided in accordance with the Federal Rules of Civil Procedure, in accordance with the Court's Scheduling Order, and in accordance with any applicable agreements of the parties. At a minimum, interrogatory responses should include references to specific bates-numbered documents, when possible.

3.      Objections to any interrogatory or request for production shall be stated with specificity.

4.      If Kingston cannot answer any interrogatory fully and completely after exercising due diligence to make inquiry and secure the information necessary to do so, please so state and answer each such interrogatory to the full extent possible, specify the portion of such interrogatory that Kingston claims it is unable to answer fully and completely, state the facts upon which Kingston relies to support the contention that it is unable to answer that interrogatory fully and completely, and state what knowledge, information and belief Kingston has concerning the unanswered portion of each such interrogatory.

5.      If Kingston withholds information responsive, in whole or in part, to any interrogatory on any basis, and subject to any agreement the parties may have with respect to privilege logs or related matters, please identify: (a) any privilege or immunity from discovery asserted; (b) all documents or things which contain or refer to the information; (c) all individuals having knowledge of the information; (d) the subject matter and general nature of the information; and (e) all facts which are alleged to support the assertion of privilege or immunity.

6.      If in answering these requests you claim any ambiguity in either an interrogatory or a definition or instruction applicable thereto, identify in your response the language you consider ambiguous and state the interpretation you are using in responding.

7

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

7.      If You object to any interrogatory or to any request for production or to any part thereof on the basis of privilege, answer the remaining part of that interrogatory or request to which Your privilege objection does not apply.

8.      Your interrogatory responses should identify by bates number all documents that support Your response, including but not limited to all documents specifically referenced in Your response.

9.      If any of your responses depend or rely, in whole or in part, upon a particular construction of a claim term that is not defined in the applicable Patent-in-Suit or whose meaning is not readily apparent to a person of ordinary skill in the art (based upon a reading of the patent and its prosecution history), then please identify the claim term(s) in question and provide the definition(s) or construction(s) you ascribed to that term when forming your response, when performing your analysis, or when reaching your conclusion(s). If you contend the claim term(s) in question is/are reasonably susceptible to more than one construction, please provide those other reasonable constructions.

10.      To the extent your responses suggest that any claims are or should be invalid, your response should indicate whether you contend the challenged claim(s) should be invalidated by: (a) this Court (in which case, you should indicate whether any constructions provided are consistent with the claim construction guidelines set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) and its progeny), or (b) the PTAB (in which case, you should indicate whether any constructions provided are consistent with the broadest reasonable interpretation ("BRI") standard set forth in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016)).

## **INTERROGATORIES**

1.      In light of Your position since at least as early as March 5, 2018, whereby "Kingston anticipates [seeking] IPR review of the validity of the Asserted

8

Patents," please identify and explain, on a limitation by limitation basis, all factual and legal bases for Your position that the Patents-in-Suit are invalid. Your response should address, at a minimum, each of the Asserted Claims and should include any and all arguments based on 35 U.S.C. §§ 101, 102, 103, and/or 112. Your response should: identify all facts and documents that support or contradict Your position; include claim charts identifying with specificity where each element of each challenged claim is found in the prior art; identify specific combinations of prior art that You contend make the challenged claim obvious, the motivation(s) to combine such prior art, and all persons with knowledge of the same; and identify the factual and legal bases supporting the authenticity and admissibility of any prior art You cite.

2.    Please identify, by part number, all Accused Products. Your response may be provided in chart form (such as in an Excel spreadsheet) and/or in summary fashion. Your response should provide information and data sufficient to inform North Star of the various products, densities, and configurations of all Kingston products in the DDR3 or DDR3L families and should: include a key, legend, or explanation of the nomenclature or naming conventions used for Kingston's products and part numbers; identify all versions, releases, and densities for such products; provide a general description of each product's operation and functionality; identify all source code, software programs, development tools, database systems, and other tools and systems necessary to determine the circuit design, functionality and operation of each such product (for purposes of an infringement analysis); and identify the three (3) persons most knowledgeable about the technical aspects of the Accused Products (such as, for example, their design, development, manufacture, operation, and testing).

3.    For U.S. sales of Accused Products made by Kingston on or after October 19, 2011 (and for all revenues attributable to Kingston's manufacture, use, offers of sale, or sales of the Accused Products within the U.S., or attributable to

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

Kingston's importation of such products into the U.S. on or after October 19, 2011), please identify and explain, on a per-product basis and on a per-month or per-quarter basis, the number of units sold, total revenues, gross profits, and net profits (and all other data you contend is necessary to calculate net profits or to otherwise calculate an appropriate royalty base) for each such product. Your response, which may be provided in chart form, in summary form, and/or in the form of an Excel spreadsheet, should identify for each such product: sales price, costs (including cost of goods sold, direct costs, and indirect costs), any applicable discounts, write-offs, or returns; and the three (3) person(s) most knowledgeable about all such information.[1] If you contend that the time period of October 19, 2011 to the present is not the proper, relevant, or applicable time period for Plaintiff's claims for infringement damages, please identify and explain the factual and legal bases for such contention and, at a minimum, provide the requested information for the time period you believe is more appropriate, relevant, or applicable.

4.     Please identify and explain Your corporate structure, including each affiliate, parent company, subsidiary, business unit, product team, group or similar unit involved in the research, development, maintenance, operations, improvement, marketing, and/or sales of the Accused Products. Your response should explain, for example, the relationship between Kingston and Kingston Digital, Inc.

## **REQUESTS FOR PRODUCTION**

1.     Please produce all non-privileged documents You consulted or relied upon to respond to the above interrogatories. At a minimum, You should produce documents sufficient to demonstrate and support the veracity and accuracy of the responses You provided to the above interrogatories.

---

[1] North Star North Star does not necessarily concede that all of this information is relevant or essential to the calculation of a reasonable royalty.

10

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

2.     Please produce non-privileged documents sufficient to show the design and operation of the Accused Products and that you contend would be sufficient to determine infringement or non-infringement by the Accused Products. For example, Your production would likely include data sheets, application notes, test results, circuit schematics, and timing diagrams – preferably in native format (along with any source code or software that may be necessary to read, analyze, or review such native data) – for each of the Accused Products (or for representative products, if that would be more efficient and less burdensome). You should also produce documents sufficient to show conformance or compliance with applicable standards, including JEDEC Standard DDR3 SDRAM, No. 79-3C November 2008.

3.     Please produce all non-privileged documents You consulted or relied upon to form your invalidity positions. At a minimum, You should produce all prior art references that you cite in support of any of your invalidity positions.

4.     For all U.S. sales of the Accused Products, made by Kingston on or after October 19, 2011, and for all revenues attributable to Kingston's manufacture, use, offers of sale, sales, or importation of such products on or after October 19, 2011, please produce non-privileged financial information, documents, and data sufficient to show and determine for each such product the number of units sold, total revenues, gross profits, and net profits, including but not necessarily limited to all data you contend is necessary to calculate net profits or to otherwise calculate an appropriate royalty base. If you contend in response to Interrogatory No. 3 above that some other time period is the proper, relevant, or applicable time period, you should produce (at a minimum) responsive documents, information, and data for that time period.

5.     Please produce documents sufficient to show Your corporate structure, including each affiliate, parent company, subsidiary, business unit, product team, group or similar unit involved in the research, development, maintenance, operations, improvement, marketing, and/or sales of the Accused Products. Responsive documents would include, for example, documents sufficient to show the

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

relationship between Kingston and Kingston Digital, Inc., and documents sufficient to show Kingston's "international network of distributors, resellers, retailers and OEM customers on six continents" and the entities or channels through which Kingston "provides contract manufacturing and supply chain management services for semiconductor manufacturers and system OEMs."

## **REQUESTS FOR ADMISSIONS**

Please admit the following:

1.      Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 5,943,274 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

2.      Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 6,127,875 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

3.      Kingston Technology Company, Inc. has infringed Claim 15 of U.S. Patent No. 6,917,555 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

4.      Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 6,101,145 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

5.      Kingston Technology Company, Inc. has infringed Claim 6 of U.S. Patent No. 6,101,145 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

12

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

Respectfully Submitted,

Dated: March 16, 2018          By: */s/ David A. Skeels*
                                    David A. Skeels (admitted *pro hac vice*)
                                    dskeels@whitakerchalk.com
                                    Enrique Sanchez, Jr. (admitted *pro hac vice*)
                                    rsanchez@whitakerchalk.com
                                    Whitaker Chalk Swindle & Schwartz PLLC
                                    301 Commerce Street, Suite 3500
                                    Fort Worth, Texas 76102
                                    Telephone: +1 817.878.0573
                                    Facsimile: +1 817.878.0501

                                    **Attorneys for Plaintiff**
                                    **NORTH STAR INNOVATIONS INC.**

DM#330809v2

13
**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

# North Star's
# Motion for Summary
# Judgment

# EXHIBIT 4



**Whitaker Chalk**
Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102

Phone: 817.878.0500
Fax: 817.878.0501

March 28, 2018

*Via Certified Mail No. 9314869904300044878454*
*Return Receipt Requested*

Mr. Christopher Kao
Vinson & Elkins LLP
555 Mission Street
Suite 2000
San Francisco, CA 94105

        Re:    Courtesy Copy of Plaintiff's First Set of Combined Discovery Requests to Defendant
               *North Star Innovations Inc. v. Kingston Technology Company, Inc.*
               Civil Action No. 8:17-cv-01833-DOC-DFM (C. D. Cal.)
               Our File No. 26834.013

Dear Counsel,

I have attached for your ease of reference a courtesy copy of Plaintiff's First Set of Combined Discovery Requests to Defendant. As you are aware, they were served on Friday, March 16, 2018. We therefore look forward to receiving your responses by Monday, April 16, 2018.

We would also like to go ahead and schedule a short 30(b)(6) deposition on the subject of document custodians, document collection, and document retention. Please provide dates in April when we can take such a deposition.

If you have any questions or concerns, please do not hesitate to give me a call.

               Kind regards,

               Whitaker Chalk Swindle & Schwartz PLLC

               David A. Skeels

DAS
Encl.
DM#333176

David A. Skeels | dskeels@whitakerchalk.com | Direct: 817.878.0573        WhitakerChalk.com

App. 53

# Transaction Details

**Recipient:**
CHRISTOPHER KAO, ESQ.
VINSON & ELKINS LLP
555 MISSION ST STE 2000
SAN FRANCISCO, CA 94105-0923

**Sender:**
Candy Sanders
Whitaker Chalk Swindle & Schwartz PLLC
301 Commerce Street
Suite 3500
Fort Worth, TX 76102

Certified Mail Article Number:    9314869904300044878454
Return Receipt Article Number:

Service Options:    Return Receipt - Electronic
Mail Service:    Certified
Reference #:    26834.013
Postage:    $0.47
Fees:    $4.95
Status:    Delivered

Transaction created by:   csanders@whitakerchalk.com
User ID: 18744
Firm Mailing Book ID:  None
Batch ID:

# Transaction History

| Event Description | Event Date | Details |
|---|---|---|
| USPS® Certified Mail | 03-28-2018 03:08 PM | [USPS] - PRESHIPMENT INFO SENT  USPS AWAITS ITEM at TEMECULA,CA |
| USPS® Certified Mail | 03-28-2018 10:41 PM | [USPS] - PROCESSED THROUGH USPS FACILITY at COPPELL,TX |
| USPS® Certified Mail | 03-29-2018 06:10 AM | [USPS] - DEPART USPS FACILITY at COPPELL,TX |
| USPS® Certified Mail | 03-31-2018 08:10 AM | [USPS] - PROCESSED THROUGH USPS FACILITY at SAN FRANCISCO,CA |
| USPS® Certified Mail | 03-31-2018 10:50 AM | [USPS] - PROCESSED THROUGH USPS FACILITY at SAN FRANCISCO,CA |
| USPS® Certified Mail | 03-31-2018 11:02 PM | [USPS] - PROCESSED THROUGH USPS FACILITY at SAN FRANCISCO,CA |
| USPS® Certified Mail | 04-02-2018 06:29 PM | [USPS] - BUSINESS CLOSED at SAN FRANCISCO,CA |
| USPS® Certified Mail | 04-03-2018 06:39 PM | [USPS] - BUSINESS CLOSED at SAN FRANCISCO,CA |
| USPS® Certified Mail | 04-04-2018 11:47 AM | [USPS] - CERTIFIED MAIL DELIVERED FRONT DESKRECEPTION at SAN FRANCISCO,CA |

App. 54

RYAN E. HATCH (SBN 235577)
Law Office of Ryan E. Hatch, PC
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Email: ryan@ryanehatch.com

DAVID A. SKEELS (admitted *pro hac vice)*
ENRIQUE SANCHEZ, JR. (admitted *pro hac vice* )
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0573
Facsimile: (817) 878-0501
Email: dskeels@whitakerchalk.com
Email: rsanchez@whitakerchalk.com

Attorneys for Plaintiff
NORTH STAR INNOVATIONS INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT of CALIFORNIA

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., | CASE NO. 8:17-cv-01833-DOC-DFM |
| Plaintiff, | |
| vs. | **PLAINTIFF'S FIRST SET OF COMBINED DISCOVERY REQUESTS TO DEFENDANT** |
| KINGSTON TECHNOLOGY COMPANY, INC., | |
| Defendant. | Judge: Hon. David O. Carter |

1

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

TO: Defendant KINGSTON TECHNOLOGY COMPANY, INC., by and through its counsel of record, Christopher Kao, Vinson & Elkins, 555 Mission Street, Suite 2000 San Francisco, CA 94105.

Pursuant to and in accordance with Federal Rules of Civil Procedure 26, 33, 34, and 36, Plaintiff North Star Innovations, Inc. ("Plaintiff" or "North Star") hereby requests that Defendant Kingston Technology Company, Inc. ("Defendant" or "Kingston") answer each of the following interrogatories, document requests, and requests for admission separately and fully, in writing, and under oath (verification required for interrogatory responses only), and serve a copy upon the undersigned counsel at the offices of Whitaker Chalk Swindle & Schwartz PLLC, 301 Commerce Street, Suite 3500, Fort Worth, Texas 76102, within thirty (30) days after service hereof. These discovery requests are intended to be continuing in nature, requiring you to supplement your answers and responses, setting forth any information within the scope of these discovery requests that may be acquired by you or by your employees, agents, attorneys, or representatives subsequent to your original answers, all as required by Federal Rules of Civil Procedure 26, 33, 34, and 36.

## **DEFINITIONS**

The following definitions shall apply to these discovery requests:

1. "North Star Innovations, Inc.," "North Star Innovations Inc.," "North Star," and "Plaintiff" refer to Plaintiff North Star Innovations, Inc.

2. "Kingston Technology Company, Inc." "Kingston," "Defendant," "You," and/or "Your" refer to Defendant Kingston Technology Company, Inc., including any parent, subsidiary, affiliate, division, predecessor, or successor thereof and its past and present officers, directors, employees, agents, representatives, or any other person acting on behalf of Kingston Technology Company, Inc..

3. "Litigation" or "Lawsuit" refers to the litigation styled *North Star*

2

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

1  *Innovations, Inc. v. Kingston Technology Company, Inc.*, which is currently pending in

2  the United States District Court for the Central District of California, Case No. 8:17-cv-

3  01833 DOC (DFM).

4      4.     "And" and "or" shall be construed either disjunctively or conjunctively as

5  necessary to bring within the scope of the request all answers that might otherwise be

6  construed to be outside of its scope.

7      5.     "Communication" means the transmittal of information in the form of

8  facts, ideas, inquiries or otherwise, and may be verbal, written, electronic or otherwise,

9  whether in-person or telephonic, whether direct or through an intermediary.

10     6.     "Concerning," "relating," or "referring" mean concerning, relating, or

11 referring in their broadest senses and include, where appropriate, "describing,"

12 "comprising," "constituting," "supporting," "consisting of," "regarding," "reflecting,"

13 "representing," "pertaining," and "evidencing."

14     7.     "Document" and "tangible thing" are defined to be synonymous in meaning

15 and equal in scope with the broadest usage in Federal Rules of Civil Procedure 26 and

16 34, and specifically include electronically stored information. "Document" shall further

17 mean the original and each non-identical copy (whether different from the original

18 because of marginal notes, material inserted therein or attached thereto, or otherwise) of

19 any written or graphic nature, however produced or reproduced, whether sent, received

20 or neither, including drafts and both sides thereof, and including but not limited to:

21 papers, books, letters, correspondence, telegrams, cables, telex messages, memoranda,

22 typed or handwritten notes, notations, work papers, transcripts, minutes, reports and

23 recordings of telephone or other conversations or of interviews, conferences or other

24 meetings, maps, charts, plans, specifications, diagrams, photographs, affidavits,

25 statements, summaries, opinions, reports, studies, analyses, evaluations, contracts,

26 agreements, ledgers, journals, financial statements, statistical records, desk calendars,

27 appointment books, diaries, expense account records, lists, tabulations, sound recordings,

28 computer printouts, data processing input and output, microfilms, and all

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

other records kept by electronic, photographic or mechanical means, and items similar to any of the foregoing.

8.  The term "identify" shall mean:

(a)  When used with respect to an individual or natural person, to set forth: (1) his or her name; (2) any other name used by him or her presently or in the past; (3) his or her present or last known business address, residence address, and telephone numbers; and (4) the corporation, partnership, association, foundation, trust, organization or other entity, and the functional division thereof, with which he or she is now associated, and his or her title, status, position, rank, or classification with such entity at the present and through the time period specified.

(b) When used with respect to a person other than a natural person, including, but not limited to, any corporation, partnership, association, foundation, trust, organization, or other entity or functional division thereof, to set forth: (1) its full name; (2) the address of its principal office or place of business; (3) the nature of the venture (e.g., sole proprietorship, partnership, corporation, etc.); and (4) the identities of its officers, directors, partners, or administrators.

(c)  When used with respect to a communication, to set forth: (1) the dates and places of origin and reception of such communication; (2) each person who was present at or participated in such communication, including but not limited to the author(s) and recipient(s) of such communication; (3) the type of communication (e.g., letter, facsimile transmission, face-to-face conversation, telephone conversation, etc.); (4) the substance of each such communication; and (5) each document that records, shows, or refers to such communication.

(d)  When used with respect to a document or tangible thing, to set forth: (1) the type of document or tangible thing (e.g., letter, memoranda, computer disk, machine, etc.); (2) the date it was created; (3) its authors and signatories; (4) its addressees and all other persons receiving copies; (5) the nature and substance of the document; and (6) its location and its custodian(s).

4

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

App. 58

(e)     When used with respect to a fact to: (1) describe the fact; (2) state when it became known to you; (3) state the source from which you learned it; and (4) identify by bates number the documents that record, show, or refer to the fact.

9.     The terms "he," "his," or "him" are generic terms that mean any person as defined herein, whether natural or otherwise, and whether masculine or feminine.

10.     The use of the singular form of any word includes the plural and vice versa.

11.     "Person" or "entity" means any natural person or any business, legal, or governmental entity or association, and any functional division thereof.

12.     The "'274 Patent" shall mean U.S. Patent No. 5,943,274.

13.     Presently, North Star alleges that at least Claim 1 is infringed by Kingston, and North Star has therefore asserted that claim ("Asserted Claim(s) of the '274 Patent") against Kingston. If, in the future, North Star asserts additional claims, then this definition shall be deemed modified in corresponding fashion, and Kingston shall supplement its responses accordingly. *See* Fed. R. Civ. P. 26(e)(1).

14.     The "'875 Patent" shall mean U.S. Patent No. 6,127,875.

15.     Presently, North Star alleges that at least Claim 1 is infringed by Kingston, and North Star has therefore asserted that claim ("Asserted Claim(s) of the '875 Patent") against Kingston. If, in the future, North Star asserts additional claims, then this definition shall be deemed modified in corresponding fashion, and Kingston shall supplement its responses accordingly. *See* Fed. R. Civ. P. 26(e)(1).

16.     The "'555 Patent" shall mean U.S. Patent No. 6,917,555.

17.     Presently, North Star alleges that at least Claim 15 is infringed by Kingston, and North Star has therefore asserted that claim ("Asserted Claim(s) of the '555 Patent") against Kingston. If, in the future, North Star asserts additional claims, then this definition shall be deemed modified in corresponding fashion, and Kingston shall supplement its responses accordingly. *See* Fed. R. Civ. P. 26(e)(1).

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

18.     The "'145 Patent" shall mean U.S. Patent No. 6,101,145. Presently, North Star alleges that at least Claims 1 and 6 are infringed by Kingston, and North Star has therefore asserted those claims ("Asserted Claim(s) of the '145 Patent") against Kingston. If, in the future, North Star asserts additional claims, then this definition shall be deemed modified in corresponding fashion, and Kingston shall supplement its responses accordingly. *See* Fed. R. Civ. P. 26(e)(1).

19.     The '274 Patent, '875 Patent, '555 Patent, and '145 Patent may be referred to collectively as the "Patents-in-Suit" or as the "Asserted Patents."

20.     The Asserted Claim(s) of the '274 Patent, the Asserted Claim(s) of the '875 Patent, the Asserted Claim(s) of the '555 Patent, and the Asserted Claim(s) of the '145 Patent may be referred to collectively as the "Asserted Claims."

21.     As used in these requests, the term "Accused Products" means all Kingston products in the DDR3 or DDR3L families (regardless of density), including the Kingston 4Gb DDR3L SDRAM, Part No. D5128EETBPGGBU, and the Kingston 8GB DDR3L SODIMM, Part#: KVR16LS11/8, that Kingston has made, used, offered for sale, or sold in the United States from October 19, 2011 to the present, or that Kingston has imported into the United States from October 19, 2011 to present. If, in the future, North Star accuses additional products (as may be permitted by the Court or by applicable rules), then this definition shall be deemed modified in corresponding fashion, and Kingston shall supplement its responses accordingly. *See* Fed. R. Civ. P. 26(e)(1).

22.     "PTAB" refers to the United States Patent Trial and Appeal Board.

## INSTRUCTIONS

1.     The below interrogatories call for information (including any information contained in or on any document or thing) that is available to Kingston or in the possession, custody, or control of Kingston, including all information known or available to Kingston's attorneys, agents, representatives, investigators, or any other person acting on

6

behalf of Kingston or under the direction or control of Kingston, its attorneys, agents, representatives, or investigators.

2.      Responses should be provided in accordance with the Federal Rules of Civil Procedure, in accordance with the Court's Scheduling Order, and in accordance with any applicable agreements of the parties. At a minimum, interrogatory responses should include references to specific bates-numbered documents, when possible.

3.      Objections to any interrogatory or request for production shall be stated with specificity.

4.      If Kingston cannot answer any interrogatory fully and completely after exercising due diligence to make inquiry and secure the information necessary to do so, please so state and answer each such interrogatory to the full extent possible, specify the portion of such interrogatory that Kingston claims it is unable to answer fully and completely, state the facts upon which Kingston relies to support the contention that it is unable to answer that interrogatory fully and completely, and state what knowledge, information and belief Kingston has concerning the unanswered portion of each such interrogatory.

5.      If Kingston withholds information responsive, in whole or in part, to any interrogatory on any basis, and subject to any agreement the parties may have with respect to privilege logs or related matters, please identify: (a) any privilege or immunity from discovery asserted; (b) all documents or things which contain or refer to the information; (c) all individuals having knowledge of the information; (d) the subject matter and general nature of the information; and (e) all facts which are alleged to support the assertion of privilege or immunity.

6.      If in answering these requests you claim any ambiguity in either an interrogatory or a definition or instruction applicable thereto, identify in your response the language you consider ambiguous and state the interpretation you are using in responding.

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

7. If You object to any interrogatory or to any request for production or to any part thereof on the basis of privilege, answer the remaining part of that interrogatory or request to which Your privilege objection does not apply.

8. Your interrogatory responses should identify by bates number all documents that support Your response, including but not limited to all documents specifically referenced in Your response.

9. If any of your responses depend or rely, in whole or in part, upon a particular construction of a claim term that is not defined in the applicable Patent-in-Suit or whose meaning is not readily apparent to a person of ordinary skill in the art (based upon a reading of the patent and its prosecution history), then please identify the claim term(s) in question and provide the definition(s) or construction(s) you ascribed to that term when forming your response, when performing your analysis, or when reaching your conclusion(s). If you contend the claim term(s) in question is/are reasonably susceptible to more than one construction, please provide those other reasonable constructions.

10. To the extent your responses suggest that any claims are or should be invalid, your response should indicate whether you contend the challenged claim(s) should be invalidated by: (a) this Court (in which case, you should indicate whether any constructions provided are consistent with the claim construction guidelines set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) and its progeny), or (b) the PTAB (in which case, you should indicate whether any constructions provided are consistent with the broadest reasonable interpretation ("BRI") standard set forth in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016)).

## **INTERROGATORIES**

1. In light of Your position since at least as early as March 5, 2018, whereby "Kingston anticipates [seeking] IPR review of the validity of the Asserted

<div align="center">8</div>

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

App. 62

Patents," please identify and explain, on a limitation by limitation basis, all factual and legal bases for Your position that the Patents-in-Suit are invalid. Your response should address, at a minimum, each of the Asserted Claims and should include any and all arguments based on 35 U.S.C. §§ 101, 102, 103, and/or 112. Your response should: identify all facts and documents that support or contradict Your position; include claim charts identifying with specificity where each element of each challenged claim is found in the prior art; identify specific combinations of prior art that You contend make the challenged claim obvious, the motivation(s) to combine such prior art, and all persons with knowledge of the same; and identify the factual and legal bases supporting the authenticity and admissibility of any prior art You cite.

2.     Please identify, by part number, all Accused Products. Your response may be provided in chart form (such as in an Excel spreadsheet) and/or in summary fashion. Your response should provide information and data sufficient to inform North Star of the various products, densities, and configurations of all Kingston products in the DDR3 or DDR3L families and should: include a key, legend, or explanation of the nomenclature or naming conventions used for Kingston's products and part numbers; identify all versions, releases, and densities for such products; provide a general description of each product's operation and functionality; identify all source code, software programs, development tools, database systems, and other tools and systems necessary to determine the circuit design, functionality and operation of each such product (for purposes of an infringement analysis); and identify the three (3) persons most knowledgeable about the technical aspects of the Accused Products (such as, for example, their design, development, manufacture, operation, and testing).

3.     For U.S. sales of Accused Products made by Kingston on or after October 19, 2011 (and for all revenues attributable to Kingston's manufacture, use, offers of sale, or sales of the Accused Products within the U.S., or attributable to

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

Kingston's importation of such products into the U.S. on or after October 19, 2011), please identify and explain, on a per-product basis and on a per-month or per-quarter basis, the number of units sold, total revenues, gross profits, and net profits (and all other data you contend is necessary to calculate net profits or to otherwise calculate an appropriate royalty base) for each such product. Your response, which may be provided in chart form, in summary form, and/or in the form of an Excel spreadsheet, should identify for each such product: sales price, costs (including cost of goods sold, direct costs, and indirect costs), any applicable discounts, write-offs, or returns; and the three (3) person(s) most knowledgeable about all such information.[1] If you contend that the time period of October 19, 2011 to the present is not the proper, relevant, or applicable time period for Plaintiff's claims for infringement damages, please identify and explain the factual and legal bases for such contention and, at a minimum, provide the requested information for the time period you believe is more appropriate, relevant, or applicable.

4.    Please identify and explain Your corporate structure, including each affiliate, parent company, subsidiary, business unit, product team, group or similar unit involved in the research, development, maintenance, operations, improvement, marketing, and/or sales of the Accused Products. Your response should explain, for example, the relationship between Kingston and Kingston Digital, Inc.

## REQUESTS FOR PRODUCTION

1.    Please produce all non-privileged documents You consulted or relied upon to respond to the above interrogatories. At a minimum, You should produce documents sufficient to demonstrate and support the veracity and accuracy of the responses You provided to the above interrogatories.

---

[1] North Star North Star does not necessarily concede that all of this information is relevant or essential to the calculation of a reasonable royalty.

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

2.     Please produce non-privileged documents sufficient to show the design and operation of the Accused Products and that you contend would be sufficient to determine infringement or non-infringement by the Accused Products. For example, Your production would likely include data sheets, application notes, test results, circuit schematics, and timing diagrams – preferably in native format (along with any source code or software that may be necessary to read, analyze, or review such native data) – for each of the Accused Products (or for representative products, if that would be more efficient and less burdensome). You should also produce documents sufficient to show conformance or compliance with applicable standards, including JEDEC Standard DDR3 SDRAM, No. 79-3C November 2008.

3.     Please produce all non-privileged documents You consulted or relied upon to form your invalidity positions. At a minimum, You should produce all prior art references that you cite in support of any of your invalidity positions.

4.     For all U.S. sales of the Accused Products, made by Kingston on or after October 19, 2011, and for all revenues attributable to Kingston's manufacture, use, offers of sale, sales, or importation of such products on or after October 19, 2011, please produce non-privileged financial information, documents, and data sufficient to show and determine for each such product the number of units sold, total revenues, gross profits, and net profits, including but not necessarily limited to all data you contend is necessary to calculate net profits or to otherwise calculate an appropriate royalty base. If you contend in response to Interrogatory No. 3 above that some other time period is the proper, relevant, or applicable time period, you should produce (at a minimum) responsive documents, information, and data for that time period.

5.     Please produce documents sufficient to show Your corporate structure, including each affiliate, parent company, subsidiary, business unit, product team, group or similar unit involved in the research, development, maintenance, operations, improvement, marketing, and/or sales of the Accused Products. Responsive documents would include, for example, documents sufficient to show the

<div align="center">11</div>

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

relationship between Kingston and Kingston Digital, Inc., and documents sufficient to show Kingston's "international network of distributors, resellers, retailers and OEM customers on six continents" and the entities or channels through which Kingston "provides contract manufacturing and supply chain management services for semiconductor manufacturers and system OEMs."

## REQUESTS FOR ADMISSIONS

Please admit the following:

1. Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 5,943,274 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

2. Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 6,127,875 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

3. Kingston Technology Company, Inc. has infringed Claim 15 of U.S. Patent No. 6,917,555 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

4. Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 6,101,145 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

5. Kingston Technology Company, Inc. has infringed Claim 6 of U.S. Patent No. 6,101,145 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

Respectfully Submitted,


Dated: March 28, 2018        By: */s/ David A. Skeels*
                                 David A. Skeels (admitted *pro hac vice*)
                                 dskeels@whitakerchalk.com
                                 Enrique Sanchez, Jr. (admitted *pro hac vice*)
                                 rsanchez@whitakerchalk.com
                                 Whitaker Chalk Swindle & Schwartz PLLC
                                 301 Commerce Street, Suite 3500
                                 Fort Worth, Texas 76102
                                 Telephone: +1 817.878.0573
                                 Facsimile: +1 817.878.0501

                                 **Attorneys for Plaintiff**
                                 **NORTH STAR INNOVATIONS INC.**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on Friday, March 16, 2018, Plaintiff served on Kingston *Plaintiff's First Combined Discovery Requests to Kingston*. Service was made via e-mail by serving Kingston's counsel, Mr. Chris Kao (ckao@velaw.com) and Ms. Christine Yang (chrisyang@sjclawpc.com). Out of an abundance of caution, Plaintiff further certifies that on Wednesday, March 28, 2018, these same requests were served on Kingston. Service was made via certified U.S. mail, return receipt requested, by serving Kingston's counsel, Mr. Chris Kao (ckao@velaw.com).


                                 */s/ David A. Skeels*
                                 David A. Skeels
                                 Counsel for Plaintiff North Star Innovations Inc.


DM#330809v3

13
**PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS**

# North Star's Motion for Summary Judgment

# EXHIBIT 5

Christopher Kao (SBN 237716)
  ckao@velaw.com
Brock S. Weber (SBN 261383)
  bweber@velaw.com
VINSON & ELKINS L.L.P.
555 Mission Street, Suite 2000
San Francisco, CA 94105
Tel.: 415.979.6900
Fax: 415.651.8786

Christine Yang (SBN 102048)
  chrisyang@sjclawpc.com
LAW OFFICE OF S.J. CHRISTINE YANG
17220 Newhope Street, Suite 101-102
Fountain Valley, CA 92708
Tel.: 714.641.4022 / Fax: 714.641.2082

*Attorneys for Defendant*
*Kingston Technology Company, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., <br><br> Plaintiff, <br><br> vs. <br><br> KINGSTON TECHNOLOGY COMPANY, INC., <br><br> Defendant. | Case No. 8:17-cv-01833-DOC-DFM <br><br> **DEFENDANT KINGSTON TECHNOLOGY COMPANY, INC.'S INITIAL DISCLOSURES UNDER RULE 26(a)(1)** |

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant Kingston Technology Company, Inc. ("Kingston") makes the following initial disclosures. The following disclosures are made based on the information reasonably available to Kingston as of this date following a reasonable and diligent investigation, recognizing that its investigation is continuing and that discovery is ongoing, and that the allegations in the Complaint dated October 19, 2017 (Dkt. No. 1, "Complaint") of Plaintiff North Star Innovations Inc. ("North Star") are defective, improper, and conclusory. Therefore, Kingston moved to dismiss North Star's Complaint for failing to state a plausible claim for relief under the pleading standards of *Iqbal* and *Twombly* on December 15, 2017. (Dkt. No. 20.) Kingston's Motion to Dismiss is fully briefed, and the Court has taken it under submission. (Dkt. No. 27.)

Kingston reserves the right to supplement, revise, or otherwise amend these disclosures, to assert later-developed claims and theories, and/or to produce additional information during the course of discovery, as provided by the Federal Rules of Civil Procedure and the Local Rules of the Central District of California. Kingston reserves the right to rely on such information as evidence in this action. By making these disclosures, Kingston does not represent that it is identifying every witness, document, or tangible thing possibly relevant to this lawsuit. Kingston does not waive its rights to object to the production of any document or tangible thing disclosed on the basis of the attorney-client privilege, the work-product doctrine, relevancy, undue burden, or any other valid objection. Rather, Kingston's disclosures represent a good faith effort to identify information that it reasonably believes may support its claims or defenses as required by Rule 26(a)(1).

## A. Individuals Likely to Have Knowledge of Discoverable Facts (Rule 26(1)(1)(A)(i))

Based on the information presently available to Kingston, Kingston identifies the following individuals as likely to have relevant, discoverable information that

Kingston may use to support its yet-to-be-pled claims or defenses. Kingston anticipates that individuals in addition to those listed below may also have discoverable information and therefore specifically reserves the right to identify additional witnesses as discovery proceeds.  All current and former Kingston employees should be contacted through Kingston's attorneys of record.  Pursuant to Rule 26(a)(1)(A)(i), Kingston identifies the individuals below as individuals likely to have discoverable information.  Locations with asterisks (*) indicate the last believed location of the individual as identified in published patents.

| Name and Title | Contact Information | Subject(s) of Discoverable Information |
| --- | --- | --- |
| Mark Cheng, Director of Module Engineering, Kingston Technology Company, Inc. | May be contacted through Vinson & Elkins, counsel for Kingston | General design and operation of Kingston's dynamic random access memory ("DRAM") products. |
| Jason Liang, Vice President of Procurement & Planning, Kingston Technology Company, Inc. | May be contacted through Vinson & Elkins, counsel for Kingston | Procurement and sales relating to Kingston's DRAM products. |
| Alisha Munger, Vice President, U.S. Sales, Kingston Technology Company, Inc. | May be contacted through Vinson & Elkins, counsel for Kingston | Sales, promotion, and marketing for Kingston's DRAM products. |

| Name and Title | Contact Information | Subject(s) of Discoverable Information |
|---|---|---|
| Alan S. Roth | Austin, TX* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 5,943,274; preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |
| Scott G. Nagle | Austin, TX* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 5,943,274; preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |
| James W. Nicholes | Gilbert, AZ* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 6,191,145; preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |

| Name and Title | Contact Information | Subject(s) of Discoverable Information |
|---|---|---|
| Steven P. Allen | Mesa, AZ* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 6,127,875;  preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |
| Ahmad H. Atriss | Chandler, AZ* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 6,127,875;  preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |
| Gerald L. Walcott | Mesa, AZ* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 6,127,875;  preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |

| Name and Title | Contact Information | Subject(s) of Discoverable Information |
|---|---|---|
| Walter C. Seelbach | Fountain Hills, AZ* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 6,127,875; preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |
| Ryan D. Bedwell | Kyle, TX* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 6,917,555; preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |
| Christopher K.Y. Chun | Austin, TX* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 6,917,555; preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |

| Name and Title | Contact Information | Subject(s) of Discoverable Information |
|---|---|---|
| Qadeer A. Qureshi | Dripping Springs, TX* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 6,917,555;  preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |
| John J. Vaglica | Austin, TX* | Conception, reduction to practice, and subsequent matter disclosed and/or claimed in U.S. Patent No. 6,917,555;  preparation and/or prosecution of related patent applications; inventorship, ownership, prior art, invalidity, and unenforceability of same patent. |
| NXP USA, Inc., Prosecution counsel of record for the patents-in-suit | Law Department 6501 William Cannon Drive West TX30/OE62 Austin, TX 78735 | Prosecution of the patents-in-suit. |
| JEDEC | 3103 North 10th Street, Suite 240-S Arlington, VA 22201-2107 | Knowledge of activities relating to JEDEC standards. |

| Name and Title | Contact Information | Subject(s) of Discoverable Information |
|---|---|---|
| Freescale Semiconductor, Inc. | Austin, TX | Knowledge regarding analyses and valuations of the patents-in-suit; licensing and ownership of the patents-in-suit; knowledge of potential infringement and marking. |
| Motorola, Inc. | Chicago, IL | Knowledge regarding prosecution, analyses, and valuations of the patents-in-suit; licensing and ownership of the patents-in-suit; knowledge of potential infringement and marking. |
| NXP Semiconductors N.V. | Eindhoven, Netherlands | Knowledge regarding analyses and valuations of the patents-in-suit; licensing and ownership of the patents-in-suit; knowledge of potential infringement and marking. |
| Wi-LAN Inc. | 303 Terry Fox Drive Suite 300 Ottawa, ON K2K 3J1 Canada | Knowledge of North Star's claims and defenses; Acquisition, licensing, analyses, ownership of patents-in-suit and other North Star patents; Business relations, contracts, covered products, marking, licensing, financial information, damages relating to patents-in-suit. |

| Name and Title | Contact Information | Subject(s) of Discoverable Information |
|---|---|---|
| North Star | Costa Mesa, CA | North Star's claims and defenses; Acquisition, licensing, analyses, ownership of patents-in-suit and other North Star patents; Business relations, contracts, covered products, marking, licensing, financial information, damages relating to patents-in-suit. |
| Nanya Technology Corp. | Hwa-Ya Technology Park, No.669, Fusing 3rd Rd., Kueisan Dist., Taoyuan, Taiwan | Accused products and licensing of accused products. |

In addition to the individuals listed above, Kingston also expects to discover the identities of additional individuals employed by or related to North Star, as well as third parties, who have knowledge of the scope, validity, enforceability, construction, and ownership of the asserted patents.  Such individuals may include: (i) individuals identified in the documents produced in discovery; (ii) individuals listed in the Initial Disclosures of North Star; (iii) inventors of prior art patents and authors of prior art publications which disclosed or rendered obvious the claimed inventions under 35 U.S.C. §§ 102 and 103; (iv) other individuals with knowledge of the prior invention, public use, or sale of the claimed inventions under 35 U.S.C. § 102; and (v) Kingston's expert witnesses, who will be disclosed at the time and in the manner provided by the Court.  If any persons not included in the above list are deposed in this case, Kingston hereby incorporates them herein as individuals likely to have

discoverable information that Kingston may use to support its claims or defenses. Kingston incorporates herein all individuals listed on the Initial Disclosures of North Star and Samsung.

Any current or former employee, agent, or consultant for Kingston should not be contacted without the prior consent of counsel. To the extent additional individuals with information relevant to the dispute are subsequently identified, Kingston will identify them pursuant to the Fed. R. Civ. P. 26(e).

**B.     Description of Documents, Electronically Stored Information, and Tangible Things (Rule 26(a)(1)(A)(ii)**

Pursuant to Rule 26(a)(1)(A)(ii), Kingston provides the following listing of documents, electronically stored information, and tangible things, to the extent that they exist, without concession, agreement, admission, or waiver of any ultimate determination of relevance or admissibility of particular information for any purpose, and without waiver of attorney-client privilege or work-product immunity or any other privilege or immunity. Kingston reserves the right to identify additional documents, electronically stored information, and tangible things throughout discovery.

Kingston states that all documents, electronically stored information, and tangible things in Kingston's possession, custody or control and of which it is presently aware that it may use to support its claims or defenses are available at Kingston's offices at 17600 Newhope Street, Fountain Valley, CA 92708, and/or at the San Francisco office of Vinson & Elkins LLP, 555 Mission Street #2000, San Francisco, CA 94105. Documents not in Kingston's possession, custody or control are believed to be in the possession, custody, and control of North Star, and/or the third-parties listed above.

    1.     Technical documents, such as data sheets, functional specifications, and schematic diagrams, describing the structure, manufacturing, and operation of the accused products;

2.      Sales and financial documents relating to the accused products;

3.      Documents such as patents and printed publications relating to the invalidity of the patents-in-suit;

4.      Documents relating to assignments and ownership of, and licenses for, the patents-in-suit;

5.      Dictionaries, treatises and other materials possibly bearing on the proper interpretation and construction of the claims on the patents-in-suit;

6.      Documents relating to what constitutes a reasonable royalty dollar amount if Kingston is found to infringe one or more of the patents-in-suit;

7.      Documents relating to North Star's, Wi-LAN's, Motorola's, Freescale Semiconductor's, and/or NXP Semiconductor's membership and participation in any JEDEC committees;

8.      Documents concerning any valuations, investigations of potential infringement, and invalidity of the patents-in-suit; and

9.      Documents relating to NXP Semiconductor's financial interest in the patents-in-suit.

## C.      Computation of Damages (Rule 26(1)(1)(A)(iii))

Kingston currently is unable to provide a detailed computation of damages and denies that North Star is entitled to the damages and relief sought.  Kingston reserves its right to seek all costs incurred in connection with this action, including but not limited to recovery of attorneys' fees pursuant to 35 U.S.C § 285.  Kingston reserves its right to seek other and further relief, including sanctions, as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

**D.     Insurance Agreements (Rule 26(1)(1)(A)(iv))**

At this time, Kingston is without knowledge or information of any insurance agreements that are subject to the disclosure requirements of Rule 26(a) of the Federal Rules of Civil Procedure.


Dated:  April 2, 2018                              VINSON & ELKINS L.L.P.


                                      By:   */s/ Christopher Kao*_____
                                            Christopher Kao

                                            Attorneys for Defendant
                                            Kingston Technology Company, Inc.


## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of April, 2018, I caused a true and correct copy of the foregoing document to be served via electronic mail to the last known email address for all counsel of record in this matter.


                                      ___*/s/ Christopher Kao*_____
                                            Christopher Kao

# North Star's
# Motion for Summary
# Judgment

# EXHIBIT 6

1

2

3

4                    UNITED STATES DISTRICT COURT

5                    CENTRAL DISTRICT OF CALIFORNIA
                          SOUTHERN DIVISION
6

7   NORTH STAR INNOVATIONS, INC.,  )
                                   )
8                                  )
                                   )
9            PLAINTIFF,            )
                                   )
10           V.                    )  SA CV 17-01833-DOC(DFMX)
                                   )
11                                 )  SANTA ANA, CALIFORNIA
    KINGSTON TECHNOLOGY COMPANY,   )
12  INC.,                          )
                                   )  MAY 1, 2018
13                                 )  (9:07 A.M. TO 9:30 A.M.)
             DEFENDANT.            )
14                                 )

15

                             HEARING
16
               BEFORE THE HONORABLE DOUGLAS F. MC CORMICK
17                  UNITED STATES MAGISTRATE JUDGE

18
    APPEARANCES:              SEE NEXT PAGE
19
    COURT REPORTER:           RECORDED; COURT SMART
20
    COURTROOM DEPUTY:         DENISE VO
21
    TRANSCRIBER:              DOROTHY BABYKIN
22                            COURTHOUSE SERVICES
                              1218 VALEBROOK PLACE
23                            GLENDORA, CALIFORNIA  91740
                              (626) 963-0566
24
    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1    APPEARANCES:

 2    FOR THE PLAINTIFF NORTH STAR INNOVATIONS, INC.:

 3              WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
                BY:  DAVID A. SKEELS
 4                   ATTORNEY AT LAW
                301 COMMERCE STREET
 5              SUITE 3500
                FORT WORTH, TEXAS  76102
 6
                LAW OFFICE OF RYAN E. HATCH PC
 7              BY:  RYAN E. HATCH
                     ATTORNEY AT LAW
 8              13323 WASHINGTON BOULEVARD
                SUITE 100
 9              LOS ANGELES, CALIFORNIA  90066

10
      FOR THE DEFENDANT KINGSTON TECHNOLOGY COMPANY, INC.:
11
                PILLSBURY WINTHROP SHAW PITTMAN LLP
12              BY:  CHRISTOPHER KAO
                     ATTORNEY AT LAW
13              4 EMBARCADERO CENTER
                22ND FLOOR
14              SAN FRANCISCO, CALIFORNIA  94111

15

16

17

18

19

20

21

22

23

24

25
```

3

I N D E X

SA CV 17-01833-DOC(DFMX)                          MAY 1, 2018


PROCEEDINGS:   DEFENDANT KINGSTON TECHNOLOGY COMPANY, INC.'S
               MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER
               RULE 12(B)(6).

4

1           SANTA ANA, CALIFORNIA; MAY 1, 2018; 9:07 A.M.

2            THE CLERK:  CALLING CASE SA CV 17-1833-DOC(DFMX),

3    NORTH STAR INNOVATIONS, INC. VERSUS KINGSTON TECHNOLOGY

4    COMPANY, INC.

5             (PAUSE IN PROCEEDINGS.)

6            THE COURT:  COUNSEL, YOU WANT TO MAKE YOUR

7    APPEARANCES, PLEASE.

8            MR. SKEELS:  THANK YOU, YOUR HONOR.

9            DAVID SKEELS FROM THE FORT WORTH TEXAS LAW FIRM OF

10   WHITAKER CHALK SWINDLE & SCHWARTZ.

11           I'M HERE WITH MY CO-COUNSEL MR. RYAN HATCH, WHO IS

12   LOCAL HERE.

13           THE COURT:  ALL RIGHT.  GOOD MORNING.

14           MR. HATCH:  MORNING.

15           MR. KAO:  GOOD MORNING, YOUR HONOR.

16           CHRIS KAO WITH VINSON & ELKINS FOR DEFENDANT

17   KINGSTON.

18           THE COURT:  YOU GUYS CAN HAVE A SEAT.

19           I WAS KIND OF NOT NICE TO THEM, BUT THEY -- THEY WERE

20   A REAL PAIN IN THE YOU KNOW WHAT TO ME A FEW MONTHS AGO.  SO,

21   I'M ACTUALLY A REALLY NICE GUY.  BUT I HAD TO SNARL AT THEM A

22   LITTLE BIT.  OTHERWISE, THEY'LL TAKE UP THE WHOLE DAY.

23           SO, I -- YOU'RE HERE BECAUSE YOU FOUND YOURSELF IN A

24   BACKLOG IN FRONT OF JUDGE CARTER.  AND HE REFERRED A NUMBER OF

25   CASES AND MOTIONS TO ME FOR DETERMINATION.

1          SO, THAT MEANS AS THINGS CURRENTLY STAND -- JUST SO

2   YOU KNOW IN CASE YOU HAVEN'T THOUGHT THIS THROUGH -- WHAT I

3   NEED TO DO AT THE END OF THIS HEARING IS DO A RECOMMENDATION TO

4   JUDGE CARTER.

5          YOU'LL HAVE AN OPPORTUNITY TO FILE OBJECTIONS TO THAT

6   IF YOU'RE SO INCLINED AND THEN GO ON.  THEN YOUR CASE WOULD GO

7   BACK TO JUDGE CARTER.

8          JUDGE CARTER DID EXPRESSLY ASK ME TO MENTION CONSENT

9   TO YOU.  AS -- AS I'M SURE EVERYONE IS AWARE -- MAYBE NOT FROM

10   -- MAYBE NOT OUR COLLEAGUE FROM TEXAS WHERE I THINK YOU GUYS

11   ARE GETTING DISTRICT JUDGES THROUGH.  BUT HERE IN CALIFORNIA WE

12   DON'T HAVE ANY DISTRICT JUDGE NOMINEES.  AND WE HAVE MANY

13   VACANCIES ON THE COURT.  THAT MEANS THAT MY DISTRICT JUDGE

14   COLLEAGUES ARE -- ARE DROWNING UNDER VERY HEAVY CASE LOADS.

15          WE DON'T HAVE ANY PROBLEM GETTING MAGISTRATE JUDGES

16   THROUGH BECAUSE WASHINGTON CAN'T STOP US FROM HIRING MAGISTRATE

17   JUDGES.  SO, WE HAVE A FULL COMPLEMENT OF MAGISTRATE JUDGES.

18          SO, TAKE A LOOK AT OUR VOLUNTARY CONSENT LIST.  THINK

19   ABOUT WHETHER EITHER I OR SOMEONE ELSE ON IT MIGHT BE THE -- A

20   BETTER JUDGE FOR YOUR CASE THAN A VERY BUSY DISTRICT JUDGE LIKE

21   JUDGE CARTER WHO'S GOT OBVIOUSLY SUCH CALENDAR CONGESTION THAT

22   HE'S REFERRING THINGS TO ME.  SO, THAT'S MY PITCH.

23          WITH THAT, LET'S TURN TO THE TENTATIVE RULING.  IT IS

24   IN FAVOR OF THE DEFENDANT.  SO, LET ME ASK MR. SKEELS OR MR.

25   HATCH IF YOU HAVE ANY COMMENT ON IT.

1          MR. SKEELS:  I DO, YOUR HONOR.

2          THE COURT:  OKAY.

3          MR. SKEELS:  DO YOU PREFER THAT I STAND AT THE

4   PODIUM?

5          THE COURT:  YOU KNOW, I AM SO FLEXIBLE.  I KNOW YOU

6   GUYS HEARD ME YELL AT THOSE PEOPLE, BUT -- BUT YOU CAN SIT.

7   YOU CAN STAND.  YOU CAN -- AS LONG AS YOU JUST DON'T, YOU KNOW,

8   DO CARTWHEELS OR SOMETHING LIKE THAT SO I CAN HEAR YOU.

9          MR. SKEELS:  I AM INCAPABLE OF CARTWHEELS.  AND I'LL

10  TRY NOT TO DRAW ANY SNARLS.  THANK YOU.  THANK YOU, JUDGE.

11         AS AN INITIAL MATTER, THANK YOU FOR TAKING THE TIME

12  YOU DID.  OBVIOUSLY, YOU READ EVERYTHING CAREFULLY.  AND WE

13  APPRECIATE THE WELL THOUGHT OUT AND -- AND DETAILED OPINION OR

14  TENTATIVE OPINION THAT YOU ISSUED.

15         IF THE COURT IS INCLINED TO MAINTAIN THAT -- THAT

16  POSITION AND MAKE THAT REPORT AND RECOMMENDATION TO JUDGE

17  CARTER, THEN, CERTAINLY WE ARE IN A POSITION TO AMEND AND

18  APPRECIATE THE OPPORTUNITY TO AMEND.  AND WE'LL TAKE ADVANTAGE

19  OF THAT INVITATION TO AMEND.

20         THE COURT:  LET ME ASK YOU A QUESTION.

21         MR. SKEELS:  YES.

22         THE COURT:  ONE OF THE THINGS I THOUGHT ABOUT IN THIS

23   -- AND MAYBE IT'S -- MAYBE THERE'S NO CASE THAT SAYS THIS,

24  BUT AS A PRACTICAL MATTER I DID THINK ABOUT IT -- JUDGE CARTER

25  IT TURNS OUT IS NOT ONE OF MY DISTRICT JUDGE COLLEAGUES WHO

1   REQUIRES PRELIMINARY INFRINGEMENT CONTENTIONS.  THERE ARE

2   JUDGES WHO DO.

3           AND I'VE GOT TO THINK -- I'VE GOT TO SAY THAT WAS

4   KIND OF IN THE BACK OF MY HEAD AS I WENT THROUGH THIS BECAUSE

5   IF -- IF YOU WERE -- IF JUDGE GUILFORD HAD ASKED ME TO DO THIS

6    -- AND JUDGE GUILFORD REQUIRES PRELIMINARY INFRINGEMENT

7   CONTENTIONS -- I MIGHT HAVE FELT A LITTLE DIFFERENTLY ABOUT THE

8   MOTION.  AND I'M NOT REALLY SURE THAT'S -- I GUESS THAT'S

9   REALLY A PRACTICAL SORT OF REAL-WORLD CONCERN RATHER THAN

10  THERE'S NO CASE THAT SAYS I OUGHT TO THINK THAT WAY.

11          BUT HERE WE HAVE A JUDGE -- YOU HAVE A DISTRICT

12  JUDGE.  YOU COULD GO BACK TO THE DISTRICT JUDGE.  IF YOU GO

13  BACK TO HIM, YOU'RE NOT GOING TO HAVE PRELIMINARY INFRINGEMENT

14  CONTENTIONS.  AND SHOULD THAT -- SHOULD THAT MATTER?

15          MR. SKEELS:  THAT'S THE PERFECT INTRO, YOUR HONOR.

16  THANK YOU.  BECAUSE I THINK IT IS UNDERSTANDABLE THAT THAT WAS

17  A PRACTICAL CONSIDERATION FOR YOU.  BUT FROM OUR PERSPECTIVE IN

18  TERMS OF THE WAY THE RULES OF PROCEDURE READ, THAT SHOULD NOT

19  AFFECT THE FACT THAT THIS IS STILL A NOTICED PLEADING

20  SITUATION.

21          SO, PRECISELY WHAT YOU HAVE ALLUDED TO, THE DEFENDANT

22  TYPICALLY GETS WHAT -- WHAT WE BELIEVE THE COURT IS REQUIRING

23  OF US NOW OR THROUGH THIS TENTATIVE RULING WOULD REQUIRE OF US

24  NOW.  THEY TYPICALLY WOULD GET THOSE THROUGH INFRINGEMENT

25  CONTENTIONS.  WE WOULD -- WE WOULD SUBMIT THAT IT'S PREMATURE

App. 88

8

1   TO HAVE TO DO IT AT THE PLEADING STAGE.

2          IN THIS CASE WHERE A JUDGE LIKE JUDGE CARTER OR JUDGE

3   MC BRYDE BACK IN FORT WORTH WHERE I AM WHO DOESN'T ADOPT LOCAL

4   PATENT RULES, DOESN'T REQUIRE INFRINGEMENT CONTENTIONS, THAT'S

5   SIMPLY ACCOMPLISHED THROUGH INTERROGATORIES AND THROUGH OTHER

6   DISCOVERY MECHANISMS.

7          SO, FOR EXAMPLE, IN THIS INSTANCE AT JUDGE CARTER'S

8   URGING AND ENCOURAGEMENT WE GOT STARTED ON THE DISCOVERY

9   PROCESS ALREADY.  WE SERVED CONTENTIONS -- INTERROGATORY

10  CONTENTIONS ON THE DEFENDANT.  AND WE EXPECT TO BE GETTING

11  THEIR INVALIDITY POSITIONS HERE SHORTLY IF WE -- IF WE HAVEN'T

12  ALREADY RECEIVED THEM WITHIN THE LAST DAY OR SO.

13         SO, THAT WAS ONE OF MY CONCERNS IS THAT PURELY AS A

14  MATTER OF PROCEDURE OUR -- OUR JOB IS TO SIMPLY ALLEGE FACTS.

15         AND LET ME GIVE YOU JUST ONE EXAMPLE, YOUR HONOR.

16  BECAUSE WE GET ACCUSED OF THIS ON OCCASION THAT WE'RE BEING

17  QUOTE, UNQUOTE, CONCLUSORY.

18         IF I HAD A CLAIM, FOR EXAMPLE, FOR A CHAIR THAT HAD

19  FOUR LIMITATIONS, A CHAIR THAT INCLUDES A BACK, A SEAT, FOUR

20  LEGS, AND A SWIVEL, WHAT WE WOULD TYPICALLY DO IN A COMPLAINT

21  HAVING INVESTIGATED IT AND SATISFIED OUR DUE DILIGENCE AND RULE

22  11 OBLIGATIONS WOULD BE TO ALLEGE THAT THE DEFENDANT SELLS A

23  CHAIR THAT HAS A BACK, A SEAT, FOUR LEGS, AND A SWIVEL.

24         THAT'S NOT CONCLUSORY.  THOSE ARE FACTS THAT I'M

25  ALLEGING -- THAT THE PLAINTIFF IS ALLEGING THAT THE DEFENDANT'S

9

1    PRODUCT HAS.

2              KEEP IN MIND THE DIFFERENCE BETWEEN APPARATUS CLAIMS

3    WHICH RECITE CERTAIN STRUCTURAL LIMITATIONS VERSUS A METHOD

4    CLAIM.  A METHOD CLAIM MIGHT REQUIRE THAT AN ELECTRONIC SIGNAL

5    TRAVEL FROM POINT A TO POINT B AND THEN BE CONVERTED INTO SOME

6    OTHER FORM AND TRAVEL FROM POINT B TO POINT C.

7              IN A -- IN A METHOD CLAIM SOMETIMES YOU HAVE TO

8    INCLUDE ADDITIONAL DETAIL ABOUT HOW THAT HAPPENS, WHAT

9    COMPONENTS ARE INVOLVED. WHAT SORTS OF THINGS ARE GOING ON IN A

10   METHOD CLAIM.

11             IN AN APPARATUS CLAIM, THE CLAIMS ARE THAT SOME

12   OBJECT, SOME PRODUCT HAS FOUR OR FIVE OR SIX THINGS, LIKE THE

13   CHAIR EXAMPLE.  AND ONE OF THE CASES THAT WE CITED, THIS

14   MC AFEE VERSUS YAMAHA CASE ON PAGE 13 OF OUR RESPONSE,

15   BASICALLY SAYS EXACTLY THAT.

16             THIS COURT DID NOT --

17             THE COURT:  THAT WAS JUDGE -- THAT WAS JUDGE

18   O'CONNELL, RIGHT?

19             MR. SKEELS:  YES, I BELIEVE THAT'S RIGHT.

20             THE COURT:  UH-HMM.

21             MR. SKEELS:  AND --

22             THE COURT:  I TEND TO -- I TEND TO REMEMBER THE

23   JUDGES BETTER THAN I REMEMBER THE CASE NAMES.

24             MR. SKEELS:  IT'S "B.R.O."  IS THAT JUDGE --

25             THE COURT:  YES, THAT'S JUDGE -- YES.

1      MR. SKEELS:  SO, IN THIS CASE, THE PLAINTIFF'S

2  COMPLAINT ALLEGE THAT CLAIM 1 REQUIRES A STRIKE SENSOR, A

3  STRIKE COUNTER, AND A PRESENTER.

4      AND THE PLAINTIFF WENT ON TO SAY IN ITS COMPLAINT

5  WE'VE STUDIED YAMAHA'S DRUM KITS.  AND THOSE DRUM KITS COMPRISE

6  A STRIKE CENTER -- A STRIKE SENSOR, A STRIKE COUNTER, AND A

7  PRESENTER.  THOSE ARE ALLEGED FACTS.  THAT'S NOT CONCLUSORY.

8  IT'S A LITTLE FRUSTRATING TO BE ACCUSED OF, QUOTE, UNQUOTE,

9  PARROTING THE CLAIM LANGUAGE BACK WHEN WE'RE -- WE'RE TRYING TO

10  MAP OUT THE CLAIM EVEN THOUGH WE DON'T THINK THAT'S THE

11  STANDARD.  WE WERE GLAD THAT THE COURT AGREED WITH US THAT

12  THERE IS NO MAPPING STANDARD UNDER THE -- UNDER THE OPERATIVE

13  CASE LAW.

14      BUT CERTAINLY THAT'S THE WHOLE OBJECTIVE WITH AN

15  APPARATUS CLAIM IS TO SAY CLAIM A REQUIRES A, B, C AND D.

16  WE'RE LOOKING AT THIS PRODUCT.  WE'VE STUDIED IT.  WE'D PREFER

17  NOT TO DISCLOSE THE PRIVILEGED CONFIDENTIAL WORK PRODUCT THAT

18  WE SPENT TENS OF THOUSANDS OF DOLLARS ON TO GET REVERSE

19  ENGINEERED SCHEMATICS.

20      IN THIS CASE WE INCLUDED A FEW SNIPPETS OF SOME

21  REVERSE ENGINEERED SCHEMATICS.  IN RETROSPECT, I REGRET DOING

22  THAT.  BECAUSE ALONG THE LINES OF NO GOOD DEED GOES UNPUNISHED,

23  WE TRIED TO SORT OF THROW THEM A BONE, SO TO SPEAK, LET THEM

24  KNOW THAT WE'VE DONE OUR HOMEWORK, LET THEM KNOW THAT WE SPENT

25  TENS OF THOUSANDS OF DOLLARS WITH EXPENSIVE ENGINEERS AND

11

1   ELECTRONIC -- ELECTRON MICROSCOPES TO REVERSE ENGINEER THESE

2   CIRCUIT DIAGRAMS TO LET THEM KNOW WE'VE DONE OUR HOMEWORK.

3          AND WE'VE SAID WE'VE STUDIED YOUR STUFF.  WE'VE

4   LOOKED AT YOUR PRODUCT.  AND WE HAVE CONCLUDED THAT YOUR

5   PRODUCT HAS A, B, C AND D.  AND, SO, HERE -- WE HEREBY ALLEGE

6   CONSISTENT WITH RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE

7   THAT YOUR PRODUCT HAS A, B, C AND D.

8          THE COURT:  WELL, SO, PART OF MY PROBLEM IS  -- AS

9   YOU MAY ANTICIPATE MY NEXT QUESTION IS -- YOU SAY WE'VE DONE

10  OUR HOMEWORK.  WE'VE DONE THIS REVERSE ENGINEERING.  AND IT

11  SHOWS A AND B.  AND YOU DON'T DO THE SAME THING FOR C AND D.

12         AND YOU'RE -- YOU'RE RIGHT.  MAYBE IT IS NO DEED --

13  NO GOOD DEED GOES UNPUNISHED BECAUSE THAT'S SORT OF GLARING TO

14  ME AND DOESN'T COMPORT WITH THE CASES THAT I CITE THAT REQUIRE

15  YOU TO GIVE SOME DETAIL ABOUT WHY IT'S PLAUSIBLE THAT THE --

16  THE DEFENDANT'S PRODUCT CONTAINS EACH LIMITATION.

17         MR. SKEELS:  MAY I ADDRESS THAT --

18         THE COURT:  UH-HMM.

19         MR. SKEELS:  -- WITH TWO OR THREE COMMENTS.

20         THANK YOU.

21         THE COURT:  I TRIED TO ONLY MAKE ONE COMMENT.  IF I

22  MADE TWO OR THREE, I APOLOGIZE.

23         MR. SKEELS:  WELL, YOU ONLY MADE ONE.  I MAY HAVE TWO

24  OR THREE RESPONSES.

25         MOST OF THE CASES THAT GETS CITED AGAINST ME IN THIS

12

1   CONTEXT, SOME OF WHICH YOU CITED AS WELL, IF YOU -- IF YOU LOOK

2   AT THOSE CASES CAREFULLY -- AND WE TRIED TO DISTINGUISH THEM

3   VERY CAREFULLY IN OUR RESPONSE -- IT'S A SITUATION -- IF YOU GO

4   BACK AND LOOK AT THE CASE AND YOU READ THE COMPLAINT, IT'S A

5   SITUATION WHERE THE PLAINTIFF ALLEGED IN ITS COMPLAINT -- WE

6   ALLEGE THAT THEY INFRINGE CLAIM 1.  CLAIM 1 GENERALLY TEACHES

7   X.  AND WE'VE LOOKED AT THEIR PRODUCT.  AND THEIR PRODUCT

8   GENERALLY DOES X.

9           AND THEY TYPICALLY HAVE NOT ALLEGED THAT EVERY

10  LIMITATION IS MET.  THAT'S NOT THE SITUATION HERE.  WE'LL GET

11  TO -- IN A MOMENT TO THE ISSUE OF WHETHER OR NOT WE'VE PROVIDED

12  ENOUGH DETAIL.  I'LL COME BACK TO THAT IN A MOMENT.  BUT WE

13  HAVE SPECIFICALLY ALLEGED AS A FACTUAL MATTER, AS A MATTER OF

14  PLEADING, THAT CLAIM 1 REQUIRES A, B, C AND D.  AND NOW

15  SIMILARLY THE ACCUSED PRODUCT HAS A, B, C AND D.  WE DIDN'T

16  SKIP ANY LIMITATIONS.

17          AND A LOT OF THE CASES YOU'LL FIND ARE SITUATIONS

18  WHERE A SLOPPY PLAINTIFF SKIPPED ONE OF THE LIMITATIONS OR

19  SKIPPED THREE OF THE LIMITATIONS.  WE DIDN'T -- WE DIDN'T DO

20  THAT.

21          NOW, AS TO THE LEVEL OF DETAIL, MY CONCERN IS -- AS I

22  MENTIONED AT THE BEGINNING, IF WE'RE FORCED TO RE-PLEAD, YOU

23  KNOW, SO BE IT.  IT'S NOT THE END OF THE WORLD.  WE CAN DO IT.

24  BUT THERE'S SOME POLICY CONSIDERATIONS, SOME PUBLIC POLICY

25  CONSIDERATIONS THAT CONCERN ME.

13

1            ONE IS THAT --

2            THE COURT:  THOSE ARE -- THOSE ARE WAY OVER MY PAY

3    GRADE.

4            (LAUGHTER.)

5            THE COURT:  WAY OVER MY PAY GRADE.

6            MR. SKEELS:  WELL -- WELL, THEN, PERHAPS, THE COURT'S

7    ONLY -- ONLY JOB IS TO PROPERLY APPLY RULE 8, WHICH HAS STILL A

8    NOTICED PLEADING REQUIREMENT.  IT'S NOT --

9            DEFENDANTS MORE AND MORE ARE WANTING PLAINTIFFS TO DO

10   THEIR INFRINGEMENT CONTENTIONS IN THEIR COMPLAINT.

11           SOMETIMES WE DO IT.  MR. HATCH AND I WERE JUST

12   DISCUSSING THIS.  SOMETIMES TO AVOID THIS VERY HEADACHE AND TO

13   SAVE OURSELVES THREE MONTHS OF -- IN THIS CASE SIX AND A HALF

14   MONTHS OF DELAY IN THE CASE --

15           THE COURT:  WELL, AND IT MAY BENEFIT YOU TO COME

16   HEAVY IN THE BEGINNING AND -- AND TELL THE DEFENDANT THAT

17   YOU'VE GOT THE GOODS.

18           MR. SKEELS:  TRUE.  THERE COULD BE STRATEGIC BENEFITS

19   TO DOING THAT.  THERE COULD ALSO BE STRATEGIC BENEFITS TO NOT

20   DOING IT.

21           SO, OUR ONLY OBLIGATION IS NOT TO DO WHAT MAY OR MAY

22   NOT BE A STRATEGICALLY WISE MOVE.  OUR OBLIGATION IS TO MEET

23   RULE 8.

24           THE COURT:  RIGHT.

25           MR. SKEELS:  AND, SO, IMAGINE A SITUATION WHERE I

14

1    DIDN'T HAVE REVERSE ENGINEERED SCHEMATICS.  LET'S SAY I HAD AN

2    INFORMANT WHO IS A DISGRUNTLED EMPLOYEE THAT SAYS, HEY, MR.

3    SKEELS, GUESS WHAT.  I'VE BEEN WORKING THERE FOR 15 YEARS.  AND

4    I KNOW THAT THEIR PRODUCT HAS A, B, C AND D.

5         OR LET'S SAY I SHOWED UP AT A SEMICONDUCTOR

6    CONFERENCE, AND I HEARD THEIR SPEAKER TALKING ABOUT, OH, WE'VE

7    GOT THIS GREAT PRODUCT.  IN FACT, DON'T TELL ANYBODY, BUT WE

8    RIPPED IT OFF FROM THIS GREAT '123 PATENT THAT WE FOUND.

9         THOSE ARE SITUATIONS WHERE WHAT -- WHAT WOULD I DO IN

10   THAT SITUATION IF THE DEFENDANT WAS SAYING, JUDGE, PLEASE

11   DISMISS.  THEY HAVEN'T -- THEY HAVEN'T GIVEN US ENOUGH DETAIL.

12         WELL, IN THAT CASE --

13         THE COURT:  WELL, LET'S GO BACK TO THAT -- ONE OF

14   YOUR EARLIER EXAMPLES.

15         IF -- IF YOUR INFORMATION WAS EITHER THIS DISGRUNTLED

16   EMPLOYEE OR THIS PERSON YOU OVERHEARD AT THE CONFERENCE SAID

17   THEY'VE GOT THIS CHAIR.  AND IT'S GOT FOUR LEGS, A SWIVEL, A

18   BACK, AND A SEAT.  YOU'D HAVE TO GO AND GET THEIR PRODUCT AND

19   MAKE SURE THAT IT -- AND DO YOUR INVESTIGATION TO MAKE SURE

20   THAT IT HAD FOUR LEGS, A SWIVEL, A BACK, AND A SEAT.

21         MR. SKEELS:  CORRECT.

22         AND ONCE WE'VE DONE THAT AND SATISFIED OUR ETHICAL

23   OBLIGATIONS UNDER RULE 11, WE'RE THEN IN A POSITION AND

24   ENTITLED TO MOVE FORWARD PLEADING THOSE FACTS.  WE HAVE STUDIED

25   THE CHAIR.  WE HAVE MET OUR DUE DILIGENCE OBLIGATIONS.  WE'VE

App. 95

1    SATISFIED RULE 11.  AND WE HEREBY ALLEGE AS A MATTER OF FACT

2    THAT THE CHAIR HAS A, B, C AND D.

3           NOW, IT COULD BE -- AGAIN, FOR STRATEGIC REASONS I

4    DON'T WANT TO PUT ANY MORE DETAIL THAN -- THAN IS NECESSARY.

5           AND IT COULD BE -- NOT IN MY CASE BUT THEORETICALLY

6    YOU HAVE TO DEAL WITH ALL SORTS OF PLAINTIFFS, THAT IT TURNS

7    OUT 18 MONTHS DOWN THE ROAD THAT THE PLAINTIFF DIDN'T HAVE A

8    GOOD-FAITH BASIS FOR DOING THAT.

9           AT THAT POINT YOU TAKE UP, YOU KNOW, A MOTION FOR

10   SANCTIONS, A MOTION FOR EXTRAORDINARY CASE, ATTORNEY'S FEES.

11          AND AT THAT POINT A DEFENDANT MIGHT BE ENTITLED TO MY

12   CONFIDENTIAL WORK PRODUCT.  HEY, MR. SKEELS -- THE COURT MIGHT

13   SAY TO ME, I WANT TO SEE WHAT YOU DID.  I WANT TO SEE IF YOU

14   REALLY DID DO YOUR HOMEWORK BECAUSE I'M NOT SATISFIED 18 MONTHS

15   DOWN THE ROAD.  YOU'VE WASTED EVERYBODY'S TIME.  AND WE DON'T

16   THINK YOU HAD A GOOD-FAITH BASIS.

17          THAT'S SORT OF THE SENSE I GET FROM A DEFENDANT IS,

18   YOU KNOW, WE'RE NOT SURE YOU REALLY HAVE THE GOODS ON US.  SO,

19   WE PUT A LITTLE SNIPPET OF A REVERSE ENGINEERED SCHEMATIC TO

20   SHOW THAT WE'VE SPENT TENS OF THOUSANDS OF DOLLARS TO DO THIS.

21   BUT WE DIDN'T HAVE AN OBLIGATION UNDER RULE 8 TO DO THAT.

22          SO, I KEEP COMING BACK TO RULE 8.  AND I KEEP COMING

23   BACK TO SOME OF THESE CASES.

24          I GUESS IF I WOULD MAKE, YOU KNOW, ONE LAST POINT

25   THAT I THINK IS PROCEDURALLY IMPORTANT, YOU SAY IN TWO OR THREE

16

1   PLACES -- AT LEAST ON PAGE 4 AND PAGE 5 OF YOUR TENTATIVE

2   RULING THAT PLAINTIFF MUST SHOW -- THAT'S THE COURT'S WORDS --

3              PLAINTIFF MUST SHOW THAT EACH LIMITATION IS MET.

4              PLAINTIFF MUST SHOW HOW EACH ACCUSED PRODUCT MEETS

5              THE LIMITATIONS.

6              I WOULD RESPECTFULLY TAKE ISSUE WITH THE WORD "SHOW."

7              I THINK RULE 8 REQUIRES US TO PLEAD OR ALLEGE THAT

8   THOSE LIMITATIONS ARE MET -- THAT WE HAVE TO SHOW THESE THINGS

9   SOUNDS A LOT LIKE THE SUMMARY JUDGMENT PHASE, THAT WE HAVE TO

10  SOMEHOW MARSHAL OUR EVIDENCE, THAT WE HAVE -- SOMEHOW HAVE TO

11  MEET SOME SORT OF, YOU KNOW, MORE LIKELY THAN NOT BURDEN OF

12  PROOF, THAT WE SOMEHOW HAVE TO, YOU KNOW, SATISFY THE COURT

13  THAT THERE IS, IN FACT, INFRINGEMENT.  AND THAT'S SIMPLY NOT

14  WHAT RULE 8 REQUIRES.

15             THE COURT:  OKAY.  THANK YOU.

16             MR. KAO.

17             MR. KAO:  YOUR HONOR --

18             THE COURT:  I LIKE RULE 8.

19             I WILL SAY IT'S A VERY HELPFUL RULE IN MANY, MANY

20  CONTEXTS.  SO, I -- I -- I WANT TO THINK CAREFULLY ABOUT GOING

21  AGAINST IT.

22             MR. KAO:  YES, YOUR HONOR.

23             AND I BELIEVE THAT THE -- THE COURTS ARE NOW

24  CONSISTENTLY APPLYING RULE 8 AFTER IQBAL AND TWOMBLY IN THE

25  PATENT INFRINGEMENT CONTEXT TO REQUIRE -- AND IT'S PRETTY

17

1    UNIVERSAL IN THE CASE LAW --

2              ALLEGATIONS SUFFICIENT TO PERMIT THE COURT TO INFER

3              THAT THE ACCUSED PRODUCT INFRINGES EACH ELEMENT OF AT

4              LEAST ONE CLAIM.

5              AND AT THE VERY LEAST PLAINTIFFS ARE REQUIRED TO DO

6    THAT.

7              AND IN THIS CASE I THINK THE COMPLAINT IS DEFICIENT.

8    IT DOES NOT DO THAT.

9              AS YOUR HONOR CORRECTLY NOTED IN THE TENTATIVE, THERE

10   ARE ELEMENTS IN -- IN EACH OF THE CLAIMS FOR WHICH THERE -- THE

11   PLAINTIFF DOES NOT ALLEGE HOW IT IS THAT THE ACCUSED PRODUCT

12   INFRINGES THOSE ELEMENTS.

13             AND EVEN WORSE AS WE'VE POINTED OUT IN OUR BRIEFING,

14   THE SCHEMATICS THAT ARE ATTACHED ARE NOT IDENTIFIED WITH

15   RESPECT TO WHAT PRODUCT THOSE SCHEMATICS ARE EVEN SUPPOSED TO

16   COME FROM.  AND THERE'S NOTHING AT ALL TO DESCRIBE WHERE IN THE

17   SCHEMATIC THE PLAINTIFFS ARE SUGGESTING THAT CERTAIN ELEMENTS

18   OF THE CLAIMS ARE MET.  AND THAT IS DEFICIENT.

19             AND AS A RESULT I THINK, AS YOUR HONOR CORRECTLY

20   CONCLUDED IN THE TENTATIVE, THE COMPLAINT MUST BE DISMISSED

21   BASED ON THE  -- ON THE CURRENT CASE LAW WITHOUT REGARD TO --

22   TO WHETHER AS PART OF THE DISCOVERY INFRINGEMENT CONTENTIONS

23   ARE LATER PROVIDED OR NOT.

24             THE CASES THAT WE CITE TO ARE FROM DISTRICTS ACROSS

25   THE COUNTRY, INCLUDING, FOR EXAMPLE, DELAWARE WHERE

App. 98

 1   INFRINGEMENT CONTENTIONS ARE REQUIRED; THE NORTHERN DISTRICT OF

 2   CALIFORNIA WHERE INFRINGEMENT CONTENTIONS ARE REQUIRED.

 3           COURTS STILL DISMISS DEFICIENTLY PLEADED COMPLAINTS

 4   REGARDLESS OF WHAT MAY OCCUR LATER IN THE CASE ONCE THE

 5   PLAINTIFF HAS PASSED THE THRESHOLD STEP OF ADEQUATELY PLEADING

 6   A COMPLAINT.

 7           THE COURT:  I HAD HALF A QUESTION.  NOW, LET ME SEE

 8   IF I CAN FORM IT INTO A FULL QUESTION BEFORE IT GOES AWAY.

 9           I THINK I CAN'T.  SO, ALL RIGHT.  THANK YOU FOR THOSE

10   COMMENTS.

11           ANY -- ANY RESPONSE, MR. SKEELS OR MR. HATCH?

12           MR. SKEELS:  JUST -- JUST BRIEFLY.

13           MR. KAO CITED TO WHAT IS DONE IN THE PATENT CONTEXT.

14           AND I WOULD SIMPLY REMIND THE COURT THAT THIS UNITED

15   STATES SUPREME COURT SEEMS VERY FOND OF REMINDING THE FEDERAL

16   CIRCUIT THAT THEY'RE NOT SPECIAL.  THEY DON'T GET SPECIAL

17   RULES.  THEY DON'T GET TO APPLY THE RULES IN SPECIAL DIFFERENT

18   WAYS.

19           THE WAY THAT RULE 8 IS APPLIED TO A PATENT CASE

20   SHOULD BE THE SAME AS THE WAY IT'S APPLIED TO A COMMERCIAL

21   CASE, A BANKRUPTCY CASE, OR ANY OTHER KIND OF CASE.

22           I STILL GO BACK -- AGAIN, IT'S NOT THIS COURT'S

23   POSITION TO MAKE POLICY DECISIONS.  BUT I THINK THE POLICY

24   CONCERNS SHOULD INFORM A PROPER ANALYSIS AND APPLICATION OF

25   RULE 8.

1          AND I GO BACK TO THE SITUATION IN THIS PARTICULAR

2    INSTANCE I HAPPEN TO REPRESENT A CLIENT THAT HAS THE RESOURCES

3    TO SPEND $50,000-PLUS REVERSE ENGINEERING VERY DETAILED

4    SEMICONDUCTOR SCHEMATICS OR SEMICONDUCTOR CHIPS.  BUT I

5    REPRESENT A LOT OF INVENTORS WHO DON'T HAVE THOSE RESOURCES.

6          NOW, AGAIN, I'M STILL BOUND AND WILL ABIDE BY MY

7    ETHICAL OBLIGATIONS OF RULE 11.  I WON'T FILE A CASE UNLESS I

8    HAVE A GOOD-FAITH BELIEF AFTER HAVING DONE APPROPRIATE DUE

9    DILIGENCE AND LOOKING AT ALL PUBLICLY AVAILABLE INFORMATION AND

10   I'VE SATISFIED MYSELF THERE'S INFRINGEMENT, I WON'T FILE A CASE

11   PERSONALLY UNTIL ALL THAT HAS BEEN DONE.

12         BUT I'M -- I FIND MYSELF IN SITUATIONS ALL THE TIME

13   WHERE -- WHERE THAT'S -- YOU KNOW, I'M NOT GOING TO HAVE

14   SCHEMATICS LIKE THIS.  AND I GUESS -- YOU KNOW, MR. HATCH AND I

15   WERE EVEN HAVING THIS -- YOU KNOW, WELL, I DON'T WANT TO

16   DISCLOSE CONFIDENTIAL STUFF -- BUT IN ANY EVENT, THERE'S A

17   CONCERN ABOUT BEING, YOU KNOW, SORT OF, YOU KNOW, FORCED OR

18   COERCED OR REQUIRED BY THE COURT TO DISCLOSE --

19         THE COURT:  YEAH.  I THINK I REQUIRE.  FORCING AND

20   COERCING SOUNDS BAD.

21         (LAUGHTER.)

22         THE COURT:  I DON'T KNOW.

23         MR. SKEELS:  YOU REQUIRE UNDER -- UNDER APPROPRIATE

24   AUTHORITY, YOUR HONOR, TO DISCLOSE THAT WHICH I CONSIDER

25   CONFIDENTIAL WORK PRODUCT THAT I'D REALLY RATHER NOT PROVIDE

20

1   UNLESS THERE'S SOME -- YOU KNOW, ABSOLUTELY NO OTHER WAY TO DO

2   IT.

3               THE COURT:  ALL RIGHT.

4               WELL, THANK YOU, BOTH, FOR YOUR COMMENTS.

5               WHAT I NEED TO DO IS PRETTY THIS UP A LITTLE BIT.

6   I'LL TAKE A COUPLE OF DAYS TO TURN IT INTO A -- A FINDINGS AND

7   RECOMMENDATION.

8               AND THEN I THINK ONCE THAT'S OUT, YOU GUYS WILL HAVE

9   14 DAYS TO FILE ANY OBJECTIONS.

10              YOU KNOW, I WON'T -- I WON'T ADVISE YOU EITHER WAY

11  ABOUT WHETHER THOSE WERE A GOOD IDEA OR A BAD IDEA.

12              BUT THEN YOUR CASE WILL GO -- GO BACK TO JUDGE CARTER

13  IN THE FUTURE.  AND MY WORK HERE WILL BE DONE -- UNLESS YOU

14  GUYS HAVE SOME SORT OF DISCOVERY DISPUTE OR IF SOME DAY A

15  JUDGMENT DEBTOR EXAM.  YOU NEVER KNOW.

16              (LAUGHTER.)

17              THE COURT:  I DON'T THINK THAT'S LIKELY TO HAPPEN

18  WITH A BIG COMPANY LIKE KINGSTON, RIGHT?

19              BUT WE COULD -- WE COULD -- THE CASE COULD TAKE ALL

20  KINDS OF TWISTS AND TURNS, I GUESS.

21              SO, GIVE US A COUPLE OF DAYS TO DO THAT.  I KNOW YOU

22   -- I KNOW THIS MOTION WAS FILED QUITE A WHILE AGO, BUT WE'LL

23  GET IT OUT AND GET IT ON ITS WAY SO YOU GUYS CAN GET ON WITH

24  THE CASE.

25              ANYTHING ELSE, MR. SKEELS?

1          MR. SKEEL:  I DON'T THINK SO.  BUT THANK YOU FOR YOUR

2    TIME, YOUR HONOR.

3               THE COURT:  MR. KAO.

4          MR. KAO:  JUST ONE COMMENT, IF I MAY --

5               THE COURT:  YEAH.

6          MR. KAO:  -- YOUR HONOR, JUST ON THE PUBLIC POLICY

7    ISSUE, WHICH I AGREE IS BEYOND ALL OF OUR PAY GRADES, BUT -- SO

8    I MAKE THE COMMENTS ON THE RECORD.

9          I THINK ON THE FLIP SIDE THE PUBLIC POLICY CONCERN IS

10   THAT THERE ARE MANY.  AND, IN FACT, THE VAST MAJORITY OF PATENT

11   INFRINGEMENT CASES THAT ARE FILED TODAY ARE FILED BY

12   NON-PRACTICING ENTITIES LIKE MR. SKEELS' CLIENT IN WHICH THERE

13   ARE --

14              THE COURT:  THEY'RE ALL GOOD -- THEY'RE ALL GOOD

15   PEOPLE.

16         MR. KAO:  THEY'RE ALL GOOD PEOPLE.

17         MR. SKEELS:  THANK YOU, YOUR HONOR.

18         MR. KAO:  BUT THE -- THERE IS NOT NECESSARILY GOOD

19   FAITH INFRINGEMENT CLAIMS.

20         AND -- AND THE PLAINTIFFS TRY TO GET -- FILE A CASE

21   BY, YOU KNOW, ALLEGING WHATEVER THEY CAN IN ORDER TO COERCE A

22   SETTLEMENT OUT OF THE DEFENDANTS.

23         AND, SO, THERE IS A REASON THAT RULE 8 EXISTS AND WHY

24   THE CASE LAW APPLYING RULE 8 EXISTS.  AND THAT IS TO INSURE

25   THAT IN EACH CASE THE PLAINTIFF ACTUALLY MEETS A MINIMUM

22

1   STANDARD IN ORDER FOR A CASE TO PROCEED RATHER THAN HAVE THE

2   CASE PROCEED ALL THE WAY TO SUMMARY JUDGMENT AS MR. SKEELS

3   SUGGESTS TO HAVE THAT RESOLVED.

4            SO, OBVIOUSLY, I THINK THERE'S AN IMPORTANT PUBLIC

5   POLICY REQUIRING PLAINTIFFS UPFRONT TO PLEAD COMPLAINTS

6   ADEQUATELY.

7            THE COURT:  WE ARE NOW WAY ABOVE MY PAY GRADE.  SO, I

8   WILL -- I WILL TAKE THAT AS THE FINAL COMMENT.

9            WE'LL GET SOMETHING TO YOU GUYS IN A FEW DAYS.

10           AND BE CAREFUL ON YOUR WAY OUT.  THOSE FOLKS ARE OUT

11  THERE.  AND THEY MIGHT BE THROWING STUFF AT EACH OTHER BY NOW.

12           (LAUGHTER.)

13           THE COURT:  AND WITH THAT, MS. VO.

14           THE CLERK:  YES.

15           THIS COURT IS NOW ADJOURNED.

16           (PROCEEDINGS ADJOURNED AT 9:30 A.M.)

17

18

19

20

21

22

23

24

25

23

1

2

3                    C E R T I F I C A T E

4

5

6          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
   FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
7   ABOVE-ENTITLED MATTER.

8

   /S/ DOROTHY BABYKIN                        7/5/18
9   _____          _____
   FEDERALLY CERTIFIED TRANSCRIBER            DATED
10   DOROTHY BABYKIN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# North Star's Motion for Summary Judgment

# EXHIBIT 7

**From:** David Skeels
**Sent:** Mon, 18 Jun 2018 19:11:43
**To:** Kao, Christopher
**Cc:** yang christine; Rick Sanchez; Candy K. Sanders; Jennifer Ross
**Subject:** Re: Mediation: North Star Innovations Inc. v. Kingston Technology Company, Inc., Case No. 8:17-cv-1833 (C.D. Cal.) (DOC)
**Importance:** Normal

---

What about documents?

Sent via the Samsung Galaxy S7 active, an AT&T 4G LTE smartphone

-------- Original message --------
From: "Kao, Christopher" <christopher.kao@pillsburylaw.com>
Date: 6/18/18 7:10 PM (GMT-06:00)
To: David Skeels <DSkeels@whitakerchalk.com>
Cc: yang christine <chrisyang@sjclawpc.com>, Rick Sanchez <RSanchez@whitakerchalk.com>, "Candy K. Sanders" <CSanders@whitakerchalk.com>, Jennifer Ross <JRoss@whitakerchalk.com>
Subject: RE: Mediation: North Star Innovations Inc. v. Kingston Technology Company, Inc., Case No. 8:17-cv-1833 (C.D. Cal.) (DOC)

Dear David,

Unfortunately those two dates at the end of August do not work for Kingston any more.  I have asked for new dates from them and will get back to you as soon as possible.

Chris

---

**From:** David Skeels <DSkeels@whitakerchalk.com>
**Sent:** Monday, June 18, 2018 1:00 PM
**To:** Kao, Christopher <christopher.kao@pillsburylaw.com>
**Cc:** yang christine <chrisyang@sjclawpc.com>; Rick Sanchez <RSanchez@whitakerchalk.com>; Candy K. Sanders <CSanders@whitakerchalk.com>; Jennifer Ross <JRoss@whitakerchalk.com>
**Subject:** RE: Mediation: North Star Innovations Inc. v. Kingston Technology Company, Inc., Case No. 8:17-cv-1833 (C.D. Cal.) (DOC)

Chris: see below. Please advise.

Thanks,

**DAVID SKEELS** | Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

App. 106

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



**From:** David Skeels
**Sent:** Friday, June 15, 2018 5:53 PM
**To:** 'Kao, Christopher' <christopher.kao@pillsburylaw.com>
**Cc:** yang christine <chrisyang@sjclawpc.com>; Rick Sanchez <RSanchez@whitakerchalk.com>; Candy K. Sanders <CSanders@whitakerchalk.com>; Jennifer Ross <JRoss@whitakerchalk.com>
**Subject:** RE: Mediation: North Star Innovations Inc. v. Kingston Technology Company, Inc., Case No. 8:17-cv-1833 (C.D. Cal.) (DOC)

Chris,

We would have to get the deadline moved to do mediation after Aug. 27, but I don't think that would be a problem. Which date works best for you: Aug. 29 or 30? Let's try to get one of those 2 dates on the calendar. Please re-confirm your availability, and then we can try to schedule it with Tevrizian, Nagle, or Gandhi.

Also, I don't recall that you produced documents by mid-May, as promised. Did I miss something?

Thanks,

**DAVID SKEELS** │ Member
Whitaker Chalk Swindle & Schwartz PLLC

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4135

817.878.0573 Direct
817.878.0500 Main
817.878.0501 Fax
817.913.4075 Mobile

dskeels@whitakerchalk.com
www.whitakerchalk.com



**From:** Kao, Christopher [mailto:christopher.kao@pillsburylaw.com]
**Sent:** Wednesday, May 30, 2018 3:58 PM
**To:** David Skeels <DSkeels@whitakerchalk.com>
**Cc:** yang christine <chrisyang@sjclawpc.com>
**Subject:** RE: Mediation: North Star Innovations Inc. v. Kingston Technology Company, Inc., Case No. 8:17-cv-1833 (C.D. Cal.) (DOC)

David,

Those dates don't work for our side, unfortunately.

Are you available on either August 15, 16 or 17?  Those are the first dates in August that work for our side.
I called JAMS and they said Judge Gandhi is available on those days and we could do it then.  From the chain
below, it does not look like the other Judges have any availability in the last half of August.

We could also do anytime from August 27-30, if that works better for you.

I am out of the country the week of August 20.

Chris

**Christopher Kao** | Partner
Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor | San Francisco, CA 94111-5998
t 415.983.1159
christopher.kao@pillsburylaw.com | website bio

# North Star's
# Motion for Summary Judgment

# EXHIBIT 8

1   PILLSBURY WINTHROP SHAW PITTMAN LLP
2   Christopher Kao (SBN 237716)
       christopher.kao@pillsburylaw.com
3   Brock S. Weber (SBN 261383)
       brock.weber@pillsburylaw.com
4   Four Embarcadero Center, 22nd Floor
5   San Francisco, CA  94111-5998
    Telephone:  415.983.1000
6   Facsimile:   415.983.1200

7

8   Christine Yang (SBN 102048)
       chrisyang@sjclawpc.com
9   LAW OFFICE OF S.J. CHRISTINE YANG
10  17220 Newhope Street, Suite 101-102
    Fountain Valley, CA  92708
11  Telephone:  714.641.4022
    Facsimile:   714.641.2082
12

13  Attorneys for Defendant
14  KINGSTON TECHNOLOGY COMPANY, INC.

15

16              UNITED STATES DISTRICT COURT

17              CENTRAL DISTRICT OF CALIFORNIA

18

19  NORTH STAR INNOVATIONS INC.,          Case No. 8:17-cv-01833-DOC-DFM

20              Plaintiff,                 **DEFENDANT KINGSTON'S**
                                           **OBJECTIONS AND RESPONSES**
21       vs.                               **TO PLAINTIFF'S COMBINED**
                                           **DISCOVERY REQUESTS TO**
22  KINGSTON TECHNOLOGY                    **DEFENDANT**
    COMPANY, INC.,
23                                         Trial Date:  July 23, 2019
24              Defendant.
                                           Hon. David O. Carter
25

26

27

28

---

Kingston's Responses to Plaintiff's Combined          Case No. 17-cv-01833-DOC
Discovery Requests

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure ("Federal Rules") and the Local Rules of the United States District Court for the Central District of California ("Local Rules"), Defendant Kingston Technology Company, Inc. ("Kingston"), by and through its undersigned attorneys, hereby responds and objects to Plaintiff's First Set of Combined Discovery Requests to Defendant, dated March 16, 2018 (collectively, the "Requests," and each, individually, a "Request").

## I.   PRELIMINARY STATEMENTS

1.    Plaintiff served its Requests while Kingston's Motion to Dismiss for failure to state a claim was pending.  (Dkt. No. 20, filed December 15, 2017.)  Before Kingston's responses and objections were due to the Requests, Magistrate Douglas F. McCormick (to whom disposition of the Motion to Dismiss had been delegated by the Court) issued his Findings and Recommendations on May 7, 2018 (Dkt. No. 38), ruling that Kingston's Motion to Dismiss should be granted as to all of Plaintiff's direct infringement claims against Kingston (and, therefore, as to all of Plaintiff's infringement claims, both direct and indirect).  The Court adopted the Magistrate's ruling on June 25, 2018 and granted Kingston's Motion to Dismiss with leave to amend (Dkt. No. 44.)  Plaintiff filed its First Amended Complaint ("FAC") on July 9, 2018.  Kingston's response to the FAC is not due until July 23, 2018.  As such, Kingston objects to the Requests as therefore improper and premature, because, for instance, Plaintiff is not entitled to any discovery when its original claims were dismissed as legally deficient and its new claims have not been answered.  Any indication that Kingston will produce information or documents in response to the Requests at this time is made without waiving this overall objection, and is based on Kingston's previous statements in this litigation and/or in furtherance of an effort to efficiently resolve this dispute.

2.    Kingston objects to the Requests to the extent that they seek or may encompass Kingston's confidential and/or proprietary information.  Kingston will

1  provide responsive, non-privileged information and/or documents pursuant to the

2  Requests only under the protection of a Protective Order entered by the Court.

3  Plaintiff has not sent a proposed protective order for Kingston's consideration yet.

4       3.     Kingston's investigation and development of all facts and circumstances

5  relating to this case is ongoing.  These responses and objections are made without

6  prejudice to, and are not a waiver of, Kingston's right to rely on other facts or

7  documents at trial.

8       4.     By making the accompanying responses and these objections to

9  Plaintiff's Requests, Kingston does not concede that Plaintiff is entitled to discovery

10  and/or damages for any activities before the filing of a sufficiently pled complaint.

11  Kingston reserves the right to refute Plaintiff's apparent claim to damages and

12  discovery for the period from October 19, 2011 until the present.

13       5.     By making the accompanying responses and these objections to

14  Plaintiff's Requests, and by producing information, documents, or things in response

15  to the Requests, Kingston does not waive, and hereby expressly reserves, its right to

16  assert any and all objections as to the admissibility of such responses, documents, or

17  things into evidence in this action, or in any other proceedings, on any and all grounds

18  including, but not limited to, competency, relevancy, materiality, and privilege.

19  Further, Kingston makes the responses and objections herein without in any way

20  implying that it considers the Requests or responses thereto to be relevant or material

21  to the subject matter of this action.

22       6.     Kingston expressly reserves the right to supplement or amend these

23  responses and objections as may be necessary or appropriate in accordance with the

24  applicable Rules, and if and when Plaintiff is able to plead any adequate claims in this

25  action.  Kingston reserves the right to clarify, revise, or correct any or all of the

26  responses and objections herein, and to assert additional objections or privileges, in

27  one or more subsequent supplemental responses.

28

## II.   **GENERAL RESERVATIONS AND OBJECTIONS**

The following General Reservations and Objections apply to all Requests. Because these General Reservations and Objections apply to each Request, they are, for convenience, set forth immediately below and not repeated in response to each specific Request. Nevertheless, the assertion of the same, similar, or additional objections in response to a specific Request does not waive, limit or modify any of these General Objections. Likewise, any specific objections made by Kingston in no respect waive, limit, or modify any General Objections. Kingston reserves the right to amend or supplement these objections as may be appropriate.

1.     In responding to these Requests, Kingston fully preserves:

a.     all objections as to competency, relevancy, materiality, and admissibility;

b.     all rights to object on any grounds to the use of the responses herein in any subsequent judicial or administrative proceedings, including a trial of this or other actions;

c.     all objections as to vagueness and ambiguity;

d.     all rights to object on any grounds to any further Requests or other discovery requests involving or related to the subject matter of the Requests; and

e.     all rights to make objections based upon the attorney-client privilege, attorney work-product doctrine, joint-defense privilege, common-interest privilege, patent-agent privilege, and any other judicially recognized doctrine, protection or privilege with respect to all information and to each document protected by a privilege.

2.     Kingston objects to the Requests, including all the definitions and instructions contained therein, to the extent they purport to impose on Kingston an obligation greater than that provided for by the Federal and/or Local Rules.

3.     Kingston objects to the Requests to the extent they are overly broad, unduly burdensome, harassing, oppressive, and vexatious and to the extent they seek

1    information that is neither relevant to the claims or defenses of any party nor

2    proportional to the needs of the case.

3            4.      Kingston objects to the Requests to the extent they seek information that

4    is not relevant to United States Patent No. 5,943,274 (the "'274 Patent"), U.S. Patent

5    No. 6,127,875 (the "'875 Patent"), U.S. Patent No. 6,917,555 (the "'555 Patent"), and

6    U.S. Patent No. 6,101,145 (the "'145 Patent") (collectively, "the Asserted Patents").

7            5.      Kingston objects to the Requests to the extent they seek disclosure of

8    expert opinions prior to the deadlines set forth in the Court's Scheduling Order and/or

9    Discovery Orders.

10           6.      Kingston objects to the Requests to the extent they seek information that

11   is privileged, by virtue of the attorney-client privilege, attorney work-product

12   doctrine, patent-agent privilege, joint-defense privilege, common-interest privilege or

13   is otherwise protected against or privileged from disclosure by law or rule of court.

14   By responding to the Requests, Kingston does not waive, and intends to preserve, all

15   applicable privileges.  Accordingly, where Kingston has provided or has agreed to

16   provide information responsive to the Requests, Kingston has provided or will provide

17   only information that is non-privileged.  In the event that Kingston discloses any

18   privileged information, its disclosure is inadvertent and shall not constitute waiver of

19   any privilege.

20           7.      Kingston objects to each Request to the extent that it uses claim terms

21   which have yet to be construed by the Court as a matter of law; Kingston's response to

22   any such Request is not any admission or statement regarding such construction.

23           8.      Kingston's agreement to provide information responsive to a particular

24   Request should not be construed to mean that it has any such requested relevant non-

25   privileged information in its possession, custody, or control.  Moreover, Kingston's

26   agreement to provide information shall not be construed as an admission that such

27   information is relevant or otherwise admissible.

28

9.     All Kingston's responses herein and/or related documents are or will be provided subject to a Protective Order entered in this case by the Court.

10.     Kingston objects to all of the Requests to the extent that they seek "electronically stored information" ("ESI") and/or email files, which are the subject of discovery agreements the parties agreed to negotiate, and the Requests may conflict with any agreement the parties ultimately reach.  Kingston will not produce email or other forms of electronic correspondence in response to the Requests at this time, absent a showing of good cause to support the relevance, need, and proportionality of such discovery.

11.     Kingston objects to the Requests to the extent they seek information that is in Plaintiff's possession, custody, or control, that is a matter of public record, or to which Plaintiff has equal access.

12.     Kingston objects to the Requests to the extent they seek information in the possession, custody, or control of any person or entity other than Kingston or information that is not within Kingston's possession, custody, or control.

13.     The foregoing General Reservations and Objections are incorporated into each of the Responses and Objections to the specific Requests set forth below.

## III.    OBJECTIONS TO THE DEFINITIONS

Kingston makes the following objections to each and every one of the Definitions, and incorporates by reference these objections in response to each of the discovery requests as if fully set forth therein:

1.     Kingston objects to the use or the definition of "Kingston Technology Company, Inc.," "Kingston," "Defendant," "You," and/or "Your," as overly broad, unduly burdensome, irrelevant to the present litigation, not proportional to the needs of the case, and ambiguous.  For the purpose of these objections and responses, Kingston assumes that "Kingston Technology Company, Inc.," "Kingston," "Defendant," "You," and/or "Your," refer only to Kingston Technology Company, Inc., and limits its responses accordingly.  Kingston is responding solely on its own

behalf and not on behalf of any predecessors, subsidiaries, parents, affiliates or other entity referenced in the definition.  Kingston further objects to the inclusion of "parent, subsidiary, affiliate, division, predecessor, or successor," and "past and present officers, directors, employees, agents, representatives, or any other person acting on behalf of Kingston Technology Company, Inc." or other entities/persons otherwise described in the definition as overly broad and unduly burdensome. Kingston is responding solely on Kingston Technology Company, Inc.'s own behalf, and not on behalf of any other entities, persons or individuals.

2.    Kingston objects to the definition of "Asserted Claims" on the grounds that the inclusion of Plaintiff's statement that it may "assert[] additional claims" in the future in the definition renders the terms overly broad, vague, and uncertain.

3.    Kingston objects to the definition of "Accused Products" as overly broad, vague, and ambiguous.  Kingston also objects to this definition on the ground that it is unduly burdensome to the extent that it requires Kingston to guess, predict or analyze Plaintiff's infringement contentions.  Kingston also objects to this definition on the grounds that the inclusion of Plaintiff's statement that it may "accuse[] additional products" in the future in the definition renders the terms overly broad, vague, and uncertain.

4.    Kingston objects to the definitions of "Person," "Entity," "Document," "Tangible Thing," "Communication," "Identify," "Referring," "Relating," and "Concerning," to the extent they purport to impose on Kingston an obligation greater than that provided for by the Federal and/or Local Rules.

## IV.   OBJECTIONS TO THE INSTRUCTIONS

Kingston makes the following objections to each and every one of the instructions, and incorporates by reference these objections in response to each of the Requests as if fully set forth therein:

Kingston objects to the Instructions to the extent that they purport to impose obligations greater than those set forth in the applicable Rules.

Subject to and without waiver of any of the foregoing General Objections or the Specific Responses and Objections below, Kingston is conducting a reasonable search of the locations at which information or documents responsive to the Requests are likely to be kept, and will produce information or documents, if any, as described herein on a rolling basis, starting at a time to be agreed by the parties. By responding that it will produce responses or documents, Kingston does not represent that such information or documents exist, only that a reasonable good faith search for such information or documents has been or will be made and, to the extent that such information or documents are located, those information or documents will be produced subject to the objections stated.

## V.   **OBJECTIONS AND RESPONSES TO REQUESTS**

Without waiving or limiting in any manner any of the foregoing General Objections or Objections to the Definitions and Instructions, but rather incorporating them into each of the following Objections and/or Responses to the extent applicable, Kingston responds to the specific Requests as follows.

### **INTERROGATORIES**

**INTERROGATORY NO. 1:**

In light of Your position since at least as early as March 5, 2018, whereby "Kingston anticipates [seeking] IPR review of the validity of the Asserted Patents," please identify and explain, on a limitation by limitation basis, all factual and legal bases for Your position that the Patents-in-Suit are invalid. Your response should address, at a minimum, each of the Asserted Claims and should include any and all arguments based on 35 U.S.C. §§ 101,102,103, and/or 112. Your response should: identify all facts and documents that support or contradict Your position; include claim charts identifying with specificity where each element of each challenged claim is found in the prior art; identify specific combinations of prior art that You contend make the challenged claim obvious, the motivation(s) to combine such prior art, and all persons with knowledge of the same; and identify the factual and legal bases supporting the authenticity and admissibility of any prior art You cite.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1:**

Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein. Kingston objects to this Interrogatory as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be granted, and because Kingston's response to the FAC is not due until July 23, 2018. Kingston has no obligation, therefore, to state a position or contention regarding the invalidity of the Asserted Patents. Kingston further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, and Kingston will not produce such information. Kingston also objects to this Interrogatory because it contains multiple discrete subparts thereby exceeding numerical limitations on the service of Interrogatories in this case and under Federal Rule 33(a)(1). Kingston therefore reserves its right to seek a protective order if Plaintiff propounds interrogatories in excess of the number allowed by the Federal Rules, the Court, or the parties' agreement. Kingston further objects to this Interrogatory as unduly burdensome, untimely and premature, as it seeks disclosure of expert opinions prior to any claim construction by the Court and/or prior to the deadlines set forth in the Court's Scheduling Order and/or Discovery Orders.

Further, by responding to this Interrogatory, Kingston does not seek to predict the Court's claim construction and does not attempt to define any claim terms in any way. Nothing herein should be construed as an admission that Kingston agrees with Plaintiff's express or implied claim constructions or that Plaintiff has proposed any discernible constructions for claims and/or claim terms.

Subject to and without waiving the foregoing General and Specific Objections, based on its ongoing investigation to date and to the extent Kingston understands this Interrogatory, Kingston responds as follows:

Kingston represented in the parties' Joint Rule 26(f) report that it anticipates seeking *inter partes* review ("IPR") of the Asserted Patents due at least to the following prior art references for each Asserted Patent, which anticipate the asserted claims and/or render them obvious, alone or in combination, under both the standard for invalidity in district court litigation and before the PTAB:

| U.S. Patent No. 5,943,274 | U.S. Patent No. 6,101,145 | U.S. Patent No. 6,127,875 | U.S. Patent No. 6,917,555 |
|---|---|---|---|
| Kawahara, et al., Deep-Submicrometer BiCMOS Circuit Technology for Sub-10-ns ECL 4-Mb DRAM's, IEEE Journal of Solid-State Circuits, Vol. 27, No. 4, April 1992. | Amrutur, et al., A Replica Technique for Wordline and Sense Control in Low-Power SRAM's, IEEE Journal of Solid-State Circuits, Vol. 33, No. 8, August 1998. | Bossche, et al., Two-Phase Zero-Voltage Switching Boost Converter for Medium Power Applications, IEEE 0-7803-4943-1/98, 1998. | Flautner, et al., Drowsy Caches: Simple Techniques for Reducing Leakage Power, Proceedings of the 29th Annual International Symposium on Computer Architecture (ISCA '02) 1063-6897/02, 2002. |
| Kobayashi, et al., A Current-Controlled Latch Sense Amplifier and a Static Power-Saving Input Buffer for Low-Power Architecture, IEEE Journal of Solid-State Circuits, Vol. 28, No. 4, April 1993. | EP0668591A1 | Chan, et al., Performance enhancement of single-phase switched-reluctance motor by DC link voltage boosting, IEE Proceedings-B, Vol. 140, No. 5, September 1993. | JP22003045189 |

| U.S. Patent No. 5,943,274 | U.S. Patent No. 6,101,145 | U.S. Patent No. 6,127,875 | U.S. Patent No. 6,917,555 |
|---|---|---|---|
| Rau, et al., An ECL to CMOS Level Converter with Complementary Bipolar Output Stage, IEEE Journal of Solid-State Circuits, Vol. 30, No. 7, July 1995. | US4314353 | Chung, Inductorless DC/DC Boost Converter Using Switched-Capacitor Circuit, 1997 IEEE International Symposium on Circuits and Systems, 0-7803-3583-X/97, June 1997. | JPG05143469 |
| Terada, et al., Nonvolatile Memories, IEEE International Solid-State Circuits Conference, 0193-6530/0000-0136, 1989. | US4328558 | EP0266743B1 | JPH07254284 |
| US4446567 | US4445203 | GB2035723A | Liaw, et al., Crossing the Planes at High Speed: Signal integrity Issues at Split Ground and Power Planes, Circuits & Devices; 8755-3996/97/IEEE, November 1997. |

| U.S. Patent No. 5,943,274 | U.S. Patent No. 6,101,145 | U.S. Patent No. 6,127,875 | U.S. Patent No. 6,917,555 |
|---|---|---|---|
| US4713796 | US4447891 | Mak, et al., <u>Switched-Capacitor Inverter with High Power Density and Enhanced Regulation Capability</u>, IEEE Transactions on Circuits and Systems—I: Fundamental Theory and Applications, Vol. 45, No. 4, April 1998. | Powell, et al., <u>Gated-V$_{dd}$: A Circuit Technique to Reduce Leakage in Deep-Submicron Cache Memories</u>, ACM 1-58113-190-9/00/0007, ISLPED '00, Papallo, Italy, 2000. |
| US4797583 | US4467456 | Moore, <u>Synchronous rectification aids low-voltage power supplies</u>, EDN 40.n9, UBM Canon LLC, April 27, 1995. | US20020114204 |
| US4813020 | US4954992 | US3789239 | US20030076705 |
| US4831287 | US4964083 | US3942047 | US20050094036 |
| US4899308 | US4984204 | US3944908 | US5365487 |
| US4910713 | US4984206 | US4016476 | US5561384 |
| US4928265 | US5015891 | US4061929 | US5615162 |
| US5003513 | US5113373 | US4141064 | US5630090 |
| US5023841 | US5126974 | US4186436 | US5640532 |
| US5030853 | US5267197 | US4935644 | US5721933 |
| US5206833 | US5304874 | US4962512 | US5724297 |

| U.S. Patent No. 5,943,274 | U.S. Patent No. 6,101,145 | U.S. Patent No. 6,127,875 | U.S. Patent No. 6,917,555 |
|---|---|---|---|
| US5226011 | US5347183 | US5093586 | US5727221 |
| US5239506 | US5481497 | US5126590 | US5734604 |
| US5245223 | US5491655 | US5381044 | US5860106 |
| US5255225 | US5521878 | US5392205 | US5860125 |
| US5268863 | US5532972 | US5422586 | US5898232 |
| US5294847 | US5546026 | US5521547 | US6208567 |
| US5341341 | US5563835 | US5541829 | US6256252 |
| US5343428 | US5617350 | US5635776 | US6426908 |
| US5357478 | US5659517 | US5701096 | US6487136 |
| US5373469 | US5661691 | US5729172 | US6515928 |
| US5384737 | US5687127 | US5748032 | US6754783 |
| US5396457 | US5740115 | US5760638 | US6853574 |
| US5416744 | US5751649 | US5777317 | US6888769 |
| US5422848 | US5754486 | US5793679 | US6909652 |
| US5486785 | US5815452 | US5936459 | US6990594 |
| US5600607 | US5828614 | US6157242 | US7023757 |
| US5617369 | US5831447 | US6175262 | US7039818 |
| US5661693 | US5859794 | US6288601 | US7058835 |
| US5684750 | US5901088 | A1997XA68600009 | US7061820 |
| US5699304 | US5903504 | JPH08149801A | US7092307 |
| US5724297 | US5978305 | | US7098689 |
| US5760620 | US5999470 | | US8230411 |
| US5859799 | US6006339 | | |
| US5912858 | US6034908 | | |
| US5929687 | US6054879 | | |
| US5963060 | US6125051 | | |

| U.S. Patent No. 5,943,274 | U.S. Patent No. 6,101,145 | U.S. Patent No. 6,127,875 | U.S. Patent No. 6,917,555 |
|---|---|---|---|
| US6147514 | US6378008 | | |
| Zulich, DRAM: the next generation, Computer Shopper, Vol. 17, n6, SX2 Media Labs LLC, June 1997. | Yamauchi, et al., The Hierarchical Multi-Bank DRAM: A High-Performance Architecture for Memory Integrated with Processors, September 1997. | | |
| US5030853 | | | |
| US5245223 | | | |

## INTERROGATORY NO. 2:

Please identify, by part number, all Accused Products. Your response may be provided in chart form (such as in an Excel spreadsheet) and/or in summary fashion. Your response should provide information and data sufficient to inform North Star of the various products, densities, and configurations of all Kingston products in the DDR3 or DDR3L families and should: include a key, legend, or explanation of the nomenclature or naming conventions used for Kingston's products and part numbers; identify all versions, releases, and densities for such products; provide a general description of each product's operation and functionality; identify all source code, software programs, development tools, database systems, and other tools and systems necessary to determine the circuit design, functionality and operation of each such product (for purposes of an infringement analysis); and identify the three (3) persons most knowledgeable about the technical aspects of the Accused Products (such as, for example, their design, development, manufacture, operation, and testing).

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 2:

Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston objects to this Interrogatory as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be granted, and because Kingston's response to the FAC is not due until July 23,

2018.  Kingston also objects to this Interrogatory on the ground that it is unduly burdensome, seeks information not relevant to the subject matter of this action and is not proportional to the needs of the case.  Kingston further objects to this Interrogatory as vague and ambiguous to the extent that the "Accused Products" are not specifically identified beyond the specific model numbers already listed in the definitions accompanying the Requests, are subject to multiple interpretations, and accordingly, are overly broad, vague, and ambiguous.  Kingston further objects to this Interrogatory to the extent it seeks information of any product that is not made, offered for sale, or sold in, or imported into the United States by Kingston.  Kingston also objects to this Interrogatory to the extent it seeks information outside the possession, custody, or control of Kingston. Kingston also objects to this Interrogatory because it contains multiple discrete subparts thereby exceeding numerical limitations on the service of Interrogatories in this case and under Federal Rule 33(a)(1).  Kingston therefore reserves its right to seek a protective order if Plaintiff propounds interrogatories in excess of the number allowed by the Federal Rules, the Court, or the parties' agreement.

**INTERROGATORY NO. 3:**

For U.S. sales of Accused Products made by Kingston on or after October 19, 2011 (and for all revenues attributable to Kingston's manufacture, use, offers of sale, or sales of the Accused Products within the U.S., or attributable to Kingston's importation of such products into the U.S. on or after October 19, 2011), please identify and explain, on a per-product basis and on a per-month or per-quarter basis, the number of units sold, total revenues, gross profits, and net profits (and all other data you contend is necessary to calculate net profits or to otherwise calculate an appropriate royalty base) for each such product. Your response, which may be provided in chart form, in summary form, and/or in the form of an Excel spreadsheet, should identify for each such product: sales price, costs (including cost of goods sold, direct costs, and indirect costs, any applicable discounts, write-offs, or returns; and the three (3) person(s) most knowledgeable about all such information.[1]  If you contend that the time period of October 19, 2011 to the present is not the proper, relevant, or applicable time period for Plaintiff's claims for infringement damages, please identify and explain the factual and legal bases for such contention and, at a minimum, provide

---

[1] North Star North Star does not necessarily concede that all of this information is relevant or essential to the calculation of a reasonable royalty.

the requested information for the time period you believe is more appropriate, relevant, or applicable.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 3:**

Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein. Kingston objects to this Interrogatory as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be granted, and because Kingston's response to the FAC is not due until July 23, 2018. Kingston also objects to this Interrogatory on the ground that it is unduly burdensome, seeks information not relevant to the subject matter of this action and is not proportional to the needs of the case. Kingston further objects to this Interrogatory as vague and ambiguous to the extent that the "Accused Products" are not specifically identified beyond the specific model numbers already listed in the definitions accompanying the Requests, are subject to multiple interpretations, and accordingly, are overly broad, vague, and ambiguous. Kingston further objects to this Interrogatory to the extent it seeks information of any product that is not made, offered for sale, or sold in, or imported into the United States by Kingston. Kingston also objects to this Interrogatory to the extent it seeks information outside the possession, custody, or control of Kingston. Kingston also objects to this Interrogatory because it contains multiple discrete subparts thereby exceeding numerical limitations on the service of Interrogatories in this case and under Federal Rule 33(a)(1). Kingston therefore reserves its right to seek a protective order if Plaintiff propounds interrogatories in excess of the number allowed by the Federal Rules, the Court, or the parties' agreement.

**INTERROGATORY NO. 4:**

Please identify and explain Your corporate structure, including each affiliate, parent company, subsidiary, business unit, product team, group or similar unit involved in the research, development, maintenance, operations, improvement, marketing, and/or sales of the Accused Products. Your response should explain, for example, the relationship between Kingston and Kingston Digital, Inc.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 4:**

Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein. Kingston objects to this Interrogatory as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be granted, and because Kingston's response to the FAC is not due until July 23, 2018. Kingston also objects to this Interrogatory on the ground that it is unduly burdensome, seeks information not relevant to the subject matter of this action and is not proportional to the needs of the case. Kingston further objects to this Interrogatory as vague and ambiguous to the extent that the "Accused Products" are not specifically identified beyond the specific model numbers already listed in the definitions accompanying the Requests, are subject to multiple interpretations, and accordingly, are overly broad, vague, and ambiguous. Kingston further objects to this Interrogatory to the extent it seeks information of any product that is not made, offered for sale, or sold in, or imported into the United States by Kingston. Kingston also objects to this Interrogatory to the extent it seeks information outside the possession, custody, or control of Kingston.

## **REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

Please produce all non-privileged documents You consulted or relied upon to respond to the above interrogatories. At a minimum, You should produce documents sufficient to demonstrate and support the veracity and accuracy of the responses You provided to the above interrogatories.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 1:**

Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein. Kingston objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be

1    granted, and because Kingston's response to the FAC is not due until July 23, 2018.

2    Kingston further objects to this Request to the extent it seeks information protected

3    from discovery by the attorney-client privilege, the work product doctrine, or any

4    other applicable privilege or immunity, and Kingston will not produce such

5    information.

6         Subject to and without waiving the foregoing General and Specific Objections,

7    based on its ongoing investigation to date and to the extent Kingston understands this

8    Request, Kingston has produced and/or will produce responsive, non-privileged

9    documents that are in possession, custody or control of Kingston that can be located

10   after a reasonable search.

11   **REQUEST FOR PRODUCTION NO. 2:**

12        Please produce non-privileged documents sufficient to show the design and
     operation of the Accused Products and that you contend would be sufficient to
13   determine infringement or non-infringement by the Accused Products. For example,
14   Your production would likely include data sheets, application notes, test results,
     circuit schematics, and timing diagrams – preferably in native format (along with any
15   source code or software that may be necessary to read, analyze, or review such native
16   data) – for each of the Accused Products (or for representative products, if that would
     be more efficient and less burdensome).  You should also produce documents
17   sufficient to show conformance or compliance with applicable standards, including
18   JEDEC Standard DDR3 SDRAM, No. 79-3C November 2008.

19   **OBJECTIONS AND RESPONSE TO REQUEST NO. 2:**

20        Each General Reservation and Objection and Objection to the Definitions and

21   Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston

22   objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's

23   Complaint has been dismissed for failing to state a claim upon which relief may be

24   granted, and because Kingston's response to the FAC is not due until July 23, 2018.

25   Kingston also objects to this Request on the ground that it is unduly burdensome,

26   seeks information not relevant to the subject matter of this action and is not

27   proportional to the needs of the case.  Kingston further objects to this Request as

28   vague and ambiguous to the extent that the "Accused Products" are not specifically

4826-7308-4268.v4
App. 127

1   identified beyond the specific model numbers already listed in the definitions

2   accompanying the Requests, are subject to multiple interpretations, and accordingly,

3   are overly broad, vague, and ambiguous.  Kingston also objects to this Request as

4   vague and ambiguous as to the terms, "application notes, test results, and timing

5   diagrams."  Kingston further objects to this Request to the extent it seeks information

6   of any product that is not made, offered for sale, or sold in, or imported into the

7   United States by Kingston.  Kingston also objects to this Request to the extent it seeks

8   information outside the possession, custody, or control of Kingston.

9   **REQUEST FOR PRODUCTION NO. 3:**

10       Please produce all non-privileged documents You consulted or relied upon to

11   form your invalidity positions. At a minimum, You should produce all prior art

12   references that you cite in support of any of your invalidity positions.

13   **OBJECTIONS AND RESPONSE TO REQUEST NO. 3:**

14       Each General Reservation and Objection and Objection to the Definitions and

15   Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston

16   objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's

17   Complaint has been dismissed for failing to state a claim upon which relief may be

18   granted, and because Kingston's response to the FAC is not due until July 23, 2018.

19   Kingston further objects to this Request to the extent it seeks information protected

20   from discovery by the attorney-client privilege, the work product doctrine, or any other

21   applicable privilege or immunity, and Kingston will not produce such information.

22       Subject to and without waiving the foregoing General and Specific Objections,

23   based on its ongoing investigation to date and to the extent Kingston understands this

24   Request, Kingston has produced and/or will produce the prior art references listed

25   above in response to Interrogatory No. 1.

26

27

28

**REQUEST FOR PRODUCTION NO. 4:**

For all U.S. sales of the Accused Products, made by Kingston on or after October 19, 2011, and for all revenues attributable to Kingston's manufacture, use, offers of sale, sales, or importation of such products on or after October 19, 2011, please produce non-privileged financial information, documents, and data sufficient to show and determine for each such product the number of units sold, total revenues, gross profits, and net profits, including but not necessarily limited to all data you contend is necessary to calculate net profits or to otherwise calculate an appropriate royalty base. If you contend in response to Interrogatory No. 3 above that some other time period is the proper, relevant, or applicable time period, you should produce (at a minimum) responsive documents, information, and data for that time period.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 4:**

Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be granted, and because Kingston's response to the FAC is not due until July 23, 2018. Kingston also objects to this Request on the ground that it is unduly burdensome, seeks information not relevant to the subject matter of this action and is not proportional to the needs of the case.  Kingston further objects to this Request as vague and ambiguous to the extent that the "Accused Products" are not specifically identified beyond the specific model numbers already listed in the definitions accompanying the Requests, are subject to multiple interpretations, and accordingly, are overly broad, vague, and ambiguous.  Kingston further objects to this Request to the extent it seeks information of any product that is not made, offered for sale, or sold in, or imported into the United States by Kingston.  Kingston also objects to this Request to the extent it seeks information outside the possession, custody, or control of Kingston.

Subject to and without waiving the foregoing General and Specific Objections, based on its ongoing investigation to date and to the extent Kingston understands this Request, Kingston has produced and/or will produce a summary chart that reflects

1    units sold and total revenues since October 19, 2011 for the product models

2    specifically identified in Plaintiff's FAC.

3    **REQUEST FOR PRODUCTION NO. 5:**

4         Please produce documents sufficient to show Your corporate structure,
     including each affiliate, parent company, subsidiary, business unit, product team,
5    group or similar unit involved in the research, development, maintenance, operations,
6    improvement, marketing, and/or sales of the Accused Products.  Responsive
7    documents would include, for example, documents sufficient to show the relationship
     between Kingston and Kingston Digital, Inc., and documents sufficient to show
8    Kingston's "international network of distributors, resellers, retailers and OEM
9    customers on six continents" and the entities or channels through which Kingston
     "provides contract manufacturing and supply chain management services for
10   semiconductor manufacturers and system OEMs."

11   **OBJECTIONS AND RESPONSE TO REQUEST NO. 5:**

12        Each General Reservation and Objection and Objection to the Definitions and

13   Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston

14   objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's

15   Complaint has been dismissed for failing to state a claim upon which relief may be

16   granted, and because Kingston's response to the FAC is not due until July 23, 2018.

17   Kingston also objects to this Request on the ground that it is unduly burdensome,

18   seeks information not relevant to the subject matter of this action and is not

19   proportional to the needs of the case.  Kingston further objects to this Interrogatory as

20   vague and ambiguous to the extent that the "Accused Products" are not specifically

21   identified beyond the specific model numbers already listed in the definitions

22   accompanying the Requests, are subject to multiple interpretations, and accordingly,

23   are overly broad, vague, and ambiguous.  Kingston further objects to this

24   Interrogatory to the extent it seeks information of any product that is not made,

25   offered for sale, or sold in, or imported into the United States by Kingston.  Kingston

26   also objects to this Interrogatory to the extent it seeks information outside the

27   possession, custody, or control of Kingston.

28

## REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:**

Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 5,943,274 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 1:**

Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be granted, and because Kingston's response to the FAC is not due until July 23, 2018.

Subject to and without waiving the foregoing General and Specific Objections, based on its ongoing investigation to date and to the extent Kingston understands this Request, Kingston responds as follows:

Denied.

**REQUEST FOR ADMISSION NO. 2:**

Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No. 6,127,875 because it has, on at least one occasion since October 19, 2011, sold within the United States a 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 2:**

Each General Reservation and Objection and Objection to the Definitions and Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's Complaint has been dismissed for failing to state a claim upon which relief may be granted, and because Kingston's response to the FAC is not due until July 23, 2018.

Subject to and without waiving the foregoing General and Specific Objections, based on its ongoing investigation to date and to the extent Kingston understands this Request, Kingston responds as follows:

1    Denied.

2    **REQUEST FOR ADMISSION NO. 3:**

3       Kingston Technology Company, Inc. has infringed Claim 15 of U.S. Patent No.

4    6,917,555 because it has, on at least one occasion since October 19, 2011, sold within
     the United States a 4Gb DDR3L SDRAM memory product, Part No.

5    D5128EETBPGGBU.

6    **OBJECTIONS AND RESPONSE TO REQUEST NO. 3:**

7       Each General Reservation and Objection and Objection to the Definitions and

8    Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston

9    objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's

10   Complaint has been dismissed for failing to state a claim upon which relief may be

11   granted, and because Kingston's response to the FAC is not due until July 23, 2018.

12      Subject to and without waiving the foregoing General and Specific Objections,

13   based on its ongoing investigation to date and to the extent Kingston understands this

14   Request, Kingston responds as follows:

15      Denied.

16   **REQUEST FOR ADMISSION NO. 4:**

17      Kingston Technology Company, Inc. has infringed Claim 1 of U.S. Patent No.

18   6,101,145 because it has, on at least one occasion since October 19, 2011, sold within
     the United States a 4Gb DDR3L SDRAM memory product, Part No.

19   D5128EETBPGGBU.

20   **OBJECTIONS AND RESPONSE TO REQUEST NO. 4:**

21      Each General Reservation and Objection and Objection to the Definitions and

22   Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston

23   objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's

24   Complaint has been dismissed for failing to state a claim upon which relief may be

25   granted, and because Kingston's response to the FAC is not due until July 23, 2018.

26      Subject to and without waiving the foregoing General and Specific Objections,

27   based on its ongoing investigation to date and to the extent Kingston understands this

28   Request, Kingston responds as follows:

1    Denied.

2    **REQUEST FOR ADMISSION NO. 5:**

3        Kingston Technology Company, Inc. has infringed Claim 6 of U.S. Patent No.

4    6,101,145 because it has, on at least one occasion since October 19, 2011, sold within
     the United States a 4Gb DDR3L SDRAM memory product, Part No.

5    D5128EETBPGGBU.

6    **OBJECTIONS AND RESPONSE TO REQUEST NO. 5:**

7        Each General Reservation and Objection and Objection to the Definitions and

8    Instructions is hereby incorporated by reference as if fully set forth herein.  Kingston

9    objects to this Request as unduly burdensome, improper, and premature, as Plaintiff's

10   Complaint has been dismissed for failing to state a claim upon which relief may be

11   granted, and because Kingston's response to the FAC is not due until July 23, 2018.

12       Subject to and without waiving the foregoing General and Specific Objections,

13   based on its ongoing investigation to date and to the extent Kingston understands this

14   Request, Kingston responds as follows:

15       Denied.

16

17   Dated: July 12, 2018             PILLSBURY WINTHROP SHAW PITTMAN LLP

18                            */s/ Christopher Kao*

19                   By:    Christopher Kao

20

21                     Attorneys for Defendant
                       Kingston Technology Company, Inc.

22

23

24

25

26

27

28

---

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 12, 2018, the foregoing document was served via electronic mail to the following:

RYAN E. HATCH (SBN 235577)
Email: ryan@ryanehatch.com
DAVID A. SKEELS (admitted *pro hac vice*)
Email: dskeels@whitakerchalk.com
ENRIQUE SANCHEZ, JR. (admitted *pro hac vice*)
Email: rsanchez@whitakerchalk.com

Dated: July 12, 2018          By: __/s/ Christopher Kao_____
                              Christopher Kao

# North Star's
# Motion for Summary
# Judgment

# EXHIBIT 9



301 Commerce Street, Suite 3500    Phone:  817.878.0500
Fort Worth, Texas 76102            Fax:    817.878.0501

July 26, 2018

*Via email: christopher.kao@pillsburylaw.com*
Mr. Christopher Kao, Esq.
Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998

      Re:    *North Star Innovations Inc. v. Kingston Technology Company, Inc.*
              Cause No. 8:17-cv-01833-DOC-DFM (C.D. Cal.)
              Our File No. 26834.013

Dear Chris:

      Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 37, and pursuant to L.R. 37-1 through 37-4, I write to request and arrange a telephone conference with you – to take place as soon as possible and no later than August 6, 2018. As you know and have previously acknowledged, on March 16, 2018, Plaintiff served via e-mail *Plaintiff's First Set of Combined Discovery Requests to Defendant* ("Requests"). A second, identical copy of the Requests was served via certified mail on March 28, 2018.

      Based on the March 16 service date, the Responses were due no later than April 19, 2018. Even using the March 28 service date, the Responses were due no later than April 30, 2018. The only exception is that the responses to the Requests for Production were due May 15, 2018 – pursuant to an agreement between the parties.

      On July 12, 2018, i.e., nearly four months after serving the requests, we finally received *Defendant Kingston's Objections and Responses to Plaintiff's Combined Discovery Requests to Defendant* ("Responses"). The Objections and Responses are untimely and are woefully deficient in numerous respects – some of which Plaintiff expects to address in its forthcoming Motion to Compel ("Motion"). The issues and/or discovery requests that are in dispute and that Plaintiff intends to address in its Motion[1] are as follows:

1.  **Interrogatory No. 1**

      a.      **Movant's position and supporting legal authority:** the Response is deficient because, for example, it does not set forth, on a limitation-by-limitation basis, the bases for invalidity (under 35 U.S.C. §§ 101, 102, 103, 112, or otherwise)

---

[1] Plaintiff does not intend to address in its Motion all Kingston's deficiencies or all of Plaintiff's objections thereto. Plaintiff expressly reserves the right to highlight additional deficiencies, to raise additional objections, and to seek additional or further relief in connection with same.

July 26, 2016
Page 2

for *any* Asserted Claim, let alone for every Asserted Claim; the Response does not include a chart identifying each element; the Response does not identify specific combinations of prior art that allegedly render the challenged claims obvious; and the Response does not otherwise provide any of the requested information, other than generally identifying prior art references without providing any other detail whatsoever. *See* Fed. R. Civ. P. 33(b)(3). All objections, including assertions of privilege, have been waived because they were not timely asserted. Fed. R. Civ. P. 33(b)(4). Further, any objection asserted because the interrogatory was served "prior to any claim construction by the Court" is improper because the Court has expressly declined to incorporate separate claim construction proceedings into its scheduling order. *See* Minutes (Dkt. 33) and Transcript from April 30, 2018 Scheduling Conference. Any objection premised on the Magistrate Judge's recommendations (Dkt. 38) is improper and unfounded, because those recommendations are irrelevant to the discovery deadlines established by the Federal Rules of Civil Procedure and by this Court's orders, and are irrelevant to the parties' obligations thereunder. *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015); *Flowers v. Lawrence*, No. CV-14-08184-PCT-JAT (ESW), 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016); *Zavala v. Deutsche Bank Tr. Co. Ams*., No. C 13-1040 LB, 2013 U.S. Dist. LEXIS 77664, at *203-04 (N.D. Cal. May 29, 2013).

b.   **Terms of discovery order to be sought:** that Kingston be precluded from presenting any invalidity defense, or, alternatively, that Kingston be ordered to immediately and fully respond, in writing and under oath, to this interrogatory, that Plaintiff be permitted to assert additional claims if Kingston's Response actually challenges each and every Asserted Claim on a limitation-by-limitation basis, that Kingston be ordered to compensate Plaintiff for the time and expense associated with these efforts and the forthcoming Motion (*see, e.g.*, Fed. R. Civ. P. 37(a)(5)), and that Plaintiff (and only Plaintiff) be granted additional time as may be necessary to complete its discovery (including fact and expert discovery and third party discovery), to serve expert reports, and to file dispositive motions.

2. **Interrogatory No. 2**

a.   **Movant's position and supporting legal authority:** the Response is deficient because, for example, it does not provide any of the requested information. *See* Fed. R. Civ. P. 33(b)(3). All objections, including assertions of privilege, have

July 26, 2016
Page 3

been waived because they were not timely asserted. Fed. R. Civ. P. 33(b)(4). Further, any objection premised on the Magistrate Judge's recommendations are improper and unfounded, because those recommendations are irrelevant to the discovery deadlines established by the Federal Rules of Civil Procedure and by this Court's orders, and are irrelevant to the parties' obligations thereunder. *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015); *Flowers v. Lawrence*, No. CV-14-08184-PCT-JAT (ESW), 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016); *Zavala v. Deutsche Bank Tr. Co. Ams.*, No. C 13-1040 LB, 2013 U.S. Dist. LEXIS 77664, at *203-04 (N.D. Cal. May 29, 2013). Further, any objection that the "Accused Products" are not sufficiently identified is contrary to the Magistrate Judge's recommendations (Dkt. 38) and the Court's order adopting the Magistrate Judge's findings and recommendations. Dkt. 44.

b. **Terms of discovery order to be sought:** that Kingston be ordered to immediately and fully respond, in writing and under oath, to this interrogatory, that Kingston be ordered to compensate Plaintiff for the time and expense associated with these efforts and the forthcoming Motion (*see, e.g.*, Fed. R. Civ. P. 37(a)(5)), and that Plaintiff (and only Plaintiff) be granted additional time as may be necessary to complete its discovery (including fact and expert discovery and third party discovery), to serve expert reports, and to file dispositive motions.

### 3. Interrogatory No. 3

a. **Movant's position and supporting legal authority:** the Response is deficient because, for example, it does not provide any of the requested information. *See* Fed. R. Civ. P. 33(b)(3). All objections, including assertions of privilege, have been waived because they were not timely asserted. Fed. R. Civ. P. 33(b)(4). Further, any objection premised on the Magistrate Judge's recommendations are improper and unfounded, because those recommendations are irrelevant to the discovery deadlines established by the Federal Rules of Civil Procedure and by this Court's orders, and are irrelevant to the parties' obligations thereunder. *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015); *Flowers v. Lawrence*, No. CV-14-08184-PCT-JAT (ESW), 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016); *Zavala v. Deutsche Bank Tr. Co. Ams.*, No. C 13-1040 LB, 2013 U.S. Dist. LEXIS 77664, at *203-04 (N.D. Cal. May 29, 2013). Further, any objection that the "Accused Products" are not sufficiently identified is

July 26, 2016
Page 4

contrary to the Magistrate Judge's recommendations (Dkt. 38) and the Court's order adopting the Magistrate Judge's findings and recommendations. Dkt. 44.

    b.    **Terms of discovery order to be sought:** that Kingston be ordered to immediately and fully respond, in writing and under oath, to this interrogatory, that Kingston be ordered to compensate Plaintiff for the time and expense associated with these efforts and the forthcoming Motion (*see, e.g.*, Fed. R. Civ. P. 37(a)(5)), and that Plaintiff (and only Plaintiff) be granted additional time as may be necessary to complete its discovery (including fact and expert discovery and third party discovery), to serve expert reports, and to file dispositive motions.

### 4. Interrogatory No. 4

    a.    **Movant's position and supporting legal authority:** the Response is deficient because, for example, it does not provide any of the requested information. *See* Fed. R. Civ. P. 33(b)(3). All objections, including assertions of privilege, have been waived because they were not timely asserted. Fed. R. Civ. P. 33(b)(4). Further, any objection premised on the Magistrate Judge's recommendations are improper and unfounded, because those recommendations are irrelevant to the discovery deadlines established by the Federal Rules of Civil Procedure and by this Court's orders, and are irrelevant to the parties' obligations thereunder. *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015); *Flowers v. Lawrence*, No. CV-14-08184-PCT-JAT (ESW), 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016); *Zavala v. Deutsche Bank Tr. Co. Ams.*, No. C 13-1040 LB, 2013 U.S. Dist. LEXIS 77664, at *203-04 (N.D. Cal. May 29, 2013). Further, any objection that the "Accused Products" are not sufficiently identified is contrary to the Magistrate Judge's recommendations (Dkt. 38) and the Court's order adopting the Magistrate Judge's findings and recommendations. Dkt. 44. Finally, the objections and non-answer include objections that do not apply in any way to the substance of the interrogatory and evidence a bad faith "cut and paste" job from other interrogatory responses.

    b.    **Terms of discovery order to be sought:** that Kingston be ordered to immediately and fully respond, in writing and under oath, to this interrogatory, that Kingston be ordered to compensate Plaintiff for the time and expense associated with these efforts and the forthcoming Motion (*see, e.g.*, Fed. R. Civ. P. 37(a)(5)), and that Plaintiff (and only Plaintiff) be granted additional time as may be necessary to complete its discovery (including fact and expert

July 26, 2016
Page 5

discovery and third party discovery), to serve expert reports, and to file dispositive motions.

5.  Request for Production No. 1

    a.  **Movant's position and supporting legal authority:** the Response is deficient because, for example, Kingston provided only boilerplate objections and has not provided any of the requested documents. *See* Fed. R. Civ. P. 34(b)(2). All objections, including assertions of privilege, have been waived because they were not timely asserted. Fed. R. Civ. P. 34(b)(2); *see also Pulsecard, Inc. v. Discover Card Servs*., 168 F.R.D. 295, 303-04 (D. Kan. 1996); *Smith v. Tex. San Marcos Treatment Ctr., LP*, No. 3:09-CV-00141-TMB, 2010 U.S. Dist. LEXIS 148233, at *7-12 (D. Alaska Jan. 29, 2010) (citing *Pulsecard*); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496 (D. Kan. 1998) (citing *Pulsecard*). Further, any objection premised on the Magistrate Judge's recommendations are improper and unfounded, because those recommendations are irrelevant to the discovery deadlines established by the Federal Rules of Civil Procedure and by this Court's orders, and are irrelevant to the parties' obligations thereunder. *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015); *Flowers v. Lawrence*, No. CV-14-08184-PCT-JAT (ESW), 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016); *Zavala v. Deutsche Bank Tr. Co. Ams*., No. C 13-1040 LB, 2013 U.S. Dist. LEXIS 77664, at *203-04 (N.D. Cal. May 29, 2013). Further, any objection based on privilege is improper and reflects a bad faith effort in responding to the requests, which are narrowly tailored to request only "non-privileged documents."

    b.  **Terms of discovery order to be sought:** that Kingston be ordered to immediately produce all responsive documents, that Kingston be ordered to compensate Plaintiff for the time and expense associated with these efforts and the forthcoming Motion (*see, e.g.*, Fed. R. Civ. P. 37(a)(5)), and that Plaintiff (and only Plaintiff) be granted additional time as may be necessary to complete its discovery (including fact and expert discovery and third party discovery), to serve expert reports, and to file dispositive motions.

6.  **Request for Production No. 2**

    a.  **Movant's position and supporting legal authority:** the Response is deficient because, for example, Kingston provided only boilerplate objections and has not provided any of the requested documents. *See* Fed. R. Civ. P. 34(b)(2). All

objections have been waived because they were not timely asserted. Fed. R. Civ. P. 34(b)(2); *see also Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 303-04 (D. Kan. 1996); *Smith v. Tex. San Marcos Treatment Ctr., LP*, No. 3:09-CV-00141-TMB, 2010 U.S. Dist. LEXIS 148233, at *7-12 (D. Alaska Jan. 29, 2010) (citing *Pulsecard*); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496 (D. Kan. 1998) (citing *Pulsecard*). Further, any objection premised on the Magistrate Judge's recommendations are improper and unfounded, because those recommendations are irrelevant to the discovery deadlines established by the Federal Rules of Civil Procedure and by this Court's orders, and are irrelevant to the parties' obligations thereunder. *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015); *Flowers v. Lawrence*, No. CV-14-08184-PCT-JAT (ESW), 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016); *Zavala v. Deutsche Bank Tr. Co. Ams.*, No. C 13-1040 LB, 2013 U.S. Dist. LEXIS 77664, at *203-04 (N.D. Cal. May 29, 2013). Any objection that the "Accused Products" are not sufficiently identified is contrary to the Magistrate Judge's recommendations (Dkt. 38) and the Court's order adopting the Magistrate Judge's findings and recommendations. Dkt. 44.

b.   **Terms of discovery order to be sought:** that Kingston be ordered to immediately produce all responsive documents, that Plaintiff be permitted to assert additional claims if Kingston's production reveals infringement of additional claims (such as dependent claims), that Kingston be ordered to compensate Plaintiff for the time and expense associated with these efforts and the forthcoming Motion (*see, e.g.*, Fed. R. Civ. P. 37(a)(5)), and that Plaintiff (and only Plaintiff) be granted additional time as may be necessary to complete its discovery (including fact and expert discovery and third party discovery), to serve expert reports, and to file dispositive motions.

## 7.   Request for Production No. 3

a.   **Movant's position and supporting legal authority:** the Response is deficient because, for example, Kingston provided only boilerplate objections and has not provided any of the requested documents. *See* Fed. R. Civ. P. 34(b)(2). All objections, including assertions of privilege, have been waived because they were not timely asserted. Fed. R. Civ. P. 34(b)(2); *see also Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 303-04 (D. Kan. 1996); *Smith v. Tex. San Marcos Treatment Ctr., LP*, No. 3:09-CV-00141-TMB, 2010 U.S. Dist. LEXIS 148233, at *7-12 (D. Alaska Jan. 29, 2010) (citing *Pulsecard*); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496 (D. Kan. 1998) (citing

July 26, 2016
Page 7

*Pulsecard*). Further, any objection premised on the Magistrate Judge's recommendations are improper and unfounded, because those recommendations are irrelevant to the discovery deadlines established by the Federal Rules of Civil Procedure and by this Court's orders, and are irrelevant to the parties' obligations thereunder. *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015); *Flowers v. Lawrence*, No. CV-14-08184-PCT-JAT (ESW), 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016); *Zavala v. Deutsche Bank Tr. Co. Ams.*, No. C 13-1040 LB, 2013 U.S. Dist. LEXIS 77664, at *203-04 (N.D. Cal. May 29, 2013). Further, any objection based on privilege is improper and reflects a bad faith effort in responding to the requests, which are narrowly tailored to request only "non-privileged documents."

b. **Terms of discovery order to be sought:** that Kingston be ordered to immediately produce all responsive documents, that Kingston be ordered to compensate Plaintiff for the time and expense associated with these efforts and the forthcoming Motion (*see, e.g.*, Fed. R. Civ. P. 37(a)(5)), and that Plaintiff (and only Plaintiff) be granted additional time as may be necessary to complete its discovery (including fact and expert discovery and third party discovery), to serve expert reports, and to file dispositive motions.

## 8. Request for Production No. 4

a. **Movant's position and supporting legal authority:** the Response is deficient because, for example, Kingston provided only boilerplate objections and has not provided any of the requested documents. *See* Fed. R. Civ. P. 34(b)(2). All objections have been waived because they were not timely asserted. Fed. R. Civ. P. 34(b)(2); *see also Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 303-04 (D. Kan. 1996); *Smith v. Tex. San Marcos Treatment Ctr., LP*, No. 3:09-CV-00141-TMB, 2010 U.S. Dist. LEXIS 148233, at *7-12 (D. Alaska Jan. 29, 2010) (citing *Pulsecard*); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496 (D. Kan. 1998) (citing *Pulsecard*). Further, any objection premised on the Magistrate Judge's recommendations are improper and unfounded, because those recommendations are irrelevant to the discovery deadlines established by the Federal Rules of Civil Procedure and by this Court's orders, and are irrelevant to the parties' obligations thereunder. *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015); *Flowers v. Lawrence*, No. CV-14-08184-PCT-JAT (ESW), 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016); *Zavala v. Deutsche*

*Bank Tr. Co. Ams.*, No. C 13-1040 LB, 2013 U.S. Dist. LEXIS 77664, at *203-04 (N.D. Cal. May 29, 2013). Any objection that the "Accused Products" are not sufficiently identified is contrary to the Magistrate Judge's recommendations (Dkt. 38) and the Court's order adopting the Magistrate Judge's findings and recommendations. Dkt. 44.

    b.    **Terms of discovery order to be sought:** that Kingston be ordered to immediately produce all responsive documents, that Kingston be precluded from challenging any of Plaintiff's damages calculations – to the extent that any deficiencies alleged by Kingston were due in part to Kingston's own dilatory or obstructionist conduct, that Kingston be ordered to compensate Plaintiff for the time and expense associated with these efforts and the forthcoming Motion (*see, e.g.*, Fed. R. Civ. P. 37(a)(5)), and that Plaintiff (and only Plaintiff) be granted additional time as may be necessary to complete its discovery (including fact and expert discovery and third party discovery), to serve expert reports, and to file dispositive motions.

## 9.  Request for Production No. 5

    a.    **Movant's position and supporting legal authority:** the Response is deficient because, for example, Kingston provided only boilerplate objections and has not provided any of the requested documents. *See* Fed. R. Civ. P. 34(b)(2). All objections have been waived because they were not timely asserted. Fed. R. Civ. P. 34(b)(2); *see also Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 303-04 (D. Kan. 1996); *Smith v. Tex. San Marcos Treatment Ctr., LP*, No. 3:09-CV-00141-TMB, 2010 U.S. Dist. LEXIS 148233, at *7-12 (D. Alaska Jan. 29, 2010) (citing *Pulsecard*; *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496 (D. Kan. 1998) (citing *Pulsecard*). Further, any objection premised on the Magistrate Judge's recommendations are improper and unfounded, because those recommendations are irrelevant to the discovery deadlines established by the Federal Rules of Civil Procedure and by this Court's orders, and are irrelevant to the parties' obligations thereunder. *Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 686 (9th Cir. 2016), citing Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015); *Flowers v. Lawrence*, No. CV-14-08184-PCT-JAT (ESW), 2016 U.S. Dist. LEXIS 54882, at *6-7 (D. Ariz. Jan. 27, 2016); *Zavala v. Deutsche Bank Tr. Co. Ams.*, No. C 13-1040 LB, 2013 U.S. Dist. LEXIS 77664, at *203-04 (N.D. Cal. May 29, 2013). Any objection that the "Accused Products" are not sufficiently identified is contrary to the Magistrate Judge's recommendations (Dkt. 38) and the Court's order adopting the Magistrate Judge's findings and recommendations. Dkt. 44.

July 26, 2016
Page 9

    b.    **Terms of discovery order to be sought:** that Kingston be ordered to immediately produce all responsive documents, that Kingston be ordered to compensate Plaintiff for the time and expense associated with these efforts and the forthcoming Motion (*see, e.g.*, Fed. R. Civ. P. 37(a)(5)), and that Plaintiff (and only Plaintiff) be granted additional time as may be necessary to complete its discovery (including fact and expert discovery and third party discovery), to serve expert reports, and to file dispositive motions.

I will be out of the office – first for hearings and then on a family vacation – until August 6. But I am willing to make time for our conference. Alternatively, we can schedule a conference for August 6. Please let me know your availability and preference. I look forward to trying to work cooperatively with you in an effort to resolve these issues.

Very truly yours,

Whitaker Chalk Swindle & Schwartz, PLLC

David A. Skeels

DAS/ck

cc:    Enrique Sanchez, Jr. (firm), via email
       Ryan Hatch, via email

DM#353518-v2

App. 144

RYAN E. HATCH (SBN 235577)
Law Office of Ryan E. Hatch, PC
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Email: ryan@ryanehatch.com

DAVID A. SKEELS (admitted *pro hac vice*)
ENRIQUE SANCHEZ, JR. (admitted *pro hac vice* )
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0573
Facsimile: (817) 878-0501
Email: dskeels@whitakerchalk.com
Email: rsanchez@whitakerchalk.com

Attorneys for Plaintiff
NORTH STAR INNOVATIONS INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH STAR INNOVATIONS INC., | Case No. 8:17-cv-01833-DOC-DFM |
| Plaintiff, | **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| KINGSTON TECHNOLOGY COMPANY, INC., | Date: October 1, 2018, 8:30 a.m. |
| Defendant. | Dept.: Courtroom 9D |
| | Judge: Hon. David O. Carter |

Plaintiff North Star Innovations, Inc.'s Motion for Partial Summary Judgment, brought pursuant to Federal Rule of Civil Procedure 56(c), having come on for hearing, the Court having considered all relevant documents and evidence and having considered the arguments of counsel, and good cause appearing therefor:

IT IS HEREBY ORDERED as follows:

1.     The matters raised in Plaintiff's Requests for Admission dated March 16, 2018 and March 28, 2018 have been admitted and conclusively established.

2.     With respect to Kingston's 4Gb DDR3L SDRAM memory product, Part No. D5128EETBPGGBU, there is no genuine dispute as to any material fact regarding Kingston's

infringement of U.S. Patent Nos. 5,943,274 (Claim 1), 6,127,875 (Claim 1), 6,917,555 (Claim 15), and 6,101,145 (Claims 1 and 6) (collectively, the "Asserted Claims"). Accordingly, North Star is entitled to judgment as a matter of law regarding Kingston's infringement of the Asserted Claims.

Accordingly, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment in its entirety.

**IT IS SO ORDERED.**

Dated: _____        _____
                                                   Hon. David O. Carter
                                                   United States District Judge

| From: | cacd_ecfmail@cacd.uscourts.gov |
|---|---|
| To: | ecfnef@cacd.uscourts.gov |
| Subject: | Activity in Case 8:17-cv-01833-DOC-DFM North Star Innovations Inc. v. Kingston Technology Company, Inc. Motion for Partial Summary Judgment |
| Date: | Friday, August 24, 2018 4:06:03 PM |

<span style="color:red">This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Skeels, David on 8/24/2018 at 2:05 PM PDT and filed on 8/24/2018

| | |
|---|---|
| **Case Name:** | North Star Innovations Inc. v. Kingston Technology Company, Inc. |
| **Case Number:** | 8:17-cv-01833-DOC-DFM |
| **Filer:** | North Star Innovations Inc. |
| **Document Number:** | 51 |

**Docket Text:**
<span style="color:blue">**NOTICE OF MOTION AND MOTION for Partial Summary Judgment filed by PLAINTIFF North Star Innovations Inc.. Motion set for hearing on 10/1/2018 at 08:30 AM before Judge David O. Carter. (Attachments: # (1) Proposed Order) (Skeels, David)**</span>

**8:17-cv-01833-DOC-DFM Notice has been electronically mailed to:**

Brock S Weber    brock.weber@pillsburylaw.com, yvonne.chen@pillsburylaw.com

Christine Hwang Yang    chrisyang@sjclawpc.com

Christopher Kao    christopher.kao@pillsburylaw.com, docket@pillsburylaw.com, yvonne.chen@pillsburylaw.com

David A Skeels    dskeels@whitakerchalk.com, csanders@whitakerchalk.com, jross@whitakerchalk.com

Enrique Sanchez , Jr    rsanchez@whitakerchalk.com, csanders@whitakerchalk.com

Ryan E Hatch    ryan@ryanehatch.com, ogii@ryanehatch.com

**8:17-cv-01833-DOC-DFM Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\DMS-#359212-v1-Plaintiff_s_Motion_for_Partial_Summary_Judgment_(with_exhibits).PDF
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=8/24/2018] [FileNumber=26150646-0
] [b3e933cc481b114ca17f413b09f60634827f8fe86883a6bce8a65ebd65333bcda27
2de06b2833721a9df349eca08f6e76343ae00608d1c9ec03dd902b8fd4f48]]
**Document description:**Proposed Order
**Original filename:**C:\fakepath\DMS-#359205-v1-_Proposed__Order_Granting_Plaintiff_s_Motion_for_Partial_Summary_Judgment.PDF
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=8/24/2018] [FileNumber=26150646-1
] [8db8f6c5848542abcb59a698160a3afbd833566bfa82b20cbaafee7d5f6b9b1f976
d5260799602b97b24eacefc1b19f1e94c60de79e9dc9593dd24ebca9cfb4b]]

# EXHIBIT 10

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| NORTH STAR INNOVATIONS INC. <br><br> Plaintiff(s), <br><br> vs. <br><br> KINGSTON TECHNOLOGY COMPANY, INC <br><br><br> Defendant(s). | Case No.: 8:17–cv–01833–DOC–DFM <br><br> **SCHEDULING ORDER & ORDER RE: PRETRIAL AND TRIAL PROCEDURES** <br><br> **Fact Discovery Cut-Off**: <br><br> January 7, 2019 <br><br> **Motion Cut-Off**: <br><br> June 3, 2019 at 08:30 AM <br><br> **Final Pretrial Conference**: <br><br> July 8, 2019 at 08:30 AM <br><br> **Trial**: <br><br> July 23, 2019 at 08:30 AM |

This Scheduling Order governs the course of all pretrial and trial proceedings in this case. For further guidance, consult the Federal Rules of Civil Procedure and the Local Rules.

\\\

## I.   Court Appearances

Parties shall be represented at all court appearances by lead counsel, the counsel expected to be in charge of conducting trial on behalf of the parties. The parties (or counsel) must appear in person for hearings and conferences before the Court. The Court does not permit telephonic appearances.

Under no circumstances should counsel, or a party if the party is appearing *pro se*, fail to appear at a court appearance unless their appearance has been waived by prior order of the Court. Even if the parties have reached a settlement, counsel for all parties, or the party if appearing *pro se*, must appear at court appearances until a stipulation of dismissal signed by all parties has been lodged with the Court.

## II.   Settlement

If the parties have agreed to appear before a neutral selected from the Court's Mediation Panel (ADR Procedure No. 2) or to participate in private mediation (ADR Procedure No. 3), the parties shall notify the Court of the name and contact information of the mediator within twenty-one (21) days of this Order if they have not already done so in their Rule 26(f) report.

If settlement is reached at any time in this litigation, the parties shall immediately notify the Court by telephone, email, or by filing a notice of settlement. Local Rule 40-2. The Court's Courtroom Deputy Clerk can be reached at (714) 338-4543. The Court's email address is DOC_Chambers@cacd.uscourts.gov.

## III.   Joinder of Parties and Amendment of Pleadings

All motions to join other parties (including Doe or Roe defendants) or to amend the pleadings shall be filed and served within sixty (60) days of the date of this Order and noticed for hearing within ninety (90) days of this Order.

## IV.   Discovery Cut-Off

The Court has established a cut-off date for discovery in this action. All discovery is to be completed on, or prior to, the cut-off date. Plan now to complete discovery on the schedule set; a continuance is *unlikely*. Accordingly, the

following discovery schedule shall apply in this Court:

    (1)   <u>Depositions</u>: All depositions shall be scheduled to commence at least five (5) working days prior to the discovery cut-off date. A deposition which commences five (5) days prior to the discovery cut-off date may continue beyond the cut-off date, as necessary.

    (2)   <u>Written Discovery</u>: All interrogatories, requests for production of documents, and requests for admissions shall be served at least forty-five (45) days before the discovery cut-off date. The Court will not approve stipulations between counsel that permit responses to be served after the cut-off date except in unusual circumstances and upon a showing of good cause.

    (3)   <u>Discovery Motions</u>: Any motion regarding the inadequacy of responses to discovery must be filed and served no later than five (5) days after the discovery cut-off date. Routine discovery motions will be referred to the magistrate judge assigned to the case. Whenever possible, the Court expects counsel to resolve discovery disputes among themselves in a courteous, reasonable, and professional manner. Repeated resort to the Court for guidance in discovery is unnecessary and may result in the Court appointing a Special Master at the joint expense of the parties to resolve discovery disputes. The Court expects that counsel will strictly adhere to the Civility and Professional Guidelines adopted by the United States District Court for the Central District of California.

    (4)   <u>Disclosure of Expert Testimony</u>: The above discovery cut-off date includes expert discovery, unless otherwise ordered by the Court, and the Court orders the sequence of disclosures as provided by Fed. R. Civ. Proc. 26(a)(2)(D), unless the parties otherwise stipulate in writing and obtain the Court's approval.

\\\

**V.     Protective Orders and Under Seal Filings**

All protective orders are to be noticed before the magistrate judge assigned to your case, unless otherwise ordered by Court.

Stipulated Protective orders or confidentiality orders generally do not control under seal filings. Applications for under seal filings must state with specificity the basis for protection and should not rely exclusively on the existence of a protective order. See Judge Carter's Initial Standing Order for more information.

**VI.     Motions Generally**

Counsel should note the timing and service requirements of Local Rules 6 and 7 and its subparts including:

(1)     Rule 6-1: Notice of motion and the moving papers must be filed and served twenty-eight (28) days before the noticed hearing date, unless the notice is served by mail, in which case service is required thirty-one (31) days prior to the noticed hearing date;

(2)     Rule 7-9: Opposing papers shall be filed twenty-one (21) calendar days before the hearing date; and

(3)     Rule 7-10: Reply papers, if any, shall be filed fourteen (14) calendar days before the hearing date.

(4)     Rule 7-11: If the hearing date is continued, the deadlines for filing opposing and reply papers are automatically extended unless the Court orders otherwise.

Counsel must comply with the timing requirements of the Local Rules so that chambers can properly prepare for motion matters.

**VII.     Motions for Summary Judgment**

The motion cut-off date is the day that the Court will hear motions for summary judgment. Thus, motions must be filed several weeks in advance of this date as required by Local Rule 6.

In general, the Court will hear only one motion for summary judgment per

party. Cross motions for summary judgment will all be heard on the same day, after the close of discovery. In other words, the Court will not entertain piecemeal motions for partial summary judgment before the factual record is complete.

All motions (except motions *in limine* dealing with admissibility of evidence) must be disposed of before the Final Pretrial Conference.

## A.  Moving Party's Statement of Uncontroverted Facts and Conclusions of Law

The uncontroverted facts shall be set forth in a two column format. The left hand column shall set forth the allegedly undisputed fact. The right hand column shall set forth the evidence that supports the factual statement. The fact statements shall be set forth in sequentially numbered rows. Each cell should contain a narrowly focused statement of fact, and address a single subject in as concise a manner as possible.

### SUF Example

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #1 (Moving party's first undisputed fact) | (citations to supporting evidence) |
| #2 (Moving party's second undisputed fact) | (citations to supporting evidence) |

## B.  Opposing Party's Statement of Genuine Disputes of Material Fact

The first part of the opposing party's Statement of Genuine Disputes shall track the moving party's Statement of Uncontroverted Facts. It shall be set forth in a two column format. The left hand column shall restate the allegedly undisputed fact and supporting evidence, and the right hand column shall state either that the fact is undisputed or disputed. The opposing party may dispute all or only a portion of the allegedly undisputed fact, but if disputing only a portion, the opposing party must specify clearly what portion is being disputed.

To demonstrate that a fact is disputed, the opposing party shall briefly state why it disputes the moving party's allegedly undisputed fact, cite to the relevant

exhibit or other evidence controverting the allegedly undisputed fact, and describe what it is in that exhibit or evidence that controverts the allegedly undisputed fact.

If the opposing party objects to the evidence supporting an allegedly undisputed fact, the party shall state in the right hand column the presence of that objection, by simply stating "Evidentiary Objection." The specific grounds of each objection should be included in a separate table.

No legal argument shall be set forth in this document.

The opposing party may also specify additional material facts that bear on or relate to the issues raised by the moving party, which shall follow the same two column format described above for the moving party's Statement of Uncontroverted Facts. These additional facts shall continue in sequentially numbered paragraphs (i.e., if the moving party's last allegedly undisputed fact was set forth as ¶ 30, then the first new allegedly undisputed fact specified by the opposing party shall be set forth as ¶ 31).

The moving party, in its reply, shall respond to the additional allegedly undisputed facts in the same manner and format that the opposing party is required to adhere to in responding to the moving party's Statement of Uncontroverted Facts, as described above.

### SGD Example

| SUF # / Moving Party's Undisputed Fact/Evidence | Reply |
| --- | --- |
| #1 (Moving party's first undisputed fact)<br><br>(moving party's citations to supporting evidence) | State whether the moving party's fact is disputed or undisputed.<br><br>(citations to supporting evidence)<br><br>(note if there is an evidentiary objection) |
| #2 (Moving party's second undisputed fact)<br><br>(moving party's citations to supporting evidence) | State whether the moving party's fact is disputed or undisputed.<br><br>(citations to supporting evidence)<br><br>(note if there is an evidentiary objection) |

## C.    Supporting Evidence

Evidence in support of or in opposition to a motion shall be presented to the Court in a way that makes it easy for the Court to find cited evidence. For instance, the parties should make generous use of tabs and indices for hard copies of exhibits. The parties should highlight the testimony or portions of exhibits on which they are relying.

If a deposition is cited extensively, the parties should lodge a copy of the deposition transcript with the Court.

## D.    Objections to Evidence

If a party disputes a fact based in whole or in part on an evidentiary objection, the party should file a separate document entitled "Objections to Evidence Offered in Support of [Party's] [Motion/Opposition]." The Objections to Evidence should be filed in conjunction with the opposition or reply brief of the party. The document should be organized to track the row numbers of the other party's separate statement in sequence. It should identify the specific item of evidence to which objection is made, the ground of the objection, and a very brief argument with citation to authority as to why the objection is well taken.

### Evidentiary Objections Example 1

| Moving Parties Undisputed Fact/Evidence | Evidentiary Objection |
|---|---|
| #1 (Moving party's first undisputed fact) <br><br><br> Jane Smith Dep. 60:1–10; Lee Decl. Ex. E <br><br> (Disclosure Agreement § 2) | Objection to the supporting deposition transcript of Jane Smith at 60:1-10 on the ground that the statement constitutes inadmissible hearsay and no exception is applicable. To the extent that the statement is offered to prove her state of mind, it is irrelevant since her state of mind is not in issue. Fed. R. Evid. 801, 802. |

Alternately, if the evidentiary objection(s) is/are particularly lengthy (over 100 words), the party may lodge its objections in a standard memo-format. However, this memorandum must specifically cite the SUF number.

### **Evidentiary Objections Example 2**

Statement of Uncontroverted Facts #3: Objection to the supporting deposition transcript of Jane Smith at 60:1-10 on the ground that the statement constitutes inadmissible hearsay and no exception is applicable.

[Lengthy legal argument]

To the extent that the statement is offered to prove her state of mind, it is irrelevant since her state of mind is not in issue. Fed. R. Evid. 801, 802.

### E.    Filing Statements of Fact

In addition to filing statements of fact, the Parties should email the Statement of Uncontroverted Facts and Statement of Genuine Disputes in Word or Excel format to DOC_Chambers@cacd.uscourts.gov.

## VIII.   Final Pretrial Conference

A Final Pretrial Conference ("FPTC") has been scheduled in this case pursuant to Federal Rule of Civil Procedure 16 and the Local Rules. Unless excused for good cause, each party appearing in this action shall be represented at the FPTC and all pretrial meetings of counsel by lead counsel.

A continuance of the Final Pretrial Conference at counsel's request or stipulation is *highly unlikely*. Counsel should plan to do the necessary pretrial work on a schedule which will ensure its completion with time to spare before the Final Pretrial Conference. Failure to complete discovery work is not grounds for a continuance. The Court has a crowded docket and to displace another case already set for trial in favor of a case in which counsel have not been diligent in preparing their case would not be just.

### A. Memoranda of Contentions of Fact and Law and Final Pretrial Conference Order

Compliance with the requirements of Local Rule 16 is required by the Court. Carefully prepared Memoranda of Contentions of Fact and Law (which may also serve as the trial brief) and a proposed Final Pretrial Conference Order ("FPTCO") shall be submitted in accordance with the provisions of Local Rules 16-4 through 16-7. The Memoranda of Contentions of Fact and Law are due twenty-one (21) days before the FPTC and the proposed FPTCO is to be lodged eleven (11) days before the FPTC. The form of the proposed Final Pretrial Conference Order shall be in conformity with the format set forth in Appendix A to Local Rules. Adherence to the time requirements is necessary to provide the Court and its staff time to prepare the matter.

In drafting the FPTCO, the Court expects that counsel will attempt to agree on and set forth as many uncontested facts as possible. The Court will normally read the uncontested facts to the jury at the start of the trial. A carefully drafted and comprehensively stated stipulation of facts will reduce the length of trial and increase jury understanding of the case.

At the FPTC, counsel should be prepared to discuss means of streamlining the trial, including, but not limited to: bifurcation, presentation of non-critical testimony by deposition excerpts, stipulations as to the content of testimony, presentation of testimony on direct examination by declaration subject to cross-examination, and qualification of experts by admitted resumes. In rare cases in which the Court waives the FPTC, counsel must follow Local Rules 16-11.

### B. Motions in Limine

All motions in limine must be filed eleven (11) days prior to the FPTC. Oppositions to motions in limine must be filed no later than seven (7) days prior to the FPTC. Motions in limine will typically be heard at the FPTC.

\\\

## IX. Trial

Parties should note that the Court may advance the trial date by up to two weeks.

### A. Statement of the Case (Jury Trials)

At least seven (7) days prior to trial, the parties shall prepare a joint statement of the case which will be read by the Court to the prospective panel of jurors prior to the commencement of voir dire. The statement should typically be a few sentences in length.

### B. Voir Dire (Jury Trials)

At least seven (7) days prior to trial, each party shall file and serve on opposing parties any special questions requested to be put to prospective jurors on voir dire.

### C. Proposed Jury Instructions (Jury Trials)

Proposed jury instructions must be filed seven (7) days prior to trial, in accordance with Local Rule 51. Parties should cite relevant authorities for each instruction, e.g., CACI, Ninth Cir. Model Jury Instructions. The parties should exchange proposed jury instructions and agree as much as possible on the necessary instructions before filing them with the Court. Both parties should submit their proposed jury instructions (preferably in Word format) to the Court at DOC_Chambers@cacd.uscourts.gov. In addition, parties should bring copies of their proposed jury instruction, printed on single-sided paper, with them on the first day of trial.

### D. Findings of Fact and Conclusions of Law (Bench Trials)

The parties shall serve and lodge proposed findings of fact and conclusions of law at least seven (7) days prior to trial and in accordance with Local Rule 52. The parties should submit their proposed findings of fact and conclusions of law (preferably in Word format) to the Court at DOC_Chambers@cacd.uscourts.gov.

\\\

### E.  Proposed Verdict Form

At least seven (7) days prior to trial, the parties shall file their proposed verdict forms. The Court typically does not use special verdict forms. The parties should exchange proposed verdict forms and agree as much as possible to the form before filing. The parties should submit the proposed verdict form (in Word format) to the Court at DOC_Chambers@cacd.uscourts.gov.

### F.  Exhibits

A joint exhibit list must be filed at least twenty-one (21) days prior to the Final Pretrial Conference in accordance with Local Rule 16-6.1. Parties should also submit their joint exhibit list (in Word format) to the Court at DOC_Chambers@cacd.uscourts.gov.

Exhibits are to be delivered to the Courtroom Deputy Clerk not later than 8:30 a.m. on the first day of trial. All exhibits will be placed in loose leaf binders which are tabbed down the right side with exhibit numbers. The spine of the binder is to be marked with the case name and number and the numbers of the exhibits contained therein.

Two binders will be prepared: (1) an original for the Clerk, which will be tagged with the appropriate exhibit tags in the upper right-hand corner of the first page of each exhibit, and (2) one copy for the Court. Each binder will contain an index of the exhibits included.

The exhibits are to be numbered in accordance with Local Rule 26-3. Counsel may obtain exhibit tags (yellow for plaintiff and blue for defendant) at the Clerk's Office, Intake Window. Special arrangements for voluminous or oversized exhibits should be made with the Courtroom Deputy Clerk by Wednesday of the week before trial.

\\\

\\\

\\\

After the conclusion of trial, parties must take their exhibits with them after signing a release. If the parties do not take their exhibits, the Court will dispose of exhibits after fourteen (14) days.

**IT IS SO ORDERED.**

Dated: May 1, 2018

David O. Carter

_____

David O. Carter
United States District Judge

Revised: March 21, 2017

−12−